# EXHIBIT S79 TO DECLARATION OF STEPHEN G. SCHWARZ IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**BEFORE THE ENVIRONMENTAL APPEALS BOARD**
**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**WASHINGTON, D.C.**

|  |  |  |
|---|---|---|
| | ) | |
| **In the Matter of:** | ) | |
| | ) | |
| **3M Company** | ) | **Docket Number TSCA-HQ-2006-5004** |
| **St. Paul, MN** | ) | |
| | ) | |
| **Respondent** | ) | |
| | ) | |

## CONSENT AGREEMENT AND FINAL ORDER

Complainant United States Environmental Protection Agency (EPA or Agency) and

Respondent 3M Company (3M or Respondent), the parties herein, having consented to the entry

of this Consent Agreement and Final Order before the taking of any testimony and without

adjudication of any issues of law or fact herein, hereby consent to the terms of this Consent

Agreement and attached Final Order.


## I.      PRELIMINARY STATEMENT

1.      This civil administrative proceeding for the assessment of penalties pursuant to section

16(a) of the Toxic Substances Control Act (TSCA), 15 U.S.C. § 2615(a) is being

simultaneously commenced and concluded pursuant to 40 C.F.R. §§ 22.13(b),

22.18(b)(2) and (3).


2.      Respondent, for purposes of this proceeding, stipulates that EPA has jurisdiction over

the subject matter in this Consent Agreement and waives any defenses it might have as

**Exhibit**
**2096**

State of Minnesota v. 3M Co.,
Court File No. 27-CV-10-28862

to jurisdiction and venue, and without admitting or denying that it has violated the law, consents to the terms of this Consent Agreement and Final Order (CAFO).

3.    On June 16, 1999, Complainant and Respondent entered into an "Agreement for TSCA Compliance Audit" (Audit Agreement) for Respondent to conduct an internal audit and to review and report on Respondent's compliance with TSCA at Respondent's facilities located and identified in Appendix B of the Audit Agreement.  (See Attachment A for the Audit Agreement).  A new 3M subsidiary, Dyneon L.L.C., was added to the list of sites to be audited on May 4, 2000.  Under the Audit Agreement, 3M would self-disclose consistent with the Agency's revised Final Policy on Incentives for Self-Policing:  Discovery, Disclosure, Correction and Prevention of Violations, 65 Fed. Reg. 19,618 (April 11, 2000) (commonly referred to as the "Audit Policy").  (Audit Agreement ¶ 1.a.).[1]  For those self-disclosures that, in EPA's view, do not meet all applicable conditions of the Audit Policy, the Audit Agreement provides for 3M to pay pre-negotiated penalties.  (Audit Agreement ¶ 3.a.).[2]  As stated in the Audit Agreement, "3M neither admits nor denies that reporting and mitigation by 3M pursuant to . . . this

---

[1] The Audit Agreement was initiated under the original Audit Policy, 60 Fed. Reg. 66,706 (1995); the applicable factors are the same under the original and revised policies.

[2] EPA issued and revised the Audit Policy to encourage regulated entities to conduct voluntary compliance evaluations and to disclose and promptly correct violations.  As an incentive for companies to undertake self-policing, self-disclosure, and self-correction of violations, EPA may substantially reduce or eliminate gravity-based civil penalties.  However, EPA retains its discretion to recover any economic benefit gained as a result of noncompliance.  Where the disclosing party establishes that it satisfies all the conditions listed below, EPA will not seek gravity-based penalties for violations of the federal environmental requirements.  The Respondent must demonstrate that it meets the following criteria:  (1) discovery of the violation(s) through an environmental audit or a compliance management system; (2) voluntary discovery; (3) prompt disclosure; (4) discovery and disclosure independent of government or third-party plaintiff; (5) correction and remediation; (6) prevent recurrence; (7) no repeat violations; (8) other violations excluded; and (9) cooperation.

2

Agreement constitute a violation of TSCA, but nonetheless agrees to pay stipulated civil penalties" specified in the Agreement.  (Audit Agreement, ¶ 1.e.).

4.      Pursuant to the Audit Agreement, Respondent undertook the audit and submitted a final report, dated September 20, 2000, that covered compliance systems and chemical nomenclature auditing.  The final report identified disclosures made to EPA either during the course of the audit or previously as specified in Appendix C to the Audit Agreement, with the exclusion of certain TSCA § 8(e) disclosures that were made to EPA on a separate basis under the Audit Agreement as described in paragraph 5 below.

5.      On August 21, 2000, prior to the September 20, 2000 final audit report due date under the Audit Agreement, Respondent made TSCA § 8(e) self-disclosures based on compliance auditing.  EPA agreed to allow 3M additional time to conduct further TSCA § 8(e) auditing.  The auditing was categorized into different phases to organize 3M's efforts and to facilitate EPA's review.  These TSCA § 8(e) disclosures, as described in paragraphs 6 and 7 below, are included in this CAFO under the terms of the Audit Agreement and are subject to pre-negotiated penalties under the terms of the Audit Agreement.

