# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELE BAKER; CHARLES CARR; ANGELA CORBETT; PAMELA FORREST; MICHAEL HICKEY, individually and as parent and natural guardian of O.H., infant; KATHLEEN MAIN-LINGENER; KRISTIN MILLER, as parent and natural guardian of K.M., infant; JENNIFER PLOUFFE; SILVIA POTTER, individually and as parent and natural guardian of C.P, infant; and DANIEL SCHUTTIG, individually and on behalf of all others similarly situated, | Case No. 1:16-CV-00917-LEK-DJS |

                  *Plaintiffs*,

v.

SAINT-GOBAIN PERFORMANCE PLASTICS CORP., and HONEYWELL INTERNATIONAL INC. f/k/a ALLIED-SIGNAL INC. and/or ALLIEDSIGNAL LAMINATE SYSTEMS, INC., E.I. DUPONT DE NEMOURS AND COMPANY, INC., and 3M CO.,

                  *Defendants*.

## CLASS SETTLEMENT AGREEMENT

This Class Settlement Agreement is entered into as of the 16th day of July, 2021, by, between and among Plaintiffs, on behalf of themselves and the Settlement Class Members, by and through Class Counsel, and the Settling Defendants, by and through their counsel of record in this Action.

## RECITALS

WHEREAS, Plaintiffs have asserted claims against the Defendants in this Action on behalf of four putative classes, including owners and renters of properties supplied with drinking water either by the Village Municipal Water System or by private wells in the Village or the Town of Hoosick in which PFOA has been detected, and current and former residents of the Village and Town with PFOA detected in their blood;

WHEREAS, Plaintiffs allege that the Defendants are liable under several tort theories for various damages and other relief based on the presence of PFOA in the Village Municipal Water System, in private wells, on or at their properties, and/or in their blood;

WHEREAS, Plaintiffs allege that PFOA detected in the Village Municipal Water System and private wells was released from facilities in the Village of Hoosick Falls, which Plaintiffs allege that Saint-Gobain and/or Honeywell's predecessors or their affiliates currently or formerly owned or operated;

WHEREAS, Plaintiffs allege that 3M manufactured certain APFO- or PFOA-containing products supplied to (or that others used in the manufacture of products supplied to), used at, and/or disposed or discharged at facilities in the Village of Hoosick Falls and Town of Hoosick, including those which Plaintiffs allege that Saint-Gobain and/or Honeywell's predecessors or their affiliates currently or formerly owned or operated;

WHEREAS, the Settling Defendants have denied and continue to deny Plaintiffs' allegations, any alleged wrongdoing in connection with any PFOA or other PFAS present in the Village Municipal Water System, in private wells in the Village of Hoosick Falls and Town of Hoosick, on or at Plaintiffs' properties, or in Plaintiffs' blood, and any liability in connection with Plaintiffs' claims; dispute the factual, legal, scientific, and other bases for Plaintiffs' claims and the appropriateness of certifying any putative class for litigation; and maintain that they have meritorious defenses to class certification and to the claims of liability and damages asserted by Plaintiffs; and

WHEREAS, after carefully considering the facts and applicable law and the risks, costs, delay, inconvenience, and uncertainty of continued and protracted litigation, and after engaging in extensive, arm's-length negotiations, with the assistance of a mediator, the Parties desire to settle the Action as to the Settling Defendants and the related claims of Plaintiffs and the Settlement Classes on the terms and conditions stated herein, which Plaintiffs and Co-Lead Interim Class Counsel believe are fair, reasonable, adequate, and beneficial to and in the best interests of the Settlement Class Members;

NOW THEREFORE, subject to approval by the Court pursuant to Federal Rule of Civil Procedure 23, the Parties hereby agree that, in consideration of the promises and mutual covenants set forth in this Agreement and upon occurrence of the Effective Date, the Action and the related claims of Plaintiffs and the Settlement Classes shall be settled, compromised, dismissed on the merits and with prejudice, and released as to the Settling Defendants on the following terms and conditions:

1. **Definitions**

In addition to the terms defined at various points within this Agreement, the following defined terms shall apply throughout this Agreement:

a. "**3M**" means the 3M Company.

b. "**Action**" means the putative consolidated class action lawsuit captioned *Baker v. Saint-Gobain Performance Plastics Corporation et al.*, No. 1:16-cv-917, currently

pending in the Court, including without limitation Nos. 1:16-cv-220, 1:16-cv-292, 1:16-cv-394, and 1:16-cv-476.

c.    "**Agreement**" means the Class Settlement Agreement between and among Plaintiffs, on behalf of themselves and the Settlement Class Members, and the Settling Defendants, including all exhibits and addenda thereto, and the supplemental agreements set forth in Section 19 herein.

d.    "**APFO**" means, for purposes of this Agreement only, ammonium perfluorooctanoate and all its chemical precursors and degradants.  For purposes of this Agreement, the definition of "APFO" is intended to be as broad and inclusive as possible and includes, without limitation, all APFO-containing substances and all products manufactured with APFO, or which used APFO as a processing aid in connection with such manufacturing, their precursors, and their degradants.

e.    "**CAFA Notice**" means the notice to be disseminated to appropriate federal and state officials pursuant to the requirements of 28 U.S.C. § 1715(b) and in accordance with Section 10 of this Agreement.

f.    "**Claim Form**" means the form in substantially the same form as Exhibit A to this Agreement that must be completed by any Person seeking to receive payment and/or participate in the Medical Monitoring Program as a Settlement Class Member.

g.    "**Claimant**" means any Person who submits a Claim Form to the General Administrator.

h.    "**Class Counsel**" or "**Co-Lead Interim Class Counsel**" means:

Stephen G. Schwarz
Hadley L. Matarazzo
**FARACI LANGE, LLP**
28 E. Main St., Suite 1100
Rochester, New York 14614

James J. Bilsborrow
**SEEGER WEISS LLP**
55 Challenger Road
Ridgefield Park, New Jersey 07660

Robin L. Greenwald
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, New York 10003

as counsel for Plaintiffs and in their capacity as Co-Lead Interim Class Counsel appointed by the Court pursuant to its July 27, 2016 Order, and any other attorney or

law firm that represents any of the Plaintiffs and seeks to receive any portion of the attorneys' fees that may be awarded by the Court in connection with this Settlement.

i.   "**Class Notice**" means the notice of the Settlement that will be provided to prospective Settlement Class Members in accordance with Section 11 of this Agreement.

j.   "**Court**" means the United States District Court for the Northern District of New York, the Honorable Lawrence E. Kahn presiding.

k.   "**Defendants**" means Saint-Gobain, Honeywell, 3M, and E.I. DuPont de Nemours and Company.

l.   "**Effective Date**" means the date on which the last of the following has occurred: (1) twenty-one (21) days following the expiration of the deadline for appealing the Final Approval Order, if no timely appeal is filed; (2) if an appeal of the Final Approval Order is taken, the date upon which all appeals (including any requests for rehearing or other appellate review), as well as all further appeals therefrom (including all petitions for certiorari), have been finally resolved without the Final Approval Order having been materially changed, reversed, vacated, or otherwise overturned in whole or in part, such that no future appeal is possible; or (3) such date as the Parties otherwise agree in writing.

m.   "**Eligible Property**" means any Residential Property that either (1) one or more Municipal Water Property Settlement Class Members demonstrates that he or she owned as of December 16, 2015, and that the property obtained its drinking water from the Village Municipal Water System, in accordance with Section 3(b)(i); or (2) one or more Private Well Property Settlement Class Members demonstrates that he or she owned at the time PFOA in the property's private well was discovered through a water test on or after December 16, 2015, and that is in the Village of Hoosick Falls or Town of Hoosick and obtained its drinking water from a private well in which detectable levels of PFOA were discovered through a water test on or after December 16, 2015, in accordance with Section 3(b)(ii).

n.   "**Enrollment Period**" means the period within which potential Settlement Class Members must submit a Claim Form and any supporting documentation so that the General Administrator may determine whether they are eligible to receive payment or participate in the Medical Monitoring Program as Settlement Class Members.  The Enrollment Period shall commence thirty (30) calendar days after Preliminary Approval and shall conclude one hundred and fifty (150) days from the Notice Date. Claim Forms postmarked on the date the Enrollment Period closes shall be deemed timely submitted so long as received by the General Administrator within fourteen (14) days thereof.

o.   "**Escrow Account**" means the account established and administered by the General Administrator, into which the Total Settlement Payment, including the Preliminary Settlement Fund Payment, will be deposited as set forth in Section 2(b).

p.    "**Escrow Agent**" means the General Administrator.

q.    "**Excluded Persons**" means (i) any Person who has timely and validly excluded himself, herself or itself from the Settlement Classes, in accordance with Section 12 of this Agreement, (ii) any Person who has previously filed a claim against any Settling Defendant alleging a PFOA-related injury or illness, including without limitation a spousal derivative claim, or seeking medical monitoring or property damages, related to the presence of PFOA in the Village Municipal Water System, in private wells in the Village or Town, on or at their property, and/or in their blood, except for the Action, that has not been dismissed and/or in which a request to dismiss pursuant to Fed. R. Civ. P. 41(a)(2) is not pending as of thirty (30) days prior to the Final Approval Hearing, (iii) the Defendants, any entity or division in which the Defendants have a controlling interest, their legal representatives in this Action, and their officers, directors, assigns and successors, (iv) the judge to whom this Action is assigned, any member of the judge's immediate family and the judge's staff, or any other judicial officer or judicial staff member assigned to this case, (v) any Class Counsel, including their partners, members, and shareholders, and any immediate family members of Class Counsel, (vi) any State, including without limitation the United States, or any of its agencies, and (vii) the Village of Hoosick Falls and the Town of Hoosick.

r.    "**Execution Date**" means the date on which the last of Plaintiffs, Class Counsel, Saint-Gobain, Honeywell, and 3M executes this Agreement.

s.    "**Facility**" shall have the same meaning as set forth in 42 U.S.C. § 9601(9) and shall include but not be limited to the sites (and any improvements or modifications thereon) located at 14 McCaffrey Street (DEC Site No. 442046), 1 Liberty Street (DEC Site No. 442048), John Street/3Lyman Street (DEC Site No. 442049), and River Road (DEC Site No. 442008).

t.    "**Final Approval**" means the date that the Court enters the Final Approval Order.

u.    "**Final Approval Hearing**" means the hearing at which the Court will consider whether to give final approval to the Settlement and make such other rulings as are contemplated in the Final Approval Order, including determining the amount of attorneys' fees and costs awarded to Class Counsel, any General Settlement Administration Costs, and the amount of any Service Awards to the Plaintiffs.

v.    "**Final Approval Order**" means the Court's order (a) granting final approval to the Settlement; (b) directing that the Agreement be implemented in accordance with its terms; (c) dismissing the Action as against each of the Settling Defendants with prejudice, and without costs; (d) determining pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that there is no just reason for delay and directing entry of a final judgment as to the Settling Defendants; (e) ruling that each of the Releasing Parties has expressly, intentionally, fully, finally, and forever released, waived, compromised, settled, and discharged all Released Claims; (f) barring each of the Releasing Parties from asserting any of the Released Claims against any of the

Released Parties; (g) barring claims by any Person against the Released Parties for contribution or similar claims (however denominated) for all or a portion of any amounts paid or awarded in the Action by way of settlement, judgment, or otherwise; (h) finding that each of the Settling Defendants has complied with and otherwise discharged its obligations under the Class Action Fairness Act, 28 U.S.C. § 1715(b); (i) awarding any attorneys' fees, costs, and expenses payable in connection with the Settlement or the Action; (j) finding that the Class Notice complied with Federal Rule of Civil Procedure 23 and the U.S. Constitution; (k) establishing and approving the Settlement Fund; and (l) reserving exclusive and continuing jurisdiction over the Settlement Fund and the interpretation, performance, implementation, administration, and enforcement of this Agreement and the Court's orders in the Action.

w.  "**General Administrator**" means KCC, the claims administrator for the Municipal Water Property Settlement Class, Private Well Water Property Settlement Class, and Nuisance Settlement Class, and who shall determine the eligibility of Medical Monitoring Settlement Class Members for the Medical Monitoring Program. The General Administrator will also be responsible for performing duties related to dissemination of Class Notice, administration of the Escrow Account, and administration of the Settlement Fund in accordance with this Agreement. Class Counsel and Settling Defendants may, by agreement, substitute a different organization as General Administrator, subject to approval by the Court if the Court has previously entered the Preliminary Approval Order or Final Approval Order. In the absence of agreement, either Class Counsel or any Settling Defendant may move the Court to substitute a different organization as General Administrator, upon a showing that the responsibilities of the General Administrator have not been adequately executed by the incumbent.

x.  "**General Settlement Administration Costs**" means the costs and fees of the General Administrator to effectuate the Notice Program and to administer the Municipal Water Property Settlement Class, Private Well Water Property Settlement Class, and Nuisance Settlement Class, and to determine the eligibility of Medical Monitoring Settlement Class Members for the Medical Monitoring Program. The General Settlement Administration Costs includes the Preliminary Administrative Expenses.

y.  "**Honeywell**" means Honeywell International Inc.

z.  "**Medical Monitoring Administration Costs**" means the costs and fees of the Medical Monitoring Administrator to administer the Medical Monitoring Program.

aa.  "**Medical Monitoring Administrator**" means the administrator for the Medical Monitoring Program, Edgar C. Gentle III, Esq., whose responsibilities shall include those defined herein and in Appendix A to this Agreement.

bb.  "**Medical Monitoring Disbursement**" means the total sum disbursed from the Medical Monitoring Allocation, as defined below, prior to the Program's termination pursuant to Section 4(c)(ii).

cc.  **"Medical Monitoring Participant"** or **"Participant"** means a Medical Monitoring Settlement Class Member who has demonstrated his or her eligibility, as determined by the General Administrator in accordance with Section 3(b)(iv), and participated in screening offered under the Medical Monitoring Program, including submission of an Informational Survey or receipt of a Consultation or Program Services as set forth in Appendix A.

dd.  "**Medical Monitoring Program**" or "**Program**" means the program described in Appendix A.

ee.  **"Medical Monitoring Remainder"** means the total amount of funds remaining in the Medical Monitoring Allocation when the Program terminates pursuant to Section 4(c)(ii).

ff.  "**Medical Monitoring Settlement Class**" means the putative class consisting of all individuals who, for a period of at least six months between 1996 and 2016, have (a) ingested water at their residence(s), which was supplied by the Village Municipal Water System or from a private well in the Village of Hoosick Falls or Town of Hoosick in which PFOA has been detected, and (b) underwent blood serum tests that detected a PFOA level in their blood above 1.86 µg/L; or any natural child (i) who was born to a female who meets and/or met the above criteria at the time of the child's birth and (ii) whose blood serum was tested after birth and detected a PFOA level above 1.86 µg/L; provided, however, that the "Medical Monitoring Settlement Class" shall not include Excluded Persons.

gg.  "**Medical Monitoring Settlement Class Member**" means any member of the Medical Monitoring Settlement Class who has not timely and validly excluded himself, herself, or itself, in an individual or representative capacity, from the Medical Monitoring Settlement Class, in accordance with Section 12 of this Agreement.

hh.  **"Minor"** means a natural Person who is less than eighteen (18) years old.

ii.  **"Municipal Water Property Settlement Class"** means the putative class consisting of all Persons who are or were owners of Residential Property that was supplied with drinking water from the Village Municipal Water System, and who purchased that property on or before December 16, 2015 and owned that property as of December 16, 2015; provided, however, that the "Municipal Water Property Settlement Class" shall not include Excluded Persons.

jj.  "**Net Settlement Fund**" means the portion of the Settlement Fund available for payment to the Settlement Class Members (in accordance with this Agreement) after the payment of any General Settlement Administration Costs, attorneys' fees, any tax-related expenses, any Court-approved Service Awards to the Plaintiffs, and other costs and expenses payable from the Settlement Fund.

kk.  "**Notice Date**" means the deadline set by the Court by which the General Administrator must send the Class Notice or, if the Court sets no such deadline, thirty

(30) calendar days after Preliminary Approval.

ll.  "**Notice Form**" means the form of notice that shall be posted on the Settlement Website created by the General Administrator and shall be provided by mail to Municipal Water Property Settlement Class Members, Private Well Water Property Settlement Class Members, Nuisance Settlement Class Members, and certain Medical Monitoring Settlement Class Members, as set forth in Section 11 of this Agreement.  The Notice Form is attached hereto as Exhibit B.[1]

mm.  "**Notice Program**" means the methods provided for in Section 11 of this Agreement for giving notice to potential Settlement Class Members.

nn.  "**Nuisance Settlement Class**" means the putative class consisting of all Persons who are or were owners or renters of Residential Property located in the Village of Hoosick Falls or the Town of Hoosick that was supplied with drinking water from a privately owned well in which PFOA was detected, had a point-of-entry treatment (POET) system installed to filter water from that well, and who either (i) owned and occupied that property at the time PFOA in the property's private well was discovered through a water test on or after December 16, 2015; or (ii) rented and occupied the property at the time PFOA in the property's private well was discovered through a water test on or after December 16, 2015; provided, however, that the "Nuisance Settlement Class" shall not include Excluded Persons.

oo.  "**Nuisance Settlement Class Member**" means any member of the Nuisance Settlement Class who has not timely and validly excluded himself, herself, or itself, in an individual or representative capacity, from the Nuisance Settlement Class, in accordance with Section 12 of this Agreement.

pp.  "**Nuisance Settlement Class Member Payment**" means the cash distribution that will be made from the Net Settlement Fund to each Nuisance Settlement Class Member pursuant to the allocation terms of the Settlement.

qq.  "**NYSDEC**" means the New York State Department of Environmental Conservation.

rr.  "**Objection**" means a challenge to the Settlement asserted by a Settlement Class Member pursuant to Section 13 of this Agreement.

ss.   "**Objection Deadline**" means the deadline to submit an Objection set by the Court or, if the Court sets no such deadline, one hundred and five (105) days after the Notice Date.

tt.  "**Opt Out**" means the choice of a Settlement Class Member to exclude himself, herself, or itself (in an individual or representative capacity, as appropriate) from the Settlement in accordance with Section 12 of this Agreement.

---

[1] All Exhibits to this Agreement are appended hereto in Appendix B.

uu. "**Opt Out Deadline**" means the deadline to Opt Out set by the Court or, if the Court sets no such deadline, one hundred and five (105) days after the Notice Date.

vv. "**Party**" means any one of the Plaintiffs or any one of Honeywell, Saint-Gobain, and 3M.

ww. "**Parties**" means all of the Plaintiffs, on behalf of themselves and the Settlement Class Members, and all of Honeywell, Saint-Gobain and 3M.

xx. "**Person**" means a natural person, guardian, corporation, professional corporation, association, limited liability company, limited company, partnership, limited partnership, joint venture, affiliate, joint-stock company, estate, legal representative, trust, proprietorship, any other type of private entity, states, counties, municipalities, any other public or quasi-public entity, or their respective spouses, heirs, predecessors, successors, executors, administrators, representatives, or assigns.

yy. "**PFAS**" means, for purposes of this Agreement only, any fluorinated organic substance that contains one or more carbon atoms on which at least one of the hydrogen substituents has been replaced by a fluorine atom.  For purposes of this Agreement, the definition of "PFAS" is intended to be as broad and inclusive as possible and includes, without limitation, all per- and poly-fluoroalkyl substances and their chemical precursors and degradants, including PFOA and APFO, as well as all products manufactured with or containing such substances, their precursors, or their degradants.

zz. "**PFOA**" means, for purposes of this Agreement only, perfluorooctanoic acid and all its chemical precursors and degradants, including without limitation APFO.  For purposes of this Agreement, the definition of "PFOA" is intended to be as broad and inclusive as possible and includes, without limitation, all PFOA-containing substances and all products manufactured with or containing such substances, their precursors, and their degradants.

aaa. "**Plaintiffs**" means any of Michele Baker, Charles Carr, Angela Corbett, Pamela Forrest, Michael Hickey (individually and as parent and natural guardian of O.H., infant), Kathleen Main-Lingener, Kristin Miller (also known as Kristin Harrington) (as parent and natural guardian of K.M., infant), Jennifer Plouffe, Silvia Potter (individually and as parent and natural guardian of C.P., infant), and Daniel Schuttig.

bbb. "**POET**" means a point-of-entry treatment system.

ccc. "**Preliminary Administrative Expenses**" shall mean any expenses necessary to obtaining Final Approval of the Settlement after Preliminary Approval is granted, including, but not limited to, expenses associated with providing Class Notice, determining class member eligibility,  processing Opt Out requests and Objections, and establishing a qualified settlement fund within the meaning of 26 C.F.R. § 1.468B-1(a) and (c).

9

ddd.  "**Preliminary Approval**" means the date that the Court enters the Preliminary Approval Order.

eee.  "**Preliminary Approval Order**" means the Court's order (i) granting preliminary approval to the Settlement; (ii) approving the Class Notice; (iii) finding that it will be likely to certify the Settlement Classes under Federal Rule of Civil Procedure 23; (iv) appointing Plaintiffs as class representatives; (v) appointing Class Counsel to represent the Settlement Classes; and (vi) setting the Opt Out Deadline, the Objection Deadline, the date and time for the Final Approval Hearing, and other appropriate deadlines; which order will be proposed in substantially the same form as Exhibit C and as agreed upon by the Parties.

fff.  "**Preliminary Settlement Fund**" means the common fund or account established to receive the Preliminary Settlement Fund Payment, and to make payments authorized by this Agreement.  The fund shall become part of the Settlement Fund upon Final Approval of the Settlement, or, in the case of termination in accordance with Section 18, any unused portion, including interest accrued thereon, shall be returned to the Settling Defendants.

ggg.  "**Preliminary Settlement Fund Payment**" means the payment by the Settling Defendants after Preliminary Approval is granted.  The amount of the Preliminary Settlement Fund Payment shall be deducted from the Settling Defendants' Total Settlement Payment.

hhh.  "**Private Well Water Property Settlement Class**" means the putative class consisting of all Persons who are or were owners of Residential Property located in the Village of Hoosick Falls or the Town of Hoosick that was supplied with drinking water from a private well in which PFOA was detected, and who owned that property at the time PFOA in the property's private well was discovered through a water test on or after December 16, 2015; provided, however, that the "Private Well Water Property Settlement Class" shall not include Excluded Persons.

iii.  "**Property Settlement Class**" means, collectively, the Municipal Water Property Settlement Class and the Private Well Water Property Settlement Class.

jjj.  "**Property Settlement Class Member**" means any member of either the Municipal Water Property Settlement Class or the Private Well Water Property Settlement Class who has not timely and validly excluded himself, herself, or itself, in an individual or representative capacity, from the Municipal Water Property Settlement Class or the Private Well Water Property Settlement Class, respectively, in accordance with Section 12 of this Agreement.

kkk.  "**Property Settlement Class Member Payment**" means the cash distribution that will be made from the Net Settlement Fund to each Property Settlement Class Member pursuant to the allocation terms of the Settlement.

lll.  "**Released Claims**" shall have the meaning set forth in Section 6 of this Agreement.

mmm.  "**Released Parties**" means Settling Defendants and their current, former, and future direct and indirect parents, subsidiaries, divisions, affiliates, affiliated business entities, joint ventures, successors, predecessors, including without limitation, Dyneon, LLC, Allied-Signal Inc., AlliedSignal Laminate Systems, Inc., Furon Company, and any entity identified as a predecessor to any Settling Defendant in the Second Amended Complaint and/or for which the Second Amended Complaint alleges that any Settling Defendant has succeeded to liability on the basis of any legal theory; and all of their current, former, and future agents, employees, officers, directors, partners, shareholders, owners, members, promoters, representatives, distributors, trustees, attorneys, insurers, subrogees, and assigns, individually or in their corporate or personal capacity, and anyone acting on their behalf, including in a representative or derivative capacity.

nnn.  "**Releasing Parties**" means the Plaintiffs and all other Settlement Class Members and any Person or entity with the right, capacity, or obligation to assert any claim by, on behalf of, for the benefit of, or derived from any alleged damage or injury to the Settlement Class Members, including without limitation any guardians, next friends, trusts, corporate parents, subsidiaries, divisions, affiliates, affiliated business entities, predecessors, successors, and all of their current or former agents, employees, officers, directors, partners, shareholders, owners, members, promoters, representatives, trustees, executors, heirs, attorneys, insurers, subrogees, and assigns, individually or in their corporate or personal capacity, and anyone acting on their behalf, including in a representative or derivative capacity.  Notwithstanding that the United States government is excluded from the Settlement Classes, with respect to any Settlement Class Member that is a government entity, Releasing Parties includes any Settlement Class Member as to which the government entity has the legal right to release such claims.

ooo.  "**Residential Property**" means private structures and real property used for residential purposes and shall exclude properties utilized solely for commercial, industrial and agricultural purposes.

ppp.  "**Saint-Gobain**" means Saint-Gobain Performance Plastics Corporation.

qqq.  "**Second Amended Complaint**" or "**Complaint**" means the Second Amended Master Consolidated Class Action Complaint filed in the Action (ECF Dkt. 171) on April 9, 2020.

rrr.  "**Service Award**" means any Court-approved payment to Plaintiffs for serving as class representatives, which is in addition to any Property Settlement Class Member Payment, Nuisance Settlement Class Member Payment, or payment due to them under this Agreement as members of the Medical Monitoring Settlement Class.

sss.  "**Settlement**" means the settlement and compromise reflected in this Agreement.

ttt.  "**Settlement Administration Costs**" means all General Settlement Administration Costs and Medical Monitoring Administration Costs.

uuu. "**Settlement Classes**" means all Persons who are members of the Municipal Water Property Settlement Class, Private Well Water Property Settlement Class, Nuisance Settlement Class, and/or Medical Monitoring Settlement Class.

vvv. "**Settlement Class Member**" means a member of one or more of the Settlement Classes who has not timely and validly excluded himself, herself, or itself (in an individual or representative capacity, as appropriate) from the Settlement Classes, in accordance with Section 12 of this Agreement.

www. "**Settlement Fund**" means the common fund or account established pursuant to and approved by an order of the Court to resolve and satisfy the Released Claims as a qualified settlement fund within the meaning of 26 C.F.R. § 1.468B-1(a) and (c), to receive the Total Settlement Payment, including any unused portion of the Preliminary Settlement Fund Payment, and to make payments authorized by this Agreement.

xxx. "**Settlement Website**" means the website that the General Administrator will establish as a means for Settlement Class Members to obtain notice of and information about the Settlement, through and including hyperlinked access to this Agreement, the Notice Form, the Second Amended Complaint, Plaintiffs' motion seeking Preliminary Approval, Preliminary Approval Order, Plaintiffs' motion seeking Final Approval, the Final Approval Order, and the Claim Form and such other documents as the Parties agree to post or that the Court orders posted on the website. These documents shall remain on the Settlement Website for at least six months after Final Approval. The Settlement Website's URL will be www.hoosickfallspfoasettlement.com.

yyy. "**Settling Defendant**" means any one of Saint-Gobain, Honeywell, and 3M.

zzz. "**Settling Defendants**" means Saint-Gobain, Honeywell, and 3M.

aaaa. "**Total Settlement Payment**" means the SIXTY-FIVE MILLION TWO HUNDRED FIFTY THOUSAND DOLLARS ($65,250,000) total cash payment that the Settling Defendants collectively are obligated to make under the terms of this Settlement in accordance with Section 2 of this Agreement.

bbbb. "**Village Municipal Water System**" means the municipal water system for the Village of Hoosick Falls, New York, including the sources of water for the system.

