UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MICHELE BAKER; CHARLES CARR; ANGELA CORBETT; PAMELA FORREST; MICHAEL HICKEY, individually and as parent and natural guardian of O.H., infant; KATHLEEN MAIN-LINGENER; KRISTIN MILLER, as parent and natural guardian of K.M., infant; JENNIFER PLOUFFE; SILVIA POTTER, individually and as parent and natural guardian of C.P, infant; and DANIEL SCHUTTIG, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

SAINT-GOBAIN PERFORMANCE PLASTICS CORP., and HONEYWELL INTERNATIONAL INC. f/k/a ALLIED-SIGNAL INC. and/or ALLIEDSIGNAL LAMINATE SYSTEMS, INC., E.I. DUPONT DE NEMOURS AND COMPANY, INC., and 3M CO.,

*Defendants*.

Case No. 1:16-CV-00917-LEK-DJS

**ORDER GRANTING FINAL APPROVAL OF THE PROPOSED SETTLEMENT, CONFIRMING CERTIFICATION OF THE PROPOSED SETTLEMENT CLASSES, GRANTING PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS, AND ENTERING FINAL JUDGMENT AS TO THE SETTLING DEFENDANTS**

Plaintiffs Michele Baker, Charles Carr, Angela Corbett, Pamela Forrest, Michael Hickey, individually and as parent and natural guardian of O.H., infant, Kathleen Main-Lingener, Kristin Miller, as parent and natural guardian of K.M., infant, Jennifer Plouffe, Silvia Potter, individually and as parent and natural guardian of C.P., infant, and Daniel Schuttig, and Defendants Saint-Gobain Performance Plastics Corp., Honeywell International Inc., and 3M Company (collectively,

"the Parties"), by their respective counsel, have entered into a Settlement Agreement, including all Exhibits thereto (Dkt. 286-3), as clarified by the Addendum to the Class Settlement Agreement entered into by the Parties on October 6, 2021 (Dkt. 312-2), subject to preliminary and final approval by this Court.[1] The Settlement Agreement sets forth the terms and conditions of a proposed Settlement that, *inter alia*, resolves certain claims on behalf of four proposed Settlement Classes and dismisses claims raised in the Action as against each of the Settling Defendants with prejudice.

By Order dated July 27, 2021 (the "Preliminary Approval Order"), this Court: (1) preliminarily approved the Settlement; (2) preliminarily certified the proposed Settlement Classes for settlement purposes only; (3) determined that the Notice Program satisfied due process and the requirements of Fed. R. Civ. P. 23, and directed that Notice be provided to the Settlement Classes; (4) appointed KCC as the General Administrator; (5) ordered that parents and guardians of all named Minor Plaintiffs and absent Minor Settlement Class Members, as well as legal representatives of incompetent Settlement Class Members, could lawfully sign Claim Forms and releases on behalf of the Settlement Class Members they represent pursuant to Local Rule of Civil Procedure 17.1 ("Local Rule 17.1") and NY C.P.L.R. § 1201; (6) ordered that legal representatives of deceased absent Settlement Class Members could, subject to an attestation of authority, lawfully sign Claim Forms and releases on behalf of the absent Settlement Class Members they represent; (7) advised of the opportunity to object to the proposed Settlement; (8) provided Settlement Class Members with the opportunity to exclude themselves from the proposed Settlement Classes; (9) preliminarily appointed Plaintiffs as Class Representatives and their counsel as Interim Settlement

---

[1] Capitalized terms used in this Order and otherwise not defined shall have the meaning assigned to such terms by the Settlement Agreement.

Class Counsel; and (10) scheduled a hearing to determine whether to grant final approval to the Settlement. (Dkt. 291.)