6.      EPA has identified in sections II and III below the specific TSCA disclosures covered by this CAFO for which EPA is seeking economic benefit and pre-negotiated penalties under the terms of the Audit Agreement.

7.      With this CAFO, 3M agrees to pay the pre-negotiated penalties as specified in the Audit Agreement for disclosures that, in EPA's view, do not meet all applicable provisions of

3

the Audit Policy.  These disclosures include, as described in section II below, Section

8(a) disclosures with pre-negotiated penalties of $10,000 per disclosure and Section 8(e)

disclosures with pre-negotiated penalties of $15,000 per disclosure involving human

data and $6000 per disclosure involving other data.  In addition, 3M agrees to pay

economic benefit for certain Section 5 disclosures described in Section II below.  All

other disclosures made by 3M pursuant to the Audit Agreement not described in

sections II and III below constitute disclosures without economic benefit and without

penalties.  EPA has requested, and 3M has agreed, that all such other disclosures will be

covered in a Notice of Determination to be issued by EPA to 3M.

## II.   EPA'S ALLEGATIONS OF FACT AND LAW

8.    In connection with certain disclosures made by 3M pursuant to the Audit Agreement,

EPA makes allegations of fact and law in section II.  Without admitting or denying that

it has violated the law, 3M agrees to waive its right to a judicial or administrative

hearing or appeal in any proceeding with EPA as a party under TSCA, 15 U.S.C. §

2601, et seq. and the Administrative Procedures Act, 5 U.S.C. § 702 as to any issue of

fact or law raised by EPA's allegations of fact and law set forth below.  Except as

expressly stipulated, acknowledged and agreed herein, 3M neither makes nor has made

any admissions of fact or law, acknowledgments, or agreements in connection herewith.

Neither this CAFO, nor any discussions leading up to this CAFO, shall be admissible in

evidence against 3M or any person, except as and to the extent necessary either in a

proceeding to which 3M and EPA are parties to enforce the provisions of the CAFO or

as specified in Paragraph 90 of this CAFO.

4

COUNT 1

9.     Paragraphs 1 through 8 are re-alleged and incorporated herein by reference.

10.    Respondent is a corporation, which is a "person" as defined in 40 C.F.R. § 720.3(x) and,
       as such, is subject to TSCA and regulations promulgated thereunder.

11.    Respondent owns and operates manufacturing facilities identified in Appendix B of the
       Audit Agreement.

12.    Respondent "manufactures," which means to import into the customs territory of the
       United Stales, produce or manufacture, as defined in TSCA § 3(7), 15 U.S.C. § 2602(7).

13.    Any chemical substance which is not included in the chemical substance list (TSCA
       Inventory) compiled and published under TSCA § 8(b), 15 U.S.C. § 2607(b), is a "new
       chemical substance" pursuant to TSCA § 3(9), 15 U.S.C. § 2602(9).

14.    Pursuant to TSCA § 5(a)(1), 15 U.S.C. § 2604(a)(l), except as provided in TSCA § 5(h),
       no person may manufacture a new chemical substance unless such person submits a
       Premanufacture Notification (PMN) to EPA at least ninety (90) days before
       manufacturing that substance.

15.    TSCA § 15 (1)(B), 15 U.S.C. § 2614(1)(B), provides that it is unlawful for any person to
       fail or refuse to comply with any requirement prescribed by TSCA §§ 5 or 6, 15 U.S.C.
       §§ 2604 o 2605.

5

16.     TSCA § 15(3)(B), 15 U.S.C. § 2614(3)(B) provides that it is unlawful for any person to

        fail or refuse to submit reports, notices, or other information as required by TSCA, or a

        rule thereunder for which a penalty maybe assessed pursuant to TSCA § 16(a), 15

        U.S.C. § 2615(a).

17.     On February 20, 1998, Respondent disclosed to EPA in writing pursuant to the Audit

        Agreement that it had not submitted a PMN for a chemical substance, identified by

        Respondent as TS-981903 (Chemical A).

18.     On February 20, 1998 and September 20, 2000, Respondent informed EPA in writing

        that 3M manufactured Chemical A from January 19, 1993 through September 6, 1997,

        prior to submitting a PMN for this chemical.

19.     Chemical A was not on the TSCA Inventory from January 19, 1993 through September

        6, 1997.

20.     EPA alleges that Respondent's failure to submit a PMN at least ninety (90) days before

        manufacturing Chemical A is a failure to comply with TSCA § 5(a)(1), 15 U.S.C. §

        2604(a)(1), which is a violation of TSCA §§ 15(1)(B) and (3)(B), 15 U.S.C. §§

        2614(1)(B) and (3)(B).