2. **Settlement Payment and Settlement Funds**

a. Settlement Administration.

i. In connection with the motion for Preliminary Approval of the Settlement, Class Counsel has selected and shall propose KCC (whose qualifications are set forth in Exhibit D) to serve as an independent, third-party General Administrator, to administer the Settlement Fund. Settling Defendants do not object to Class Counsel's proposal for the General Administrator.

      ii.   In connection with the motion for Preliminary Approval of the Settlement, Class Counsel has selected and shall propose Edgar C. Gentile, III, Esq. (whose qualifications are set forth in Exhibit E) to serve as an independent, third-party Medical Monitoring Administrator, to administer the Medical Monitoring Program.  Settling Defendants take no position with regard to Class Counsel's proposal for the Medical Monitoring Administrator.

b.   <u>Settlement Consideration</u>.

      i.   Within twenty (20) days of Preliminary Approval, Settling Defendants shall pay TEN MILLION DOLLARS ($10,000,000) in cash (the Preliminary Settlement Fund Payment) into the Escrow Account to create the Preliminary Settlement Fund for the benefit of the Settlement Class Members to pay Preliminary Administrative Expenses. Interest accrued will follow the principal amount and shall be added to the Nuisance Settlement Class Allocation, as set forth below.

      ii.   Within twenty-one (21) days of the Effective Date, Settling Defendants shall pay the remaining FIFTY-FIVE MILLION TWO HUNDRED FIFTY THOUSAND ($55,250,000) in cash (which combined with the Preliminary Settlement Fund Payment shall constitute the Total Settlement Payment) into the Escrow Account to create the Settlement Fund for the benefit of the Settlement Class Members.  The Settlement Fund shall be used to pay Property Settlement Class Member Payments and Nuisance Settlement Class Member Payments; to fund the Medical Monitoring Program, including to pay incentive payments and distributions to Participants in the Medical Monitoring Program as provided in Sections 4(c)(iv) and (v) herein, as well as all Medical Monitoring Administration Costs; to pay any and all attorneys' fees and costs awarded to Class Counsel; to pay any Service Award to Plaintiffs; and to pay all General Settlement Administration Costs.  All funds held by the General Administrator shall remain subject to the jurisdiction of the Court until distributed pursuant to this Agreement.

      iii.   All costs of the Notice Program and of other General Settlement Administration Costs shall be paid from the Settlement Fund.  Prior to the Effective Date, any General Settlement Administration Costs must be approved by Class Counsel before incurred.

c.   <u>No Liability for Distribution of Settlement Funds</u>. Once the Total Settlement Payment is paid to the Escrow Account, Settling Defendants shall have no liability arising from the allocation or distribution of the Settlement Funds to Settlement Class Members, the Medical Monitoring Program, or anyone else.  In no event shall Settling Defendants or their counsel have any liability for the administration of the Settlement Fund or for acts or omissions of the General Administrator or the Medical Monitoring Administrator.  Payment of the Total Settlement Payment shall constitute Settling Defendants' sole monetary obligation under the Settlement.   In no circumstances shall the Settling Defendants be required to pay anything more than the Total Settlement Payment in relation to this Agreement.

d.   <u>Nature of the Settlement Payment and Settlement Funds</u>.

    i.   The Settlement Fund and Preliminary Settlement Fund at all times is intended to be a "qualified settlement fund" within the meaning of United States Treasury Regulation § 1.468B-1, 26 C.F.R. § 1.468B-1 and shall be established pursuant to an order of the Court and will be subject to the continuing jurisdiction of Court for the life of the Settlement Fund.   Neither the Parties nor the General Administrator shall take a position in any filing or before any tax authority that is inconsistent with such treatment.   Each Settling Defendant is a "transferor" within the meaning of United States Treasury Regulation § 1.468B-1(d)(1) to the Settlement Fund.   The General Administrator shall be the "administrator" of the Settlement Fund within the meaning of United States Treasury Regulation § 1.468B-2(k)(3) and, as the administrator, the General Administrator shall: (a) timely make or join in any and all filings or elections necessary to make the Settlement Fund a qualified settlement fund at the earliest possible date (including, if requested by any Settling Defendant, a relation-back election within the meaning of United States Treasury Regulation § 1.468B-1(j)); (b) timely file all necessary or advisable tax returns, reports, or other documentation required to be filed by or with respect to the Settlement Fund; (c) timely pay any taxes (including any estimated taxes, and any interest or penalties) required to be paid by or with respect to the Settlement Fund; and (d) comply with any applicable information reporting or tax withholding requirements imposed by applicable law, in accordance with United States Treasury Regulation § 1.468B-2(l).   Any such taxes, as well as all other costs incurred by the General Administrator in performing the obligations created by this subsection, shall be paid out of the Settlement Fund.   Settling Defendants shall have no responsibility or liability for paying such taxes and no responsibility to file tax returns with respect to the Settlement Fund or to comply with information-reporting or tax-withholding requirements with respect thereto.   Settling Defendants shall provide the General Administrator with the combined statement described in United States Treasury Regulation § 1.468B-3(e)(2)(ii).

    ii.   Settling Defendants make no representations to Settlement Class Members concerning any tax consequences or treatment of any allocation or distribution of funds to Settlement Class Members pursuant to this Agreement.

    iii.   The Total Settlement Payment, including the Preliminary Settlement Fund Payment, constitutes remediation (as defined in 26 U.S.C. § 162(f)) for the claims alleged by Plaintiffs on behalf of themselves and the Settlement Class Members.   No portion of the Total Settlement Payment, including the Preliminary Settlement Fund Payment, constitutes a fine, penalty, punitive damages, disgorgement of profits, or reimbursement for investigation or litigation costs within the meaning of 26 U.S.C. § 162(f), or an amount paid in settlement of any claim for any of the foregoing; and if a determination were made to the contrary, the amounts paid would qualify under the exceptions in Subsections 162(f)(2) and (3).

3.     **Class Enrollment and Eligibility**

    a.     <u>Submission of Claim Form and Review</u>.

        i.     To become eligible to receive Property Settlement Class Member Payments or Nuisance Settlement Class Member Payments and/or to participate in the Medical Monitoring Program pursuant to this Agreement, Claimants must submit a Claim Form and, if necessary, supporting documents, to the General Administrator during the Enrollment Period.  The Claimant shall identify on the Claim Form the Settlement Classes to which he, she, or it, or in their capacity as a representative, purports to belong.  The General Administrator shall review the Claim Form and any supporting documentation and determine whether the Claimant is an eligible Settlement Class Member of the Settlement Classes in which he, she, or it, or in their capacity as a representative, purports to belong.  A Claim Form postmarked after the Enrollment Period concludes will be rejected by the General Administrator as untimely, and the Claimant submitting such Claim Form cannot qualify to receive payment, participate in the Medical Monitoring Program and/or otherwise qualify for Settlement benefits pursuant to this Agreement.

        ii.     The Claim Form shall be in substantially the same form as Exhibit A attached hereto.  The Claim Form shall be available on the Settlement Website.  To become eligible to receive Property Settlement Class Member Payments or Nuisance Settlement Class Member Payments and/or to participate in the Medical Monitoring Program pursuant to this Agreement, Claimants may be required to submit certain qualifying documentary support, as set forth below.  The General Administrator shall be entitled to verify the identity of any Claimant and any information required by the Claim Form.

        iii.     If the General Administrator determines that a Claimant has submitted insufficient proof of eligibility, the General Administrator will provide an opportunity for the Claimant to cure the submission to the extent practicable.

        iv.     Payments to Settlement Class Members who demonstrate eligibility as determined by the General Administrator and this Agreement shall be paid from the Settlement Fund as set forth in Section 4.  The General Administrator shall use reasonable efforts to complete payment then due in accordance with Section 4 within 90 days of the Effective Date.

    b.     <u>Eligibility Determination</u>.

        i.     <u>Municipal Water Property Settlement Class</u>.  To demonstrate eligibility to receive payment as a Municipal Water Property Settlement Class Member, Claimants must complete the Claim Form and provide proof of ownership as of December 16, 2015 of Residential Property that obtained its drinking water from the Village Municipal Water System.  Proof of ownership may include a combination of the following:  1) a copy of the deed to the property; 2) a copy

of a tax bill demonstrating ownership of the property as of December 16, 2015; and/or 3) any other form of proof deemed appropriate by the General Administrator.   If the Claimant does not submit documentary proof of ownership, or does not submit documentary proof sufficient to show ownership as of December 16, 2015, the Claimant's eligibility may also be determined by the General Administrator's reference to public property records.  Proof of water source may be provided by a copy of a Village Municipal Water System water bill (of any date) or any other form of proof deemed appropriate by the General Administrator.  If the General Administrator is able to obtain public records that establish property ownership as of December 16, 2015, and/or water source of the property, the obligation of the Claimant to provide such proof may be waived by the General Administrator.

ii.  <u>Private Well Water Property Settlement Class</u>.  To demonstrate eligibility to receive payment as a Private Well Water Property Settlement Class Member, Claimants must complete the Claim Form and provide proof that they owned Residential Property in the Village of Hoosick Falls or Town of Hoosick that obtained its drinking water from a private well and that they owned that property at the time at  which detectable levels of PFOA were discovered in the property's private well through a water test on or after December 16, 2015.  Proof of ownership may include a combination of the following:  1) a copy of the deed to the property; 2) a copy of a tax bill demonstrating ownership of the property as of the date when PFOA was discovered in the private well through a water test; and/or 3) any other form of proof deemed appropriate by the General Administrator.  If the Claimant does not submit documentary proof of ownership, the Claimant's eligibility may also be determined by the General Administrator's reference to public property records.  Proof of detectable levels of PFOA in the property's private well water may be demonstrated by a copy of test results reporting a detectable level of PFOA in the property's private well water on or after December 16, 2015 from a qualified laboratory or from the State of New York, or any other form of proof deemed appropriate by the General Administrator.  If the General Administrator is able to obtain public records and/or confidential records and data provided by the NYSDEC that establish property ownership as of December 16, 2015 and/or detectable levels of PFOA in the property's private well on or after December 16, 2015, the obligation of the Claimant to provide such proof may be waived by the General Administrator.

iii.  <u>Nuisance Settlement Class</u>.  To demonstrate eligibility to receive payment as a Nuisance Settlement Class Member, Claimants must complete the Claim Form and provide proof of ownership of, or leasehold interest in, Residential Property in the Village of Hoosick Falls or Town of Hoosick 1) that obtained its drinking water from a private well in which detectable levels of PFOA were discovered through a water test on or after December 16, 2015; 2) that had a POET installed to filter water from that private well; and 3) on which the Claimant resided at the time PFOA in the property's private well was discovered through a water test on or after December 16, 2015.  Proof of ownership or leasehold interest

may include a combination of the following:  1) a copy of the deed to the property; 2) a copy of a tax bill demonstrating ownership at the time that detectable levels of PFOA were discovered through a water test on or after December 16, 2015; 3) a copy of the lease for such property; 4) a sworn declaration confirming a leasehold interest at the time that detectable levels of PFOA were discovered through a water test on or after December 16, 2015; and/or 5) any other form of proof deemed appropriate by the General Administrator.  Proof of detectable levels of PFOA in the property's private well water may be demonstrated by a copy of test results reporting a detectable level of PFOA in the property's private well water on or after December 16, 2015 from a qualified laboratory or from the State of New York, or any other form of proof deemed appropriate by the General Administrator.  Proof of the installment of a POET may be demonstrated through documentation from the State of New York showing the installation or testing of such POET or through any form of proof deemed appropriate by the General Administrator.  Proof of residency at the time on or after December 16, 2015 that test results showed a detectable level of PFOA in the property's private well may be provided by a declaration of residency sworn to by the Claimant.  If the General Administrator is able to obtain public records and/or confidential records and data provided by the New York State Department of Health and/or NYSDEC that establish property ownership, residency, detectable levels of PFOA in the property's private well water on or after December 16, 2015, and/or installation of a POET at the property, the obligation(s) of the Claimant to provide such proof may be waived by the General Administrator.

iv.   <u>Medical Monitoring Settlement Class</u>.  To demonstrate eligibility to participate in the Medical Monitoring Program as a Medical Monitoring Settlement Class Member, a Claimant must complete the Claim Form and provide proof that (a) for a period of at least six months between 1996 and 2016, he or she ingested water at his or her Residential Property that was supplied with drinking water by the Village Municipal Water System or a private well in the Village of Hoosick Falls or Town of Hoosick in which PFOA was detected; and (b) had a serum PFOA concentration of more than 1.86 µg/L.  A Claimant may also establish eligibility by demonstrating that he or she is a natural child (i) born to a female who meets and/or met these criteria at the time of his or her birth and (ii) whose blood serum was tested after birth, disclosing a serum PFOA concentration of more than 1.86 µg/L.  Proof of residence at a Residential Property for at least six months between 1996 and 2006 may be provided by a sworn declaration.  Proof of drinking water supplied by the Village Municipal Water System can be demonstrated through a copy of a water bill (of any date) for such residence or such other proof as the General Administrator deems appropriate.  Proof of drinking water supplied by a private well in which PFOA was detected may be demonstrated by a copy of test results reporting a detectable level of PFOA in the property's private well water on or after December 16, 2015 from a qualified laboratory or from the State of New York, or any other form of proof deemed appropriate by the General Administrator.  The General Administrator may also obtain such information by reference to

public records and/or confidential records and data provided by the New York State Department of Health and/or NYSDEC. Proof of a serum PFOA concentration above 1.86 µg/L may be demonstrated by a copy of a serum PFOA test result from a qualified laboratory or from the State of New York.

4. **Calculation of Class Member Payments**

    a. <u>Property Settlement Classes</u>

        i. <u>Property Payment Allocation.</u> The sum of TWENTY MILLION SEVEN HUNDRED THOUSAND DOLLARS ($20,700,000) shall be allocated from the Settlement Fund for distribution to Property Settlement Class Members who demonstrate eligibility in accordance with Section 3(b)(i) or (ii). This shall be referred to as the "Property Payment Allocation."

        ii. <u>Calculation of Settlement Payment for Each Property</u>. The General Administrator shall total the full market values of all Eligible Properties as determined by the 2015 County Assessment Roll for the Town of Hoosick, which will comprise the denominator of a fraction. For calculating the distribution for each Eligible Property, the full market value of that Eligible Property as determined by the 2015 County Assessment Roll for the Town of Hoosick shall comprise the numerator of this fraction, which will then be multiplied by the Property Payment Allocation to yield the individual amount due to the Property Settlement Class Member(s) who owned the Eligible Property as of December 15, 2016. The amount payable for each Eligible Property shall be based upon this fraction regardless of the number of owners of such property. If there are multiple Property Settlement Class Members who owned an individual Eligible Property as of December 15, 2016 and demonstrate eligibility in accordance with Section 3(b)(i) or (ii), the General Administrator shall pay this amount in equal shares to each such Property Settlement Class Member.

    b. <u>Nuisance Settlement Class</u>

        i. <u>Nuisance Payment Allocation.</u> The sum of SEVEN MILLION SEVEN HUNDRED AND SIXTY-ONE THOUSAND SIX HUNDRED AND EIGHTY-THREE DOLLARS ($7,761,683) shall be allocated from the Settlement Fund for distribution to Nuisance Settlement Class Members who demonstrate eligibility in accordance with Section 3(b)(iii). This shall be referred to as the "Nuisance Payment Allocation." All interest earned on the Preliminary Settlement Fund Payment deposited in the Escrow Account shall after Final Approval also be allocated to the Nuisance Settlement Class and be added to this allocation.

        ii. <u>Calculation of Nuisance Damage Settlement Class Member Payment</u>. The Nuisance Payment Allocation shall be divided evenly by the General Administrator among all Nuisance Damage Settlement Class Members who

18

demonstrate eligibility in accordance with Section 3(b)(iii), and an equal share shall be paid to each Nuisance Settlement Class Member who demonstrates eligibility in accordance with Section 3(b)(iii).

c.   Medical Monitoring Settlement Class

   i.   Medical Monitoring Allocation. The sum of TWENTY-TWO MILLION EIGHT HUNDRED THOUSAND DOLLARS ($22,800,000) shall be allocated to the Medical Monitoring Program from the Settlement Fund. This shall be referred to as the "Medical Monitoring Allocation." The Medical Monitoring Administrator shall establish an account into which the Medical Monitoring Allocation shall be deposited by the General Administrator, and the Medical Monitoring Allocation shall thereafter be used to pay all expenses related to the Medical Monitoring Program as further delineated in Appendix A, including payments to Participating and Non-Participating Physicians, laboratories, and all Medical Monitoring Administration Costs.

   ii.   Term. The Medical Monitoring Program shall begin on the Effective Date and shall terminate at the earlier of (a) when the Medical Monitoring Allocation has been expended; or (b) when all bills submitted to the Medical Monitoring Administrator for services under the Medical Monitoring Program rendered on or before the ten (10) year anniversary of the Effective Date are paid.

   iii.   Medical Monitoring Program Provisions. The testing and services protocols under the Medical Monitoring Program, their frequency, and other details concerning the operation of the Medical Monitoring Program are set forth in Appendix A, attached hereto and incorporated herein.

   iv.   Incentive Payments. A maximum incentive payment of ONE HUNDRED DOLLARS ($100) shall be paid to any Medical Monitoring Settlement Class Member who completes both the Initial Informational Survey and the Initial Screening Consultation as described in Appendix A within twelve (12) months of the Effective Date. No other incentive payments shall be made at any time for participation in the Medical Monitoring Program.

   v.   Distribution of Remainder of Funds at Termination of the Medical Monitoring Program. The amount, if any, remaining of the Medical Monitoring Allocation when the Program terminates pursuant to Section 4(c)(ii) shall be distributed as follows:

      1.   An amount equal to the Medical Monitoring Disbursement or to the Medical Monitoring Remainder, whichever is less, shall be distributed on a pro-rata basis to all Participants in the Medical Monitoring Program based on their level of participation during its term, as determined by the Medical Monitoring Administrator. For example, Participants who have participated in all services available to them under the Medical Monitoring Program as determined by the Medical Monitoring Administrator shall receive one pro-

19

rata share, while Participants who have participated in 50% of services available to them under the Medical Monitoring Program shall receive one-half of a pro-rata share.

2. In the event the Medical Monitoring Remainder is greater than the Medical Monitoring Disbursement, an amount equal to the difference between the Medical Monitoring Remainder and the Medical Monitoring Disbursement will be paid as a contribution to a not-for-profit organization that focuses on health and well-being of residents in or around the Town of Hoosick that serves the Town of Hoosick and/or Village of Hoosick Falls community. The Parties will work together to identify the appropriate recipient organization within 120 days of the Effective Date and thereafter seek Court approval of their selection. If the recipient organization identified by the Parties ceases to exist at any time after the Effective Date but before termination of the Medical Monitoring Program pursuant to Section 4(c)(ii), the Parties shall meet and confer in good faith to propose a reasonable substitute recipient organization and shall seek Court approval of their proposal.

3. Nothing in this Agreement or in Appendix A shall be construed as Settling Defendants' agreement with or endorsement of any oral or written statements made by or the selection of the General Administrator, the Medical Monitoring Administrator, an Overseeing Program Physician or a Program Physician (as those terms are defined in Appendix A), or the Medical Monitoring Program itself, including as to any purported health or environmental risks associated with PFOA (or PFAS).

d.  Excess Settlement Funds.  To the extent that any amounts remain in the Settlement Fund after all payments have been made pursuant to Section 4(a)-(c) herein, and following disbursement of Court-approved attorneys' fees and costs, General Settlement Administration Costs, any tax-related expenses, and any Court-approved Service Awards, those remaining amounts shall be added to the Medical Monitoring Allocation.

5.  **Attorneys' Fees, Costs, and Expenses**

a.  Class Counsels' Fees and Costs.  Class Counsels' reasonable attorneys' fees and costs, as determined and approved by the Court, shall be paid from the Settlement Fund no later than twenty-eight (28) days after the Effective Date.  Class Counsel shall apply for an award of attorneys' fees up to 19% of the Total Settlement Payment, or TWELVE MILLION THREE HUNDRED NINETY-SEVEN THOUSAND FIVE HUNDRED DOLLARS ($12,397,500), and reimbursement of reasonable litigation costs of ONE MILLION FORTY THOUSAND EIGHT HUNDRED AND SEVENTEEN DOLLARS ($1,040,817), to be approved by the Court.  Settling Defendants agree not to oppose an application for attorneys' fees and costs in those amounts.  Settling Defendants shall not be responsible for any attorneys' fees,

expenses, or costs in this Action beyond the amounts allocated for these purposes in this paragraph.

b.   <u>Service Awards</u>. Subject to Court approval, each Plaintiff shall be entitled to receive a Service Award of up to $25,000 each for his or her role as a class representative. The Service Awards shall not exceed $250,000 in the aggregate and shall be paid from the Settlement Fund no later than twenty-eight (28) days from the Effective Date.

c.   <u>Administrative Fees and Costs</u>.  The General Settlement Administration Costs shall be paid from the Preliminary Settlement Fund and, after Final Approval, the Settlement Fund within ten (10) days after invoicing to and written approval by Class Counsel.  Total General Settlement Administration Costs, including Preliminary Administrative Expenses, shall not exceed $300,000, except that, in the event of exceptional circumstances, an additional amount not to exceed $200,000 may be paid from the Preliminary Settlement Fund for General Settlement Administration Costs, including Preliminary Administrative Expenses.

d.   <u>Total Settlement Payment</u>.  When combined with the amounts set forth in Sections 4(a)(i), (b)(i), and (c)(i), the sum of amounts set forth in Sections 5(a)-(c) shall not exceed the Total Settlement Payment amount set forth in Section 1(aaaa).

6.   **Dismissal, Release of Claims, and Related Provisions**

a.   <u>Dismissal</u>.  In the motion for final approval of the Settlement, Plaintiffs, on behalf of themselves and the Settlement Classes, shall request that the Final Approval Order dismiss the Action with prejudice as to the Settling Defendants and enter a final judgment as to them.

b.   <u>Release</u>. Upon the Effective Date, the Releasing Parties shall have expressly, intentionally, voluntarily, fully, finally, irrevocably, and forever released, relinquished, waived, compromised, settled, and discharged the Released Parties from each and every past, present, and future claim and cause of action, including without limitation causes of action and/or relief created or enacted in the future—whether known or unknown, whether direct or indirect, individual or class, in constitutional, federal, state, local, statutory, civil, or common law or in equity, or based on any other law, rule, regulation, ordinance, directive, contract, or the law of any foreign jurisdiction, whether fixed or contingent, known or unknown, liquidated or unliquidated, suspected or unsuspected, asserted or unasserted, matured or unmatured, or for compensatory damages, consequential damages, incidental damages, statutory damages, punitive, special, multiple, treble, or exemplary damages, nominal damages, disgorgement, restitution, indemnity, contribution, penalties, injunctive relief, declaratory relief, attorneys' fees, court costs, or expenses—that were or could have been asserted in the Action or any other forum, arising out of or related to, either directly or indirectly or in whole or in part: (i) the subject matter of any allegations contained in the Second Amended Complaint, any allegations otherwise asserted in the Action, or the subject matter of any discovery

21

obtained in the Action; (ii) the alleged presence of PFAS (including PFOA) in drinking water or the environment (including but not limited to in air, groundwater, surface water, municipal water, private well water, or soil) within the Village of Hoosick Falls or the Town of Hoosick; (iii) the sale, purchase, use, handling, transportation, release, discharge, migration, emission, spillage, or disposal of PFAS (including PFOA) to, at, or from a Facility in or near the Village of Hoosick Falls or the Town of Hoosick, including any such PFAS (including PFOA) present as a result of disposal at or discharge to, directly or indirectly, any landfill, sewage system, water treatment facility, or any other location in and around the Village of Hoosick Falls or Town of Hoosick, and/or resulting in any alleged exposure of any Settlement Class Member to PFAS (including PFOA) through drinking water, inhalation, dermal contact, or otherwise; (iv) for any type of relief with respect to the acquisition, installation, maintenance, operation, or presence of, including the cost or purported inconvenience or loss of enjoyment of, property associated with whole-house filters, point-of-entry (POET) filters, point-of-use filters, municipal water, private well water, bottled water, alternative water supplies, or remediation; (v) for property damage or property-value diminution, including without limitation stigma, purportedly attributable to the alleged presence of PFAS (including PFOA) in the Village Municipal Water System or any private well, or in the air, groundwater, surface water, municipal water, private well water, or soil in or around the Village of Hoosick Falls or the Town of Hoosick; and/or (vi) based on PFAS (including PFOA) in the blood or tissue of any Settlement Class Member (the "**Released Claims**"); provided, however, that the "Released Claims" do not include any individual claims of the Releasing Parties (a) for any damages (including for screenings, tests, examinations, and/or diagnostic procedures) related to past, present, or future manifested bodily injuries that have resulted in a medically diagnosed condition, or (b) to enforce the terms of this Agreement or the Final Approval Order.  For purposes of this Agreement, "manifested bodily injuries that have resulted in a medically diagnosed condition" do not include the detection or accumulation of PFAS (including PFOA) in blood or other bodily tissue.

c.   N.Y. Gen. Oblig. § 15-108:  The releases set forth herein are given pursuant to New York law and shall be construed under New York law, including N.Y. General Obligations Law § 15-108, which bars claims for contribution by joint tortfeasors as provided for in article fourteen of the New York Civil Practice Law and Rules, without regard to New York's conflict or choice of law principles.  This Agreement is expressly intended to absolve the Released Parties from any claims for contribution (however denominated) by any other Defendant(s), any other Person that might be subsequently added or joined as a party in the Action, or any other Person sued or deemed responsible for any claim or damages arising out of or related to the Released Claims, in the manner and to the fullest extent permitted under the law of New York, including N.Y. General Obligations Law § 15-108, or of any other jurisdiction that might be construed or deemed to apply for claims of contribution (however denominated) against any Released Party.  Notwithstanding the foregoing, should any court determine that any Defendant or any other Person subsequently added or joined as a party in the Action is or was legally entitled to any kind of contribution from the Settling Defendants arising out of or related to Released Claims, the

22

Releasing Parties agree that any money judgment subsequently obtained by the Releasing Parties against any Defendant or any other Person subsequently added or joined as a party in the Action shall be reduced to an amount such that, upon paying the entire amount, the Defendant or any other Person subsequently added or joined as a party in the Action would have no claim for contribution (however denominated) against the Released Parties.

d.   <u>Minor Plaintiffs</u>: Each of the Plaintiffs who filed this Action as parent and natural guardian of a Minor will apply to the Court individually or jointly for approval of the settlement on behalf of the Minor class representatives and all absent Minor Settlement Class Members.  It is contemplated by the Parties that the Preliminary Approval Order will provide authority under Local Rules of Civil Practice, Rule 17.1 and N.Y. C.P.L.R. § 1201 for parents and guardians of all named Minor Plaintiffs and absent Settlement Class Members to sign Claim Forms and releases on behalf of their Minor children and wards.  It is further contemplated by the Parties that an Order from the Court finally approving the Settlement shall effectuate a settlement under Local Rule 17.1 and N.Y. C.P.L.R. § 1207 for all named Minor Plaintiffs and absent Minor Settlement Class Members.

e.   <u>Incompetent Absent Class Members</u>: It is contemplated by the Parties that legal representatives of incompetent absent Settlement Class Members shall have authority to sign Claim Forms and releases on behalf of the absent Settlement Class Members they represent.  Where a legal representative of an incompetent absent Settlement Class Member submits a Claim Form on that Settlement Class Member's behalf, that legal representative shall attest to their authority to act for the incompetent absent Settlement Class Member.  It is contemplated by the Parties that the Preliminary Approval Order will provide authority under Local Rule 17.1 and N.Y. C.P.L.R. § 1201 for such legal representatives to sign the Claim Forms and releases on behalf of the incompetent Settlement Class Members they represent.  It is contemplated by the Parties that an Order from the Court finally approving the Settlement shall effectuate a settlement under Local Rule 17.1 and N.Y. C.P.L.R. § 1207 for all absent incompetent Settlement Class Members.

f.   <u>Deceased Absent Class Members</u>: It is contemplated by the Parties that legal representatives of deceased absent Settlement Class Members shall have authority to sign Claim Forms and releases on behalf of the absent Settlement Class Members they represent.  Where a legal representative of a deceased absent Settlement Class Member submits a Claim Form on that Settlement Class Member's behalf, that legal representative shall attest to their authority to act for the deceased absent Settlement Class Member.

g.   <u>No Waiver of Defenses</u>:  The Settling Defendants do not waive or forfeit any claims, defenses or arguments that they could assert, including as to any claims or causes of action that are outside the definition of "Released Claims."

h.   <u>Exclusive Remedy</u>:  The relief provided for in this Agreement shall be the sole and exclusive remedy for all Releasing Parties with respect to any Released Claims, and

the Released Parties shall not be subject to liability or expense of any kind with respect to any Released Claims other than as set forth in this Agreement.

i.   <u>Covenant Not To Sue</u>:  Each of the Releasing Parties shall forever refrain from instituting, maintaining, prosecuting, or continuing any suit, action, arbitration, or proceeding against any of the Released Parties with respect to the Released Claims.

j.   <u>Waiver of Statutory Rights</u>: To the extent the provisions apply, the Releasing Parties expressly, knowingly, and voluntarily waive the provisions of Section 1542 of the California Civil Code, which provides as follows:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

To the extent the provisions apply, the Releasing Parties likewise expressly, knowingly, and voluntarily waive the provisions of Section 20-7-11 of the South Dakota Codified Laws, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

To the extent the laws apply, the Releasing Parties expressly waive and relinquish all rights and benefits that they may have under, or that may be conferred upon them by, Section 1542 of the California Civil Code, Section 20-7-11 of the South Dakota Codified Laws, and all similar laws of other States, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Released Claims.  In connection with such waiver and relinquishment, the Releasing Parties acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe to exist with respect to the Released Claims, but that it is their intention to accept and assume that risk and fully, finally, and forever release, waive, compromise, settle, and discharge all of the Released Claims against Released Persons.  The release thus shall remain in effect notwithstanding the discovery or existence of any additional or different claims or facts.

k.   <u>Full and Complete Defense</u>: To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, arbitration, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Settlement Agreement, or that asserts any Released Claims against any of the Released Parties.