By Order dated October 26, 2021 (the "Supplemental Preliminary Approval Order"), this Court clarified the definition of "Excluded Persons" to mean, *inter alia*:

> any Person who has previously filed a claim against any Settling Defendant alleging a PFOA-related injury or illness, including without limitation a spousal derivative claim, or seeking medical monitoring, nuisance or property damages, related to the presence of PFOA in the Village Municipal Water System, in private wells in the Village or Town, on or at their property, and/or in their blood, except for the Action, where, as of thirty (30) days prior to the Final Approval Hearing:
>
> (a) such claim or request for medical monitoring, nuisance, and/or property damages has not been dismissed and/or a request to dismiss the claim pursuant to Fed. R. Civ. P. 41(a)(2) or N.Y. C.P.L.R. § 3217(b) is not pending; or
>
> (b) such Person has not filed an amended complaint or a motion for leave to file an amended complaint that does not assert against any Settling Defendant a nuisance claim or a claim or request for medical monitoring relief or property damages related to the presence of PFOA in the Village Municipal Water System, in private wells in the Village or Town, on or at their property, and/or in their blood.

(Dkt. 309.) The Supplemental Preliminary Approval Order further added Section 22(w) to the Settlement Agreement, providing waiver of a claim-splitting defense by the Settling Defendants as to certain plaintiffs in individually filed actions regarding certain claims, and approved Supplemental Notice to certain individuals with separately-filed actions pending before this Court or in Rensselaer County Supreme Court. (*Id.*)

On December 24, 2021, Plaintiffs submitted their Motion for Final Approval of the Class Settlement, Certification of the Settlement Classes, and Approval of Attorneys' Fees, Expenses, and Service Awards. (Dkt. 312.) Plaintiffs also filed a supplemental declaration regarding the Settlement on January 28, 2022. No Settlement Class Members have objected to the Settlement,

3

and no valid opt-out requests have been received. Nor has any non-settling party filed an opposition to Plaintiffs' Motion for Final Approval of the Class Settlement.

On February 2, 2022, the Court conducted a hearing (the "Final Approval Hearing") to consider, *inter alia*, whether: (1) the terms and conditions of the Settlement are fair, reasonable, and adequate, as required by Fed. R. Civ. P. 23(e), and therefore merit approval by the Court; (2) the proposed Settlement Classes should be finally certified for settlement purposes pursuant to Fed. R. Civ. P. 23(a) and (b)(3); (3) final judgment should be entered dismissing the Action as against each of the Settling Defendants with prejudice; and (4) Plaintiffs' motion for approval of attorneys' fees, expenses, and service awards should be granted. The Court has reviewed and considered the Settlement Agreement, all papers filed and proceedings held herein in connection with the Settlement, all oral and written submissions, including those filed on July 27, 2021 (Dkt. 292), July 30, 2021 (Dkt. 298), and August 5, 2021 (Dkt. 302) by non-settling Defendant E.I. DuPont de Nemours and Company ("DuPont"), regarding the Settlement, and the record in the Action, and good cause appearing therefor, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1. **Jurisdiction**: The Court has personal jurisdiction over all Plaintiffs, the Settlement Classes, and Settling Defendants Saint-Gobain Performance Plastics Corp. ("Saint-Gobain"), Honeywell International Inc. ("Honeywell"), and 3M Company ("3M") for purposes of the Settlement. The Court has subject matter jurisdiction over the claims asserted in this Action. Venue in the Northern District of New York is proper.

2. **Incorporation of Settlement Documents**: The Court expressly incorporates in this Final Approval Order and makes a part hereof the Settlement Agreement and Exhibits, and the Addendum to the Class Settlement Agreement. The Court does this for the purpose of satisfying

the requirements of *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 380-82 (1994), concerning the obligation of a court entering a settlement agreement to speak clearly when it wishes to retain jurisdiction.

## FINAL APPROVAL OF THE CLASS SETTLEMENT

3.      The Court hereby grants final approval to the Settlement Agreement, finding the Settlement Agreement in its entirety to be fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e). The Settlement Agreement provides substantial benefits to the Settlement Classes and avoids continued, protracted litigation between the Parties. The Court finds that the Settlement Agreement, with respect to Settlement Class Members who are Minors, lack capacity, are incompetent, or are deceased, is fair, reasonable, and adequate.