COUNT 2

21.     Paragraphs 1 through 16 are re-alleged and incorporated herein by reference.

6

22.   On June 28, 1999, Respondent disclosed to EPA in writing pursuant to the Audit Agreement that it had not submitted a PMN for a chemical substance. 3M subsequently submitted a PMN to the Agency for this chemical substance, which was identified by the Agency as P-99-1002 (Chemical B).

23.   On June 28, 1999 and September 20, 2000, Respondent informed EPA in writing that 3M manufactured Chemical B from January 10, 1996 through December 22, 1999, prior to submitting a PMN for this chemical.

24.   Chemical B was not on the TSCA Inventory from January 10, 1996 through December 22, 1999.

25.   EPA alleges that Respondent's failure to submit a PMN at least ninety (90) days before manufacturing Chemical B is a failure to comply with TSCA § 5(a)(1), 15 U.S.C. § 2604(a)(1), which is a violation of TSCA §§ 15(1)(B) and (3)(B), 15 U.S.C. §§ 2614(1)(B) and (3)(B).

<u>COUNT 3</u>

26.   Paragraphs 1 through 16 are re-alleged and incorporated herein by reference.

27.   On July 22, 1999, Respondent disclosed to EPA in writing that it had not submitted a PMN for a chemical substance, identified by Respondent as TS-832552 (Chemical C).

7

28.    On July 22, 1999 and September 20, 2000, Respondent informed EPA in writing that
       3M manufactured Chemical C from June 18, 1997 through June 21, 1999, prior to
       submitting a PMN for this chemical.

29.    Chemical C was not on the TSCA Inventory from June 18, 1997 to June 21, 1999.

30.    EPA alleges that Respondent's failure to submit a PMN at least ninety (90) days before
       manufacturing Chemical C is a failure to comply with TSCA § 5(a)(1), 15 U.S.C. §
       2604(a)(1), which is a violation of TSCA §§ 15(1)(B) and (3)(B), 15 U.S.C. §§
       2614(1)(B) and (3)(B).

<u>COUNT 4</u>

31.    Paragraphs 1 through 16 are re-alleged and incorporated herein by reference.

32.    On September 29, 1999, Respondent disclosed to EPA in writing pursuant to the Audit
       Agreement that it had not submitted a PMN for a chemical substance, identified by
       Respondent with a Chemical Abstract Registry (CAS) Number.  Respondent has
       claimed the chemical CAS number as TSCA Confidential Business Information under
       TSCA § 14 (Chemical D).

33.    On September 29, 1999 and September 20, 2000, Respondent informed EPA in writing
       that 3M manufactured Chemical D during the time period of January 1, 1995 through
       June 17, 1999, prior to submitting a PMN for this chemical.

8

34.     Chemical D was not on the TSCA Inventory from January 1, 1995 through June 17, 1999.

35.     EPA alleges that Respondent's failure to submit a PMN at least ninety (90) days before manufacturing Chemical D is a failure to comply with TSCA § 5(a)(1), 15 U.S.C. § 2604(a)(1), which is a violation of TSCA §§ 15(1)(B) and (3)(B), 15 U.S.C. §§ 2614(1)(B) and (3)(B).

## COUNT 5

36.     Paragraphs 1 through 16 are re-alleged and incorporated herein by reference.

37.     On April 8, 1999, Respondent disclosed to EPA in writing pursuant to the Audit Agreement that it had not submitted a PMN for a chemical substance, identified by Respondent as TS-204926 (Chemical E).

38.     On April 8, 1999 and September 20, 2000, Respondent informed EPA in writing that 3M manufactured Chemical E from June 1, 1996 through November 23, 1999, prior to submitting a PMN for this chemical.

39.     Chemical E was not on the TSCA Inventory from June 1, 1996 to November 23, 1999.

40.     EPA alleges that Respondent's failure to submit a PMN at least ninety (90) days before manufacturing Chemical E is a failure to comply with TSCA § 5(a)(1), 15 U.S.C. § 2604(a)(1), which is a violation of TSCA §§ 15(1)(B) and (3)(B), 15 U.S.C. §§ 2614(1)(B) and (3)(B).

9

<u>COUNT 6</u>

41.     Paragraph 1 through 16 are re-alleged and incorporated herein by reference.


42.     On September 21, 1999, Respondent disclosed to EPA in writing pursuant to the Audit

        Agreement that it had not submitted a PMN for a chemical substance, identified by

        Respondent as TS-439521 (Chemical F).


43.     On September 21, 1999 and September 20, 2000, Respondent informed EPA in writing

        that 3M manufactured Chemical F from March 1, 1996 through August 1, 1999, prior to

        submitting a PMN for this chemical.


44.     Chemical F was not on the TSCA Inventory from March 1, 1996 through August 1,

        1999.