7.   **No Admission of Wrongdoing or Liability**

a.   The Settling Defendants do not admit or concede any liability, fault, omission, or wrongdoing, acknowledge any validity to the allegations or claims asserted in the

Action, acknowledge that certification of any litigation class is appropriate as to any claim, admit, concede or acknowledge that the Medical Monitoring Program is medically necessary, or acknowledge any weakness in the defenses asserted in the Action, and nothing in this Agreement, the Preliminary Approval Order, or the Final Approval Order shall be interpreted to suggest anything to contrary.

b.  Nothing in this Agreement, any negotiations, statements, communications, proceedings, filings, or orders relating thereto, or the fact that the Parties entered the Agreement and settled the Action shall be construed, deemed, or offered as an admission or concession by any of the Parties, Settlement Class Members, or Settling Defendants or as evidentiary, impeachment, or other material available for use or subject to discovery in any suit, action, or proceeding (including this Action) before any civil or criminal court, administrative agency, arbitral body, or other tribunal, except (i) as required or permitted to comply with or enforce the terms of this Agreement, the Preliminary Approval Order, or the Final Approval Order, or (ii) in connection with a defense based on *res judicata*, claim preclusion, collateral estoppel, issue preclusion, release, or other similar theory asserted by any of the Released Parties.  The limitations described in this paragraph shall apply whether or not the Court enters the Preliminary Approval Order or the Final Approval Order, or any such order is affirmed, reversed, vacated, or overturned by an appellate court.

8.  **Preliminary Approval**

a.  Upon execution of this Agreement by all Parties, Class Counsel shall promptly move the Court for a Preliminary Approval Order.  The proposed Preliminary Approval Order shall be attached to the motion, or otherwise filed with the Court, and shall be in a form attached hereto as Exhibit C.

b.  The motion for Preliminary Approval shall, among other things, request that the Court: (1) preliminarily approve the terms of the Settlement as being within the range of fair, adequate, and reasonable; (2) find that it will be likely to certify the Municipal Water Property Settlement Class, the Private Well Water Property Settlement Class, the Nuisance Settlement Class, and the Medical Monitoring Settlement Class pursuant to Federal Rule of Civil Procedure 23, for settlement purposes only, appoint the Plaintiffs as representatives of the appropriate Settlement Classes, and appoint Co-Lead Interim Settlement Class Counsel as counsel for the Settlement Classes; (3) appoint the General Administrator; (4) approve the Notice Program set forth herein and approve the form and content of the Class Notice; (5) approve the procedures set forth herein in Sections 12 and 13 for Settlement Class Members to Opt Out or object to the Settlement; (6) provide the requisite authority for parents and guardians of all named Minor Plaintiffs and absent Minor Settlement Class Members, and for legal representatives of absent incompetent Settlement Class Members, to sign Claim Forms and releases on behalf of the Settlement Class Members they represent; (7) stay further proceedings against Settling Defendants pending Final Approval of the Settlement; and (8) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, Class Counsel, and counsel for Settling Defendants, at which the Court will conduct an inquiry into the fairness of the Settlement, determine

25

whether it was made in good faith, and determine whether to approve the Settlement and Class Counsels' application for attorneys' fees and costs and for a Service Award to Plaintiffs.

c.  In Plaintiffs' motion seeking Preliminary Approval, Plaintiffs shall request that the Court approve the Notice Form attached at Exhibit B and approve the Notice Program. The Court will ultimately determine and approve the content and form of the Notice Form to be distributed to the Settlement Class Members.

d.  The Parties further agree that in Plaintiffs' motion seeking Preliminary Approval, Plaintiffs will request that the Court enter the following schedule governing the Settlement: (1) deadline for commencing Class Notice (the Notice Date): thirty (30) days from Preliminary Approval; (2) Opt Out Deadline: one hundred and five (105) days from the Notice Date; (3) Objection Deadline: one hundred and five (105) days from the Notice Date; (4) deadline for filing motions for approval of Plaintiffs' Service Awards and attorneys' fees and costs awards: one-hundred fifty (150) days from Preliminary Approval; (5) deadline for filing motion for final approval: one-hundred fifty (150) days from Preliminary Approval; (6) Final Approval Hearing: one-hundred eighty (180) days from Preliminary Approval, or as soon thereafter as is mutually convenient.

9.  **Class Certification for Settlement Purposes**

a.  In the motion for preliminary approval of the Settlement, Plaintiffs shall propose certification of the Settlement Classes, solely for purposes of the Settlement, pursuant to Federal Rules of Civil Procedure 23(b)(3) and 23(e), with Plaintiffs as the proposed class representatives, which the Settling Defendants will not oppose.

b.  If this Agreement is terminated or the Court (or an appellate court) declines to approve the Settlement as proposed by the Plaintiffs, the Settling Defendants shall retain all of the rights to oppose class certification (and assert all other arguments and defenses) that they had prior to execution of this Agreement.

c.  Nothing in this Agreement, the Settlement, or the orders, filings, proceedings, or negotiations related to this Agreement or the Settlement shall prejudice the Settling Defendants' rights to oppose class certification, for purposes of litigation, in the Action or any other lawsuit.  This section does not prevent this Agreement and the related orders, filings and proceedings from being used as evidence or argument concerning whether the Action or any other lawsuit may be certified for solely settlement purposes.

10.  **CAFA Notice**

a.  Within ten (10) days after Plaintiffs file the motion for preliminary approval of the Settlement, each Settling Defendant shall provide CAFA Notice to the appropriate officials of the United States, the State of New York, the other forty-nine states, and the territories.  Settling Defendants shall bear the costs of such notice.

b.   When each Settling Defendant provides CAFA Notice in accordance with Section 10(a) of this Agreement, it shall provide copies of the CAFA Notice to Plaintiffs.

11.   **Class Notice**

a.   <u>Provision of Information to the General Administrator</u>. The proposed General Administrator shall execute a Written Assurance of compliance with the Amended Stipulated Protective Order of Confidentiality in this Action (ECF Dkt. 131) on or before the filing of Plaintiffs' motion seeking Preliminary Approval. Within twenty (20) days of the filing of Plaintiffs' motion seeking Preliminary Approval, the Settling Defendants will provide the General Administrator with (i) confidential private well testing data provided by the NYSDEC and/or New York State Department of Health, including property addresses, from testing performed on properties within the Town of Hoosick and Village of Hoosick Falls since December 2015, and (ii) confidential records provided by the NYSDEC and/or New York State Department of Health of all properties within the Town of Hoosick and Village of Hoosick Falls at which POETs have been installed since December 2015. The General Administrator shall use this information solely for the purposes of providing Class Notice and administering the Settlement, including making eligibility determinations, as described in Section 3.

b.   Within thirty (30) days of Preliminary Approval, or by the time specified by the Court, the General Administrator shall commence the Notice Program, including by mailing the Notice Form in such form as is approved by the Court.  The General Administrator shall transmit the Notice Form via direct mail to all owners of Residential Properties that obtain drinking water from the Village Municipal Water System and owners and renters of Residential Properties in the Town of Hoosick or Village of Hoosick Falls that obtain drinking water from private wells in which PFOA was detected on or after December 2015.

c.   Commencing on the Notice Date, the General Administrator shall implement the Notice Program.  As set forth in more detail in Exhibit F, the Notice Program shall consist of direct mail; internet, national and social media impressions; a national press release; and a community outreach effort.  As set forth in more detail in Exhibit F, the Notice Program will feature a media campaign with the following features:

   i.   A digital media plan will achieve approximately 54.2 million impressions, targeting adults eighteen and over by geo-targeting New York State, Albany-Troy-Schenectady, and Hoosick Falls on desktop and mobile devices via various websites and Facebook.  A supplemental digital media plan will target adults eighteen and over nationwide via various websites and adults eighteen and over on Facebook and Instagram who have Bennington College listed as part of their education, and will use IP targeting to reach devices mapped to approximately 1700 postal addresses in Hoosick Falls.

       ii.   A newspaper campaign will feature one quarter-page ad to be published in the Main News section of the *Bennington Banner* (on any one Tuesday through Saturday) and *Eastwick Press* (on any one Friday).

       iii.   A nationwide press release.

       iv.   A community outreach plan will work with prominent news organizations, agencies, and community organizations to disseminate notice of the Settlement to their audiences and networks.

d.     The General Administrator shall maintain a Settlement Website containing the Second Amended Complaint, this Agreement, the Notice Form, Plaintiffs' motion seeking Preliminary Approval, the Preliminary Approval Order, Plaintiffs' motion seeking Final Approval, the Final Approval Order, the Claim Form, and such other documents as the Parties agree to post or that the Court orders posted. These documents shall remain on the Settlement Website for at least six months after Final Approval. The Settlement Website's URL will be www.hoosickfallspfoasettlement.com.

e.     The General Administrator shall send the Notice Form and Claim Form by mail to any potential Settlement Class Member who requests a copy. It will be conclusively presumed that the intended recipients received the Notice Form and Claim Form if the Notice Form and/or Claim Forms have not been returned to the General Administrator as undeliverable within fifteen (15) calendar days of mailing.

f.     The Parties may by mutual written consent make non-substantive changes to the Notice Form without Court approval after the Court's approval of the Notice Form.

g.     A Spanish-language translation of the Notice Form agreed upon by the Parties shall be available on the Settlement Website and will be provided to Settlement Class Members who request it from the General Administrator.

## 12. Opt Outs

a.     A Settlement Class Member may Opt Out by submitting to the General Administrator a timely and valid request that complies with the Opt Out procedure described in the Class Notice. To be timely and valid, an Opt Out request must have a verified submission date on or before the Opt Out Deadline and must include (i) the full name, current address, and telephone number of the requestor; (ii) a statement of the facts that make the requestor a Settlement Class Member; (iii) a statement requesting exclusion from the Settlement Classes; and (iv) the signature of the requestor.

b.     Any Settlement Class Member that submits a timely and valid Opt Out request shall not (i) be bound by any orders or judgments entered in the Action to implement and effectuate the Settlement and this Agreement; (ii) be entitled to any of the relief or other benefits provided under this Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to submit an Objection.

c.   Any Settlement Class Member that does not submit a timely and valid Opt Out request submits to the jurisdiction of the Court and shall be bound by the terms of this Agreement and by all orders and judgments in the Action to implement and effectuate the Settlement and this Agreement.

d.   If a Property Settlement Class Member submits a timely and valid Opt Out request, and that Settlement Class Member owns a Residential Property jointly with one or more other Property Settlement Class Members, all Settlement Class Members owning such property shall be deemed to have submitted a timely and valid Opt Out request.

e.   No "mass" or "class" Opt Out requests shall be valid, and no Settlement Class Member may submit an Opt Out request on behalf of any other Settlement Class Member; provided, however, that a Settlement Class Member who is the legal guardian of a Minor Settlement Class Member or the legal representative of an incompetent or deceased Settlement Class Member may submit an Opt Out request on behalf of that Settlement Class Member.

f.   Any Settlement Class Member that submits an Opt Out request may revoke the request by submitting to the General Administrator a statement of revocation with a verified submission date no later than forty (40) days before the Final Approval Hearing; provided, however, that Class Counsel shall have discretion to extend this deadline on a case-by-case basis.

g.   As soon as practicable and no later than thirty (35) days before the Final Approval Hearing, the General Administrator shall furnish the Parties with a final list of all timely and valid Opt Out requests that have been submitted and not revoked.

13.   **Objections**

a.   A Settlement Class Member may make an Objection by serving on the Parties a timely and valid statement of Objection that complies with the Objection procedure described in the Class Notice.  Class Counsel shall file all such Objections with the Court at least twenty (20) days prior to the Final Approval Hearing.

b.   To be timely and valid, a statement of Objection must be postmarked or received on or before the Objection Deadline and must include (i) the full name, current address, and telephone number of the objector; (ii) a statement of the facts that make the objector a Settlement Class Member; (iii) a statement describing all of the objector's challenges to this Agreement or the Settlement and the reasons for those challenges; (iv) all of the papers and evidence the objector intends to submit in support of those challenges; (v) a statement of whether the objector intends to appear at the Final Approval Hearing; (vi) the signature of the objector; (vii) a statement that the objector is willing to be deposed, upon request, on a mutually acceptable date at least ten (10) days before the Final Approval Hearing; (viii) the caption of each case in which the objector or counsel representing the objector have objected to a class action settlement within the preceding five years and a copy of all orders related to or ruling upon those

objections; and (ix) all agreements that relate to the Objection, whether written or verbal, between or among the objector, counsel for the objector, and/or any other Person.

c.  No "mass" or "class" Objections shall be valid, and no Settlement Class Member may submit a statement of Objection on behalf of any other Settlement Class Member; provided, however, that a Settlement Class Member who is the legal guardian of a Minor Settlement Class Member or the legal representative of an incompetent or deceased Settlement Class Member may submit a statement of Objection on behalf of that Settlement Class Member.

d.  Unless the Court orders otherwise, only those Settlement Class Members whose statements of Objection express an intention to appear at the Final Approval Hearing shall have the right to present their Objections orally at the Final Approval Hearing.

e.  Plaintiffs and the Settling Defendants shall have the right, but not the obligation, to respond to any timely-filed objection no later than seven (7) days prior to the Final Approval Hearing.  Any Party who wishes to respond shall file a copy of the written response with the Court, and shall serve a copy, by hand or overnight delivery, to the objecting Settlement Class Member (or his or her counsel) and by email to counsel for Plaintiffs and/or the Settling Defendants.

f.  A Settlement Class Member that does not submit a timely and valid Objection shall have waived, and shall be foreclosed from making, any challenge to this Agreement or the Settlement in the Action or any other proceeding.

14.  **Final Approval and Entry of Final Judgment**

a.  The Parties shall jointly seek a Final Approval Order and entry of final judgment from the Court that:

  i.  Approves the Settlement Agreement in its entirety pursuant to Federal Rule of Civil Procedure 23(e) as fair, reasonable, and adequate;

  ii.  Certifies the Settlement Classes, for settlement purposes only;

  iii.  Confirms appointment of the General Administrator and Medical Monitoring Administrator;

  iv.  Confirms the appointment of Class Counsel;

  v.  Finds that the Class Notice has satisfied the requirements set forth in Federal Rule of Civil Procedure 23(c)(2)(B);

  vi.  Settles the claims of all named Minor Plaintiffs, absent Minor Settlement Class Members, and absent incompetent Settlement Class Members;

    vii.    Bars and enjoins each Settlement Class Member from commencing, asserting, and/or prosecuting any and all Released Claims against any Released Party;

    viii.    Dismisses with prejudice all claims in the Second Amended Complaint asserted against Settling Defendants, without further costs, including claims for interest, penalties, costs, and attorneys' fees;

    ix.    Enters final judgment as to the Settling Defendants and the claims against them in the Action pursuant to Federal Rule of Civil Procedure 54(b);

    x.    Confirms that each of the Settling Defendants has complied with and otherwise discharged its obligations under the Class Action Fairness Act, 28 U.S.C. § 1715(b);

    xi.    Confirms that it retains continuing jurisdiction over the Medical Monitoring Program and the Settlement Fund; and

    xii.    Expressly incorporates the terms of this Agreement and provides that the Court retains continuing and exclusive jurisdiction over the Parties, the Settlement Class Members, and this Agreement, to interpret, implement, administer and enforce the Agreement in accordance with its terms.

b.    The motion for Final Approval of this Settlement shall include a request that the Court enter the Final Approval Order and, if the Court grants Final Approval of the Settlement and incorporates the Agreement into the final judgment, that the Court shall dismiss Settling Defendants from this Action with prejudice, and enter final judgment as to them, subject to the Court's continuing jurisdiction to enforce the Agreement.

c.    In the event the Court certifies one or more Settlement Classes in connection with this Agreement and grants Final Approval of the Settlement, Settling Defendants will not oppose a motion brought by Class Counsel in this Action seeking to certify a litigation or settlement class against E.I. du Pont de Nemours & Co., where consistent with Section 20.

15.    **Representations and Warranties**

a.  Plaintiffs represent and warrant to the Settling Defendants as follows:

    i.    Each of the Plaintiffs is a Settlement Class Member.

    ii.    Each of the Plaintiffs has received legal advice from Class Counsel regarding the advisability of entering into this Agreement and the legal consequences of this Agreement.

    iii.    No portion of any of the Released Claims possessed by any of the Plaintiffs and no portion of any relief under this Agreement to which any of the Plaintiffs may be entitled has been assigned, transferred, or conveyed by or for any of the

Plaintiffs to any other Person, except pursuant to any contingency fee agreement with Class Counsel.

iv.   None of the Plaintiffs is relying on any statement, representation, omission, inducement, or promise by any of the Settling Defendants, their agents, or their representatives, except those expressly stated in this Agreement.

v.   Each of the Plaintiffs, through Class Counsel, has investigated the law and facts pertaining to the Released Claims and the Settlement.

vi.   Each of the Plaintiffs, or for named Minor Plaintiffs their legal guardians, has carefully read, and knows and understands, the full contents of this Agreement and is voluntarily entering into this Agreement after having consulted with Class Counsel or other attorneys.

vii.   Each of the Plaintiffs, or for named Minor Plaintiffs their legal guardians, has all necessary competence and authority to enter into this Agreement on his or her own behalf or on behalf of any named Minor Plaintiffs, and on behalf of the respective Settlement Classes they represent.  Each of the Plaintiffs who filed this Action as parent and natural guardian of a Minor has complied, and for purposes of this Settlement will comply, with all applicable state and federal laws pertaining to Minors and legal representative and guardianship laws, and has the authority and capacity to bind the named Minor Plaintiff to this Agreement.

viii.   None of the Plaintiffs will Opt Out or file an Objection.

b.   Class Counsel represents and warrants to the Settling Defendants as follows:

i.   Class Counsel believes the Settlement is fair, reasonable, adequate, and beneficial to each Settlement Class Member and that participation in the Settlement would be in the best interests of each Settlement Class Member.

ii.   Class Counsel does not currently represent any client or clients that plan to, or are considering whether to, Opt Out, file an Objection, or otherwise challenge the Settlement or this Agreement.

iii.   Class Counsel recognizes the risk that they could have a conflict of interest if they represented (directly or indirectly) any client in connection with an effort to Opt Out, file an Objection, or otherwise challenge the Settlement or this Agreement.

iv.   Because Class Counsel believes that the Settlement is in the best interests of each Settlement Class Member, Class Counsel will not solicit, or assist others in soliciting, Settlement Class Members to Opt Out, file an Objection, or otherwise challenge the Settlement or this Agreement.

      v.    Class Counsel has all necessary authority to enter into and execute this Agreement on behalf of Plaintiffs and the Settlement Classes.

     vi.    Each of the Plaintiffs, or for Minor Plaintiffs their legal guardians, has approved and agreed to be bound by this Agreement.

   vii.    The representations in Section 15(a) of this Agreement are true and correct to the best of Class Counsel's knowledge.

c.   The Settling Defendants represent and warrant to Plaintiffs as follows:

      i.    Each of the Settling Defendants has received legal advice from its attorneys regarding the advisability of entering into this Agreement and the legal consequences of this Agreement.

     ii.    None of the Settling Defendants is relying on any statement, representation, omission, inducement, or promise by Plaintiffs, Settlement Class Members, or Class Counsel, except those expressly stated in this Agreement.

    iii.    Each of the Settling Defendants, with the assistance of its attorneys, has investigated the law and facts pertaining to the Released Claims and the Settlement.

    iv.    Each of the Settling Defendants has carefully read, and knows and understands, the full contents of this Agreement and is voluntarily entering into this Agreement after having consulted with its attorneys.

     v.    Each of the Settling Defendants has all necessary authority to enter into this Agreement, has authorized the execution and performance of this Agreement, and has authorized the Person signing this Agreement on its behalf to do so.

16.    **Liens and Medicare Obligations**

a.   Any liens or subrogation interests as to any damage to real property or other property of a Settlement Class Member shall be the responsibility of that Settlement Class Member.

b.   Any liens or subrogation interests as to any costs, expenses, or fees incurred by a Settlement Class Member in connection with any alleged exposure to PFAS (including PFOA) shall be the responsibility of that Settlement Class Member.

c.   Nothing in this Agreement is intended to create or give rise to any liens or subrogation claims not otherwise provided by law or contract.

d.   Due to the nature of the claims at issue in the Action and the Released Claims, the Parties agree that the Settlement does not give rise to any reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, and therefore that no Party will make any such report.

e.  The Parties have sought to draft this Settlement to avoid any impacts to the rights of any public or private program (e.g. Medicare) or to Settlement Class Members' rights thereunder. However, by choosing not to Opt Out, Settlement Class Members acknowledge that (i) the Settlement could impact, limit, or preclude their rights to receive certain future Medicare benefits arising out of the allegations in this lawsuit; and (ii) they want to proceed with the Settlement and voluntarily waive any and all claims against the Settling Defendants for denial of Medicare benefits related to the Settlement.  It is understood that the intent of this Agreement is that the Releasing Parties will protect, defend, and hold the Released Parties harmless from any future or further payments or exposure with regard to claims for reimbursement of public or private medical insurance benefits paid on behalf of the Releasing Parties.  The Releasing Parties voluntarily waive any and all claims of any nature against the Settling Defendants related to any effort by Medicare or a Medicare Advantage Organization to demand payment of covered medical expenses that are asserted to be related to this Settlement, including but not limited to a private cause of action under 42 U.S.C. § 1395y(b)(3)(A).

f.  The Parties have considered Medicare's interest in any potential Medicare-covered medical expenses occurring before or after the Effective Date.  The Parties are satisfied that no allocation for expenses to protect Medicare's interest now or in the future is necessary and will not allocate any amount of the proceeds of this Settlement for past or future medical expenses, but reserve the right to do so in the future if necessary and appropriate in the sole discretion of the Medical Monitoring Administrator.

17.  **Amendment of Agreement**

a.  The Parties may agree to amend this Agreement for any reason at any time.

b.  Prior to entry of the Final Approval Order, this Agreement may be amended only by a writing executed by all Parties.

c.  After entry of the Final Approval Order, this Agreement may be amended only by a writing executed by all Parties and approved by the Court.

18.  **Termination Rights and Effect of Termination**

a.  Any of the Parties may terminate this Agreement if any of the following events happen: (i) the Court declines to approve any part of the Settlement; (ii) the Court declines to approve or changes a material term of the requested Preliminary Approval Order or the requested Final Approval Order; (iii) an appellate court reverses, vacates, or otherwise overturns the Final Approval Order in whole or in part; (iv) another of the Parties materially breaches this Agreement before the Effective Date and fails to promptly cure the breach after receiving written notice of the breach; or (v) the Effective Date otherwise does not come to pass; provided, however, that none of the Parties may terminate this Agreement because the Court or any appellate court awards less than the requested amount of attorneys' fees, costs, and expenses.  To terminate

the Agreement under this section, Settling Defendants must unanimously agree to terminate the Agreement in writing.

b. After receipt of the final Opt Out list provided by the General Administrator pursuant to Section 12 of this Agreement, Settling Defendants may terminate this Agreement based on the number of Settlement Class Members who Opt Out, pursuant to the Supplemental Agreement Regarding Settlement Termination Rights discussed in Section 19.

c. In order to exercise a right to terminate this Agreement, a Party must deliver written notice of termination to counsel for all other Parties within ten (10) days after the later of the event creating the right to terminate or the Party learning of the event creating the right to terminate, unless that deadline is extended by written consent of counsel for all Parties.

d. If a Party exercises a right to terminate this Agreement, (i) the Parties shall have thirty (30) days to resume settlement negotiations and determine if the Parties can reach an amended agreement, including without limitation with the assistance of a mediator; (ii) all deadlines under this Agreement shall be stayed for the duration of the negotiations; (iii) the Parties shall jointly request a stay of all Court deadlines for the duration of the negotiations; and (iv) the Parties shall jointly advise the Court of the status of this Agreement or any amendment to this Agreement within seven (7) days after the conclusion of the thirty-day negotiation period.

e. Unless the Parties agree otherwise in writing, thirty-one (31) days after a Party exercises a right to terminate this Agreement:

    i. The Agreement (except for Sections 7(a), 7(b), 9(b), 9(c), 18(a)-(f), 21(a), 21(c), 22(a), and 22(b)) shall become null and void and of no further force and effect.

    ii. Any unused portion of the Preliminary Settlement Fund Payment, including interest accrued thereon, shall be returned to the Settling Defendants.

    iii. The Action shall resume as if the Parties never entered into the Agreement.

    iv. The Parties shall be restored to their respective positions in the Action as of the Execution Date, with all of their respective legal claims and defenses preserved as they existed on that date.

    v. The Parties shall jointly move to vacate any orders entered in connection with the Settlement.

    vi. The Parties shall jointly move for the entry of a scheduling order establishing procedures and deadlines for, among other things, a class certification hearing.

    vii. No Party shall be deemed to have waived any claims, objections, rights or defenses, or legal arguments or positions, including but not limited to, claims

or objections to class certification, or claims or defenses on the merits. Each Party reserves the right to prosecute or defend this Action in the event that this Agreement does not become final and binding.

f.   If a Party breaches the Agreement after the Effective Date, none of the Parties may terminate the Agreement and any aggrieved Parties may seek relief only from the breaching Party. In no event shall any non-breaching Party have any liability arising out of or related to a breach of the Agreement by any other Party.

19.   **Supplemental Agreements**

a.   In addition to the provisions contained in Section 18, the Settling Defendants shall have the right, but not the obligation, in their sole discretion, to terminate this Agreement pursuant to the Supplemental Agreement Regarding Settlement Termination Rights to be executed by the Parties contemporaneously with the execution of this Agreement. This Supplemental Agreement shall not be submitted to the Court except in the event of a dispute thereunder, in which case the Parties shall seek to file it only under seal. The Supplemental Agreement Regarding Settlement Termination Rights is expressly incorporated into this Agreement. The Settling Defendants have also entered into a confidential Settlement Allocation Agreement among themselves regarding the amount of the Total Settlement Payment for which each Settling Defendant shall be responsible in accordance with Section 2. The Settlement Allocation Agreement also shall not be submitted to the Court unless there is a separate Court order, in which case the Settling Defendants shall seek to file it only under seal.

20.   **Impact of Any Other Settlement**

a.   If Plaintiffs reach any other settlement of this Action with another Defendant or Person prior to the Final Approval Hearing, the Release, Covenant Not to Sue, and Termination provisions herein (Sections 6(b), 6(i), and 18) shall be no less favorable to Settling Defendants than the corresponding term or provision applicable to any other settlement. If Settling Defendants believe one or more terms or provisions referenced above are less favorable than a corresponding term or provision in any other settlement reached by Plaintiffs, then Settling Defendants will provide written notice of such belief to Class Counsel within ten (10) days of the filing of such other settlement with the Court. Following receipt of the written notice, Settling Defendants and Class Counsel will confer as to whether the relevant term or provision in this Agreement is less favorable as compared to the other settlement. If there is agreement between Settling Defendants and Class Counsel that the provision at issue is less favorable, then Settling Defendants and Class Counsel will execute an amendment to this Agreement, adopting and incorporating the more favorable provision as drafted in the other settlement into the Agreement, and will submit the amendment to the Court for its approval. If Settling Defendants and Class Counsel are unable to reach an agreement on the relevant provision, Settling Defendants or Class Counsel may move the Court to resolve the dispute.

21.   **Publicity and Confidentiality**

    a.   The Parties, Class Counsel, counsel for the Settling Defendants, the General Administrator, and the Medical Monitoring Administrator shall keep strictly confidential and not disclose to any third party any non-public information received during litigation of the Action or negotiation or implementation of the Settlement. All agreements made and orders entered during the course of the Action relating to the confidentiality of information will survive this Settlement Agreement.

    b.   Within one hundred eighty (180) days after the latest of (i) the Effective Date, (ii) any final judgment in the Action, (iii) expiration or exhaustion of opportunities for appellate review of any final judgment without the final judgment having been reversed, vacated, or otherwise overturned in whole or in part, or (iv) entry of final judgment or an order of dismissal in the last-related action in *In re Hoosick Falls PFOA Cases*, No. 1:19-cv-215-LEK-DJS, Class Counsel, on behalf of Plaintiffs and the Settlement Classes, the General Administrator, and the Medical Monitoring Administrator shall return or destroy (and certify in writing that they have destroyed upon a request to so certify) the Settling Defendants' confidential documents produced in connection with the Action, settlement discussions, or the negotiation or performance of this Agreement.

    c.   Recognizing that all Parties negotiated in good faith to reach an arms-length settlement, the Parties and their counsel agree that their public statements will not disparage the Settlement Agreement, or any Party's motivations, reasons, or decision to enter into the Settlement Agreement.