4.      In determining that the Settlement is fair, reasonable, and adequate, and that it merits approval, the Court has assessed the considerations set forth in Fed. R. Civ. P. 23(e)(2), as well as the factors set forth by the Second Circuit Court of Appeals in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

5.      The Court finds that Plaintiffs and Interim Settlement Class Counsel have adequately represented the Settlement Classes. Fed. R. Civ. P. 23(e)(2)(A). First, there are no conflicting interests that exist between Plaintiffs and the Settlement Classes. The record also demonstrates that Plaintiffs participated in all aspects of the litigation and at all times acted in the best interests of the Settlement Classes. Second, Interim Settlement Class Counsel have diligently litigated this Action on behalf of the Settlement Classes and achieved a significant resolution from the Settling Defendants.

6. The Court finds that the Settlement was negotiated at arm's length, in good faith, and was overseen by an experienced mediator, Professor Eric Green, which demonstrates that the negotiated resolution was procedurally fair. Fed. R. Civ. P. 23(e)(2)(B).

7. The Court finds that the relief provided for the Settlement Classes is adequate, taking into account the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the Settlement Classes; the terms of any proposed award of attorneys' fees, including the timing of payment; and the existence of any agreements required to be identified under Fed. R. Civ. P. 23(e)(3). Members of the Property Settlement Classes and Nuisance Settlement Class will receive monetary payments that are significant, as demonstrated by the terms of, and all of the material submitted concerning, the Settlement Agreement, and in light of the factual, legal, practical, and procedural risks and other considerations raised by this Action. Similarly, the proposed Medical Monitoring Program constitutes a significant benefit for Members of the Medical Monitoring Settlement Class.

8. Further, the method of distributing these benefits to the Settlement Classes is fair, reasonable, adequate, and efficient. More than 2300 claims were filed during the Enrollment Period. Interim Settlement Class Counsel conservatively estimates that over 70% of eligible Property Settlement Class Members and Nuisance Settlement Class Members filed a claim, and nearly 60% of eligible Medical Monitoring Settlement Class Members filed a claim. This claims rate, which is substantial, is a testament to the fairness of the Settlement and the relative ease with which Claimants were able to file a claim. *See* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendments ("Measuring the proposed relief may require evaluation of any proposed claims process.").

9. As set forth in more detail below, the Court finds that the terms of Plaintiffs' application for attorneys' fees, including the timing of payment, weigh in favor of the Settlement's fairness.

10. The Parties have complied with Fed. R. Civ. P. 23(e)(3) by identifying the existence of two confidential agreements, in addition to the Settlement Agreement, made in connection with the proposed Settlement. (*See* Dkt. 286-1 at 36-37.) The first agreement, as provided in Section 19 of the Settlement, was never implicated because no Settlement Class Members requested to opt out of the Settlement. The second agreement, which has been stated to concern each Settling Defendant's respective responsibility to pay a portion of the Settlement, does not impact the Total Settlement Payment.

11. The Court finds that the Settlement treats Settlement Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). Each Property Settlement Class Member will receive a payment based on the value of their property as per the 2015 county tax assessment relative to all other properties owned by the Property Settlement Class Members. Nuisance Settlement Class Members will receive a pro rata share of the Nuisance Payment Allocation. The Property Payment Allocation and Nuisance Payment Allocation are rational methods of distributing the Settlement's monetary benefits given Plaintiffs' allegations and claims. Medical Monitoring Settlement Class Members are also treated equitably relative to each other, as each Settlement Class Member will have equal access to the consultations and, as set forth in the Settlement Agreement and Appendix A thereto, other program benefits provided by the Medical Monitoring Program.

12. Finally, the reaction of the Settlement Classes has been overwhelmingly positive, which weighs strongly in favor of the Settlement's fairness. Indeed, the Settlement drew no

objections from Settlement Class Members and no valid opt outs. When coupled with the strong claims rate, the Court finds that the Settlement Classes' reaction is evidence that the Settlement is viewed favorably and supported by the Settlement Class Members and this, in turn, demonstrates that the Settlement is fair, reasonable, and adequate. *See Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (explaining that where "the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate").