45.     EPA alleges that Respondent's failure to submit a PMN at least ninety (90) days before

        manufacturing Chemical F is a failure to comply with TSCA § 5(a)(1), 15 U.S.C. §

        2604(a)(l ), which is a violation of TSCA §§ 15(1)(B) and (3)(B), 15 U.S.C. §§

        2614(1)(B) and (3)(B).


<u>COUNT 7</u>

46.     Paragraphs 1 through 16 are re-alleged and incorporated herein by reference.


47.     On November 4, 1999, Respondent disclosed to EPA in writing that it had not submitted

        a PMN for a chemical substance, identified by Respondent with a CAS Number.


10

Respondent has claimed the chemical CAS number as TSCA Confidential Business

Information under TSCA § 14 (Chemical G).

48.    On November 4, 1999 and September 20, 2000, Respondent informed EPA in writing

that 3M manufactured Chemical G during the time period of July 20, 1997 through

April 30, 1999, prior to submitting a PMN for this chemical.

49.    Chemical G was not on the TSCA Inventory from July 20, 1997 through April 30, 1999.

50.    EPA alleges that Respondent's failure to submit a PMN at least ninety (90) days before

manufacturing Chemical G is a failure to comply with TSCA § 5(a)(1), 15 U.S.C. §

2604(a)(1), which is a violation of TSCA §§ 15(1)(B) and (3)(B), 15 U.S.C. §§

2614(1)(B) and (3)(B).


## COUNT 8

51.    Paragraphs 1 through 16 are re-alleged and incorporated herein by reference.

52.    On May 12, 2000, Respondent disclosed to EPA in writing pursuant to the Audit

Agreement that it had not submitted a PMN for a chemical substance, identified by

Respondent as TS-926435 (Chemical H).

53.    On May 12, 2000 and September 20, 2000, Respondent informed EPA in writing that

3M manufactured Chemical H during the time period of May 6, 1996 through

September 21, 2000, prior to submitting a PMN for this chemical.

11

54.    Chemical H was not on the TSCA Inventory from May 6, 1996 through September 21, 2000.

55.    EPA alleges that Respondent's failure to submit a PMN at least ninety (90) days before manufacturing Chemical H is a failure to comply with TSCA § 5(a)(1), 15 U.S.C. § 2604(a)(1), which is a violation of TSCA §§ 15(1)(B) and (3)(B), 15 U.S.C. §§ 2614(1)(B) and (3)(B).

<u>COUNTS 9-10</u>

56.    Paragraphs 1 through 16 are re-alleged and incorporated herein by reference.

57.    40 C.F.R. § 720.102 was promulgated under authority of TSCA § 8(a).

58.    40 C.F.R. § 720.102 requires any person who manufactures or imports a new chemical substance to report to EPA information on such manufacture or import no later than 30 calendar days after the date of first manufacture or import.

59.    On or about July 22, 1999 and September 20, 2000, Respondent disclosed to EPA in writing pursuant to the Audit Agreement it had not submitted two Notices of Commencement of Manufacture or Import (NOC) for chemical substances no later than 30 calendar days after the date that it first manufactured or imported the chemicals for non-exempt commercial purposes.

60.    Respondent's correspondence with EPA details the following:  On or about July 22, 1999, Respondent submitted to the Agency a NOC for a chemical substance identified

12

generically as *Caprolactone dipentaerythritol polyurethane*, hereinafter known as Chemical I.  The NOC indicated that Chemical I had first been manufactured for non-exempt commercial purposes on August 25, 1995.

61.     Additionally, on or about July 22, 1999, Respondent also submitted a NOC for a chemical substance subsequently identified by EPA as P-92-1246, hereinafter known as Chemical J.  This NOC dictated that Chemical J had first been manufactured for non-exempt commercial purposes on February 5, 1993.

62.     EPA alleges that Respondent failed to submit NOCs for Chemicals I and J no later than 30 calendar days after the date of first manufacture or import as required by 40 C.F.R. § 720.102.

63.     EPA alleges that Respondent's failure to timely submit NOCs for Chemical I and J is a failure to comply with 40 C.F.R. § 720.102, a rule promulgated under TSCA § 8(a), 15 U.S.C. § 2607(a), which constitutes two violations of TSCA § 15(3)(B), 15 U.S.C. § 2615(a).

## COUNTS 11 - 41

64.     Paragraphs 1 through 12, and 16, are re-alleged and incorporated herein by reference.

65.     The Respondent manufactures, processes, or distributes in commerce chemical substances or mixtures, as those terms are defined in TSCA § 3, 15 U.S.C. § 2602 and TSCA § 8(f), 15 U.S.C. § 2607(f).