22.   **Miscellaneous**

    a.   <u>Jurisdiction and Venue</u>.  The United States District Court for the Northern District of New York shall retain jurisdiction over the Parties and Settlement Class Members to interpret, implement, administer, and enforce the terms of this Agreement and resolve any dispute regarding this Agreement, the Settlement, the Preliminary Approval Order, or the Final Approval Order.  All proceedings related to this Agreement, the Settlement, the Preliminary Approval Order, or the Final Approval Order shall be initiated and maintained in the United States District Court for the Northern District of New York.

    b.   <u>Governing Law</u>. The Agreement shall be governed by and construed in accordance with the law of the State of New York without regard for choice-of-law or conflict-of-laws principles.

    c.   <u>All Reasonable Efforts</u>.  The Parties agree to cooperate with one another and use all reasonable efforts to support, promote, and obtain court approval and finality, and to exercise reasonable efforts to accomplish the terms and conditions of this Agreement.

    d.   <u>Voluntary Settlement</u>: The Parties and their counsel agree that, in consideration of all the circumstances, and after significant, adversarial arm's-length settlement negotiations among counsel and with the assistance of a mediator, the proposed Settlement embodied in this Agreement is fair, reasonable, adequate, and in the best

interests of the Settlement Classes, and was reached voluntarily after consultation with competent legal counsel.

e. <u>Binding Nature</u>.  This Agreement shall be binding upon and inure to the benefit of the Parties, the Settlement Class Members, and their respective agents, employees, representatives, heirs, executors, administrators, successors, and assigns.

f. <u>Failure of Plaintiff to be Appointed Class Representative</u>.  In the event that one or more Plaintiffs fails to secure Court approval to act as a class representative, the validity of this Agreement as to the remaining class representatives and the Settlement Classes shall be unaffected.

g. <u>Mistake.</u>  Each of the Parties to the Agreement has investigated the facts pertaining to it to the extent each Party deems necessary.  In entering into this Agreement, each Party assumes the risk of mistake with respect to such facts.  This Agreement is intended to be final and binding upon the Parties regardless of any claim of mistake.

h. <u>Finality.</u>  This Agreement is intended to be final and binding among the Parties, and is further intended to be a full and final accord and satisfaction between and among each of them.  Each Settling Defendant and Plaintiff rely on the finality of this Agreement as a material factor inducing that Party's execution of this Agreement.

i. <u>Authorization to Settle</u>.  Each of the Parties (or, for Minor Plaintiffs, their legal guardians) has all necessary authority to enter into this Agreement, has authorized the execution and performance of this Agreement, and has authorized the Person signing this Agreement on its behalf to do so.

j. <u>Construction</u>.  This Agreement was drafted jointly by the Parties and, in construing and interpreting this Agreement, no provision of this Agreement shall be construed or interpreted against any of the Parties based upon the contention that this Agreement or a portion of it was purportedly drafted or prepared by one of the Parties.  The Parties agree that the language in all parts of this Agreement shall be construed as a whole, according to its fair meaning.  Any captions, titles, headings, or subheadings in this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

k. <u>Execution</u>.  This Agreement may be executed in counterparts, including via electronic signature, and shall be binding once all Parties have executed the Agreement.  The Parties further agree that signatures provided by portable document format (PDF) or other electronic transmission shall have the same force and effect as original signatures.

l. <u>Dispute Resolution</u>.  The Parties will attempt to resolve any disputes regarding this Agreement in good faith.  If unable to so resolve a dispute, the Parties will refer the matter to the United States District Court for the Northern District of New York for resolution.

m. <u>No Liability</u>.  No Person shall have any claim against any Plaintiffs, Settlement Class Members, Class Counsel, Released Parties, counsel for the Settling Defendants, the

General Administrator, or the Medical Monitoring Administrator based on actions that any Plaintiffs, Settlement Class Members, Class Counsel, Released Parties, counsel for Settling Defendants, the General Administrator, or the Medical Monitoring Administrator were required or permitted to take under this Agreement, the Preliminary Approval Order, or the Final Approval Order. No Person shall have any claim against any Released Parties or counsel for Settling Defendants related to administration of the Settlement, including the Medical Monitoring Program or the allocation or distribution of the Settlement Funds. No Person shall have any claim against Plaintiffs, Class Counsel, the General Administrator, or the Medical Monitoring Administrator related to the administration of the Settlement (including making payments to Settlement Class Members), except for in the presence of proven willful misconduct. No Person shall have any claim against Class Counsel, the General Administrator, the Medical Monitoring Administrator, the Released Parties, or counsel for Settling Defendants related to representations made by a parent or guardian pursuant to Section 15(a) or by a parent, guardian, or legal representative on the Claim Form regarding a Minor, incompetent, or deceased Settlement Class Member, including without limitation purported inaccuracies or misstatements regarding the parent's, guardian's, or legal representative's legal relationship to and authority relative to that Settlement Class Member.

n.  <u>Entire Agreement</u>. This Agreement constitutes the entire agreement of the Parties with respect to the subject matter thereof, and it supersedes all prior and contemporaneous oral and written agreements and discussions among them on that subject matter. The Settlement is not subject to any condition, representation, warranty, or inducement not expressly provided for herein, and, except as identified in Section 19, there exist no collateral or oral agreements, promises, conditions, representations, warranties, or inducements among any of the Parties, Class Counsel, Settling Defendants, or counsel for the Settling Defendants relating to the subject matter of the Agreement that supersede or supplement the Agreement.

o.  <u>Deadlines</u>. If the last date for the performance of any action required or permitted by this Agreement falls on a Saturday, Sunday, or Court or public holiday, that action may be performed on the next business day as if it had been performed within the time period provided for performance of the action.

p.  <u>Reasonable Extensions</u>. Unless the Court orders otherwise, the Parties may agree in writing to any reasonable extensions of time to carry out any of the provisions of this Agreement.

q.  <u>Notices</u>. Any notice, demand, or other communication under this Agreement (other than the Class Notice) shall be in writing and shall be deemed duly given if it is addressed to the intended recipient as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed email, or delivered by reputable express overnight courier:

To Plaintiffs or Settlement Class Members:

Stephen G. Schwarz
Faraci Lange, LLP
28 E. Main Street, Suite 1100
Rochester, NY 14614
sschwarz@faraci.com

James J. Bilsborrow
Seeger Weiss LLP
55 Challenger Road
Ridgefield Park, NJ 07660
jbilsborrow@seegerweiss.com


To Honeywell:

Charles Anthony
General Counsel - Health, Safety, Environment, Product Stewardship, and
Sustainability
Honeywell International Inc.
300 S. Tryon St, Suite 500/600
Charlotte, NC  28202
Charles.Anthony@Honeywell.com

Elissa J. Preheim
Michael D. Daneker
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington, DC 20001
elissa.preheim@arnoldporter.com
michael.daneker@arnoldporter.com


To Saint-Gobain:

La-Toya Hackney
Thomas Field
Saint-Gobain Corporation
20 Moores Road
Malvern, PA 19355
latoya.hackney@saint-gobain.com
thomas.g.field@saint-gobain.com

Douglas Fleming
Dechert LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
douglas.fleming@dechert.com


To 3M:

Laura Hammargren
3M Legal Affairs
3M Center, 220-9E-02
St. Paul, MN 55144-1000
lhammargren@mmm.com

Andrew Calica
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
acalica@mayerbrown.com


Any notice required to be sent to the General Administrator shall be delivered to his, her, or its official business address.

r. <u>Waiver</u>.  The provisions of this Agreement may be waived only by written agreement signed by the waiving party.  The waiver by any Party of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach of this Agreement.

s. <u>Materiality of Appendices and Exhibits</u>.  All of the Appendices and Exhibits to the Settlement Agreement are material and integral parts hereof.

t. <u>Severability</u>.  The provisions of this Agreement are not severable, except as provided in the Agreement.

u. <u>Third-Party Beneficiaries</u>. This Agreement does not create any third-party beneficiaries, except Settlement Class Members and the Released Parties other than the Settling Defendants, who are intended third-party beneficiaries.

v. <u>Force Majeure</u>. The failure of any Party to perform any of its obligations hereunder shall not subject any Party to any liability or remedy for damages, or otherwise, where such failure is occasioned in whole or in part by Acts of God, fires, accidents, pandemics, other natural disasters, interruptions or delays in communications or transportation, labor disputes or shortages, shortages of material or supplies, governmental laws, rules or regulations of other governmental bodies or tribunals, acts

41

or failures to act of any third parties, or any other similar or different circumstances or causes beyond the reasonable control of such Party.

[SIGNATURES ON NEXT PAGE]

**APPROVED AND AGREED TO:**

**Plaintiff Michele Baker**

_____
Date:

**Plaintiff Charles Carr**

_____
Date: 2/20/21

**Plaintiff Angela Corbett**

_____
Date:

**Plaintiff Pamela Forrest**

_____
Date: 7/30/2021

**Plaintiff Michael Hickey, individually and as parent and natural guardian of O.H., infant**

_____
Date:

**Plaintiff Kathleen Main-Lingener**

_____
Date:

**Plaintiff Jennifer Plouffe**

_____
Date: 7/20/2021

**Plaintiff Daniel Schuttig**

_____
Date: July 20, 2021

**Plaintiff Silvia Potter, individually and as parent and natural guardian of C.P., infant**

_____
Date: 07/20/2021

**Plaintiff Kristin Miller, as parent and natural guardian of K.M., infant**

Kristin Miller aka. Kristin Harrington
_____
Date: 7/20/21

43

**APPROVED AND AGREED TO:**

**Plaintiff Michele Baker**                          **Plaintiff Kathleen Main-Lingener**

*Michele M Baker*

_____                           _____
Date:                                              Date:


**Plaintiff Charles Carr**                          **Plaintiff Jennifer Plouffe**


_____                           _____
Date:                                              Date:


**Plaintiff Angela Corbett**                        **Plaintiff Daniel Schuttig**


_____                           _____
Date:                                              Date:


**Plaintiff Pamela Forrest**                        **Plaintiff Silvia Potter, individually and as parent and natural guardian of C.P., infant**


_____
Date:                                              _____
                                                   Date:

**Plaintiff Michael Hickey, individually and as parent and natural guardian of O.H., infant**

                                                   **Plaintiff Kristin Miller, as parent and natural guardian of K.M., infant**

_____
Date:                                              _____
                                                   Date:

43

**APPROVED AND AGREED TO:**

**Plaintiff Michele Baker**

**Plaintiff Kathleen Main-Lingener**

Date: _____

Date: _____

**Plaintiff Charles Carr**

**Plaintiff Jennifer Plouffe**

Date: _____

Date: _____

**Plaintiff Angela Corbett**

**Plaintiff Daniel Schuttig**

Date: 7/20/2021

Date: _____

**Plaintiff Pamela Forrest**

**Plaintiff Silvia Potter, individually and as parent and natural guardian of C.P., infant**

Date: _____

Date: _____

**Plaintiff Michael Hickey, individually and as parent and natural guardian of O.H., infant**

**Plaintiff Kristin Miller, as parent and natural guardian of K.M., infant**

Date: _____

Date: _____

43

**APPROVED AND AGREED TO:**

**Plaintiff Michele Baker**

Date: _____

**Plaintiff Charles Carr**

Date: _____

**Plaintiff Angela Corbett**

Date: _____

**Plaintiff Pamela Forrest**

Date: _____

**Plaintiff Michael Hickey, individually and
as parent and natural guardian of O.H.,
infant**

Date: 7/18/21

**Plaintiff Kathleen Main-Lingener**

Date: _____

**Plaintiff Jennifer Plouffe**

Date: _____

**Plaintiff Daniel Schuttig**

Date: _____

**Plaintiff Silvia Potter, individually and as
parent and natural guardian of C.P.,
infant**

Date: _____

**Plaintiff Kristin Miller, as parent and
natural guardian of K.M., infant**

Date: _____

43

**APPROVED AND AGREED TO:**

**Plaintiff Michele Baker**

_____
Date:

**Plaintiff Kathleen Main-Lingener**

_Kathleen Main-Lingener_
Date: _July 19th, 2021_

**Plaintiff Charles Carr**

_____
Date:

**Plaintiff Jennifer Plouffe**

_____
Date:

**Plaintiff Angela Corbett**

_____
Date:

**Plaintiff Daniel Schuttig**

_____
Date:

**Plaintiff Pamela Forrest**

_____
Date:

**Plaintiff Silvia Potter, individually and as parent and natural guardian of C.P., infant**

_____
Date:

**Plaintiff Michael Hickey, individually and as parent and natural guardian of O.H., infant**

_____
Date:

**Plaintiff Kristin Miller, as parent and natural guardian of K.M., infant**

_____
Date:

43

**Class Counsel**

By: *Stephen C. Schwarz*
Date: July 20, 2021

By: *Hadley Lundbach Mustacirro*
Date: 7/20/2021

By: *Robin Greenwald*
Date: 7/21/21

By: *James J. Bilsborrow*
Date: 7/21/21

**Defendant Saint-Gobain Performance Plastics Corp.**

By: _____
Position:
Date:

**Defendant Honeywell International Inc.**

By: _____
Position:
Date:

**Defendant 3M Company**

By: _____
Position:
Date:

44

**Class Counsel**

**Defendant Saint-Gobain Performance Plastics Corp.**

DocuSigned by:

*Marc A. Aerts*

19C55075C838465...

_____

By: _____

Date: _____

By: **Marc A. Aerts**

Position: **Vice President**

Date:   7/19/2021

_____

By: _____

Date: _____

**Defendant Honeywell International Inc.**

_____

By: _____

Date: _____

_____

By: _____

Position: _____

Date: _____

_____

By: _____

Date: _____

**Defendant 3M Company**

_____

By: _____

Position: _____

Date: _____

**Class Counsel**

**Defendant Saint-Gobain Performance Plastics Corp.**

_____

By:
Date:

_____

By:
Position:
Date:

_____

By:
Date:

**Defendant Honeywell International Inc.**

_____

By:  Lynn A. Dummett
Position: Vice President & General Counsel - Litigation
Date: July 19, 2021

_____

By:
Date:

_____

By:
Date:

**Defendant 3M Company**

_____

By:
Position:
Date:

44

**Class Counsel**

**Defendant Saint-Gobain Performance Plastics Corp.**

By: _____
Date:

By: _____
Position:
Date:

By: _____
Date:

**Defendant Honeywell International Inc.**

By: _____
Date:

By: _____
Position:
Date:

By: _____
Date:

**Defendant 3M Company**

By: Hardy Schaffer
Position: Associate General Counsel
Date: 7/19/2021

44

## APPENDIX A

## HOOSICK FALLS CLASS ACTION MEDICAL MONITORING PROGRAM

a) Definitions

All capitalized terms not otherwise defined herein shall have the same meaning as defined in the Class Settlement Agreement ("Agreement") between and among the Plaintiffs, on behalf of themselves and the Settlement Class Members, and the Settling Defendants in the putative consolidated class action lawsuit captioned *Baker v. Saint-Gobain Performance Plastics Corporation et al.*, No. 1:16-cv-917, including without limitation Nos. 1:16-cv-220, 1:16-cv-292, 1:16-cv-394, and 1:16-cv-476. In addition to the terms defined at various points within the Agreement, the following defined terms shall apply throughout this Appendix A:

1. The "Annual Informational Survey" means the annual survey designed by the Overseeing Program Physician during the first year of the Program as described below in section (e)(2)(ii).

2. "Annual Financial Disbursement Report" means the annual report prepared by the Medical Monitoring Administrator, consisting of (1) an aggregated summary of the disbursements made for the Medical Monitoring Program, including identification of the Consultations and/or Program Services rendered by the Program Physicians, Non-Program Physicians, and/or laboratories for which disbursements were made, (2) participation rates and/or the number of Participants in the Medical Monitoring Program, and (3) the median, mean, and average serum PFOA level of Participants as a whole in a given reporting year and the percentage change in such level since the prior reporting year, as well as the range of PFOA serum levels (lowest data

1

point and highest data point) for each quartile of Participants.  Any and all Participant data, including Protected Health Information, related to participation or use of the Medical Monitoring Program contained in the Annual Disbursement Report shall be presented in an aggregated, de-identified form and shall not include the results of any Consultation or Program Services, except that the summary statistics of serum PFOA levels described in this paragraph will be included.

3. "Annual Participant Report" means the annual report prepared by the Medical Monitoring Administrator for dissemination only to Participants, consisting of (1) participation rates and/or the number of Participants in the Medical Monitoring Program, and (2) the median, mean, and average serum PFOA level of Participants as a whole in a given reporting year and the percentage change in such level since the prior reporting year, as well as the range of PFOA serum levels (lowest data point and highest data point) for each quartile of Participants.  Any and all Participant data, including Protected Health Information, contained in the Annual Participant Report shall be presented in an aggregated, de-identified form.

4. The "Annual Surveillance Consultation" means the activities described in section (e)(4), including the provision of Program Services performed by, or under the supervision of, a Program Physician or Non-Program Physician.

5.  "Consultation" means the Initial Screening Consultation or Annual Surveillance Consultation for a Participant.

6. "Health Condition" means any of thyroid disease, ulcerative colitis, kidney cancer, testicular cancer, elevated uric acid level, abnormal liver function, hyperlipidemia, and hypertensive disorder related to pregnancy.

2

7. The "Initial Screening Consultation" means the activities described in section (e)(3), including the provision of Program Services performed by, or under the supervision of, a Program Physician or Non-Program Physician.

8. "Informational Survey" means the Initial Informational Survey or Annual Informational Survey.

9. The "Initial Informational Survey" means the informational survey designed by the Overseeing Program Physician as described below and will be substantially similar to the form attached as Exhibit A.

10. "Non-Program Physician" means a third-party licensed primary care physician approved by the Medical Monitoring Administrator and Overseeing Program Physician to provide Consultations and to provide or prescribe Program Services to Medical Monitoring Settlement Class Members who reside more than 50 miles from a Program Physician, and who agrees to do so at the request of the Medical Monitoring Administrator. No Non-Program Physician shall be a Medical Monitoring Settlement Class Member or have a pending claim for medical monitoring or personal injury against any Settling Defendant.

11. "Overseeing Program Physician" shall be the physician to fulfill the responsibilities set forth in section (a)(11)(ii). Class Counsel has selected Alan Ducatman, M.D., to serve as Overseeing Program Physician until such time as he becomes unwilling or unable to continue to serve in that role. Class Counsel, in consultation with Settling Defendants, may substitute a different physician with medical monitoring experience as Overseeing Program Physician, subject to approval by the Court if the Court has previously approved the Settlement preliminarily or finally. In the

3

absence of agreement, either Class Counsel or any Settling Defendant may move the Court to substitute a different physician as Overseeing Program Physician upon a showing that the responsibilities of the Overseeing Program Physician have not been adequately executed by the incumbent.

    i.  **Compensation:**  The Overseeing Program Physician shall invoice the Medical Monitoring Administrator monthly with descriptions of the services provided and the time incurred.   The Overseeing Program Physician shall be compensated on an hourly basis at a rate of $280 per hour for the first year of the Program and that rate shall be increased by an amount not to exceed five (5) percent per year in each subsequent year of the program.   In the first year of the Medical Monitoring Program, the Overseeing Program Physician shall not be paid for in excess of 150 hours unless approved by Class Counsel and counsel for the Settling Defendants. If no agreement can be reached between counsel, Class Counsel may make application to the Court for approval of this excess amount to be paid out of the Medical Monitoring Fund.   In each subsequent year of the Program, the Overseeing Program Physician shall not be paid in excess of 35 hours unless approved by Class Counsel and counsel for the Settling Defendants.   If no agreement can be reached between counsel, Class Counsel may make application to the Court for approval of this excess amount to be paid out of the Medical Monitoring Fund.

    ii.  **Responsibilities:**  The Overseeing Program Physician shall have the following responsibilities:

4

1. Assist in selecting and approving Program Physicians;

2. Training Program Physicians and Non-Program Physicians on the Medical Monitoring Program design and implementation by (A) developing Physician Training Materials and (B) meeting virtually with Program Physicians and Non-Program Physicians by web conference or telephone conference to provide a one-time training at the inception of the Medical Monitoring Program or, in the case of any Program Physician or Non-Program Physician who is selected and approved after inception of the Program, prior to their participation in the Program;

3. Develop Participant Program Materials; and

4. Designing the Initial Informational Survey to be completed by Participants at the initiation of the Program and the Annual Informational Survey to be completed annually by Participants who have received an Initial Screening Consultation.

iii. The Overseeing Program Physician shall not receive or have access to data regarding the identity, laboratory testing results, or other medical information of Medical Monitoring Settlement Class Members, except that the Medical Monitoring Administrator may (but need not) consult with the Overseeing Program Physician when the Medical Monitoring Administrator compiles Participant serum PFOA level data to prepare the Annual Participant Report or Annual Financial Disbursement Report and only to the extent that the data has been anonymized.

5

12. "Participant" means a Medical Monitoring Settlement Class Member who has enrolled in the Medical Monitoring Program by scheduling and receiving a Consultation.

13. "Participant Program Materials" means written materials to be provided to Participants, which shall consist of a list of the Health Conditions, a list of what the Overseeing Program Physician contends are clinical signs and symptoms of the Health Conditions, and reference to the availability of Consultations and Program Services for the Health Conditions and any other general health information related to reducing risks of developing the Health Conditions. Neither the preparation nor dissemination of Participant Program Materials shall be construed as the Settling Defendants' agreement with or endorsement of the content thereof, including the scientific basis for offering any Consultations or Program Services, and the Participant Program Materials shall contain an express disclaimer to such effect.

14. "Physician Training Materials" means written materials to be provided to Program Physicians and Non-Program Physicians, which shall consist of a list of the Health Conditions, a list of what the Overseeing Program Physician contends are clinical signs and symptoms of the Health Conditions, the Consultations and Program Services available for the Health Conditions, and the laboratory reference range, if any, associated with each Program Service. Neither the preparation nor dissemination of Physician Training Materials shall be construed as the Settling Defendants' agreement with or endorsement of the content thereof, including but not limited to the scientific basis for offering any Consultations or Program

6

Services, and the Physician Training Materials shall contain an express disclaimer to such effect.

15. "Program Physician" shall be a third-party licensed medical doctor within 50 miles of the Village of Hoosick Falls or Town of Hoosick, New York who has been approved by the Overseeing Program Physician and Medical Monitoring Administrator to provide Consultations and to provide or prescribe Program Services to Medical Monitoring Settlement Class Members, and who agrees to do so at the request of the Medical Monitoring Administrator.  No Program Physician shall be a Medical Monitoring Settlement Class Member or have a pending claim for medical monitoring or personal injury against any Settling Defendant.

16. "Program Services" means the services listed in section (e)(6)(i)-(ix) below.

17. "Protected Health Information" shall be defined consistent with 45 C.F.R § 160.103 as individually identifiable health information that is transmitted by electronic media; maintained in electronic media; or transmitted or maintained in any other form or medium.

b) Scope of the Program

1. The Medical Monitoring Program shall consist solely of the approved Consultations for the Health Conditions with Medical Monitoring Settlement Class Members, and related administrative activities, as described herein.  The Medical Monitoring Program shall not include the treatment of any Health Condition or any other medical condition.

2. Only Medical Monitoring Settlement Class Members who have demonstrated their eligibility as determined by the General Administrator in accordance with Section 3(b)(v) of the Agreement may participate in the Medical Monitoring Program.

3. The Consultations described herein shall be administered by or under the supervision of a Program Physician or Non-Program Physician.  Where Program Services are deemed appropriate for a Participant by a Program Physician or Non-Program Physician and are agreed to by a Participant, that Program Physician or Non-Program Physician shall cause such Program Services to be performed.  Such Consultations are intended to establish a physician/patient relationship and may include a physical examination of the patient at the discretion of the physician.

c) Program Administration

1. Class Counsel has selected Edgar C. Gentle, III, Esq. as the Medical Monitoring Administrator until such time as he becomes unwilling or unable to continue to serve in that role.  Class Counsel, in consultation with Settling Defendants, may substitute a different administrator as Medical Monitoring Administrator, subject to approval by the Court if the Court has previously approved the Settlement preliminarily or finally.  In the absence of agreement, either Class Counsel or any Settling Defendant may move the Court to substitute a different administrator as Medical Monitoring Administrator upon a showing that the responsibilities of the Administrator have not been adequately executed by the incumbent.

2. The Medical Monitoring Administrator shall oversee enrollment in the Medical Monitoring Program for Medical Monitoring Settlement Class Members who the

General Administrator determines to be eligible in accordance with Section (b)(2) above and Section 3(b)(v) of the Agreement.

3. Before being approved to participate in the Program, all Program Physicians, Non-Program Physicians, and laboratories shall be required to sign an agreement warranting that all services rendered as part of the Medical Monitoring Program shall be billed to the Medical Monitoring Administrator only and will not be billed to Medicare, Medicaid or any private health insurer. In the event the Medical Monitoring Administrator becomes aware of an inadvertent or erroneously submitted billing to Medicare, Medicaid, or other private health insurer, the Medical Monitoring Administrator shall take all necessary and reasonable steps to insure that said bill is withdrawn from submission to Medicare, Medicaid or other private insurer. All Program Participants shall waive any and all claims against Released Parties for any Private Cause of Action, as that term is defined under 42 U.S.C §1395y(b)(3)(A) of the Medicare Secondary Payer Act, 42 U.S.C §1395y(b).

4. The Medical Monitoring Administrator shall prepare a Medical Monitoring Program budget and financially administer the Medical Monitoring Program.

5. The Medical Monitoring Administrator shall review, approve, and pay Program expenses using sound accounting internal controls.

6. The Medical Monitoring Administrator shall produce an Annual Financial Disbursement Report once each calendar year, which shall be available, upon request, to Class Counsel, counsel for the Settling Defendants, and the Court. The Annual Financial Disbursement Report shall be treated as confidential and not for public disclosure.

7. The Medical Monitoring Administrator, pursuant to Section (f), shall facilitate the compilation of information or data required by Section (f)\, while safeguarding Participant confidentiality, for limited use as described in Section (f).

d) Medical Service Providers

1. The Medical Monitoring Administrator shall contract with the Overseeing Program Physician to provide the services set forth above under the limitations set forth above.

2. For any Medical Monitoring Settlement Class Member who resides within 50 miles of a Program Physician, as determined by the Medical Monitoring Administrator, Consultations shall be performed by a Program Physician.  For any Medical Monitoring Settlement Class Member who resides more than 50 miles from a Program Physician, as determined by the Medical Monitoring Administrator, Consultations may be performed by an approved Non-Program Physician.  Such approval must occur before Consultations are provided.

3. The Medical Monitoring Administrator with the assistance of the Overseeing Physician shall identify and approve up to five (5) Program Physicians.  The Medical Monitoring Administrator shall negotiate and execute contracts or memoranda of understanding with the Program Physicians to provide Consultations to Participants and to seek disbursements for Consultations from the Medical Monitoring Program.

4. The Medical Monitoring Administrator will negotiate and execute contracts or memoranda of understanding with Non-Program Physicians, as necessary, to provide Consultations to Participants who reside more than 50 miles from a

Program Physician and to seek disbursements for Consultations from the Medical Monitoring Program.

5. The Medical Monitoring Administrator, at his discretion, may negotiate contracts with medical laboratories for approved Program Services requiring laboratory testing conducted under this Medical Monitoring Program for purposes of reducing costs to the Program.

e) Consultations under the Medical Monitoring Program

1. Consultations under the Medical Monitoring Program shall consist solely of the Initial Informational Survey, Annual Informational Surveys, the Initial Screening Consultation, and Annual Surveillance Consultations as described herein.

2. <u>Informational Surveys.</u>

   i. At the time a Medical Monitoring Settlement Class Member makes an appointment with a Program Physician or Non-Program Physician for an Initial Screening Consultation as set forth in Section (e)(3) below, the Medical Monitoring Settlement Class Member shall be directed by the Program Physician or Non-Program Physician to complete the Initial Informational Survey prior to the Initial Screening Consultation.

   ii. At the time a Medical Monitoring Settlement Class Member who has received an Initial Screening Consultation makes an appointment for an Annual Surveillance Consultation after year one of the Program, the Medical Monitoring Settlement Class Member shall be directed to complete the Annual Informational Survey prior to the Annual Surveillance Consultation.

11

3.  Initial Screening Consultation.

    i.  At commencement of the Medical Monitoring Program as defined in Section 4(c)(ii) of the Agreement, each Medical Monitoring Settlement Class Member determined to be eligible under Section 3(b)(v) of the Agreement will have the opportunity to schedule an appointment for an Initial Screening Consultation with a Program Physician or Non-Program Physician.

    ii.  The Initial Screening Consultation of a Participant shall be performed by a Program Physician or Non-Program Physician and shall consist of a discussion of the Initial Informational Survey and where appropriate, as determined by the Program Physician or Non-Program Physician based on the Participant's responses to the Initial Informational Survey and/or physical examination, the provision of Program Services as set forth in Section (f) below or referral to see another physician of the Participant's choosing outside the Medical Monitoring Program.

4.  Annual Surveillance Consultation:

    i.  In each calendar year after the first year of the Medical Monitoring Program, each Participant who has received an Initial Screening Consultation will have the opportunity to schedule an appointment for an Annual Surveillance Consultation, with a Program Physician or Non-Program Physician.

    ii.  The Annual Surveillance Consultation of a Participant shall be performed by a Program Physician or Non-Program Physician and shall consist of a discussion of the Annual Informational Survey and where appropriate, as

determined by the Program Physician or Non-Program Physician based on the Participant's responses to the Annual Informational Survey and/or physical examination, the provision of Program Services as set forth in Section (f) below or referral to see another physician of the Participant's choosing outside the Medical Monitoring Program.

5. <u>Follow-Up Notification/Consultation</u>:

   i. Following a Participant's Initial Screening Consultation and any Annual Surveillance Consultations, the Program Physician or Non-Program Physician shall notify the respective Participant of the results of the Consultation.

   ii. Based on the results of the Consultation, pursuant to Sections (e)(3)(ii) and (e)(4)(ii), the Program Physician or Non-Program Physician shall determine whether Program Services shall be provided or a referral provided to see another physician of the Participant's choosing for additional testing or treatment outside the Medical Monitoring Program.