13. **<u>Objections to the Settlement</u>**: No Settlement Class Member lodged an objection to the Settlement. While non-settling defendant DuPont previously asked for the Preliminary Approval Order to be held in abeyance (Dkt. 292), the Court has considered DuPont's arguments and finds that they do not provide a basis to deny Final Approval of the Settlement because DuPont lacks standing. *See Bhatia v. Piedrahita,* 756 F.3d 211, 219 (2d Cir. 2014). Further, the Court received no opposition to Plaintiffs' Motion for Final Approval of the Class Settlement. Accordingly, the Court need not rule on any pending objections.

## CERTIFICATION OF THE SETTLEMENT CLASSES

14. Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), the Court certifies the Municipal Water Property Settlement Class, Private Well Water Property Settlement Class, Nuisance Settlement Class, and Medical Monitoring Settlement Class in accordance with the Settlement Agreement for purposes of settlement only. The Settlement Classes are defined as follows:

**<u>Municipal Water Property Settlement Class</u>**

All Persons who are or were owners of Residential Property that was supplied with drinking water from the Village Municipal Water System, and who purchased that property on or before December 16, 2015 and owned that property as of December 16, 2015; provided, however, that the Municipal Water Property Settlement Class shall not include Excluded Persons.

**<u>Private Well Water Property Settlement Class</u>**
All Persons who are or were owners of Residential Property located in the Village of Hoosick Falls or the Town of Hoosick that was supplied with drinking water from a private well in which PFOA was detected, and who owned that property at the time PFOA in the property's private well was discovered through a water test

on or after December 16, 2015; provided, however, that the Private Well Water Property Settlement Class shall not include Excluded Persons.

**Nuisance Settlement Class**
All Persons who are or were owners or renters of Residential Property located in the Village of Hoosick Falls or the Town of Hoosick that was supplied with drinking water from a privately owned well in which PFOA was detected, had a point-of-entry treatment (POET) system installed to filter water from that well, and who either (i) owned and occupied that property at the time PFOA in the property's private well was discovered through a water test on or after December 16, 2015; or (ii) rented and occupied the property at the time PFOA in the property's private well was discovered through a water test on or after December 16, 2015; provided, however, that the Nuisance Settlement Class shall not include Excluded Persons.

**Medical Monitoring Settlement Class**
All individuals who, for a period of at least six months between 1996 and 2016, have (a) ingested water at their residence(s) supplied by the Village Municipal Water System or from a private well in the Village of Hoosick Falls or the Town of Hoosick in which PFOA has been detected, and (b) underwent blood serum tests that detected a PFOA level in their blood above 1.86 µg/L; or any natural child (i) who was born to a female who meets and/or met the above criteria at the time of the child's birth and (ii) whose blood serum was tested after birth and detected a PFOA level above 1.86 µg/L; provided, however, that the Medical Monitoring Settlement Class shall not include Excluded Persons.

15. The Court finds, for settlement purposes only, that each of the Settlement Classes meets the requirements for class certification under Fed. R. Civ. P. 23(a) and (b)(3)—namely, (a) the Settlement Class Members are sufficiently numerous such that joinder is impracticable; (b) the Settlement Classes share common questions of law and fact; (c) Plaintiffs' claims are typical of those of the Settlement Class Members; (d) Plaintiffs and Plaintiffs' counsel have adequately represented, and will continue to adequately represent, the interests of the Settlement Class Members; and (e) questions of law and fact common to the Settlement Classes predominate over questions affecting only individual Settlement Class Members, and certification of the Settlement Classes is superior to other available methods for the fair and efficient adjudication of this controversy.

16.     **Requests to Opt Out of the Settlement**: The General Administrator received no valid opt-out requests. Fifteen individuals submitted notice that they wish to "opt out" of the Settlement, but each of these fifteen individuals is an Excluded Person. Accordingly, the only "opt-out" requests that were received were invalid.