13

66.     TSCA § 8(e), 15 U.S.C. § 2607(e), provides that "Any person who manufactures,

        processes, or distributes in commerce a chemical substance or mixture and who obtains

        information which reasonably supports the conclusion that such substance or mixture

        presents a substantial risk of injury to health or the environment shall immediately

        inform the Administrator of such information unless such person has actual knowledge

        that the Administrator has been adequately informed of such information."  EPA has

        published guidance interpreting this statutory provision, including Statement of

        Interpretation and Policy, 43 Fed. Reg. 11,110 (Mar. 16, 1978); TSCA Section 8(e);

        Notification of Substantial Risk; Policy Clarification and Reporting Guidance, 68 Fed.

        Reg. 33129 (June 3, 2003); and Comment and Response Document for Revised Policy

        Statement of Section 8(e) of TSCA, OPPT-2002-0067-0002 (Feb. 20, 2003).

67.     The Respondent is subject to the requirements of TSCA § 8(e), 15 U.S.C. § 2607(e).

68.     In late March and early April 2000, EPA requested that 3M voluntarily submit copies of

        studies and other information relating to fluorochemicals (FCs) not previously submitted

        to EPA and not otherwise available through publications.  This request stemmed from an

        earlier dialogue between OPPT and 3M regarding FCs and a series of TSCA § 8(e)

        submissions by 3M beginning in May of 1998, which reported the measurement of

        several FCs in general population serum and in wildlife at low parts per billion (ppb)

        levels.  3M had previously reported to the TSCA § 8(e) docket the detection of FCs in

        the serum of its production workers at low parts per million (ppm) levels.

69.     On or about April 21, 2000 and subsequently in May of 2000, 3M responded to EPA's

        information request by providing over 600 studies to EPA's "For Your Information"

                                                                                          14

(FYI) docket number 1378.  3M then audited these studies to determine TSCA § 8(e) relevancy based on EPA's guidance described in Paragraph 66 above and currently available information.  This auditing constituted 3M's Phase I TSCA § 8(e) auditing, see Paragraph 5 above.

70.     In a letter to EPA's Office of Pollution Prevention and Toxics (OPPT) dated August 21, 2000, Respondent requested that EPA redesignate, to the TSCA § 8(e) docket, 31 studies and information which 3M previously had submitted to EPA and were contained in "For Your Information" (FYI) docket number 1378.  These studies and information supplement 3M's previous § 8(e) submissions in Docket Numbers 8EHQ-1180-373 and 8EHQ-1180-374.

71.     As described in Paragraphs 2, 8, 66 and 68 of this Consent Agreement, by placing the 31 studies and information in the 8(e) docket as a result of its Phase I § 8(e) auditing, 3M does not admit, acknowledge or agree that these items require reporting under TSCA § 8(e) or constitute violations of TSCA § 15(3)(B), 15 U.S.C. § 2614(3)(B).  EPA has not conducted its own independent compliance review of the 31 studies and information, and hence, EPA has made no substantive determination regarding these items.  For the purpose of assessing pre-negotiated penalties under this Consent Agreement in accordance with both the Audit Agreement and the Agency's Audit Policy described in Paragraph 3 of this Consent Agreement, EPA treats the 31 studies and information placed by 3M in the 8(e) docket as a result of its Phase I § 8(e) auditing as 31 violations of TSCA § 15(3)(B), 15 U.S.C. § 2614(3)(B).

2096.0015

COUNTS 42-44

72.  Paragraphs 1 through 12, 16, and 65 through 68, are re-alleged and incorporated herein by reference.

73.  From May 2000 through December 2000, 3M continued to respond to EPA's request for information in Paragraph 68, by providing an additional 700 studies to EPA's FYI Docket Number 1378.  3M then audited these studies to determine TSCA 8(e) relevancy based on EPA's guidance described in Paragraph 66 above and currently available information.  This auditing constituted 3M's Phase II TSCA § 8(e) auditing, see Paragraph 5 above.

74.  In a letter to OPPT dated June 13, 2001, Respondent requested that EPA redesignate, to the TSCA § 8(e) docket, three studies which 3M previously had submitted to EPA and were contained in "For Your Information" (FYI) Docket Number 1378 (also known as AR-226).  These studies and information supplement 3M's previous 8(e) submissions in Docket Numbers 8EHQ-118C-373 and 8EHQ-1180-374.

75.  As described in Paragraphs 2, 8, 66 and 68 of this Consent Agreement, by placing the three studies and information in the 8(e) docket as a result of its Phase II § 8(e) auditing, 3M does not admit, acknowledge or agree that these items require reporting under TSCA § 8(e) or constitute violations of TSCA § 15(3)(B), 15 U.S.C. § 2614(3)(B).  EPA has not conducted its own independent compliance review of the three studies and information, and hence, EPA has made no substantive determination regarding these items.  For the purpose of assessing pre-negotiated penalties under this Consent

16

Agreement in accordance with both the Audit Agreement and the Agency's Audit Policy described in Paragraph 3 of this Consent Agreement, EPA treats the three studies and information placed by 3M in the 8(e) docket as a result of its Phase II § 8(e) auditing as three violations of TSCA § 15(3)(B), 15 U.S.C. § 2614(3)(B).