6. <u>Program Services</u>. At the time of an Initial Screening Consultation or Annual Surveillance Consultation, or as follow up to such Consultations in accordance with Section (e)(5) above, Participants may receive Program Services, which shall consist solely of the following:

   i. For PFOA blood level, blood serum test for PFOA level once every other calendar year;

   ii. For thyroid disease, thyroid stimulating hormone blood test once annually;

13

iii.  For ulcerative colitis, consultation with Program Physician or Non-Program Physician once annually;

iv.  For kidney cancer, urinalysis once annually;

v.  For testicular cancer, scrotal examination once annually for male Participants;

vi.  For elevated uric acid levels, uric acid and creatinine blood test once annually;

vii.  For hyperlipidemia, fasting total and LDL cholesterol blood test once annually;

viii.  For abnormal liver function, ALT, AST, GGT and bilirubin blood test once annually; and

ix.  For pregnant Participants, consultation with Program Physician or Non-Program Physician regarding hypertensive disorders during pregnancy and breastfeeding, once per pregnancy.

7.  <u>Limitations.</u>

i.  Medical Monitoring Settlement Class Members may receive no services under the Medical Monitoring Program after the earlier of (a) the Medical Monitoring Allocation being expended or (b) the ten (10) year anniversary of the Effective Date.

ii.  Where a Medical Monitoring Settlement Class Member has received a diagnosis or treatment for any Health Condition prior to a Consultation, that Medical Monitoring Settlement Class Member shall not be prescribed or receive Program Services for that Health Condition under the Medical

14

Monitoring Program, nor shall such Program Services be approved for disbursement under the Medical Monitoring Program, except that if it is determined by a treating physician that such Health Condition has resolved and requires no further follow up, the Medical Monitoring Settlement Class Member will once again be permitted to receive Program Services for such Health Condition under the Program if the Program Physician or Non-Program Physician determines such testing and/or services are warranted.

iii.   Disbursements from the Medical Monitoring Program shall not be made to pay costs arising from (A) examinations and laboratory testing other than those enumerated in Section (e)(2)-(6); (B) imaging; (C) treatment; or (D) any services performed by, or under the supervision of, a physician other than a Program Physician or Non-Program Physician.

f)   Confidentiality, Collection, Retention, and Use of Participant Information

1.   The selection, role, and experience of, and/or any oral or written statements made by the Medical Monitoring Administrator, an Overseeing Program Physician, a Program Physician, or a Non-Program Physician in this Program or in any other connection or capacity therewith shall not be offered as evidence or otherwise utilized to support any contention, including but not limited to, as to his or her qualifications to fulfill this role or the alleged appropriateness of medical screening or surveillance due to PFOA exposure in any litigation or other proceeding, other than to enforce the Agreement.  Nor shall any data or information received by any of the foregoing be used in any testimony before courts or administrative agencies or otherwise made public, subject to the terms of section (f)(4)(a)-(c) and (f)(5)

15

below.  As a condition of accepting his or her appointments, each of the foregoing individuals shall agree to be bound by this term and all other terms herein that are applicable to him or her.  Such obligations shall survive the duration of their work under and responsibilities to the Program.

2.  All information relating to a Medical Monitoring Settlement Class Member that is disclosed or obtained by the Overseeing Program Physician, the Program Physicians, any Non-Program Physicians, the Medical Monitoring Administrator, or any other authorized entity as part of the Medical Monitoring Program shall be deemed confidential and shall be treated as Protected Health Information subject to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and other applicable privacy laws.

3.  Program Physicians and Non-Program Physicians shall retain all medical records of any Participants received or prepared in connection with an Initial Screening Consultation, an Initial Informational Survey, an Annual Surveillance Consultation, an Annual Informational Survey, or Program Services in compliance with the recordkeeping practices and state and federal laws applicable to each Program Physician or Non-Program Physician.

4.  No reports, health information, or health data related to the Medical Monitoring Program shall be distributed or disclosed to anyone by the Medical Monitoring Program, the Medical Monitoring Administrator, the Overseeing Program Physician, any Program Physician, or any Non-Program Physician, except: (a) Protected Health Information with respect to a particular Participant may be disclosed to that Participant or to his or her authorized medical providers upon

16

receipt of appropriate and valid authorization; (b) that the Medical Monitoring Administrator shall facilitate the collection of data that will be disclosed annually to Participants in the Annual Participant Report, as set forth in section (f)(5) below, or that will be contained in the Annual Financial Disbursement Report, as set forth in section (c)(6) above; or (c) as otherwise required by law.   For purposes of this Appendix A, health information and health data includes, but is not limited to, Participants' names and addresses, PFOA blood levels, demographic information, Informational Survey responses, personal or family medical history, information provided or created during or further to Consultations, Program Services and the results thereof, recommended testing, test results, and past, current, or recommended treatment information.

5.  In addition to each Participant's right to receive his or her specific health data and information, the Medical Monitoring Administrator shall prepare an Annual Participant Report once each calendar year, which may be provided only to Participants and, at one or more Settling Defendants' request, to state or federal governmental authorities with regulatory oversight responsibility for PFAS remediation on the geographic area of the Property Settlement Class.

6.  After the Medical Monitoring Program has terminated and any remainder of the Medical Monitoring Allocation has been disbursed in accordance with Section 4(c) of the Agreement, the Medical Monitoring Administrator shall arrange for all databases and/or data repositories created or used as part of the Medical Monitoring Program for the collection or organization of information relating to Participants to be destroyed, and shall certify to the Parties in writing that such databases and/or

data repositories have been destroyed upon a request to so certify.   This provision will not require the Medical Monitoring Administrator to destroy any records that are otherwise required to be retained under state or federal law.

7. The limitations described in Section (f) are not intended to prevent the Medical Monitoring Administrator or Class Counsel from providing Medical Monitoring Settlement Class Members with information regarding enrollment and participation in the Medical Monitoring Program or the consultations and Program Services available thereunder.

g) Miscellaneous

1. Nothing in the Agreement or in this Appendix A shall be construed as Settling Defendants' agreement with or endorsement of any oral or written statements, including but not limited to as to any purported health or environmental risks associated with PFOA or the appropriateness of any medical screening, surveillance, or treatment therefor, (i) made by the Medical Monitoring Administrator, the Overseeing Program Physician, a Program Physician, a Non-Program Physician, or the Medical Monitoring Program itself, or (ii) otherwise provided to Participants.

**APPENDIX B**

**EXHIBITS TO CLASS SETTLEMENT AGREEMENT**

Exhibit A:     Claim Form with associated Declarations

Exhibit B:     Notice Form

Exhibit C:     Proposed Preliminary Approval Order

Exhibit D:     Qualifications of KCC

Exhibit E:     Qualifications of Edgar C. Gentle, III, Esq.

Exhibit F:     Declaration of Carla A. Peak in Support of Settlement Notice Program

# EXHIBIT A

# SETTLEMENT CLAIM FORM AND RELEASE

***Baker v. Saint-Gobain Performance Plastics Corp. et al.*, United States District Court for the Northern District of New York, Case No. 16-cv-917 (LEK/DJS)**

## INSTRUCTIONS FOR SUBMITTING A SETTLEMENT CLAIM FORM

There has been a settlement of the above-referenced Action between and among Plaintiffs and the Settling Defendants (Saint-Gobain Performance Plastics Corporation, Honeywell International Inc., and the 3M Company). If you are a member (or representative) of one or more of the Settlement Classes (defined below), you may be eligible for a payment from the Net Settlement Fund and/or to participate in the Medical Monitoring Program if you comply with the instructions in this Settlement Claim Form and Release ("Claim Form") and submit it in a timely manner. Details regarding the Medical Monitoring Program, including the services offered as part of the program, can be found in Appendix A to the Class Settlement Agreement, a copy of which is available at www.hoosickfallspfoasettlement.com, or upon request to the General Administrator at the contact information below. Payments from the Net Settlement Fund will be made only to eligible Claimants and in accordance with and pursuant to a plan of distribution approved by the Court.

Your participation in this Settlement may offer the best, and possibly only, chance for you to receive a monetary recovery and/or medical monitoring as against the Settling Defendants in this Action. Submission of this Claim Form, however, does not assure that you will share in the Net Settlement Fund and/or be deemed eligible to participate in the Medical Monitoring Program.

Please review the following instructions before proceeding:

**YOUR COMPLETED SETTLEMENT CLAIM FORM <u>AND SUPPORTING DOCUMENTATION</u> MUST BE SUBMITTED ELECTRONICALLY AND/OR POSTMARKED BEFORE _____, 2022 [180 DAYS AFTER ENTRY OF PRELIMINARY APPROVAL ORDER].**

<u>**ELIGIBILITY**</u>**:**

You are a Settlement Class Member (or you are a parent or legal guardian of a minor less than 18 years of age who is a Class Member, or you are the legal representative appointed to represent (i) the Estate of a deceased Class Member, or (ii) an incompetent Class Member) in one or more Settlement Classes and you are eligible to submit this Settlement Claim Form **only if** you (or the minor, deceased or incompetent person you represent) fall within one or more of the following three groups:

**PROPERTY SETTLEMENT CLASS:**

1) <u>Municipal Water Property Settlement Class:</u>  You owned a property used for residential purposes in the Village of Hoosick Falls that obtained its drinking water from the Village

Municipal Water System, and purchased that property on or before December 16, 2015 and owned that property on December 16, 2015; **OR**

2) <u>Private Well Water Property Settlement Class:</u>  You owned a property used for residential purposes in the Village of Hoosick Falls or Town of Hoosick that obtained its drinking water from a privately owned well in which PFOA was detected, and you owned that property at the time PFOA in the property's well was discovered through a water test on or after December 16, 2015.

## NUISANCE SETTLEMENT CLASS:

3) You owned a property used for residential purposes in the Village of Hoosick Falls or the Town of Hoosick that obtained its drinking water from a privately owned well in which PFOA was detected, and you **owned and resided in** that residence at the time PFOA in the property's well was discovered through a water test on or after December 16, 2015, and a point-of-entry treatment (POET) system was installed to filter water from the well; **OR**

4) You rented a property used for residential purposes in the Village of Hoosick Falls or the Town of Hoosick that obtained its drinking water from a privately owned well in which PFOA was detected, and you **rented and resided in** that residence at the time PFOA in the property's well was discovered through a water test on or after December 16, 2015, and a point-of-entry treatment (POET) system was installed to filter water from the well.

## MEDICAL MONITORING SETTLEMENT CLASS:

5) For at least six months between 1996 and 2016, you lived at a residence(s) in the Village of Hoosick Falls or the Town of Hoosick, where you ingested water that was supplied by either the Village Municipal Water System or from a privately owned well in which PFOA has been detected, and your blood serum was tested, which showed PFOA in your blood above 1.86 µg/L (parts per billion); **OR**

6) You are the parent or guardian of a child born to a female who meets the criteria in (5) and the child's blood serum was tested after birth, which showed PFOA in the child's blood above 1.86 µg/L (parts per billion).

If you are eligible to do so, you may submit a Claim to receive benefits as a member of more than one Settlement Class. Each Settlement Class Member must submit this Claim Form. You can only submit Claim Forms for yourself **and** another person if you are a parent or legal guardian of a minor or legal representative of a deceased or incompetent person who is also a Settlement Class Member.  In such case, you **must** submit a Claim Form for yourself and a **separate** Claim Form for the minor, deceased person, or incompetent person.  If you owned more than one property that would qualify you for the Property Settlement Class, you **must** submit a **separate** Claim Form for each property.

Capitalized terms not defined in this Claim Form have the same meaning as set forth in the Class Settlement Agreement, a copy of which is available at www.hoosickfallspfoasettlement.com.

**ADDITIONAL INFORMATION:**

**1)** You may obtain additional information about your submission of a Claim or about this Settlement at www.hoosickfallspfoasettlement.com or by calling _____.

**2)** You must review, sign and date Section V below.

**3)** Your completed Settlement Claim Form and supporting documentation must be submitted electronically and/or postmarked before _____, 2022 **[180 days after entry of Preliminary Approval Order]**. You may submit your Settlement Claim Form and supporting documentation, as indicated below:

    **a.** Electronically at: www.hoosickfallspfoasettlement.com. You are encouraged to submit your claim online for easy verification and processing.

    **b.** By mail to:

        General Administrator
        [Address]
        [City, State, Zip Code]

    **c.** By email to: [**General Administrator's email address**].

# SECTION I: Claimant's Information

Last Name                      First Name               Middle Initial

_____   _____   _____

Your Current Address (Number/Street/P.O. Box No.):

_____

City:                             State:              Zip Code

_____   _____   _____

Telephone Number:                      Email Address:

_____   _____

Are you filing this Claim on your own behalf? (Yes/No) _____

If No, provide the following information about the person on whose behalf you are completing this Form:

Last Name                                    First Name                              Middle Initial

_____          _____     _____

Current Address (if person is living):

_____

City:                                              State:                        Zip Code

_____     _____     _____

Telephone Number:                          Email Address:

_____           _____

Is this person:  A Minor / Deceased / Incompetent? _____

Are you the parent or legal guardian of this person?  (Yes/No) _____

If you are a legally appointed representative of this person, provide the following information:

Nature of Legal Representation (Estate Representative/Guardian/Conservator):

_____

Court that appointed you legal representative and date of appointment:

_____

**Submit with this Claim Form a copy of documentation from the Court reflecting your appointment.**

4

If you are filing this Claim on behalf of yourself, or as a legal representative of a minor, deceased person, or incompetent person who is/was a Settlement Class Member in the Property Settlement Class, Nuisance Settlement Class, or Medical Monitoring Settlement Class, please complete **Section II.**

# SECTION II: Information on Class Member and Claims

To the best of your knowledge and belief, to which of the following Settlement Classes do you or the person you are representing belong? (Please refer to the Instructions on pages 1-2 of this Claim Form for a description of the Settlement Classes.)

**Check any that apply:**

1. _____   Property Settlement Class (if selecting this class, also check (a) or (b) below)

        a. _____   Municipal Water Property Settlement Class

        b. _____   Private Well Water Property Settlement Class

2. _____   Nuisance Settlement Class

3. _____   Medical Monitoring Settlement Class

Based on what you checked above, please complete the appropriate section(s) below:

**PROPERTY SETTLEMENT CLASS**

Address of the property for which you are seeking benefits as a member of the Municipal Water Property Settlement Class or the Private Well Water Property Settlement Class, as described on pages 1-2 of this Claim Form (Number/Street/City/Zip Code):

_____

As of December 16, 2015, did this property obtain drinking water from the Village Municipal Water System?

_____

        If the property obtained drinking water from the Village Municipal Water System as of December 16, 2015, **submit with this Claim Form (1) proof of your ownership of the property as of December 16, 2015 and (2) proof of its water source**.  Proof of ownership can include a combination of the following:  (a) a copy of the deed to the property; (b) a copy of a tax bill demonstrating ownership of the property as of December 16, 2015; and/or (c) any other form of proof deemed appropriate by the General Administrator.  Proof of water source can include a water bill.  Identify below what, if anything, you are submitting as proof of ownership and proof of your water source. (Note: If you do not have a document showing your ownership and/or water source, the General Administrator may still be able

to verify your ownership and/or water source and/or may contact you for additional information.)

_____

Did this property obtain drinking water from a privately owned well that was tested for PFOA on or after December 16, 2015?

_____

If the property obtained drinking water from a privately owned well, **submit with this Claim Form (1) proof of your ownership of the property as of the date that a water test detected PFOA in the property's private well on or after December 16, 2015, and (2) a copy of PFOA well testing results obtained on or after December 16, 2015**. Proof of ownership can include combination of the following:  (a) a copy of the deed to the property; (b) a copy of a tax bill demonstrating ownership of the property as of the date when PFOA was discovered in the private well through a water test, and/or (c) any other form of proof deemed appropriate by the General Administrator.  Identify below what, if anything, you are submitting as proof of ownership and proof of your well testing results. (Note: If you do not have a document showing your ownership and/or well testing results, the General Administrator may still be able to verify your ownership and/or well testing results and/or may contact you for additional information.)**.**

_____

If you co-owned this property with another individual, please state their name and relation to you or the person you represent:

_____

7

**NUISANCE SETTLEMENT CLASS**

Address of the property for which you are seeking benefits as a member of the Nuisance Settlement Class, as described on page 2 of this Claim Form (Number/Street/City/Zip Code):

_____

**Submit with this Claim Form (1) proof of ownership of or leasehold interest in the property as of the date of that detectable levels of PFOA were discovered through a water test on or after December 16, 2015 and (2) a copy of well testing results if you have them.** Proof of ownership or leasehold interest may include a combination of the following: (a) a copy of the deed to the property; (b) a copy of a tax bill demonstrating ownership at the time that detectable levels of PFOA were discovered through a water test on or after December 16, 2015; (c) a copy of the lease for such property; (d) a sworn declaration confirming a leasehold interest at the time that detectable levels of PFOA were discovered through a water test on or after December 16, 2015; and/or 5) any other form of proof deemed appropriate by the General Administrator. (Note: If you do not have a document showing your ownership or leasehold interest and/or your well testing results, the General Administrator may still be able to verify your ownership or leasehold interest and/or well testing results and/or may contact you for additional information.).

**Submit with this Claim Form proof of the installment of a POET system on the property's private well (such as documentation from the State of New York showing installation or testing of such POET) if you have it.**

**You must also complete either a (i) Declaration of Residency for Nuisance Settlement Class Eligibility or (ii) Declaration of Residency for Nuisance Settlement Class Eligibility On Behalf Of Representative Of Estate Or Incompetent Person, stating that you or the person you represent resided at the property at the time when PFOA was detected in the property's private well. The Declarations of Residency for Nuisance Settlement Class Eligibility are attached to this Claim Form.**

**MEDICAL MONITORING SETTLEMENT CLASS**

To qualify as a member of this class, you must meet the criteria for the Medical Monitoring Settlement Class described on page 2 of this Claim Form.

Identify all residence(s) where you or the person you represent lived for at least six months (can be a combination of residences to reach six months cumulatively) between 1996 and 2016, the timeframe that you or the person you represent lived there (months and years), and the water source at that residence (municipal or private well). If the person you represent is a minor who was exposed to PFOA in utero, identify all residences where that minor's mother lived for at least six months between 1996 and 2016, the timeframe that she lived there (months and years), and the water source at that residence (municipal or private well).

_____      _____   _____
Property Address             Dates (M/Y to M/Y)   Water source (Municipal or well)

_____      _____   _____
Property Address             Dates (M/Y to M/Y)   Water source (Municipal or well)

_____      _____   _____
Property Address             Dates (M/Y to M/Y)   Water source (Municipal or well)

_____      _____   _____
Property Address             Dates (M/Y to M/Y)   Water source (Municipal or well)

_____      _____   _____
Property Address             Dates (M/Y to M/Y)   Water source (Municipal or well)

Has your blood or the blood of the person you represent been tested for the presence of PFOA?

_____ (Yes/No)

What was the PFOA blood serum level? _____

If you are representing a minor who was exposed to PFOA in utero, has the blood of that minor's mother been tested for the presence of PFOA?

_____ (Yes/No)

What was the minor's mother's PFOA blood serum level?

_____

**You must submit a copy of your blood test or the blood test of the person you represent along with this Claim Form. If you do not submit a copy of your blood test, your Claim will be**

**deficient and you may not be eligible to participate in the Medical Monitoring Program. If you do not have a copy of a blood test, but your blood was tested by the NYS Department of Health (or another physician), please contact the General Administrator at _____ for information on how to obtain a copy of your blood test results.**

**If your residence(s) obtained drinking water from a privately owned well, submit with this Claim Form a copy of PFOA well testing results.** (Note: If you do not have a document showing your well testing results, the General Administrator may still be able to verify your well testing results and/or may contact you for additional information.)

**If your residence(s) obtained drinking water from the Village Municipal Water System, submit with this Claim Form proof of its water source.  Proof of water source can include a water bill.** (Note: If you do not have a document showing your water source, the General Administrator may still be able to verify your water source and/or may contact you for additional information.)

**You must also complete one of the following stating that you or the person you represent ingested municipal or private well water at the residence(s) listed above for a period of at least six months between 1996 and 2016: (i) Declaration of Residency for Medical Monitoring Class Eligibility, (ii) Declaration of Residency for Medical Monitoring Class Eligibility On Behalf of Person Less than 18 Years of Age, or (iii) Declaration of Residency for Medical Monitoring Class Eligibility On Behalf of Legal Guardian Or Representative Of Person Less Than 18 Years Of Age Or Person Declared Incompetent. The Declarations of Residency for Medical Monitoring Class Eligibility are attached at the end of this Claim Form.**

# SECTION IV: Release and Warranties

The Claimant (or Claimant's Representative) hereby acknowledges that he, she or it has read and agrees to by bound by the terms of the Release (set forth below), the definition of Released Claims, the Exclusive Remedy, Covenant Not to Sue, Waiver of Statutory Rights, and all other provisions of the Settlement Agreement, including in Section 6 (Dismissal, Release of Claims, and Related Provisions).

The Claimant (or Claimant's Representative) hereby warrants and represents that he, she or it is, to the best of their belief, a Settlement Class Member (or a parent or legal guardian of an minor less than 18 years of age who is a Class Member, or the legal representative appointed to represent (i) the Estate of a deceased Class Member, or (ii) an incompetent Class Member) in one or more Settlement Classes as defined in the Settlement Agreement and Notices, and that the Claimant believes that he, she or it is eligible to receive a distribution from the Net Settlement Fund under the terms and conditions of the Settlement Agreement and/or to participate in the Medical Monitoring Program.

The Claimant (or Claimant's Representative) agrees to the release and covenant not to sue in conformity with the Settlement Agreement in order to, in an individual or representative capacity, receive the Claimant's share of the Net Settlement Fund and/or to participate in the Medical Monitoring Program.

The Claimant (or Claimant's Representative) agrees that the submission of this Claim Form constitutes a full release of and covenant not to sue on the Released Claims against the Released Parties as set forth in the Settlement Agreement (and below).

**The release shall be of no force or effect unless and until the Court grants Final Approval of the Settlement and the Settlement becomes effective on the Effective Date.**

The Claimant (or Claimant's Representative) hereby warrants and represents that he, she or it has not yet assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any right of action or claim released pursuant to this release or any other part or portion thereof.

>  **Release.** Upon the Effective Date, the Releasing Parties shall have expressly, intentionally, voluntarily, fully, finally, irrevocably, and forever released, relinquished, waived, compromised, settled, and discharged the Released Parties from each and every past, present, and future claim and cause of action, including without limitation causes of action and/or relief created or enacted in the future—whether known or unknown, whether direct or indirect, individual or class, in constitutional, federal, state, local, statutory, civil, or common law or in equity, or based on any other law, rule, regulation, ordinance, directive, contract, or the law of any foreign jurisdiction, whether fixed or contingent, known or unknown, liquidated or unliquidated, suspected or unsuspected, asserted or unasserted, matured or unmatured, or for compensatory damages, consequential damages, incidental damages, statutory damages, punitive, special, multiple, treble, or exemplary damages, nominal damages, disgorgement, restitution, indemnity, contribution, penalties, injunctive relief, declaratory relief, attorneys' fees, court costs, or expenses—that were or could have been asserted in the Action or any other forum, arising out of or related to, either directly or indirectly or in whole or in part: (i) the subject matter of any allegations contained in the Second Amended Complaint, any allegations otherwise asserted in the Action, or the subject matter of any discovery obtained in the Action, (ii) the alleged presence of PFAS (including PFOA) in drinking water or the environment (including but not limited to in air, groundwater, surface water, municipal water, private well water, or soil) within the Village of Hoosick Falls or the Town of Hoosick, (iii) the sale, purchase, use, handling, transportation, release, discharge, migration, emission, spillage, or disposal of PFAS (including PFOA) to, at, or from a Facility in or near the Village of Hoosick Falls or the Town of Hoosick, including any such PFAS (including PFOA) present as a result of disposal at or discharge to, directly or indirectly, any landfill, sewage system, water treatment facility, or any other location in and around the Village of Hoosick Falls or Town of Hoosick, and/or resulting in any alleged exposure of any Settlement Class Member to PFAS (including PFOA) through drinking water, inhalation, dermal

contact, or otherwise; (iv) for any type of relief with respect to the acquisition, installation, maintenance, operation, or presence of, including the cost or purported inconvenience or loss of enjoyment of, property associated with whole-house filters, point-of-entry (POET) filters, point-of-use filters, municipal water, private well water, bottled water, alternative water supplies, or remediation; (v) for property damage or property-value diminution, including without limitation stigma, purportedly attributable to the alleged presence of PFAS (including PFOA) in the Village Municipal Water System or any private well, or in the air, groundwater, surface water, municipal water, private well water, or soil in or around the Village of Hoosick Falls or the Town of Hoosick; and/or (vi) based on PFAS (including PFOA) in the blood or tissue of any Settlement Class Member (the "**Released Claims**"); provided, however, that the "Released Claims" do not include any individual claims of the Releasing Parties (a) for any damages (including for screenings, tests, examinations, and/or diagnostic procedures) related to past, present, or future manifested bodily injuries that have resulted in a medically diagnosed condition, or (b) to enforce the terms of this Agreement or the Final Approval Order.  For purposes of this Agreement, "manifested bodily injuries that have resulted in a medically diagnosed condition" do not include the detection or accumulation of PFAS (including PFOA) in blood or other bodily tissue.

**Covenant Not To Sue:**  Each of the Releasing Parties shall forever refrain from instituting, maintaining, prosecuting, or continuing any suit, action, arbitration, or proceeding against any of the Released Parties with respect to the Released Claims.

# SECTION V: Claimant or Claimant's Representative Signature

I declare that the information provided in this Claim Form is true and accurate to the best of my knowledge. I understand that the General Administrator may need to verify some of the information that I submitted.

_____          _____
Signature                                         Date

**IF YOU ARE A MEMBER OF THE NUISANCE SETTLEMENT CLASS OR MEDICAL MONITORING SETTLEMENT CLASS, OR IF YOU ARE SUBMITTING THIS CLAIM ON BEHALF OF A MINOR OR INCOMPETENT PERSON, YOU MUST COMPLETE ONE OR MORE DECLARATIONS THAT FOLLOW.**

*For additional information or assistance in completing this Claim Form, please contact the General Administrator at _____*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHELE BAKER; CHARLES CARR; ANGELA CORBETT; PAMELA FORREST; MICHAEL HICKEY, individually and as parent and natural guardian of O.H., infant; KATHLEEN MAIN-LINGENER; KRISTIN MILLER, as parent and natural guardian of K.M., infant; JENNIFER PLOUFFE; SILVIA POTTER, individually and as parent and natural guardian of C.P, infant; and DANIEL SCHUTTIG, individually and on behalf of all others similarly situated, | Case No. 1:16-CV-00917-LEK-DJS |
| *Plaintiffs*, | |
| v. | |
| SAINT-GOBAIN PERFORMANCE PLASTICS CORP., and HONEYWELL INTERNATIONAL INC. f/k/a ALLIED-SIGNAL INC. and/or ALLIEDSIGNAL LAMINATE SYSTEMS, INC., E.I. DUPONT DE NEMOURS AND COMPANY, INC., and 3M CO., | |
| *Defendants*. | |

**DECLARATION OF RESIDENCY FOR NUISANCE SETTLEMENT CLASS
ELIGIBILITY**

Pursuant to 28 U.S.C. § 1746, I, _____, declare

as follows:

1. I am over eighteen years of age.

2. In late 2015 and/or 2016 I had an **owned or rented** [**circle which applies**] property

   located at _____, in the Village of Hoosick Falls and/or

   Town of Hoosick, New York.

1

3. This property obtained drinking water from a private well that was found to contain PFOA.

4. I resided at this property at the time PFOA was discovered in the property's private well.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this: _____ day of _____, 2021.

_____

[Sign]

_____

[Print name]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHELE BAKER; CHARLES CARR; ANGELA CORBETT; PAMELA FORREST; MICHAEL HICKEY, individually and as parent and natural guardian of O.H., infant; KATHLEEN MAIN-LINGENER; KRISTIN MILLER, as parent and natural guardian of K.M., infant; JENNIFER PLOUFFE; SILVIA POTTER, individually and as parent and natural guardian of C.P, infant; and DANIEL SCHUTTIG, individually and on behalf of all others similarly situated,<br><br>        *Plaintiffs*,<br><br>v.<br><br>SAINT-GOBAIN PERFORMANCE PLASTICS CORP., and HONEYWELL INTERNATIONAL INC. f/k/a ALLIED-SIGNAL INC. and/or ALLIEDSIGNAL LAMINATE SYSTEMS, INC., E.I. DUPONT DE NEMOURS AND COMPANY, INC., and 3M CO.,<br><br>        *Defendants*. | Case No. 1:16-CV-00917-LEK-DJS |

**DECLARATION OF RESIDENCY FOR NUISANCE SETTLEMENT CLASS
ELIGIBILITY ON BEHALF OF REPRESENTATIVE
OF ESTATE OR INCOMPETENT PERSON**

Pursuant to 28 U.S.C. § 1746, I, _____, declare
                                                          [Name of person signing declaration]
as follows:

1. I am over eighteen years of age.

2. I am the legally appointed representative of _____, having been
                                                                    [Name of person/decedent you represent]
appointed by the _____ Court in _____.
                          [Name of Court]                              [Date of appointment]

1

3.  In late 2015 and/or 2016 _____

[name of person/decedent you represent]

**owned or rented** [**circle which applies**] property located at

_____, in the Village of Hoosick Falls and/or Town of Hoosick, New York.

[Property address with PFOA contaminated well]

4.  This property obtained drinking water from a private well that was found to contain

PFOA.