### APPOINTMENT OF CLASS REPRESENTATIVE PLAINTIFFS

17.     For settlement purposes only, the Court appoints the following Plaintiffs and interim Class Representatives as Class Representative Plaintiffs for the Settlement Classes:

> **Municipal Water Property Settlement Class**: Pamela Forrest, Kathleen Main-Lingener, Jennifer Plouffe, Silvia Potter, and Daniel Schuttig;
>
> **Private Well Water Property Settlement Class**: Michele Baker, Charles Carr, and Angela Corbett;
>
> **Nuisance Settlement Class**: Michele Baker, Charles Carr, and Angela Corbett; and
>
> **Medical Monitoring Settlement Class**: Charles Carr, Angela Corbett, Michael Hickey, individually and as parent and natural guardian of O.H., infant, Kathleen Main-Lingener, Kristin Miller, as parent and natural guardian of K.M., infant, and Silvia Potter, individually and as parent and natural guardian of C.P., infant.

### APPOINTMENT OF CLASS COUNSEL

18.     For settlement purposes only, the Court appoints Stephen G. Schwarz and Hadley L. Matarazzo of Faraci Lange LLP, and James J. Bilsborrow and Robin L. Greenwald of Weitz & Luxenberg, P.C., as Settlement Class Counsel under Fed. R. Civ. P. 23(g)(3). Settlement Class Counsel are authorized to act on behalf of the Settlement Classes with respect to all acts required by, which may be given pursuant to, or which are reasonably necessary to perform the Settlement Agreement.

19. **General Administrator**: The Court confirms the appointment of KCC as General Administrator and directs KCC to carry out all duties and responsibilities related to administration of the Settlement as specified in the Settlement Agreement.

20. **Medical Monitoring Administrator**: The Court appoints Edgar C. Gentle, III, Esq. to serve as an independent, third-party Medical Monitoring Administrator, to administer the Medical Monitoring Program. Mr. Gentle is directed to carry out all duties and responsibilities related to administration of the Medical Monitoring Program as specified in the Settlement Agreement and Appendix A to the Agreement.

21. **Settlement Fund**: Pursuant to the Settlement Agreement, the Settlement Fund shall be used to pay Property Settlement Class Member Payments and Nuisance Settlement Class Member Payments; to fund the Medical Monitoring Program, including to pay incentive payments and distributions to Participants in the Medical Monitoring Program, as provided in the Settlement, as well as all Medical Monitoring Administration Costs; to pay attorneys' fees and costs as set forth in this Order; to pay the Service Awards to the Class Representative Plaintiffs; and to pay General Settlement Administration Costs pursuant to the Settlement Agreement. Pursuant to Section 2(b)(ii) of the Settlement, the Settling Defendants shall pay $55,250,000 (which combined with the Preliminary Settlement Fund Payment of $10,000,000 shall constitute the Total Settlement Payment) into the Escrow Account within twenty-one days of the Effective Date, thereby creating the Settlement Fund, which shall continue to be administered as a qualified settlement fund account under United States Treasury regulations. The Court shall retain exclusive and continuing jurisdiction over the Settlement Fund until it is distributed as specified in the Settlement Agreement.

22. **Settlement and CAFA Notice**: The Court finds that the Notice, the Supplemental Notice, and Notice Program satisfied the applicable requirements of Fed. R. Civ. P. 23(c)(2)(B) and 23(e), and fully comply with all laws and the Due Process Clause of the United States Constitution, constituting the best notice that was practicable under the circumstances of this case. Among other things, the Notice advised Settlement Class Members of the opportunity to object to the proposed Settlement or to opt out of the Settlement Classes. Further, the Court finds that each of the Settling Defendants has complied with and otherwise discharged its obligations under the Class Action Fairness Act, 28 U.S.C. § 1715(b).

23. **Settlement of Claims of Infant, Incompetent, and Deceased Class Members**: This Order confirms the authority previously granted pursuant to Local Rule 17.1 and N.Y. C.P.L.R. § 1201 for parents and guardians of all named Minor Plaintiffs and absent Minor Settlement Class Members, and for legal representatives of absent incompetent Settlement Class Members, to sign Claim Forms and releases on behalf of the Settlement Class Members they represent. This Order effectuates a settlement under Local Rule 17.1 and N.Y. C.P.L.R. § 1207 for all named Minor Plaintiffs, absent Minor Settlement Class Members, and absent incompetent Settlement Class Members.

24. This Order confirms the authority previously granted to legal representatives of deceased absent Settlement Class Members to sign Claim Forms and releases on behalf of the absent Settlement Class Members they represent.

**ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS**

25. Plaintiffs' counsel has requested an attorneys' fee award of 19 percent of the Total Settlement Payment, or $12,397,500, as well as reimbursement of expenses incurred in connection

with this Action of $1,040,817. No Settlement Class Member objected to Plaintiffs' application for attorneys' fees or reimbursement of expenses and therefore the request is unopposed.

26. **Reasonableness of the Attorneys' Fee Request**: In common fund settlements, such as this one, courts in this Circuit typically apply the percentage-of-the-fund method to assess an attorneys' fee request. *Goldberger*, 209 F.3d at 50. The Court finds it is appropriate to apply the percentage-of-the-fund method here. To determine whether the request for 19 percent of the Total Settlement Payment is reasonable, the Court considers the guidelines set forth by the Second Circuit in *Goldberger*: (1) the time and labor expended by counsel, (2) the magnitude of the litigation, (3) the risk of the litigation, (4) the quality of the representation, (5) the requested fee in relation to the settlement, and (6) public policy considerations. *Id.* Pursuant to *Goldberger*, the Court has "very broad discretion . . . in determining a reasonable fee." *Id.* at 57. Upon applying the *Goldberger* factors, the Court finds that a fee of 19 percent of the Total Settlement Payment, or $12,397,500, is reasonable.

    a. **Magnitude and Complexity of the Litigation**: The Court finds that the magnitude and complexity of the litigation weigh in favor of approval. The Action was complex, presenting novel factual and legal issues whose outcome was uncertain at the outset. Indeed, the Court said as much in its order granting in part and denying in part Defendants' motion to dismiss, explaining that the motion "raise[d] several complex and novel issues of New York law as to which the existing case law is significantly muddled." (Dkt. 33 at 36-37.) For this reason, the Court granted the right to interlocutory appeal pursuant to 28 U.S.C. § 1292, and the legal viability of Plaintiffs' claims was litigated before the Second Circuit. *See Baker v. Saint-Gobain Performance Plastics Corp.*, 959

F.3d 70 (2d Cir. 2020); *Benoit v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 491 (2d Cir. 2020).

    b.    **Risks of the Litigation**: The Court finds that the risks of the litigation weigh in favor of approval. As explained above, the legal viability of Plaintiffs' common law claims, including their claim seeking consequential medical monitoring damages, was uncertain at the outset of the litigation, significant defenses have remained, and the Action proceeded through multiple years of discovery, disclosure of eight expert reports in support of class certification, and a motion to certify the proposed classes before the Second Circuit issued its decisions in *Baker* and *Benoit*. The Settling Defendants have contested the legal and factual viability of Plaintiffs' claims throughout.[2]

    c.    **Quality of Representation**: The Court finds that the quality of representation weighs in favor of approval. Class Counsel has delivered significant benefits to the Settlement Classes in this partial resolution of Plaintiffs' claims, and the Court observes that Class Counsel consistently delivered high-quality representation to Plaintiffs, the putative classes, and the Settlement Classes. Further, Class Counsel faced worthy adversaries of high caliber, which the Court has appropriately considered in evaluating the quality of Class Counsel's work. *See, e.g.*, *In re Nigeria Charter Flights Litig.*, No. MD 2004-1613, 2011 WL 7945548, at *8 (E.D.N.Y. Aug. 25, 2011) ("The quality of opposing counsel is also important in evaluating the quality of class counsel's work.").

    d.    **Requested Fee in Relation to the Settlement**: The Court finds that a 19 percent fee award compares favorably with fees awarded to class counsel in the Second Circuit, especially in light of the results delivered to the Settlement Classes. For example,

---

[2] *See, e.g.,* Settlement Agreement § 7.