<u>COUNTS 45 - 70</u>

76.     Paragraphs l through 12, 16, and 65 through 68, are re-alleged and incorporated herein by reference.

77.     In a letter to OPPT dated May 23, 2003, 3M disclosed to the Agency, and submitted to the TSCA § 8(e) docket, 26 studies as a result of auditing to determine TSCA 8(e) relevancy based on EPA's guidance described in Paragraph 66 above and currently available information.  This auditing constituted 3M's Phase III TSCA § 8(e) auditing, see Paragraph 5 above, which focused on studies performed after the January 1, 1992 cut-off date for 3M's voluntary participation in the Agency's TSCA § 8(e) Compliance Audit program (CAP).[3]

78.     As described in Paragraphs 2, 8, 66 and 68 of this Consent Agreement, by placing the 26 studies and information in the 8(e) docket as a result of its Phase III § 8(e) auditing, 3M does not admit, acknowledge or agree that these items require reporting under TSCA § 8(e) or constitute violations of TSCA § 15(3)(B), 15 U.S.C. § 2614(3)(B).  EPA has not

---

[3] In 1991, the Agency announced a one-time voluntary TSCA § 8(e) CAP.  The CAP was designed to primarily to obtain information that was required to be submitted to EPA before the CAP, and encourage companies to voluntarily search their files for data reportable under § 8(e).  The CAP established stipulated penalties and a ceiling on penalties that would be collected from any single company.  EPA announced final settlements with CAP participants in 1996 and collected stipulated penalties.

17

conducted its own independent compliance review of the 26 studies and information, and hence, EPA has made no substantive determination regarding these items.  For the purpose of assessing pre-negotiated penalties under this Consent Agreement in accordance with both the Audit Agreement and the Agency's Audit Policy described in Paragraph 3 of this Consent Agreement, EPA treats the 26 studies and information placed by 3M in the 8(e) docket as a result of its Phase III § 8(e) auditing as 26 violations of TSCA § 15(3)(B), 15 U.S.C. § 2614(3)(B).

<u>COUNTS 71 - 244</u>

79.     Paragraphs 1 through 12, 16, and 65 through 68, are re-alleged and incorporated herein by reference.

80.     In letters to OPPT dated September 24, 2003 ("2004"), October 26, 2004 and November 16, 2005, 3M disclosed to the Agency, and submitted to the TSCA § 8(e) docket, 174 studies as a result of auditing to determine TSCA 8(e) relevancy based on EPA's guidance described in Paragraph 66 above and currently available information.  This auditing constituted 3M's Phase IV TSCA § 8(e) auditing, see Paragraph 5 above, which focused on two additional categories of studies not encompassed by Phases I, II, and III: (1) the remaining post-January 1, 1992 studies for significant endpoints that had not been covered by the Phase III subchronic and chronic study categories; and (2) studies on mixture formulations that reached pilot or full scale production or that otherwise were commercialized by 3M.

18

81.     As described in Paragraphs 2, 8, 66 and 68 of this Consent Agreement, by placing the

174 studies and information in the 8(e) docket as a result of its Phase IV § 8(e) auditing,

3M does not admit, acknowledge or agree that these items require reporting under

TSCA § 8(e) or constitute violations of TSCA § 15(3)(B), 15 U.S.C. § 2614(3)(B).  EPA

has not conducted its own independent compliance review of the 174 studies and

information, and hence, EPA has made no substantive determination regarding these

items.  For the purpose of assessing pre-negotiated penalties under this Consent

Agreement in accordance with both the Audit Agreement and the Agency's Audit Policy

described in Paragraph 3 of this Consent Agreement, EPA treats the 174 studies and

information placed by 3M in the 8(e) docket as a result of its Phase IV § 8(e) auditing as

174 violations of TSCA § 15(3)(B), 15 U.S.C. § 2614(3)(B).


### III.     CIVIL PENALTY/ECONOMIC BENEFIT

82.     Respondent submitted its self-disclosures pursuant to the Audit Agreement and the

applicable provisions of the Audit Policy.


83.     EPA's review of Respondent's correspondence as identified in Counts 1 through 8

above indicates that Respondent has met the terms of the Audit Agreement and the

applicable provisions of the Audit Policy as stated in Paragraph 4.


84.     EPA uses the "BEN" model[4] to determine the economic benefit gained by an entity's

noncompliance.  EPA applied the BEN model to Respondent's violations and

determined that Respondent's economic benefit from the delayed and avoided

---

[4] The BEN model is a computer program used to calculate the economic benefit of
noncompliance.  BEN is located on the internet at http://es.epa.gov/oeca/models/ben.html.