5.  _____ resided at this property at the time PFOA

[Name of person/decedent you represent]

was discovered in the property's private well.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this: _____ day of _____, 2021.

_____

[Sign]

_____

[Print name]

2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MICHELE BAKER; CHARLES CARR;
ANGELA CORBETT; PAMELA FORREST;
MICHAEL HICKEY, individually and as parent
and natural guardian of O.H., infant;
KATHLEEN MAIN-LINGENER; KRISTIN
MILLER, as parent and natural guardian of
K.M., infant; JENNIFER PLOUFFE; SILVIA
POTTER, individually and as parent and natural
guardian of C.P, infant; and DANIEL
SCHUTTIG, individually and on behalf of all
others similarly situated,

                *Plaintiffs*,

v.

SAINT-GOBAIN PERFORMANCE PLASTICS
CORP., and HONEYWELL INTERNATIONAL
INC. f/k/a ALLIED-SIGNAL INC. and/or
ALLIEDSIGNAL LAMINATE SYSTEMS,
INC., E.I. DUPONT DE NEMOURS AND
COMPANY, INC., and 3M CO.,

                *Defendants*.

Case No. 1:16-CV-00917-LEK-DJS

**DECLARATION OF RESIDENCY FOR MEDICAL MONITORING CLASS
ELIGIBILITY**

       Pursuant to 28 U.S.C. § 1746, I, _____, declare

as follows:

1.    I am over eighteen years of age.

2.    I resided and consumed municipal water or water from a private well in which PFOA was

       detected at the following residence(s) located in the Village of Hoosick Falls and/or the

Town of Hoosick, New York on the date(s) listed below **[dates on or after January 1, 1996 and before 2017]**:

_____          _____          _____
Property Address                              Dates (M/Y to M/Y)      Water source (Municipal or well)

_____          _____          _____
Property Address                              Dates (M/Y to M/Y)      Water source (Municipal or well)

_____          _____          _____
Property Address                              Dates (M/Y to M/Y)      Water source (Municipal or well)

_____          _____          _____
Property Address                              Dates (M/Y to M/Y)      Water source (Municipal or well)

_____          _____          _____
Property Address                              Dates (M/Y to M/Y)      Water source (Municipal or well)


I declare under penalty of perjury that the foregoing is true and correct.

Executed on this: _____ day of _____, 2021.

_____

[Sign]

_____

[Print name]

2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHELE BAKER; CHARLES CARR; ANGELA CORBETT; PAMELA FORREST; MICHAEL HICKEY, individually and as parent and natural guardian of O.H., infant; KATHLEEN MAIN-LINGENER; KRISTIN MILLER, as parent and natural guardian of K.M., infant; JENNIFER PLOUFFE; SILVIA POTTER, individually and as parent and natural guardian of C.P, infant; and DANIEL SCHUTTIG, individually and on behalf of all others similarly situated, | Case No. 1:16-CV-00917-LEK-DJS |
| *Plaintiffs*, | |
| v. | |
| SAINT-GOBAIN PERFORMANCE PLASTICS CORP., and HONEYWELL INTERNATIONAL INC. f/k/a ALLIED-SIGNAL INC. and/or ALLIEDSIGNAL LAMINATE SYSTEMS, INC., E.I. DUPONT DE NEMOURS AND COMPANY, INC., and 3M CO., | |
| *Defendants*. | |

**DECLARATION OF RESIDENCY FOR MEDICAL MONITORING CLASS**
**ELIGIBILITY ON BEHALF OF PARENT**
**OF PERSON LESS THAN 18 YEARS OF AGE**

Pursuant to 28 U.S.C. § 1746, I, _____, declare as follows:

1. I am over eighteen years of age.

2. I am the parent of _____, who is less than eighteen years of age.

1

3. My child or, if I am representing a child exposed to PFOA in utero, my child's mother, resided and consumed municipal water or water from a private well in which PFOA was detected at the following residence(s) located at

_____ in the Village of Hoosick Falls and/or the Town of Hoosick, New York on the date(s) listed below **[dates on or after January 1, 1996 and before 2017]**:

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Property Address | Dates (M/Y to M/Y) | Water source (Municipal or well) |
| _____ | _____ | _____ |
| Property Address | Dates (M/Y to M/Y) | Water source (Municipal or well) |
| _____ | _____ | _____ |
| Property Address | Dates (M/Y to M/Y) | Water source (Municipal or well) |
| _____ | _____ | _____ |
| Property Address | Dates (M/Y to M/Y) | Water source (Municipal or well) |
| _____ | _____ | _____ |
| Property Address | Dates (M/Y to M/Y) | Water source (Municipal or well) |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this: _____ day of _____, 2021.

_____

[Sign]

_____

[Print name]

2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHELE BAKER; CHARLES CARR; ANGELA CORBETT; PAMELA FORREST; MICHAEL HICKEY, individually and as parent and natural guardian of O.H., infant; KATHLEEN MAIN-LINGENER; KRISTIN MILLER, as parent and natural guardian of K.M., infant; JENNIFER PLOUFFE; SILVIA POTTER, individually and as parent and natural guardian of C.P, infant; and DANIEL SCHUTTIG, individually and on behalf of all others similarly situated, | Case No. 1:16-CV-00917-LEK-DJS |
| *Plaintiffs*, | |
| v. | |
| SAINT-GOBAIN PERFORMANCE PLASTICS CORP., and HONEYWELL INTERNATIONAL INC. f/k/a ALLIED-SIGNAL INC. and/or ALLIEDSIGNAL LAMINATE SYSTEMS, INC., E.I. DUPONT DE NEMOURS AND COMPANY, INC., and 3M CO., | |
| *Defendants*. | |

**DECLARATION OF RESIDENCY FOR MEDICAL MONITORING CLASS
ELIGIBILITY ON BEHALF OF LEGAL GUARDIAN OR REPRESENTATIVE OF
PERSON LESS THAN 18 YEARS OF AGE OR PERSON DECLARED INCOMPETENT**

Pursuant to 28 U.S.C. § 1746, I, _____, declare

as follows:

1.  I am over eighteen years of age.

2.  I am the legally appointed representative of _____, having been

[Name of child or incompetent person]

appointed by the _____ Court in _____.

[Name of Court]                          [Date of appointment]


3.  This person who I represent or, if I am representing a child exposed to PFOA in utero,

that child's mother, resided and consumed municipal water or water from a private well in which

PFOA was detected at the following residence(s) in the Village of Hoosick Falls and/or the

Town of Hoosick, New York on the date(s) listed below [**dates on or after January 1, 1996**

**and before 2017**]:

_____        _____        _____

Property Address                        Dates (M/Y to M/Y)    Water source (Municipal or well)


_____        _____        _____

Property Address                        Dates (M/Y to M/Y)    Water source (Municipal or well)


_____        _____        _____

Property Address                        Dates (M/Y to M/Y)    Water source (Municipal or well)


_____        _____        _____

Property Address                        Dates (M/Y to M/Y)    Water source (Municipal or well)


_____        _____        _____

Property Address                        Dates (M/Y to M/Y)    Water source (Municipal or well)


I declare under penalty of perjury that the foregoing is true and correct.

Executed on this: _____ day of _____, 2021.

_____

[Sign]

_____

[Print name]

2

# EXHIBIT B

<span style="text-align:center">UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK</span>

# If you drank water supplied by the Village of Hoosick Falls Municipal Water System or from a private well in the Village of Hoosick Falls or the Town of Hoosick, or owned or rented property in the Village of Hoosick Falls or the Town of Hoosick, you could get benefits from a class action settlement.

*A federal court authorized this Notice. It is not a solicitation from a lawyer.*

- A Settlement has been reached with Saint-Gobain Performance Plastics Corporation ("Saint-Gobain"), Honeywell International Inc. ("Honeywell"), and the 3M Company ("3M") (the "Settling Defendants") in a class action lawsuit about the effects of perfluorooctanoic acid (PFOA) contamination in and around Hoosick Falls.

- The Settlement includes:

  o Individuals who for a period of at least six months between 1996 and 2016, lived at a residence(s) in the Village of Hoosick Falls or Town of Hoosick where they ingested water that was supplied by the Village Municipal Water System or from a private well in which PFOA has been detected, *and* underwent blood serum tests that detected a PFOA level in their blood above 1.86 µg/L (parts per billion); *or* any natural child who was born to a female who meets and/or met the above criteria at the time of the child's birth *and* whose blood serum was tested after birth and detected a PFOA level above 1.86 µg/L ("Medical Monitoring Settlement Class Members");

  o Persons who are or were owners of Residential Property that was supplied with drinking water from the Village Municipal Water System, *and* who purchased that property on or before December 16, 2015 and owned that property as of December 16, 2015 ("Municipal Water Property Settlement Class Members");

  o Persons who are or were owners or renters of Residential Property located in the Village of Hoosick Falls or the Town of Hoosick that was supplied with drinking water from a privately owned well in which PFOA was detected, had a point-of-entry treatment (POET) system installed to filter water from that well, and who *either* owned and occupied that property at the time PFOA in the property's private well was discovered through a water test on or after December 16, 2015; *or* rented and occupied the property at the time PFOA in the property's private well was discovered through a water test on or after December 16, 2015 ("Nuisance Settlement Class Members"); and

  o Persons who are or were owners of Residential Property located in the Village of Hoosick Falls or the Town of Hoosick that was supplied with drinking water from a private well in which PFOA was detected, *and* who owned that property at the time PFOA in the property's private well was discovered through a water test on or after December 16, 2015 ("Private Well Water Property Settlement Class Members").

- Your legal rights are affected regardless of whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| SUBMIT A CLAIM FORM | This is the only way you can get a payment or other benefits from this Settlement. |
| EXCLUDE YOURSELF FROM THE SETTLEMENT | Do not get a payment or other settlement benefits. This is the only option that allows you to be part of any other lawsuit against the Released Parties, including the Settling Defendants, for the legal claims made in this lawsuit and released by the Settlement. |
| OBJECT TO THE SETTLEMENT | Write to the Court with reasons why you do not agree with the Settlement. |
| GO TO THE FINAL APPROVAL HEARING | You may ask the Court for permission for you or your attorney to speak about your objection at the Final Approval Hearing. |
| DO NOTHING | You will not get a payment or other benefits from this Settlement and you will give up certain legal rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court overseeing this case still has to decide whether to approve the Settlement.

## BASIC INFORMATION

| **1.   Why is this Notice being provided?** |
|---|

The Court directed that this Notice be provided because you have a right to know about a proposed settlement that has been reached in this class action lawsuit and about all of your options before the Court decides whether to grant final approval to the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of this case is the United States District Court for the Northern District of New York. The case is known as *Baker v. Saint-Gobain Performance Plastics Corporation*, No. 1:16-cv-917, including Nos. 1:16-cv-220, 1:16-cv-292, 1:16-cv-394, and 1:16-cv-476 (the "Action"). U.S. District Court Judge Lawrence Kahn is presiding over the Action. The people who filed the lawsuit are called Plaintiffs. The companies they sued, Saint-Gobain, Honeywell, 3M, and E.I. DuPont de Nemours and Company, are called Defendants.  This Settlement is between Plaintiffs and the Settling Defendants.

| 2. | What is this lawsuit about? |
|---|---|

Plaintiffs claim that Saint-Gobain and Honeywell contaminated the aquifer beneath Hoosick Falls with perfluorooctanoic acid, commonly referred to as PFOA, by releasing PFOA into the environment. As a result, people living in and around the Village of Hoosick Falls and the Town of Hoosick allege that they unknowingly consumed drinking water containing PFOA and have concentrations of PFOA in their blood that are higher than average. In addition, Plaintiffs allege that the presence of PFOA has negatively impacted individuals' ability to use and enjoy their properties, caused residents to fear the safety of their water supply, and negatively impacted property values.  Plaintiffs further allege that 3M sold PFOA and/or PFOA-containing products to Saint-Gobain and Honeywell but failed to warn those companies of the dangers associated with PFOA and PFOA-containing products.

The Settling Defendants deny all of the claims made in the Action, and dispute all allegations of wrongdoing or liability against them.

PFOA is a man-made chemical historically used to manufacture products that were resistant to sticking, heat, water, stains, and grease.

| 3. | What is a class action? |
|---|---|

In a class action, one or more people called representative Plaintiffs (in this case, Michele Baker, Charles Carr, Angela Corbett, Pamela Forrest, Michael Hickey (individually and as parent and natural guardian of O.H., infant), Kathleen Main-Lingener, Kristin Miller (also known as Kristin Harrington) (as parent and natural guardian of K.M., infant), Jennifer Plouffe, Silvia Potter (individually and as parent and natural guardian of C.P., infant), and Daniel Schuttig) sue on behalf of people who have similar claims. Together, all these people and the Persons that they represent are called Settlement Class Members. One Court resolves the issues for all Settlement Class Members, except for those who exclude themselves from the Settlement Classes.

| 4. | Why is there a Settlement? |
|---|---|

The Court did not decide in favor of the Plaintiffs or the Settling Defendants. Instead, the Plaintiffs and Settling Defendants agreed to a settlement. This way, they avoid the cost and burden of a trial and eligible Settlement Class Members can get benefits and more quickly. The class representative Plaintiffs and their attorneys ("Class Counsel") think the Settlement is best for all Settlement Class Members.

### WHO IS INCLUDED IN THE SETTLEMENT?

| 5. | How do I know if I am part of the Settlement? |
|---|---|

You are part of the Settlement as a Settlement Class Member if you fit within one or more of the four Settlement Class definitions below (unless you fall into one of the exclusions described in Section 6):

1. <u>Medical Monitoring Settlement Class</u>: all individuals who, for a period of at least six months between 1996 and 2016, have (a) ingested water at their residence(s), which was supplied by the Village Municipal Water System or from a private well in the Village of Hoosick Falls or Town of Hoosick in which PFOA has been detected, and (b) underwent blood serum tests that detected a PFOA level in their blood above 1.86 µg/L; or any natural child (i) who was born to a female who meets and/or met the above criteria at the time of the child's birth and (ii) whose blood serum was tested after birth and detected a PFOA level above 1.86 µg/L.

2. <u>Municipal Water Property Settlement Class</u>: all Persons who are or were owners of Residential Property that was supplied with drinking water from the Village Municipal Water System, and who purchased that property on or before December 16, 2015 and owned that property as of December 16, 2015. This group, together with the Private Well Water Property Settlement Class, is also referred to as the "Property Settlement Class."

3. <u>Nuisance Settlement Class</u>: all Persons who are or were owners or renters of Residential Property located in the Village of Hoosick Falls or the Town of Hoosick that was supplied with drinking water from a privately owned well in which PFOA was detected, had a point-of-entry treatment (POET) system installed to filter water from that well, and who either (i) owned and occupied that property at the time PFOA in the property's private well was discovered through a water test on or after December 16, 2015; or (ii) rented and occupied the property at the time PFOA in the property's private well was discovered through a water test on or after December 16, 2015.

4. <u>Private Well Water Property Settlement Class</u>: all Persons who are or were owners of Residential Property located in the Village of Hoosick Falls or the Town of Hoosick that was supplied with drinking water from a private well in which PFOA was detected, and who owned that property at the time PFOA in the property's private well was discovered through a water test on or after December 16, 2015. This group, together with the Municipal Water Property Settlement Class, is also referred to as the "Property Settlement Class."

---

**6.   Are there exceptions to being included in the Settlement?**

Yes. The Settlement does <u>not</u> include (i) anyone who timely and validly requests to be excluded from the Settlement (see Question 18) (ii) anyone who previously filed a claim against any Settling Defendant alleging a PFOA-related injury or illness, including a spousal derivative claim, or seeking medical monitoring or property damages, related to the presence of PFOA in the Village Municipal Water System, in private wells in the Village of Hoosick Falls or Town of Hoosick, on or at their property, or in their blood, in a lawsuit (other than this lawsuit) that has not been dismissed or does not have a request to dismiss pursuant to Fed. R. Civ. P. 41(a)(2) pending as of 30 days prior to the Final Approval Hearing, (iii) the Settling Defendants, any entity or division in which the Settling Defendants have a controlling interest, their legal representatives in this lawsuit, and their officers, directors, assigns and successors, (iv) the judge to whom this lawsuit is assigned, any member of the judge's immediate family and the judge's staff, or any other judicial officer or judicial staff member assigned to this case, (v) Class Counsel, including their partners, members, and shareholders, and any immediate family members, (vi) any State, the United States, or any of its agencies, and (vii) the Village of Hoosick Falls and the Town of Hoosick.

---

**7.   I am still not sure if I am included.**

If you are still not sure whether you are included, you can call 1-___-___-____ or visit www.hoosickfallspfoasettlement.com for more information.

### THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

---

**8.   What does the Settlement provide?**

The Settling Defendants have agreed to pay $65,250,000 into a Settlement Fund. After deducting attorneys' fees and costs, the class representatives' service awards, and the costs of notice and administration, the balance of the fund will allocated among the Property Settlement Class ($20,700,000) and Nuisance Settlement Class ($7,761,683), and the Medical Monitoring Program ($22,800,000).

---

**9.   How much will the Property Settlement Class payments be?**

The full market values of all Eligible Properties as determined by the 2015 County Assessment Roll will be totaled and used as the denominator of a fraction. The full market value of the Settlement Class Member's Eligible Property will be the numerator of this fraction. The fraction will be multiplied by $20,700,000 to determine the amount due to the Property Settlement Class Member or Members who owned the Eligible Property as of December 15, 2016.

Payment = (Market value of Settlement Class Member's Eligible Property x $20,700,000) / Total market value of all Eligible Properties

An Eligible Property is a Residential Property that either (1) one or more Municipal Water Property Settlement Class Members demonstrates that he/she owned as of December 16, 2015, and obtained its drinking water from the Village Municipal Water System; or (2) one or more Private Well Property Settlement Class Members demonstrates that he/she owned as of December 16, 2015, that is located in the Village of Hoosick Falls or Town of Hoosick, and obtained its drinking water from a private well with detectable levels of PFOA discovered through a water test on or after December 16, 2015.

---

**10.   How much will the Nuisance Settlement Class payments be?**

Nuisance payment amounts will be calculated by dividing the total number of valid Nuisance claims from Settlement Class Members by the Settlement amount allocated for the Nuisance Settlement Class ($7,761,683). Payments will be distributed evenly among all eligible Nuisance Settlement Class Members who submit a valid Claim Form.

---

**11.   Tell me more about the Medical Monitoring Program.**

The Medical Monitoring Allocation will be used to pay all expenses related to medical monitoring, including payments to Participating and Non-Participating Physicians, the Overseeing Program Physician, laboratories, and all Medical Monitoring Administration Costs. The Medical Monitoring Program will begin after the Settlement becomes final and will end on the earlier of (a) when the $22,800,000 Medical Monitoring Allocation has been fully used; or (b) when all bills incurred on or before the ten-year anniversary of the date the Settlement becomes final are paid. Complete details about the testing and services protocols covered by the Medical Monitoring Program are attached to the Class Settlement Agreement as Appendix A.

Medical Monitoring Settlement Class Members who complete both the Initial Informational Survey and the Initial Screening Consultation within 12 months of the date the Settlement becomes final will receive a $100 (maximum) incentive payment. If money

remains in the allocation at the end of the Medical Monitoring Program, additional payment may be made to Medical Monitoring Settlement Class Members who have participated in all services available to them and under certain circumstances may also be paid as a contribution to a not-for-profit organization that focuses on health and well-being of residents in or around the Town of Hoosick.

### HOW TO GET SETTLEMENT BENEFITS—SUBMITTING A CLAIM FORM

**12. How do I get a payment and participate in the Medical Monitoring Program?**

To qualify for a Settlement payment and/or participate in the Medical Monitoring Program, you must complete and submit a Claim Form by **Month __, 2021**. You may use the Claim Form enclosed with this notice and return it in the pre-paid postage envelope, complete and submit a Claim Form online at www.hoosickfallspfoasettlement.com, or email a completed Claim Form to _____. Claim Forms are also available by calling 1-___-___-____ or by writing to *Baker v. Saint-Gobain Performance Plastics Corporation* Settlement Administrator, P.O. Box _____, City, ST _____-____.

**13. When will I get my payment and when will the Medical Monitoring Program begin?**

The Court will hold a Final Approval Hearing at __:_0 _.m. on Month __, 2021 to decide whether to approve the Settlement. If the Court approves the Settlement, there may be appeals. It is always uncertain whether any appeals will be filed and, if so, how long it will take to resolve them. Settlement payments will be distributed, and the Medical Monitoring Program will begin, as soon as possible, if and when the Court grants final approval to the Settlement and after any appeals are resolved.

**14. What am I giving up to get a payment or stay in the Settlement?**

Unless you exclude yourself, you are staying in the Settlement. If the Settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you. You won't be able to sue or be part of any other lawsuit against the Settling Defendants and the Released Parties (see next question) about the legal issues resolved by this Settlement. The rights you are giving up are called Released Claims.

**15. What are the Released Claims?**

If the Settlement is approved and becomes final, Settlement Class Members will have expressly, intentionally, voluntarily, fully, finally, irrevocably, and forever released, relinquished, waived, compromised, settled, and discharged the Released Parties (Settling Defendants and their current, former, and future direct and indirect parents, subsidiaries, divisions, affiliates, affiliated business entities, joint ventures, successors, predecessors, including Dyneon, LLC, Allied-Signal Inc., AlliedSignal Laminate Systems, Inc., Furon Company, and any entity identified as a predecessor to any Settling Defendant in the Second Amended Complaint or for which the Second Amended Complaint alleges that any Settling Defendant has succeeded to liability on the basis of any legal theory; and all of their current, former, and future agents, employees, officers, directors, partners, shareholders, owners, members, promoters, representatives, distributors, trustees, attorneys, insurers, subrogees, and assigns, individually or in their corporate or personal capacity, and anyone acting on their behalf, including in a representative or derivative capacity) from each and every past, present, and future claim and cause of action, including causes of action and relief created or enacted in the future—whether known or unknown, whether direct or indirect, individual or class, in constitutional, federal, state, local, statutory, civil, or common law or in equity, or based on any other law, rule, regulation, ordinance, directive, contract, or the law of any foreign jurisdiction, whether fixed or contingent, known or unknown, liquidated or unliquidated, suspected or unsuspected, asserted or unasserted, matured or unmatured, or for compensatory damages, consequential damages, incidental damages, statutory damages, punitive, special, multiple, treble, or exemplary damages, nominal damages, disgorgement, restitution, indemnity, contribution, penalties, injunctive relief, declaratory relief, attorneys' fees, court costs, or expenses—that were or could have been asserted in the Action or any other forum, arising out of or related to, either directly or indirectly or in whole or in part: (i) the subject matter of any allegations contained in the Second Amended Complaint, any allegations otherwise asserted in the Action, or the subject matter of any discovery obtained in the Action; (ii) the alleged presence of PFAS (including PFOA) in drinking water or the environment (including, for example, air, groundwater, surface water, municipal water, private well water, or soil) within the Village of Hoosick Falls or the Town of Hoosick; (iii) the sale, purchase, use, handling, transportation, release, discharge, migration, emission, spillage, or disposal of PFAS (including PFOA) to, at, or from a Facility in or near the Village of Hoosick Falls or the Town of Hoosick, including any such PFAS (including PFOA) present as a result of disposal at or discharge to, directly or indirectly, any landfill, sewage system, water treatment facility, or any other location in and around the Village of Hoosick Falls or Town of Hoosick, and/or resulting in any alleged exposure of any Settlement Class Member to PFAS (including PFOA) through drinking water, inhalation, dermal contact, or otherwise; (iv) for any type of relief with respect to the acquisition, installation, maintenance, operation, or presence of, including the cost or purported inconvenience or loss of enjoyment of, property associated with whole-house filters, point-of-entry (POET) filters, point-of-use filters, municipal water, private well water, bottled water, alternative water supplies, or remediation; (v) for property damage or property-value diminution, including without limitation stigma, purportedly attributable to the alleged presence of PFAS (including PFOA) in the Village Municipal Water System or any private well, or in the air, groundwater, surface water, municipal water, private well water, or soil in and around the Village of Hoosick Falls or the Town of Hoosick; and/or (vi) based on PFAS (including PFOA) in the blood or tissue of any Settlement Class Member.

The Released Claims do not include any individual claims for any damages (including for screenings, tests, examinations, and/or diagnostic procedures) related to past, present, or future manifested bodily injuries that have resulted in a medically diagnosed condition, or to enforce the terms of this Agreement or the Final Approval Order. "Manifested bodily injuries that have resulted in a medically diagnosed condition" do not include the detection or accumulation of PFAS (including PFOA) in blood or other bodily tissue.

### THE LAWYERS REPRESENTING YOU

| **16.  Do I have a lawyer in this case?** |
|---|

Yes. The Court appointed Stephen G. Schwarz and Hadley L. Matarazzo of Faraci Lange, LLP, James J. Bilsborrow of Seeger Weiss LLP, and Robin L. Greenwald of Weitz & Luxenberg, P.C. as "Class Counsel" to represent you and other Settlement Class Members. These lawyers and their firms are experienced in handling similar cases. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

| **17.  How will Class Counsel be paid?** |
|---|

Class Counsel will ask the Court for an award of attorneys' fees of up to 19% of the Settlement Fund (up to $12,397,500), plus reimbursement of reasonable litigation costs. They will also ask the Court to approve $25,000 service awards to be paid to each of the class representative Plaintiffs (a total payment of $250,000). The Court may award less than these amounts. If approved, these fees, costs, and awards will be paid from the Settlement Fund before making payments and the Medical Monitoring Program available to Settlement Class Members.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

| **18.  How do I get out of the Settlement?** |
|---|

To exclude yourself from the Settlement, you must send a letter by mail stating (1) you want to be excluded from *Baker v. Saint-Gobain Performance Plastics Corporation*, No. 1:16-cv-917 (N.D.N.Y.), (2) your full name, current address, and telephone number, (3) facts that prove you are a Settlement Class member, and (4) your signature. You must mail your exclusion request postmarked no later than **Month __, 2021** to:

*Baker v. Saint-Gobain Performance Plastics Corporation*
Settlement Administrator
P.O. Box _____
City, ST _____-____

The Settling Defendants have the right to terminate the settlement if an undisclosed number of class members choose to exclude themselves from the Settlement. If this occurs, the Settlement will be terminated, and no class member will receive any benefits.

| **19.  If I exclude myself, can I still get a payment or other benefits from the Settlement?** |
|---|

No. If you exclude yourself, you are telling the Court that you don't want to be part of the Settlement. You can only get a payment and/or participate in the Medical Monitoring Program if you stay in the Settlement and submit a valid Claim Form.

| **20.  If I do not exclude myself, can I sue the Settling Defendants for the same thing later?** |
|---|

No. If you stay in the Settlement (*i.e.*, do nothing or do not exclude yourself), you give up any right to separately sue any of the Released Parties, including the Settling Defendants, for the claims made in this lawsuit and released by the Class Settlement Agreement. If you are a Property Settlement Class Member and you submit a timely and valid exclusion request for a Residential Property that you own jointly with one or more other Settlement Class Members, all Settlement Class Members owning the property will be considered to have submitted a timely and valid exclusion request.

### OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or some part of it.

| **21.  How do I tell the Court that I do not agree with the Settlement?** |
|---|

If you are a Settlement Class Member, you can object to the Settlement if you do not agree with it or a portion of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. Your objection must include: (1) your full name, current address, and telephone number; (2) a statement of facts that indicate you are a Settlement Class Member; (3) a statement of your objections and the reasons for them; (4) copies of any papers and evidence you intend to submit to support your objection; (5) a statement indicating whether you plan appear at the Final Approval Hearing; (6) a statement indicating that you are willing to be deposed, upon request, on a mutually acceptable date at least 10 days before the Final Approval Hearing; (7) a list containing the case name, court, and docket number of any other class action settlements in which you or your counsel have filed an objection in the past

five years, and a copy of all orders related to or ruling upon those objections; (8) all written and verbal agreements between you, your counsel or any other person related to your objection; and (9) your signature.

Your objection must be mailed to Class Counsel <u>and</u> Defense Counsel so it is postmarked no later than **Month __, 2021**.

| Class Counsel | Defense Counsel |
|---|---|
| James J. Bilsborrow<br>Seeger Weiss, LLP<br>55 Challenger Road<br>Ridgefield Park, NJ 07660 | Douglas Fleming<br>Dechert LLP<br>1095 6th Ave.<br>New York, New York 10036<br><br>Elissa Preheim<br>Arnold & Porter<br>601 Massachusetts Ave., NW<br>Washington, DC 20001<br><br>Andrew J. Calica<br>Mayer Brown LLP<br>1221 Avenue of the Americas<br>New York, New York 10020 |

**22. May I come to Court to speak about my objection?**

Yes. You or your attorney may request to speak at the Final Approval Hearing about your objection. To do so, you must include a statement in your objection indicating that you or your attorney intend to appear at the Final Approval Hearing.