courts in this district and throughout the Second Circuit have regularly found an award of 33 percent of a common fund to be fair and within the range of reasonableness. *See, e.g.*, *Thompson v. Community Bank, N.A.*, No. 8:19-CV-919 (MAD/CFH), 2021 WL 4084148, at *10-12 (N.D.N.Y. Sept. 8, 2021) (awarding 33.33% of a common fund and citing cases); *Baudin v. Resource Mktg. Corp., LLC*, No. 1:19-cv-386 (MAD/CFH), 2020 WL 4732083, at *14 (N.D.N.Y. Aug. 13, 2020) (awarding 33% of common fund); *see also Velez v. Novartis Pharms. Corp.*, No. 04 Civ. 09194 (CM), 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) (explaining that "federal courts have established that a standard fee in complex class action cases . . . where plaintiffs counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit," and "[d]istrict courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater"). Here, Class Counsel delivered significant relief to the Settlement Classes in a complex case against well-funded adversaries. The requested fee of 19 percent of the Total Settlement Payment falls within the range of reasonableness and compares favorably to fee awards in complex class action litigation within this Circuit.

  e. **Public Policy Considerations**: The requested fee furthers the policy goal of "providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Goldberger*, 209 F.3d at 51.

  f. **Time and Labor Expended by Counsel and Lodestar Cross-Check**: The Court finds that consideration of the time and labor expended by counsel, as well as a lodestar cross-check, demonstrate that the requested fee is reasonable. As of the date of their motion, Class Counsel and associated counsel had expended a total of 11,391.74 hours, for a lodestar of $5,605,079.45. Class Counsel anticipated spending an additional

300-400 hours assisting Claimants with their claims, facilitating commencement of the Medical Monitoring Program, ensuring that Settlement benefits are properly distributed to Settlement Class Members, and performing periodic oversight of the Medical Monitoring Program. The time and labor expended by counsel is appropriate and was warranted in this complex Action. Application of a lodestar cross-check confirms the Court's finding.[3] To obtain their requested fee, Class Counsel seek a lodestar multiplier of 2.21, which falls at the low end of the range of multipliers typically awarded in this Circuit. *See, e.g.*, *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, No. 1:08-cv-10783-LAP, 2016 WL 3369534, at *1 (S.D.N.Y. May 2, 2016) (3.9 multiplier reasonable); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (multiplier of 5.3 was "not atypical" in similar cases). Accordingly, application of a lodestar cross-check confirms that the fee requested by Class Counsel is reasonable.

27.   **Reasonableness of the Cost Reimbursement Request**: "Courts routinely note that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses." *Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-cv-8405 (CM), 14-cv-8714 (CM), 2015 WL 10847814, at *23 (S.D.N.Y. Sept. 9, 2015) (internal quotations omitted). The cost reimbursement requested by Class Counsel—$1,040,817—reflects expenses typically billed by attorneys to paying clients in the marketplace and includes expert witness expenses, costs associated with document production and storage, deposition expenses, travel in connection with litigation, and expenses

---

[3] Because the Court is using a lodestar cross check, "the hours documented by counsel need not be exhaustively scrutinized," but rather "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case (as well as encouraged by the strictures of Rule 11)." *Goldberger*, 209 F.3d at 50. Accordingly, the Court does not need to, and elects not to, engage in a line-by-line analysis of the total hours reported by Class Counsel, which are consistent with what the Court would expect in a case of similar complexity.

related to procuring the services of a well-qualified mediator. The Court finds that the expenses incurred in the Action are reasonable.

28.     **Approval of Attorneys' Fees and Costs**: The Court awards Plaintiffs' counsel (i) $12,397,500 in attorneys' fees and (ii) $1,040,817 in reasonable litigation expenses. Pursuant to the Settlement Agreement, the fees and expenses shall be paid from the Settlement Fund no later than twenty-eight days after the Effective Date.

29.     **Approval of Service Awards**: Plaintiff incentive awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015) (internal quotation marks omitted). The Court finds that the Class Representative Plaintiffs have devoted considerable time and effort to this litigation, and have been active participants from the pre-suit investigation to the settlement process. The result obtained for the Settlement Classes would not have been possible without the active participation of these Plaintiffs. The Court awards $25,000 to the following Class Representative Plaintiffs for their commendable work on achieving this significant Settlement: Michele Baker, Charles Carr, Angela Corbett, Pamela Forrest, Michael Hickey, Kathleen Main-Lingener, Kristin Miller, Jennifer Plouffe, Silvia Potter, and Daniel Schuttig. This award is reasonable considering the work performed by each Plaintiff and the result obtained thus far. *See, e.g.*, *Story v. SEFCU*, No. 1:18-CV-764 (MAD/DJS), 2021 WL 736962, at *10-11 (N.D.N.Y. Feb. 25, 2021) (awarding $15,000 service awards to each class representative plaintiff); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126, 2018 WL 6250657, at *4 (S.D.N.Y. Nov. 29, 2019) (approving award of $50,000 for six plaintiffs and $100,000 for two plaintiffs).