19

expenditures of filing PMNs for Chemicals A through H was Fifty-Two Thousand Nine

Hundred and Eighty-Three dollars ($52,983) and divided by count as follows:

Count 1 (Chemical A) - $ 4,645
Count 2 (Chemical B) - $ 5,781
Count 3 (Chemical C) - $ 4,788
Count 4 (Chemical D) - $15,850
Count 5 (Chemical E) - $ 3,353
Count 6 (Chemical F) - $ 1,167
Count 7 (Chemical G) - $13,430
Count 8 (Chemical H) - $ 3,969

85.   Pursuant to the terms of the Audit Agreement entered into between EPA and

Respondent, Respondent has agreed to pay the following pre-negotiated penalties for all

of the other disclosures set forth in Counts 9–244 above that in EPA's view failed to

meet the applicable conditions of the Audit Policy.  Pre-negotiated penalties for these

disclosures are calculated as follows:

TSCA 8(a) reports, Notices of Commencement (2 x $10,000) - $ 20,000
TSCA 8(e) studies/reports involving human data (5 x $15,000) - $ 75,000
TSCA 8(e) studies/reports involving other data (229 x $6,000) - $1,374,000

86.   The total sum of penalties to be paid (Paragraphs 84 and 85) by Respondent is

$1,521,983.


## IV.   TERMS OF SETTLEMENT

87.   These terms of settlement resolve only the civil and administrative claims alleged in this

CAFO.


88.   The effect of settlement described in Paragraph 87 above is conditional upon the

accuracy of the Respondent's representations to EPA in the Audit Agreement and

Respondent's letters and reports submitted to EPA pursuant to that Agreement dated

20

February 20, 1998; June 28, 1999; July 22, 1999; April 8, 1999; September 21, 1999;

September 29, 1999; November 4, 1999; May 12, 2000; August 21, 2000; June 13,

2001; September 20, 2000; May 23, 2003, September 24, 2004; October 26, 2004; and

November 16, 2005.

89.    Respondent waives its right pursuant to TSCA § 16(a)(2)(A), 15 U.S.C. §

2615(a)(2)(A), and 40 C.F.R. § 22.18(b)(2) to request an administrative hearing or seek

judicial review of the proposed final order accompanying this Consent Agreement.

90.    For the sole purpose of establishing Respondent's compliance history in any future

enforcement proceeding that EPA may bring against Respondent within five years of the

date of the execution of the Final Order, Respondent accepts the violations alleged in

Counts 1-10 of this Consent Agreement.  For all other purposes, Respondent neither

admits nor denies the allegations, but consents to the terms and conditions of this

Consent Agreement and Final Order.

91.    Through the execution of this Consent Agreement, Respondent certifies that with

respect to the violations alleged herein, Respondent is in full compliance with TSCA §§

5, 8(a), 8(e) and 15.

92.    Respondent agrees to pay a civil penalty in the sum of **$1,521,983.**

21

a.   Not more than sixty (60) calendar days after the effective date of the Final Order,

Respondent shall either submit a cashier's or certified check with a notation of

"3M Company, Civil Penalty Docket No. TSCA-HQ-2006-5004," payable to the

order of the "Treasurer, United States of America," in the amount of **$1,521,983**

to:

> EPA-Washington
> (Hearing Clerk)
> Docket No. TSCA-HQ-2006-5004
> P.O. Box 360277
> Pittsburgh, PA 15251-6277

or pay **$1,521,983** by wire transfer with a notation of "3M Company, Civil

Penalty Docket No. TSCA-HQ-2006-5004" by using the following instructions:

| | |
|---|---|
| Name of Beneficiary: | EPA |
| Number of Account for deposit: | 68010099 |
| The Bank Holding Acct: | Treas_NYC |
| The ABA routing Number: | 021030004 |

b.   Respondent shall forward a copy of the check or documentation of a wire

transfer to:

> Tony R. Ellis, Case Development Officer
> U.S. Environmental Protection Agency (2245A)
> Toxics and Pesticides Enforcement Division
> 1200 Pennsylvania Ave., NW
> Washington, D.C. 20460
> (202) 564-4167
> Fax (202) 564-0035

22

c.     If Respondent fails to make the payment in a timely manner, as described in Paragraph 92, Respondent shall pay a stipulated penalty of **One Thousand Dollars ($1,000)** per calendar day for every day the penalty payment is late, unless EPA in writing excuses or mitigates the stipulated penalty.  EPA may excuse or mitigate the stipulated penalty if EPA determines that the failure to comply occurred despite the exercise of good faith and due diligence by the Respondent.

## V.    OTHER MATTERS

93.    This Consent Agreement shall be binding upon the parties, and their respective officers, directors, employees, successors and assigns.  The undersigned representative of each party certifies that he or she is duly authorized by his or her party to enter into this binding Consent Agreement.