**23. What is the difference between objecting to the Settlement and asking to be excluded from it?**

Objecting is simply telling the Court that you don't like something about the Settlement. You can object only if you remain in the Settlement Class (that is, do not exclude yourself). Excluding yourself is telling the Court that you don't want to be part of the Settlement. If you exclude yourself, you cannot object because the Settlement no longer affects you.

### THE COURT'S FINAL APPROVAL HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you don't have to.

**24. When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Final Approval Hearing at __:_0 a.m. on Month __, 202_, at the United States District Court for the Northern District of New York, James T. Foley Courthouse, Suite 509, 445 Broadway, Albany 12207. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. It will also consider whether to approve Class Counsel's request for an award of attorneys' fees and costs, as well as the class representative Plaintiffs' service awards. If there are objections, the Court will consider them. The Court may listen to people who have asked to speak at the hearing (see Question 22 above). After the hearing, the Court will decide whether to approve the settlement.

**25. Do I have to come to the hearing?**

No. Class Counsel will answer any questions the Court may have. However, you are welcome to come to the hearing at your own expense. If you send an objection, you do not have to come to court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not required that you do so.

**26. May I speak at the hearing?**

Yes. You may ask the Court for permission to speak at the Final Approval Hearing (see Question 22 above).

### IF YOU DO NOTHING

**27. What happens if I do nothing at all?**

If you are Settlement Class Member and you do nothing, you will give up the rights explained in Question 14, including your right to start a lawsuit or be part of any other lawsuit against the Released Parties, including the Settling Defendants, about the legal issues resolved by this Settlement. In addition, you will not receive a payment from the Settlement or be eligible to participate in the Medical Monitoring Program.

**GETTING MORE INFORMATION**

| |
|---|
| **28.  How do I get more information?** |

This Notice summarizes the proposed Settlement. Complete details are provided in the Class Settlement Agreement. The Settlement Agreement and other documents are available at www.hoosickfallspfoasettlement.com. Additional information is also available by calling 1-___-___-____ or by writing to *Baker v. Saint-Gobain Performance Plastics Corporation* Settlement Administrator, P.O. Box _____, City, ST _____-____. Publicly-filed documents can also be obtained by visiting the office of the Clerk of the United States District Court for the Northern District of New York or reviewing the Court's online docket.

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

MICHELE BAKER; CHARLES CARR;
ANGELA CORBETT; PAMELA FORREST;
MICHAEL HICKEY, individually and as parent
and natural guardian of O.H., infant;
KATHLEEN MAIN-LINGENER; KRISTIN
MILLER, as parent and natural guardian of
K.M., infant; JENNIFER PLOUFFE; SILVIA
POTTER, individually and as parent and natural
guardian of C.P, infant; and DANIEL
SCHUTTIG, individually and on behalf of all
others similarly situated,

Case No. 1:16-CV-00917-LEK-DJS

*Plaintiffs*,

v.

SAINT-GOBAIN PERFORMANCE PLASTICS
CORP., and HONEYWELL INTERNATIONAL
INC. f/k/a ALLIED-SIGNAL INC. and/or
ALLIEDSIGNAL LAMINATE SYSTEMS,
INC., E.I. DUPONT DE NEMOURS AND
COMPANY, INC., and 3M CO.,

*Defendants*.

## <u>PRELIMINARY APPROVAL ORDER</u>

Plaintiffs Michele Baker, Charles Carr, Angela Corbett, Pamela Forrest, Michael Hickey,

individually and as parent and natural guardian of O.H., infant, Kathleen Main-Lingener, Kristin

Miller, as parent and natural guardian of K.M., infant, Jennifer Plouffe, Silvia Potter, individually

and as parent and natural guardian of C.P., infant, and Daniel Schuttig ("Plaintiffs"), on behalf of

themselves and the Settlement Class Members, and Defendants Saint-Gobain Performance Plastics

Corp., Honeywell International Inc., and 3M Company ("Settling Defendants"), by their respective

counsel, have submitted a Settlement Agreement to this Court, and Plaintiffs have moved under

Federal Rule of Civil Procedure 23(e) for an order: (1) preliminarily certifying the Municipal Water Property Settlement Class, the Private Well Water Property Settlement Class, the Nuisance Settlement Class, and the Medical Monitoring Settlement Class for purposes of settlement, and appointing Plaintiffs as the Class Representatives and their counsel as Interim Settlement Class Counsel; (2) preliminarily approving the Settlement; (3) approving the Notice Program; (4) appointing KCC as the General Administrator and directing it to commence the Notice Program; (5) providing authority pursuant to Local Rule of Civil Practice, Rule 17.1 and N.Y. C.P.L.R. § 1201 for parents and guardians of all named Minor Plaintiffs and absent Minor Settlement Class Members, and for legal representatives of absent incompetent Settlement Class Members, to sign Claim Forms and releases on behalf of the Settlement Class Members they represent; and (6) scheduling a Final Approval Hearing to consider final approval of the settlement and any application for attorneys' fees, expenses, and Class Representative Service Awards. The Court has considered the terms of the Settlement, the exhibits to the Settlement Agreement, the record of proceedings, and all papers and arguments submitted in support, and now finds that the motion should be, and hereby is, **GRANTED**.

## ACCORDINGLY, THE COURT FINDS AND ORDERS:

1.      This Court has jurisdiction over the subject matter of this lawsuit and jurisdiction over the Plaintiffs and Settling Defendants (the "Parties") for purposes of the Settlement.

2.      Capitalized terms not otherwise defined in this Order have the definitions set forth in the Settlement Agreement.

## SUMMARY OF THE LITIGATION AND SETTLEMENT

3.      On August 26, 2016, Plaintiffs filed their Master Consolidated Class Action Complaint alleging tort theories of negligence, trespass, nuisance, and strict liability based on the

presence of PFOA in the Village Municipal Water System, in private wells, on or at their properties, and/or in their blood. This pleading named Saint-Gobain Performance Plastics Corp. ("Saint-Gobain") and Honeywell International Inc. ("Honeywell") as Defendants.

4.      On September 26, 2016, Defendants Saint-Gobain and Honeywell filed a Motion to Dismiss Plaintiffs' Master Consolidated Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which the Parties fully briefed. On February 6, 2017, the Court entered a Memorandum-Decision and Order granting in part and denying in part the Motion to Dismiss. In particular, the Court denied Defendants' motion to dismiss Plaintiffs' claims for negligence and trespass, as well as nuisance claims brought by Plaintiffs who obtain drinking water from a private well, but granted the motion to dismiss nuisance claims alleged by Plaintiffs who obtain drinking water from the Village Municipal Water System. The Court also certified its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). On February 16, 2017, Saint-Gobain and Honeywell petitioned the Second Circuit Court of Appeals for permission to appeal pursuant to 28 U.S.C. § 1292(b) and to temporarily stay proceedings in the District Court pending determination of the petition for leave to appeal. Separately, Saint-Gobain and Honeywell each filed an Answer and Affirmative Defenses to the Master Consolidated Class Action Complaint on February 28, 2017.

5.      On March 1, 2017, the Second Circuit granted a temporary stay of proceedings in the District Court pending disposition of the motion to stay by the Court. On December 8, 2017, the Second Circuit denied the motion to stay proceedings in the District Court but granted the petition to appeal this Court's motion to dismiss order pursuant to 28 U.S.C. § 1292(b).

6.      Following denial of Defendants' motion to stay proceedings, discovery commenced before this Court. The parties thereafter engaged in significant discovery efforts, involving several sets of written discovery served by and on each party, voluminous document productions, quarterly

conferences with Magistrate Judge Stewart, depositions of each Plaintiff as well as 11 depositions of current or former employees of Saint-Gobain and/or Honeywell, Rule 30(b)(6) deponents for each company, and one third-party witness.

7.     On February 23, 2018, Saint-Gobain and Honeywell filed an opening brief in the Second Circuit. This was followed by full briefing as well as multiple amicus briefs and oral argument. The Second Circuit ultimately affirmed this Court's motion to dismiss order on May 18, 2020.

8.     On December 10, 2018, Plaintiffs filed their First Amended Master Consolidated Class Action Complaint, naming Defendants 3M Company ("3M") and E.I. DuPont de Nemours and Company ("DuPont") as additional Defendants. Each Defendant filed an Answer and Affirmative Defenses on February 26, 2019.

9.     Plaintiffs thereafter propounded document requests and interrogatories on 3M and DuPont and engaged in motion practice with DuPont on the scope of discovery before Magistrate Judge Stewart. In response to Plaintiffs' document requests, both 3M and DuPont made extensive document productions.

10.     On April 6, 2020, Plaintiffs filed a Notice of Motion for Class Certification and served eight supporting expert reports. In their motion, Plaintiffs sought to certify four classes, as follows: (i) a class of property owners who obtain drinking water from the Village Municipal Water System; (ii) a class of property owners who obtain drinking water from privately owned wells; (iii) a class of property owners and renters who obtain drinking water from a privately owned well upon which a point-of-entry treatment (POET) system was installed; and (iv) a class of individuals exposed to PFOA in their drinking water who subsequently received blood tests demonstrating the presence of PFOA in their blood serum. On April 9, 2020, Plaintiffs filed their

4

Second Amended Master Consolidated Class Action Complaint. All Defendants filed an Answer and Affirmative Defenses to this pleading on July 23, 2020.

11.     Between June 23, 2020 and September 2, 2020, Plaintiffs deposed seven former DuPont employees. Each of these depositions occurred via Zoom because of the limitations imposed by the COVID-19 pandemic.

12.     On July 30, 2020, Defendants served eight responsive expert reports. The parties thereafter commenced expert deposition discovery, during which sixteen expert depositions were conducted between October 2020 and December 2020, all via Zoom.

13.     Following expert depositions, Defendants filed a joint opposition to Plaintiffs' Motion for Class Certification on January 14, 2021. Defendants also filed a joint Motion to Exclude Plaintiffs' Expert Testimony on the same date. Finally, Defendants 3M and DuPont filed a separate opposition to class certification raising additional, distinct arguments. Plaintiffs filed replies in support of their Motion for Class Certification and an opposition to Defendants' motion to exclude expert testimony on February 18, 2021. Defendants filed a reply in support of their Motion to Exclude Plaintiffs' Expert Testimony on March 11, 2021.

14.     On April 12, 2021, the Parties engaged in a full-day mediation at arms-length before Professor Eric Green of Resolutions, LLC. The Parties participated in two additional full-day mediation sessions on April 30, 2021 and May 5, 2021. At the end of the third day of mediation on May 5, 2021, Plaintiffs and the Settling Defendants reached an agreement in principle. They then negotiated the detailed written Settlement Agreement and exhibits that are now before the Court.

15.     The Settlement resolves claims alleged by Plaintiffs against the Settling Defendants. This Settlement does not affect the claims alleged by Plaintiffs against the non-settling

Defendant, DuPont, and Plaintiffs are not resolving or releasing any claims against DuPont by entering into the Settlement Agreement.

16.     The Settlement provides, among other things, that as consideration for the release from Settlement Class Members, the Settling Defendants will pay $65,250,000 in cash into a Settlement Fund (the Total Settlement Payment). Of this amount, $20,700,000 will be allocated to members of the Property Settlement Classes; $7,761,683 will be allocated to members of the Nuisance Settlement Class; and $22,800,000 will be allocated to fund a ten-year medical monitoring program to benefit members of the Medical Monitoring Class.

17.     The Settlement also provides for Notice to be mailed directly to property owners in the Village of Hoosick Falls and Town of Hoosick, as well as an extensive Notice Program consisting of outreach via local media, national press release, and millions of social media impressions.

## PRELIMINARY APPROVAL

18.     Federal Rule of Civil Procedure 23(e) requires court approval of class action settlements. In general, the approval process involves three stages: (1) notice of the settlement to the class after "preliminary approval" by the Court; (2) an opportunity for class members to opt out of, or object to, the proposed settlement; and (3) a subsequent hearing at which the Court grants "final approval" upon finding that the settlement is "fair, reasonable, and adequate," after which judgment is entered, class members receive the benefits of the settlement, and the settling defendants obtain a release from liability. Fed. R. Civ. P. 23(e)(1)-(2), (4)-(5).

19.     In deciding whether to grant "preliminary approval" of a proposed settlement, the Court evaluates two issues: (1) whether "the court will likely be able to" grant final approval to the settlement as a "fair, reasonable, and adequate" compromise, such that it makes sense to give

notice to the proposed class members; and (2) whether "the court will likely be able to" certify the classes for purposes of entering judgment on the settlement. Fed. R. Civ. P. 23(e)(1)(B).

**I.      The Court will "likely be able to" grant final approval to the Settlement as "fair, reasonable, and adequate."**

20.      This Circuit has recognized a "strong judicial policy in favor of settlements, particularly in the class action context." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Story v. SEFCU*, No. 1:18-CV-764 (MAD/DJS), 2021 WL 736962, at *7 (N.D.N.Y. Feb. 25, 2021) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (internal quotation omitted)). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)).

21.      Under Federal Rule of Civil Procedure 23(e)(2), as amended in December 2018, in considering whether a proposed settlement is "fair, reasonable, and adequate," the Court considers whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i)   the costs, risks, and delay of trial and appeal;
> >
> > (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv)   any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

22.     Under this standard, the Court finds that it will "likely be able to" grant final approval to the Settlement as "fair, reasonable, and adequate," such that the Settlement, its terms and conditions, including releases of the Released Parties, warrants preliminary approval and dissemination of notice to the Settlement Classes so that Settlement Class Members may express any objections to the Settlement or decide whether to opt out of the Settlement or participate in it. The Settlement appears at this preliminary approval stage to be procedurally fair, reasonable, and adequate in that the Plaintiffs and Class Counsel have adequately represented the Settlement Classes in litigating the merits of the dispute and in obtaining a Settlement of significant value through arm's-length negotiations between and among sophisticated counsel and under the auspices of a sophisticated mediator. Fed. R. Civ. P. 23(e)(2)(A)-(B).

23.     Likewise, the Settlement appears at this preliminary approval stage to be substantively fair, reasonable, and adequate in that the relief provided is substantial particularly when taking into account the costs, risks, and delays of trial. Fed. R. Civ. P. 23(e)(2)(C). The proposed method of distributing monetary relief to the Property Settlement Class Members and Nuisance Settlement Class Members is relatively streamlined, requiring only submission of a simple Claim Form, a declaration attesting to residency, and few, if any, supporting documents, as specified in the Settlement. *Id.* Similarly, after submission of the Claim Form, blood test results demonstrating the presence of PFOA in a Claimant's blood serum above the designated level, and

a declaration attesting to exposure, the Medical Monitoring Settlement Class Members will have access to ten years of consultations and testing from multiple physicians in close proximity to Hoosick Falls; former residents who have moved from the area, and who are Medical Monitoring Settlement Class Members, will also have access to the program. *Id.* Attorneys' fees will be paid only after Final Approval and only by approval of the Court, which will consider any request for fees in conjunction with final approval. *Id.* The Parties have represented that there are two agreements to be identified under Fed. R. Civ. P. 23(e)(3). *Id.*

24.     Finally, the proposal treats members of each Settlement Class equitably relative to one another. Property Settlement Class Members will receive a proportion of the Property Payment Allocation based on the full market value of their property (as determined by the Town of Hoosick Tax Assessor in 2015 in the Final Assessment Roll) relative to all other properties owned by the Property Settlement Class Members. The Nuisance Payment Allocation will be divided evenly among all Nuisance Settlement Class Members who demonstrate eligibility. Finally, all Medical Monitoring Settlement Class Members will have equal access to the consultations and, as appropriate, testing benefits provided by the Medical Monitoring Program. Fed. R. Civ. P. 23(e)(2)(D).

## II.     The Court will "likely be able to" certify the Settlement Classes for purposes of entering judgment on the Settlement.

25.     In considering whether the Court will "likely be able to" certify the Settlement Classes for purposes of entering judgment on the Settlement, the Court must determine whether the Settlement Classes likely meet the requirements for class certification under Federal Rule of Civil Procedure 23(a) (numerosity, commonality, typicality, and adequacy) and any one of the subsections of Federal Rule of Civil Procedure 23(b), here subsection 23(b)(3).

9

26.     The Court finds, for settlement purposes only, that the Settlement Classes satisfy the requirements of Fed. R. Civ. P. 23(a)(1)-(4) and 23(b)(3) and that it will likely be able to certify each of the proposed Settlement Classes, which are defined as:

**Municipal Water Property Settlement Class**
All Persons who are or were owners of Residential Property that was supplied with drinking water from the Village Municipal Water System, and who purchased that property on or before December 16, 2015 and owned that property as of December 16, 2015; provided, however, that the Municipal Water Property Settlement Class shall not include Excluded Persons.

**Private Well Water Property Settlement Class**
All Persons who are or were owners of Residential Property located in the Village of Hoosick Falls or the Town of Hoosick that was supplied with drinking water from a private well in which PFOA was detected, and who owned that property at the time PFOA in the property's private well was discovered through a water test on or after December 16, 2015; provided, however, that the Private Well Water Property Settlement Class shall not include Excluded Persons.

**Nuisance Settlement Class**
All Persons who are or were owners or renters of Residential Property located in the Village of Hoosick Falls or the Town of Hoosick that was supplied with drinking water from a privately owned well in which PFOA was detected, had a point-of-entry treatment (POET) system installed to filter water from that well, and who either (i) owned and occupied that property at the time PFOA in the property's private well was discovered through a water test on or after December 16, 2015; or (ii) rented and occupied the property at the time PFOA in the property's private well was discovered through a water test on or after December 16, 2015; provided, however, that the Nuisance Settlement Class shall not include Excluded Persons.

**Medical Monitoring Settlement Class**
All individuals who, for a period of at least six months between 1996 and 2016, have (a) ingested water at their residence(s) supplied by the Village Municipal Water System or from a private well in the Village of Hoosick Falls or the Town of Hoosick in which PFOA has been detected, and (b) underwent blood serum tests that detected a PFOA level in their blood above 1.86 μg/L; or any natural child (i) who was born to a female who meets and/or met the above criteria at the time of the child's birth and (ii) whose blood serum was tested after birth and detected a PFOA level above 1.86 μg/L; provided, however, that the Medical Monitoring Settlement Class shall not include Excluded Persons.

27.     Additionally, the Court finds, for purposes of settlement only, that the Settlement Classes are ascertainable because each is defined by objective criteria, *In re Petrobas Secs. Litig.*,

10

862 F.3d 250, 257 (2d Cir. 2017), and that it will likely be able to appoint Plaintiffs' Counsel as Class Counsel under Federal Rule of Civil Procedure 23(g).

28.     The Settlement Classes, if certified in connection with Final Approval, shall be for settlement purposes only and without prejudice to the Parties in the event the Settlement is not finally approved by this Court or otherwise does not take effect.

29.     Accordingly, the Court preliminarily certifies, for purposes of settlement only, each of the respective Settlement Classes identified above.

30.     The Court, for settlement purposes only, appoints the following Plaintiffs as interim Class Representatives for the Settlement Classes:

**Municipal Water Property Settlement Class**: Pamela Forrest, Kathleen Main-Lingener, Jennifer Plouffe, Silvia Potter, and Daniel Schuttig;

**Private Well Property Settlement Class**: Michele Baker, Charles Carr, and Angela Corbett;

**Nuisance Settlement Class**: Michele Baker, Charles Carr, and Angela Corbett; and

**Medical Monitoring Settlement Class**: Charles Carr, Angela Corbett, Michael Hickey, individually and as parent and natural guardian of O.H., infant, Kathleen Main-Lingener, Kristin Miller, as parent and natural guardian of K.M., infant, and Silvia Potter, individually and as parent and natural guardian of C.P., infant.

31.     The Court appoints, for settlement purposes only, Stephen G. Schwarz and Hadley L. Matarazzo of Faraci Lange LLP, James J. Bilsborrow of Seeger Weiss LLP, and Robin L. Greenwald of Weitz & Luxenberg, P.C., as Interim Settlement Class Counsel under Federal Rule of Civil Procedure 23(g)(3). Interim Settlement Class Counsel are authorized to act on behalf of the Settlement Classes with respect to all acts required by, or which may be given pursuant to, the

Settlement or such other acts that are reasonably necessary to consummate the proposed Settlement set forth in the Settlement Agreement.

32.    Having found that (1) "the court will likely be able to" grant final approval to the settlement as a "fair, reasonable, and adequate" compromise, so that it makes sense to give notice to the proposed class members; and (2) "the court will likely be able to" certify the Settlement Classes for purposes of entering judgment on the Settlement, the Court hereby **GRANTS** preliminary approval to the Settlement.

## NOTICE TO THE SETTLEMENT CLASSES

33.    Upon granting preliminary approval under Federal Rule of Civil Procedure 23(e)(1), the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B).

34.    The notice must clearly and concisely state in plain, easily understood language:

(i)      the nature of the action;

(ii)     the definition of the class certified;

(iii)    the class claims, issues, or defenses;

(iv)    that a class member may enter an appearance through an attorney if the member so desires;

(v)     that the court will exclude from the class any member who requests exclusion;

(vi)    the time and manner for requesting exclusion; and

(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

35.    "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores*, 396 F.3d at 114 (quotation omitted).

36.    The Court finds that the Notice Program, including the Class Notice, the Notice Form attached to the Settlement, and the particulars of the Notice Program described in the Declaration of Carla A. Peak in Support of Settlement Notice Program, satisfy these requirements and Due Process and constitute "the best notice that is practicable under the circumstances." The Court appoints KCC as General Administrator and directs that the Notice Program be implemented as set forth in the Settlement.

37.    All fees, costs, and expenses incurred in implementing the Notice Program shall be paid solely from the Preliminary Settlement Fund as set forth in the Settlement.

## SETTLEMENT OF CLAIMS OF INFANT, INCOMPETENT AND DECEASED CLASS MEMBERS

38.    Each of the Plaintiffs who filed this Action as parent and natural guardian of a Minor will apply to the Court individually or jointly for approval of the Settlement on behalf of the Minor class representatives and all absent Minor Settlement Class Members. This Preliminary Approval Order provides authority pursuant to Local Rule 17.1 and N.Y. C.P.L.R. § 1201 for parents and guardians of all named Minor Plaintiffs and absent Settlement Class Members, and for legal representatives of absent incompetent Settlement Class Members, to sign Claim Forms and releases on behalf of the Settlement Class Members they represent. An Order from this Court finally approving the Settlement shall effectuate a settlement under Local Rule 17.1 and N.Y.

C.P.L.R. § 1207 for all named Minor Plaintiffs, absent Minor Settlement Class Members, and absent incompetent Settlement Class Members.

39.     The legal representatives of deceased absent Settlement Class Members shall have authority to sign Claims Forms and releases on behalf of the absent Settlement Class Members they represent. Where a legal representative of a deceased absent Settlement Class Member submits a Claim Form on that Settlement Class Member's behalf, that legal representative shall attest to their authority to act for the deceased absent Settlement Class Member.

## PROCEDURES FOR REQUESTING EXCLUSION FROM OR OBJECTING TO THE SETTLEMENT

40.     A Settlement Class Member may request exclusion from the Settlement at any time prior to the Opt Out Deadline, provided an opt-out notice is sent to the General Administrator in accordance with the procedures set forth in the Settlement Agreement. Any Settlement Class Member who elects to opt out of the Settlement shall not be entitled to receive any benefits conferred by the Settlement.  Any Settlement Class Member who does not timely and validly request to opt out shall be bound by the terms of the Settlement, including the Release. If a Residential Property that is encompassed by one of the Property Settlement Classes has more than one legal owner and one of those owners excludes himself or herself from the relevant Settlement Class, then all owners of that Residential Property shall be deemed to have opted out of the Settlement, and no owner of the Residential Property shall be entitled to a payment under the Settlement.

41.     Objections to the Settlement, to the application of attorneys' fees and costs, and/or to the Service Award must be served on the Parties in accordance with the Settlement. Interim Settlement Class Counsel and/or the Settling Defendants may conduct limited discovery on any objector or objector's counsel consistent with the Federal Rules of Civil Procedure.

42.     Except for Settlement Class Members who have timely asserted an objection to the Settlement, all Settlement Class Members shall be deemed to have waived all objections and opposition to the fairness, reasonableness, and adequacy of the Settlement.

## MOTIONS FOR FINAL APPROVAL, FEES, EXPENSES, AND SERVICE AWARDS

43.     Plaintiffs shall file their Motion for Final Approval of the Settlement, appointment as Settlement Class Counsel as well as Class Counsel's application for attorneys' fees and costs, for a Service Award to the Plaintiffs, and for all Settlement Administration Costs, no later than 150 days after this Order is entered. At the Final Approval Hearing, the Court will hear argument on Plaintiffs' Motion for Final Approval of the Settlement, and on Class Counsel's application for attorneys' fees and expenses, for the Service Award for the Plaintiffs, and for all Settlement Administration Costs.

## FINAL APPROVAL HEARING

44.     The Court will hold a Final Approval Hearing on _____, 2021, at _____ a.m./p.m., at the James T. Foley U.S. Courthouse, 445 Broadway, Albany, New York 12207-2926, or by videoconference or teleconference if determined by separate order, to assist the Court in determining whether to grant Final Approval to the Settlement, enter the Final Approval Order and Judgment, and grant any motions for fees, expenses and the Service Award.

## OTHER PROVISIONS

45.     Plaintiffs' Interim Settlement Class Counsel and counsel for the Settling Defendants are authorized to take, without further approval of the Court, all necessary and appropriate steps to implement the Settlement according to its terms, including implementing the Notice Program.

46.     Pending determination whether the Settlement Agreement should be granted Final Approval, further proceedings against the Settling Defendants are stayed in this Action, other than proceedings necessary to carry out or enforce the terms of the Settlement. Nothing in this Order shall stay further proceedings in this Action against any non-settling Defendant.[1] For purposes of the continued prosecution of this case against any non-settling Defendant, the Order of the Hon. Daniel J. Stewart dated July 27, 2016, appointing Weitz & Luxenberg, P.C. and Faraci Lange, LLP as Co-Lead Interim Class Counsel (Dkt. 1) shall remain in effect until this Court rules on Plaintiffs' pending motion for class certification regarding any non-settling Defendant, with the exception that James J. Bilsborrow of Seeger Weiss, LLP shall now be appointed as a third Co-Lead Interim Class Counsel pursuant to Fed. R. Civ. P. 23(g)(3).

47.     The Settling Defendants shall serve the appropriate government officials with the notice required by 28 U.S.C. § 1715, within the time provided by statute.

48.     Without further orders of the Court, the Parties may agree to make non-material modifications to the Settlement Agreement (including the exhibits thereto) in implementing the Settlement that are not inconsistent with this Preliminary Approval Order, including making minor changes to the Settlement Agreement, to the form or content of the Notice Form, or to any other exhibits that the Parties jointly agree in writing are reasonable or necessary.

49.     The Court shall retain jurisdiction over the Settlement Agreement and shall consider all further matters arising out of or connected with the Settlement.

---

[1] The Settlement with the Settling Defendants is not and does not constitute a settlement with any non-settling Defendant (*e.g.*, named Defendants who are not the Settling Defendants) and the Settlement is not dispositive of any Plaintiff's claim against any non-settling Defendant.

## SCHEDULE OF DEADLINES

50.     The Court sets the following deadlines:

| Event | Date |
|---|---|
| Deadline for the Settling Defendants to pay $10,000,000 in cash into the Escrow Account | No later than 20 days from the date of this Order |
| Deadline for General Administrator to commence Notice Program | No later than 30 days from the date of this Order |
| Commencement of the Enrollment Period | 30 days from the date of this Order |
| Opt Out Deadline | 105 days from the date of the Notice Date |
| Objection Deadline | 105 days from the date of the Notice Date |
| Deadline for filing a Motion for Final Approval and any petition for an award of attorneys' fees, costs, and Service Awards | No later than 150 days from the date of this Order |
| Final Approval Hearing | _____ (approximately 180 days from the date of this Order) |

**SO ORDERED.**

Date:

_____
HON. LAWRENCE E. KAHN
United States District Judge

# EXHIBIT D



## KCC Class Action Services Resume

KCC is an industry leader in class action settlement administration. We administer claims processes and distribute funds in a vast array of varying matters, ranging from small and simple settlements to multi-year complex settlements involving millions of claimants.

KCC's parent company, Computershare, is a publicly traded company which, among its many business lines, provides global financial services centering on communications with customers on behalf of our corporate clients. Computershare employs over 12,000 people and does business with more than 25,000 clients in more than 21 countries. KCC's operations are regulated by federal agencies, including both the SEC and OCC. KCC has the largest infrastructure in the class action industry, and is backed by superior data security, call center support and technology. In addition to the immense resources and capabilities brought to bear through Computershare, KCC can execute all operations in-house with zero outsourcing; a capacity which allows for full quality control over each aspect of service.

KCC has administered over 7,200 class action matters and handled thousands of distribution engagements in other contexts as well. Our call centers handle 13.9 million calls each year. Our domestic infrastructure can open and scan 200,000 claims in a single day, and we have document production capabilities that print and mail millions of documents annually. Last year, our disbursement services team distributed more than $1.6 billion (USD) across four million class payments.