## RELEASE, DISMISSAL, AND ENTRY OF FINAL JUDGMENT AS TO THE SETTLING DEFENDANTS

30. **Release, Covenant Not to Sue, and Permanent Injunction**: The Court finds that the Release set forth in Section 6 of the Settlement Agreement is valid and enforceable. The Release is given pursuant to New York law and shall be construed under New York law, including N.Y. General Obligations Law § 15-108. The Release is effective as of the Effective Date. Pursuant to Section 6 of the Settlement Agreement, the Court permanently bars and enjoins the Releasing Parties from instituting, maintaining, prosecuting, or continuing any suit, action, arbitration, or proceeding against any of the Released Parties with respect to the Released Claims. The Court finds that each of the Releasing Parties has expressly, intentionally, fully, finally, and forever released, waived, compromised, settled, and discharged all Released Claims. Each of the Releasing Parties (whether or not the Releasing Party objected, submitted a Claim Form, or otherwise participated in the Action, the Settlement, or the approval process) shall be bound by the terms and provisions of the Settlement Agreement and this Order, including the Release and Covenant Not to Sue provisions set forth in the Settlement Agreement, which are hereby incorporated by reference and become part of this Order.

31. **No Contribution Claims**: The Court enjoins any Person from asserting claims against the Released Parties for contribution or similar claims (however denominated) for all or a portion of any amounts paid or awarded in the Action by way of settlement, judgment, or otherwise.

32. **Dismissals**: Subject to the Paragraph 30, in consideration of the benefits provided under the Settlement Agreement, all Released Claims by or on behalf of the Settlement Classes, Plaintiffs, or any and all Settlement Class Members against any and all Released Parties, are hereby dismissed with prejudice, including all claims in the Second Amended Complaint asserted against

the Settling Defendants. These claims are dismissed without further cost, including claims for interest, penalties, costs, and attorneys' fees (except as otherwise provided for in the Settlement Agreement).

33. **Retention of Jurisdiction**: Without affecting the finality of this Order in any way, this Court retains continuing and exclusive jurisdiction (i) over the Medical Monitoring Program and the Settlement Fund, (ii) over the Parties, the Settlement Class Members, and the Settlement Agreement, to interpret, implement, administer and enforce the Settlement Agreement in accordance with its terms; (iii) for all matters relating to the Settlement Agreement and the Action pending before the Court, (iv) to administer and enforce the terms of this Order, and (v) for any other necessary purpose.

34. **Termination of the Settlement**: If the Settlement is terminated as provided in Section 18 of the Agreement, or the Effective Date otherwise fails to occur, this Order shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Settlement Agreement, and this Order shall be without prejudice to the rights of Plaintiffs, Settlement Class Members, and the Settling Defendants, and the Plaintiffs, Settling Defendants, and Settlement Class Members shall revert to their respective pre-Settlement positions in the Action and in any actions previously pending in any federal or state court in which Settlement Class Members dismissed claims in order to participate in one or more Settlement Classes. In such event, the Parties shall be free to raise all claims, defenses, and arguments that they could have raised had they never negotiated, agreed to, or sought approval of the Settlement.

35. **Entry of Final Judgment**: The Court finds that there is no just reason for delay in the entry of final judgment as to the Settling Defendants—Saint-Gobain, Honeywell, and 3M—

and the Clerk of Court is expressly directed to enter final judgment as to the Settling Defendants and the claims alleged against them in the Action pursuant to Fed. R. Civ. P. 54(b).

**SO ORDERED.**

This 4th day of February, 2022

_____
Hon. Lawrence E. Kahn
United States District Judge