94.    This Consent Agreement shall take full effect upon the signing of the Final Order by EPA's Environmental Appeals Board or its designated representative.

95.    Respondent's obligations under this Consent Agreement shall end when it has made the scheduled payment, paid any pre-negotiated penalties and submitted the copy of the check as required in Paragraph 92 of this Consent Agreement.

96.    All of the terms and conditions of this Consent Agreement together comprise one settlement agreement, and each of the terms and conditions is in consideration for all of the other terms and conditions.  In the event that this Consent Agreement (or one or more of its terms and conditions) is held invalid, or is not executed by all of the

23

signatory parties in identical form, or is not approved in such identical form by EPA's Environmental Appeals Board or its designated representative, then the entire Consent Agreement shall he null and void.

97.    The penalty specified above represents civil penalties assessed by EPA and shall not be deductible for purposes of federal taxes.

98.    Failure of Respondent to remit the civil penalties provided herein will result in this matter being forwarded to the United States Department of Justice for collection of the amount due, plus pre-negotiated penalties and interest at the statutory judgment rate provided in 28 U.S.C. § 1961.

99.    The parties agree to bear their own costs.

100.   Nothing in this Consent Agreement and Final Order is intended to, nor shall be construed to operate in any way, to resolve any criminal liability of the Respondent.

WE AGREE TO HIS:

For Complainant:

*Stephanie Brown* (signature)

Stephanie P. Brown, Acting Director
Toxics and Pesticides
  Enforcement Division
Office of Civil Enforcement
United States Environmental
  Protection Agency

*March 9, 2006* (handwritten)

Date

*Dean B. Ziegel* (signature)

Dean B. Ziegel, Attorney for EPA
Toxics and Pesticides
  Enforcement Division
Office of Civil Enforcement
United States Environmental
  Protection Agency

*8 March 2006* (handwritten)

Date

For Respondent:

*Katherine E. Reed* (signature)

Dr. Katherine E. Reed, PhD
Staff Vice President, Environmental
Technology and Safety Services
3M Company

*24 February 2006* (handwritten)

Date

*Julia A. Hatcher* (signature)

Julia A. Hatcher, Esq.
Latham & Watkins
Counsel for 3M Company

*7 March, 2006* (handwritten)

Date

25

**BEFORE THE ENVIRONMENTAL APPEALS BOARD
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
WASHINGTON, D.C.**

|                        |     |                                        |
|------------------------|-----|----------------------------------------|
|                        | )   |                                        |
| **In the Matter of:**  | )   |                                        |
|                        | )   |                                        |
| **3M Company**         | )   | **Docket Number TSCA-HQ-2006-5004**    |
|                        | )   |                                        |
| **Respondent.**        | )   |                                        |
|                        | )   |                                        |
|                        | )   |                                        |

**FINAL ORDER**

The United States Environmental Protection Agency as Complainant, and 3M Company as Respondent, the parties herein, having signed and consented to entry of the attached Consent Agreement incorporated by reference into this Final Order,

NOW, THEREFORE, IT IS ORDERED THAT:

1.  Respondent 3M Company (3M) shall comply with all terms of the Consent Agreement;

2.  Respondent is assessed a civil penalty of $1,521,983; and

3.  Respondent shall, in accordance with the payment provisions set forth in the Consent Agreement, forward a certified or cashier's check, payable to the order of the "Treasurer of the United States of America," to:

> EPA-Washington
> (Hearing Clerk)
> Docket No. TSCA-HQ-2006-5004
> P.O. Box 360277
> Pittsburgh, PA 15251-6277

or make payment through a wire transfer as described in the Consent Agreement.

IT IS SO ORDERED.

By: _____
     Environmental Appeals Board

Dated: _____

**2096.0026**

<u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing "Consent Agreement and Final Order," <u>3M Company</u>,

Docket No. TSCA-HQ-2006-5004, was filed and copies of the same were mailed to the parties

as indicated below:


(Interoffice)                    Mr. Dean B. Ziegel, Esquire
                                 Toxics and Pesticides Enforcement Division
                                 Office of Civil Enforcement
                                 U.S. Environmental Protection Agency
                                 1200 Pennsylvania Ave., NW (Mail Code 2245A)
                                 Washington, DC 20460
                                 202-564-4038
                                 Fax-202-564-0020


(U.S. Mail)                      Mr. Thomas DiPasquale, Esquire
                                 Counsel for 3M Company
                                 3M Center
                                 St. Paul, MN 55144-1000

                                 Ms. Julia Hatcher, Esquire
                                 Latham & Watkins, Suite 1000
                                 555 Eleventh St., NW
                                 Washington, DC 20004-1304


Dated: _____          _____
                                               Annette Duncan
                                               Secretary