### Locations

KCC has an administrative office in El Segundo, CA, operation offices in San Rafael, CA, and Louisville, KY, and presence in the East Coast, South and Midwest. In addition to these offices, KCC has the global support of Computershare. In the United States Computershare has more than 20 offices.

### KCC Personnel

KCC's experienced team of experts knows first-hand the intricacies contained in every aspect of settlement administration, and approach each matter with careful analysis and procedural integrity. Each client is assigned a team of experienced consultants, specialists and technology experts who serve as knowledgeable, reliable and accessible partners that have earned a reputation for exceeding clients' expectations. KCC's executive team – Eric Barberio, President; Patrick Ivie, Senior Executive Vice President; and Daniel Burke, Executive Vice President – are experienced  industry leaders.

Our personnel have considerable experience which includes years of practice with KCC and related endeavors. KCC's professionals have extensive training, both on-the-job and formal, such as undergraduate and advanced business, information technology and law degrees, and they possess and/or have had licenses and certificates in disciplines that are relevant to class action administration.

### Recognition

Our settlement administration services have been recognized by *The National Law Journal*, *The New York Law Journal, The New Jersey Law Journal, The Recorder, Legal Intelligencer, Legal Times* and other leading publications. KCC has earned the trust and confidence of our clients with our track record as a highly-responsive partner.



| Settlement Value | |
|---|---|
| Case | Value |
| Fortis Settlement | $1,572,690,000 |
| Ramah Navajo Chapter v. Jewell | $940,000,000 |
| U.S.A. v. The Western Union Company | $586,000,000 |
| Vaccarino v. Midland National Life Ins. Co | $555,000,000 |
| In re Facebook Biometric Info. Privacy Litig. | $550,000,000 |
| Safeco v. AIG | $450,000,000 |
| Johnson v. Caremark Rx, LLC | $310,000,000 |
| In re Activision Blizzard, Inc. Stockholder Litigation | $275,000,000 |
| Harborview MBS | $275,000,000 |
| Dial Corp. v. News Corporation, et al. | $244,000,000 |
| In re Medical Capital Securities Litigation Settlement | $219,000,000 |
| In Re: NCAA Athletic Grant-In-Aid Antitrust Litigation | $208,664,445 |
| Gutierrez v. Wells Fargo Bank, N.A | $203,000,000 |
| Postmates Mass Arbitration Settlement | $179,000,000 |
| BlueCrest Capital Management Limited | $170,000,000 |
| Bell v. Farmers - Bell III | $170,000,000 |
| In Re Diamond Foods, Inc. Securities Litigation | $167,000,000 |
| In re JPMorgan Chase & Co. Securities Litigation | $150,000,000 |
| Haddock v. Nationwide Life Insurance Co. Settlement | $140,000,000 |
| In re Freeport-McMoran Copper & Gold Inc. Derivative Litigation Notice | $137,500,000 |
| Bank of America, et al. v. El Paso Natural Gas Company, et al. | $115,000,000 |
| In re Anthem, Inc. Data Breach Litigation | $115,000,000 |
| In re Medical Capital Securities Litigation Settlement | $114,000,000 |
| Drywall Acoustic Lathing v. SNC Lavalin | $110,000,000 |
| In re Automotive Parts Antitrust Litigation III | $103,000,000 |
| Rural/Metro Corporation Stockholders Litigation | $97,793,880 |
| J.C. Penney Securities Litigation | $97,500,000 |
| Smokeless Tobacco Cases | $96,000,000 |
| Oubre v. Louisiana Citizens | $92,865,000 |
| Ardon v. City of Los Angeles | $92,500,000 |
| Nishimura v. Gentry Homes, Ltd. II | $90,341,564 |
| In Re: Potash Antitrust Litigation (II) (Escrow) | $90,000,000 |
| Ormond, et al, v. Anthem, Inc. | $90,000,000 |
| In re DRAM Antitrust Litigation | $87,750,000 |
| In re: Morning Song Bird Food Litigation | $85,000,000 |
| Ideal v. Burlington Resources Oil & Gas Company LP | $85,000,000 |
| Willoughby v. DT Credit Corporation, et al. (Drivetime) | $78,000,000 |
| In Re Tesla Motors, Inc. Stockholder Litigation | $60,000,000 |



| Class Members | |
| --- | --- |
| **Case** | **Volume** |
| Edwards v. National Milk Producers Federation et al. | 90,000,000 |
| In re Anthem, Inc. Data Breach Litigation | 80,000,000 |
| Carrier IQ Inc. Consumer Privacy Litigation | 47,300,000 |
| The Home Depot, Inc. Customer Data Security Breach Litigation | 40,000,000 |
| In re Facebook Biometric Info. Privacy Litig. | 30,000,000 |
| In Re Midland Credit Management, Inc. TCPA Litigation | 30,000,000 |
| Golden v. ContextLogic Inc. d/b/a Wish.com | 29,222,936 |
| Cassese v. WashingtonMutual | 23,200,344 |
| In re Wawa, Inc. Data Security Litigation | 22,000,000 |
| Rael v. The Children's Place, Inc. | 22,000,000 |
| In Re Optical Disk Drive Antitrust Litigation | 20,000,000 |
| In re UltraMist Sunscreen Litigation | 20,000,000 |
| Torres v. Wendy's International, LLC | 18,000,000 |
| In Re Lithium Ion Batteries Antitrust Litigation | 16,000,000 |
| Gordon v. Verizon Communications, Inc. | 15,236,046 |
| Experian Data Breach Litigation | 15,000,000 |
| Opperman v. Kong Technologies, Inc. et al. | 13,279,377 |
| Lerma v Schiff Nutrition International, Inc. | 12,000,000 |
| Kolinek v. Walgreen Co. | 10,213,348 |
| Dunstan v. comScore, Inc. | 10,000,000 |
| Sprint Government Restitution Program | 9,500,000 |
| Steinfeld v. Discover Financial Services | 9,088,000 |
| Cohen, et al. v. FedEx Office and Print Services, Inc., et al. | 9,000,000 |
| Elvey v. TD Ameritrade, Inc. | 8,639,226 |
| In Re: Monitronics International, Inc. Telephone Consumer Protection Act Litigation | 7,789,972 |
| In re Portfolio Recovery Associates Telephone Consumer Protection Act Litigation | 7,395,511 |
| Morrow v. Ascena Retail Group, Inc. and Ann Inc. | 7,277,056 |
| Shames v. The Hertz Corporation | 7,271,238 |
| In Re Facebook Biometric Information Privacy Litigation | 7,000,000 |
| Roberts, et al. v. Electrolux Home Products, Inc. | 6,305,000 |
| Chambers v. Whirlpool Corporation, et al. | 5,788,410 |
| Martin v. Safeway Inc. | 5,610,739 |
| Morales v. Conopco Inc. dba Unilever (TRESemmé Naturals) | 5,000,000 |
| Murray v. Grocery Delivery E-Services USA Inc. bda Hello Fresh | 5,000,000 |

# EXHIBIT E

November 2, 2017

**CURRICULUM VITA**

| | |
|---|---|
| **Name of Attorney:** | Edgar C. Gentle, III, Esq. |
| **Name of Firm:** | Gentle, Turner, Sexton & Harbison, LLC |
| **Profession:** | Attorney |
| **Date of Birth:** | February 17, 1953 |
| **Years with Firm:** | 25 |
| **Nationality:** | U.S.A. |
| **Memberships in Professional Societies:** | Admitted to Alabama State Bar (1981) and various Federal District Court and Appellate Court Bars |

## A.    Key Qualifications

Ed Gentle was born in Birmingham, Alabama, February 17, 1953. He graduated summa cum laude in 1975 from Auburn University—where he was a Danforth Scholar and earned a Bachelor of Science degree. In 1977 he received a Master of Science (summa cum laude) from the University of Miami as a Maytag Fellow—where he became familiar with the law of the sea and international resource planning issues involving competing nations.

He was a Rhodes Scholar (Auburn's second and Miami's first) at Oxford University—where he earned a B.A. degree with honors in Jurisprudence in 1979 and a M.A. degree in 1980. He then attended the University of Alabama School of Law as a Hugo Black Scholar. He earned his J.D. and was admitted to the Alabama State Bar in 1981.

Mr. Gentle has comprehensive experience in serving as Special Master and Claims Administrator in Mass Tort Litigation, and providing claims administration and financial and business advice to Courts, Settling Parties, and Mass Tort Settlements. Approximately 90% of his professional time is devoted to this practice. He has helped create and administer over $2 Billion in Settlements during the past 25 years. He has also provided affidavit, deposition and hearing testimony on the fairness of Mass Tort Settlements.

From 1992 to 2014, Mr. Gentle served as Special Master and Escrow Agent for the MDL 926 Global Breast Implant Settlement, paying $1.2 Billion in claims for 300,000 claimants. From 2001 until 2003, he was Interim Financial Advisor for the Settlement Facility - Dow Corning Trust (the Dow

-1-

Corning Breast Implant Settlement) overseeing the investment of over $1 Billion and providing tax and accounting support for the Settlement, during part of Dow Corning's Chapter 11 Bankruptcy.

Commencing in December 2003, Mr. Gentle was appointed as the Settlement Administrator in the $300 Million Anniston, Alabama <u>Tolbert</u> PCB Settlement with Monsanto and Solutia in connection with the administration of a Global Settlement before the Federal District Court for the Northern District of Alabama applicable to 18,000 claimants with respect to PCB contamination of property and PCB personal injury claims. In administering the $300 Million settlement, Mr. Gentle designed the claimant payment program for property damage and personal injury, collected criteria for payments to each of the 18,000 claimants, ranked the claimants for payment amounts, satisfied private and government liens, and remitted payments to each of the claimants. The Settlement also provided primary medical and dental care and prescriptions to claimants, with this portion of the settlement being completed in 2016.

One of Mr. Gentle's specialties is serving as Settlement Administrator for Community Tort Settlements, such as a C-8 groundwater contamination case in Camden, New Jersey (with water filtration and damages), Warehouse Fire Settlements in Conyers, Georgia and Louisville, Kentucky (personal injury and property claims), Zinc Smelter Settlements in Spelter, West Virginia (medical monitoring and property remediation) and Blackwell, Oklahoma (property remediation), a coal slurry groundwater contamination Settlement in Mingo County, West Virginia (medical monitoring), and two train wrecks in Kentucky, one in Alabama and one in West Virginia (personal injury and property claims).

In November, 2009, Mr. Gentle was appointed Claims Administrator in the Jefferson County, Alabama, Occupation Tax Refund Case before the Honorable David Rains, in the Circuit Court of Jefferson County. On May 14, 2010, the Supreme Court of Alabama upheld the $37 Million Judgment. The Parties entered into a Settlement, which was approved by the Court, and tax refunds were issued to over 300,000 claimants. The case was completed in 2014.

In June 2010, Mr. Gentle was appointed Special Master and Settlement Administrator in the Total Body Multi-district Litigation, MDL 1985. Working closely with the Court, Mr. Gentle facilitated the aggregate settlement of all cases, in August 2010. Mr. Gentle and his staff determined the value of each of the settled cases, which was consented to by all Plaintiffs, and Mr. Gentle administered the Settlement, satisfied private and government liens, and paid all claimants, which was completed in 2013.

Mr. Gentle is Special Master in the national MDL Blue Cross Antitrust Litigation, MDL 2406, with putative provider and subscriber classes, before the Honorable R. David Proctor, having been appointed in 2012. The case has 3 groups of litigants: the Policy Subscribers, the Medical Providers and the 37 Blue Cross cases.

From 2012 to 2014, Mr. Gentle, as Special Master, facilitated the creation and administration of a 93 claimant settlement with an undisclosed manufacturer and hospital concerning CT-Scan radiation exposure.

In 2013 and 2014, Mr. Gentle administered four separate Pfizer Chantix Aggregate Settlements, designing the payment matrix, handling claimant appeals, resolving liens, and paying claimants.

In 2014, Mr. Gentle was appointed Plaintiff Lien Administrator for the Hydroxycut Settlement.

In 2015, 2016, and 2017, Mr. Gentle was hired by Smith & Nephew and Plaintiffs' Counsel to facilitate three Memphis, Tennessee aggregate settlements involving artificial hips and to resolve related plaintiff liens.

In May 2016, Mr. Gentle was appointed Claims Administrator by the Escambia County, Florida, Circuit Court in <u>Allen v. A.E. New</u>, the Pensacola jail fire and explosion case, to facilitate the potential settlement of the case.

In October 2016, Mr. Gentle was appointed Special Master by the Fulton County, Georgia, Circuit Court in <u>Smart v. Brenntag</u>, to carry out the administration of a chemical spill settlement.

In September 2017, Mr. Gentle was appointed Claims Administrator for a GE factory fire in Louisville, Kentucky.

In October 2017, Mr. Gentle was appointed Special Master by the West Virginia Federal District Court for the Southern District of West Virginia to administer the Mt. Carbon 400 claimant aggregate trail derailment settlement with <u>Sperry</u> (personal injury and property damage).

In October 2017, Mr. Gentle was appointed Escrow Agent for the Common Benefit Fund in the <u>Storz Morcellator Litigation</u> in the Superior Court of California, of Los Angeles County.

**B.**     **Education**

| Class Rank | School |
| --- | --- |
| 4 | J.D., University of Alabama School of Law 1981 (Hugo Black Scholarship) |
| Middle | M.A., Jurisprudence, Oxford University 1980 (Rhodes Scholarship) |
| Middle | B.A., Honours Jurisprudence, Oxford University 1979 (Rhodes Scholarship) |
| 1 | M.S., <u>Summa Cum Laude</u>, University of Miami 1977 (Maytag Fellowship [washing machines]) |
| 1 | B.S., <u>Summa Cum Laude</u>, Auburn University 1975 (Danforth Scholarship [Purina]) |

## C.    Employment Record

| June 1992 - Present | Gentle, Turner, Sexton & Harbison, LLC<br>Managing Partner<br>Birmingham, Alabama |
|---|---|
| September 1991 - June 1992 | Miller, Hamilton, Snider & Odom<br>Partner<br>Manager of Birmingham, Alabama Office |
| January 1987 - September 1991 | Schoel, Ogle, Benton, Gentle & Centeno<br>Partner<br>Birmingham, Alabama |
| December 1985 - January 1987 | Law Offices of James L. North<br>Associate<br>Birmingham, Alabama |
| June 1983 - December 1985 | AT&T<br>Senior Staff Attorney<br>Atlanta, Georgia |
| May 1981 - June 1983 | North, Haskell, Slaughter, Young & Lewis<br>Associate<br>Birmingham, Alabama |

## D.    Contact Information

Website: www.gtandslaw.com

E-mail address:  egentle@gtandslaw.com

Telephone number:    205-716-3000

Fax number:             205-716-3010

Cell Phone:              205-560-2533

## E.    References

The Honorable Thomas A. Bedell
Circuit Court Judge of Harrison County, West Virginia
Harrison County Courthouse
301 West Main Street, Room 321
Clarksburg, West Virginia 26301
(304) 624-8593

Kevin W. Thompson, Esq.
Thompson Barney
2030 Kanawha Boulevard East
Charleston, WV 25311
(304) 343-4401
Email address: kwthompsonwv@gmail.com

Kim West, Esq.
First Commercial Bank Building
800 Shades Creek Parkway, Suite 400
Birmingham, Alabama 35209
(205) 870-0555
Email address: kwest@wallacejordan.com

Van Bunch, Esq.
Bonnett, Fairbourn, Friedman & Balint, P.C.
2325 E. Camelback Road, Ste 300
Phoenix, Arizona 85016
(602) 274-1100
Email address: vbunch@earthlink.net

The Honorable U. W. Clemon
Retired Federal District Court Judge
5202 Mountain Ridge Parkway
Birmingham, Alabama 35222
(205) 837-2898
Email address: clemonu@bellsouth.net

The Honorable R. David Proctor
United States District Court Judge
Hugo L. Black U. S. Courthouse, 7th Floor
1729 Fifth Avenue North
Birmingham, Alabama 35203
(205) 278-1982

The Honorable Karon O. Bowdre
United States District Court Judge
Hugo L. Black U. S. Courthouse
1729 Fifth Avenue North
Birmingham, Alabama 35203
(205) 278-1802

The Honorable T. Michael Putnam
Magistrate Judge
Hugo L. Black U. S. Courthouse
1729 Fifth Avenue North
Birmingham, Alabama 35203
(205) 278-1900

Robert B. Roden, Esq.
Shelby, Roden & Cartee
2956 Rhodes Circle
Birmingham, Alabama 35205
(205) 933-8383
Email address: bob@shelbyroden.com

Virginia Buchanan, Esq.
Levin, Papantonio, Thomas, Mitchell, Rafferty and Proctor, P.A.
316 South Baylen Street
Pensacola, FL 32502
(850) 435-7023
Email address: vbuchanan@levinlaw.com

J. Farrest Taylor, Esq.
The Cochran Firm
111 East Main Street
Dothan, Alabama 36301
(334) 673-1555
Email address: farresttaylor@cochranfirm.com

Chris Hellums, Esq.
1100 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
(205) 322-8880
Email address: chrish@pittmandutton.com

Lewis C. Sutherland, Esq.
Vinson & Elkins, LLP
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760
(713) 758-2367
Email address: lsutherland@velaw.com

# EXHIBIT F

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELE BAKER; CHARLES CARR; ANGELA CORBETT; PAMELA FORREST; MICHAEL HICKEY, individually and as parent and natural guardian of O.H., infant; KATHLEEN MAIN-LINGENER; KRISTIN MILLER, as parent and natural guardian of K.M., infant; JENNIFER PLOUFFE; SILVIA POTTER, individually and as parent and natural guardian of C.P, infant; and DANIEL SCHUTTIG, individually and on behalf of all others similarly situated, | Case No. 1:16-CV-00917-LEK-DJS |
| *Plaintiffs*, | |
| v. | **DECLARATION OF CARLA A. PEAK IN SUPPORT OF SETTLEMENT NOTICE PROGRAM** |
| SAINT-GOBAIN PERFORMANCE PLASTICS CORP., and HONEYWELL INTERNATIONAL INC. f/k/a ALLIED-SIGNAL INC. and/or ALLIEDSIGNAL LAMINATE SYSTEMS, INC., E.I. DUPONT DE NEMOURS AND COMPANY, INC., and 3M CO., | |
| *Defendants*. | |

I, Carla A. Peak, declare as follows:

1.      My name is Carla A. Peak. I have personal knowledge of the matters set forth

herein, and if called as a witness I could and would testify competently to them.

2.      I am a nationally recognized expert in the field of legal notice, and I have served as

an expert in dozens of federal and state cases involving class action notice plans.

3.      I am the Vice President of Legal Notification Services for KCC Class Action

Services, LLC ("KCC"), a firm that provides comprehensive class action services, including

claims administration, legal notification, email and postal mailing campaign implementation,

website design, call center support, class member data management, check and voucher disbursements, tax reporting, settlement fund escrow and reporting, and other related services critical to the effective administration of class action settlements. Our experience includes many of the largest and most complex settlement administrations of both private litigation and of actions brought by state and federal government regulators. KCC has been retained to administer more than 7,000 class actions and distributed settlement payments totaling well over a trillion dollars in assets.

4.     This Declaration describes KCC's experience, as well as the proposed notice plan (the "Notice Program") designed to provide notice to class members for this class action settlement.

## RELEVANT EXPERIENCE

5.     KCC has administered class action administrations for such defendants as HP-Compaq, LensCrafters, United Parcel Service, Ford, Mitsubishi, Nissan, Whirlpool, ATI Video Cards, and Twentieth Century Fox. Some relevant case examples which KCC has been involved with include: *Alvarez v. Haseko Homes, Inc.*, No. 09-1-2691-11 (Cir. Ct. Hawai'i); *Campos v. Calumet Transload Railroad, LLC*, No. 1:13-cv-08376 (S.D.N.Y.); *Charles v. Haseko Homes, Inc.*, No. 09-1-1932-08 (Cir. Ct. Hawai'i); *Eck v. City of Los Angeles*, No. BC577028 (Sup. Ct. Cal.); *Eubank v. Pella Corporation*, No. 1:06-cv-04481 (N.D. Ill.); *Houze v. Brasscraft Manufacturing Co. (EZ-FLO)*, No. BC493276 (Sup. Ct. Cal.); *In Re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litig.*, No. 1:15-cv-01364 (N.D. Ill.); *In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, No. 11-MD-2247 (D. Minn.); *Kai v. Haseko Homes, Inc.*, No. 09-1-2834-12 (Cir. Ct. Hawai'i); *Lavinsky v. City of Los Angeles*, No. BC542245 (Sup. Ct. Cal.); *Loftus v. SunRun, Inc.*, No. 3:19-cv-01608 (N.D. Cal.); *Nishimura v.*

*Gentry Homes, Ltd.*, No. 11-1-1522 (Cir. Ct., Hawai'i); *Slovin v. Sunrun, Inc.*, No. 4:15-cv-05340

(N.D. Cal.); and *Thomas v. Lennox Industries Inc.*, No. 1:13-cv-07747 (N.D. Ill.).

## NOTICE PROGRAM DETAILS

### *Class Definition*

6.     The Settlement Classes consist of (1) individuals who, for a period of at least six

months between 1996 and 2016, have (a) ingested water at their residence(s), which were supplied

by the Village Municipal Water System or from a private well in the Village of Hoosick Falls or

Town of Hoosick in which perfluorooctanoic acid (PFOA) has been detected, and (b) underwent

blood serum tests that detected a PFOA level in their blood above 1.86 µg/L; or any natural child

(i) who was born to a female who meets and/or met the above criteria at the time of the child's

birth and (ii) whose blood serum was tested after birth and detected a PFOA level above 1.86 µg/L

("Medical Monitoring Settlement Class"); (2) Persons who are or were owners of Residential

Property that was supplied with drinking water from the Village Municipal Water System, and

who purchased that property on or before December 16, 2015 and owned that property as of

December 16, 2015 ("Municipal Water Property Settlement Class"); (3) Persons who are or were

owners or renters of Residential Property located in the Village of Hoosick Falls or the Town of

Hoosick that was supplied with drinking water from a privately owned well in which PFOA was

detected, had a point-of-entry treatment (POET) system installed to filter water from that well, and

who either (i) owned and occupied that property at the time PFOA in the property's private well

was discovered through a water test on or after December 16, 2015; or (ii) rented and occupied the

property at the time PFOA in the property's private well was discovered through a water test on

or after December 16, 2015 ("Nuisance Settlement Class"); and (4) Persons who are or were

owners of Residential Property located in the Village of Hoosick Falls or the Town of Hoosick

that was supplied with drinking water from a private well in which PFOA was detected, and who owned that property at the time PFOA in the property's private well was discovered through a water test on or after December 16, 2015 ("Private Well Water Property Settlement Class").

7.     Given the length of the class period, geographic mobility data was studied among people residing in the Village of Hoosick Falls and Town of Hoosick area. This data indicates that, of the individuals who have left the Village of Hoosick Falls and Town of Hoosick area, the majority tend to move to a new location within the same county.[1] To ensure appropriate coverage, the Notice Program has been designed to provide notice to individuals in the Village of Hoosick Falls, the Town of Hoosick, the Albany-Troy-Schenectady designated market area, as well as the state of New York.

*Individual Notice*

8.     KCC will send a detailed Notice and Claim Form along with a postage pre-paid envelope via United States Postal Service (USPS) to all Settlement Class Members for whom a postal address is provided by the parties.  The Settling Defendants have agreed to provide records for all properties within the Town of Hoosick and Village of Hoosick Falls on which point-of-entry treatment (POET) systems have been installed since December 2015.  Interim Class Counsel have agreed to provide property addresses, based on the 2015 public Tax Rolls for all Residential Properties in the Village of Hoosick Falls.  These records and postal addresses will encompass all Residential Properties included in the Property Settlement Classes and the Nuisance Settlement Class.

---

[1] American Community Survey, 2019: ACS 5-Year Estimates Detailed Tables, TableID B07001.
https://www.census.gov/topics/population/migration/guidance/metro-to-metro-migration-flows.html.

9.      Prior to mailing, the postal addresses will be checked against the National Change of Address (NCOA)[2] database maintained by USPS; certified via the Coding Accuracy Support System (CASS);[3] and verified through Delivery Point Validation (DPV).[4]

10.     Notices returned by USPS as undeliverable will be re-mailed to any address available through postal service forwarding order information. For any returned mailing that does not contain an expired forwarding order with a new address indicated, KCC will conduct further address searches using credit and other public source databases to attempt to locate new addresses and will re-mail these notices where possible.

### *Media Campaign*

11.     In addition to the individual notice effort described above, KCC will implement a media campaign consisting of newspapers, digital media, a press release, and a consumer outreach effort. Specifically, KCC will place a quarter page Summary Notice in the *Bennington Banner* and *Eastwick Press*. KCC will also cause approximately 54.2 million digital impressions to be distributed via various websites and social media platforms, including Facebook and Instagram. The impressions will be (1) geographically targeted to adults in the state of New York, the Albany-Troy-Schenectady designated market area, the Town of Hoosick, and Village of Hoosick Falls, (2) targeted to adults nationwide, (3) targeted to internet users who have Bennington College listed as part of their Education as part of their social media profile, and (4) targeted using IP addresses to reach devices mapped to approximately 1,700 postal addresses in Hoosick Falls.

---

[2] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms, and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

[3] Coding Accuracy Support System is a certification system used by the USPS to ensure the quality of ZIP+4 coding systems.

[4] Records that are ZIP+4 coded are then sent through Delivery Point Validation to verify the address and identify Commercial Mail Receiving Agencies. DPV verifies the accuracy of addresses and reports exactly what is wrong with incorrect addresses.

12.     KCC will also cause a press release to be distributed nationwide to a variety of press outlets.

13.     KCC will contact a variety of local organizations and request their assistance in sharing information with their members and audiences. Organizations include radio stations, local newspapers, news stations, and social media groups. For example, Village of Hoosick Falls (villageofhoosickfalls.com/Water), Town of Hoosick, New York (townofhoosick.org), Rensselaer County (rensco.com/departments), WAMC Northeast Public Radio, Troy Record, WRBG News 6, The Legislative Gazette, The New York  Times, WNYT 13, City & State New York, ABC 33/40, and Facebook groups such as Hoosick Falls NY Past & Present, Hoosick Area Here & Now, Hoosick Falls Environmental Conservation, Hoosick Falls Water Pollution, Village of Hoosick Falls, NY, and Hoosick Falls Parents.

14.     The media campaign is expected to reach approximately 80% of likely Settlement Class Members.

### *Response Mechanisms*

15.     KCC will establish and maintain a case specific website to allow Settlement Class Members to obtain additional information and documents about the Settlement, including the Second Amended Complaint, the Settlement Agreement, the Notice Form, Plaintiffs' motion seeking Preliminary Approval, the Preliminary Approval Order, Plaintiffs' motion seeking Final Approval, the Final Approval Order, the Claim Form, and such other documents as the Parties agree to post or that the Court orders posted. Settlement Class Members will also be able to review a list of "Frequently Asked Questions and Answers" and file a Claim Form online.

16.     KCC will establish a case-specific toll-free number to allow Settlement Class Members to call to learn more about the case in the form of Frequently Asked Questions and

Answers. It will also allow Settlement Class Members to request to have additional information mailed to them.

## CONCLUSION

17.     In my opinion, the Notice Program proposed for this case is consistent with other effective settlement notice programs. It is the best notice practicable and meets the "desire to actually inform" due process communications standard of *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). It provides the same reach and frequency evidence that Courts have approved and that has withstood appellate scrutiny, other expert critiques, as well as collateral review.[5] The Notice Program and notice documents are consistent with the guidelines set forth in Rule 23, the Manual for Complex Litigation, Fourth, and the Federal Judicial Center's 2010 Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 21 day of July 2021, at Ocean City, New Jersey.

Carla A. Peak
_____

---

[5] *See* for example, *Friend v. FGF Brands (USA), Inc*., No. 1:18-cv-07644 (N.D. Ill.), *In re Trader Joe's Tuna Litigation*, No. 2:16-cv-01371 (C.D. Cal.), *In re Thalomid and Revlimid Antitrust Litigation*, No. 2:14-cv-06997 (D. N.J.), *Cicciarella v. Califia Farms, LLC*, No. 7:19-cv-08785 (S.D.N.Y), *Suchanek v. Sturm Foods, Inc*., No. 3:11-cv-00565 (S.D. Ill.), *In re Morning Song Bird Food Litigation*, No. 3:12-cv-01592 (S.D. Cal.), *Alvarez v. Haseko Homes, Inc*., No. 09-1-2691-11 (Cir. Ct. Hawai'i), *Eubank v. Pella Corporation*, No. 1:06-cv-04481 (N.D. Ill.), *Houze v. Brasscraft Manufacturing Co. (EZ-FLO)*, No. BC493276 (Sup. Ct. Cal.), *In Re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litig.*, No. 1:15-cv-01364 (N.D. Ill.) and *Lavinsky v. City of Los Angeles*, No. BC542245 (Sup. Ct. Cal.).