UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MICHELE BAKER, individually and
on behalf of all other persons similarly
situated, *et al.*,

               Plaintiffs,

    -against-                              1:16-CV-0917 (LEK/DJS)

SAINT-GOBAIN PERFORMANCE
PLASTICS CORP., *et al.*,

               Defendants.

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

      Plaintiffs Michele Baker; Charles Carr; Angela Corbett; Pamela Forrest; Michael Hickey,

individually and as parent and natural guardian of O.H., infant; Kathleen Main-Lingener; Kristin

Miller, as parent and natural guardian of K.M., infant; Jennifer Plouffe; Silvia Potter,

individually and as parent and natural guardian of C.P., infant; and Daniel Schuttig, individually

and on behalf of all others similarly situated (collectively, "Plaintiffs"), brought this putative

class action against defendants Saint-Gobain Performance Plastics Corp. ("Saint-Gobain");

Honeywell International Inc. ("Honeywell"), formerly known as Allied-Signal Inc. ("Allied-

Signal") or AlliedSignal Laminate Systems, Inc. ("AlliedSignal Laminate"); E.I. DuPont de

Nemours and Co. ("DuPont"); and 3M Co. ("3M") (collectively, "Defendants"). Dkt. No. 171

("Second Amended Complaint").

      The Court approved a Settlement Agreement between Saint-Gobain, Honeywell, 3M, and

Plaintiffs, confirming certification of the proposed settlement classes, granting Plaintiffs'

application for attorneys' fees, expenses, and service awards, and entering final judgment as to

the settling defendants. Dkt. No. 316 ("Settlement Agreement"). Thereafter, DuPont remained the sole Defendant in this case.

At issue here is Plaintiffs' motion for class certification in Plaintiffs' remaining action against DuPont. Dkt. Nos. 145-2 ("Motion to Certify"); 230 ("Defendants' Opposition to Motion to Certify"); 235 ("DuPont and 3M's Opposition to Motion to Certify"); 244 ("Plaintiffs' Reply to Defendants' Opposition"); 245 ("Plaintiffs' Reply to DuPont and 3M"); 322 ("DuPont's Opposition to Motion to Certify"); 323 ("Plaintiff's Reply to DuPont's Opposition").

## II.    BACKGROUND

Plaintiffs sought to represent a class of residents of Hoosick Falls, New York, asserting a variety of claims relating to Defendants' alleged involvement in the contamination of groundwater in Hoosick Falls with perfluorooctanoic acid ("PFOA"). Second Am. Compl. ¶¶ 1–9. Based on Plaintiffs' allegations with regard to DuPont and 3M, these claims are derived from the sales of ammonium perfluorooctanoate ("APFO") and/or polytetrafluoroethylene ("PTFE") to Saint-Gobain and Honeywell (including Honeywell's predecessors Allied-Signal and/or AlliedSignal Laminate). Id. ¶¶ 21–31. Furthermore, Plaintiffs' claims are derived from allegations of 3M's manufacture and sale of APFO to DuPont and others for inclusion in polytetrafluoroethylene ("PTFE") and fluorinated ethylene propylene ("FEP") dispersion products, which were later sold to Saint-Gobain and Honeywell (including its predecessors) for use in their manufacturing facilities at least through the year 2000, id. ¶ 32. The claims also derive from allegations of DuPont's manufacture and sale of APFO to other manufacturers for inclusion in PTFE dispersion products, which were sold to Saint-Gobain and Honeywell for use in their manufacturing facilities from approximately 2000 to 2015, id. ¶ 33, as well as from DuPont's direct sale of APFO to Saint-Gobain from approximately 2000 to 2015, id.

Plaintiffs' factual allegations are further detailed in the Court's February 6, 2017,

Memorandum-Decision and Order, familiarity with which is assumed. Dkt. No. 33 at 2–11,

Baker v. St.-Gobain Performance Plastics Corp., 232 F. Supp. 3d 233, 237–42 (N.D.N.Y. 2017)

(Kahn, J.), aff'd in part, appeal dismissed in part, by 959 F.3d 70 (2d Cir. 2020) ("February 2017

Order").

Plaintiffs bring strict product liability for failure to warn and negligence claims against

DuPont. Second Am. Compl. ¶¶ 248–85. In Plaintiffs' Motion for Class Certification, Plaintiffs

propose four classes: the Municipal Water Property Damage Class, the Private Well Water

Property Damage Class, the Nuisance Damage Class, and the PFOA Invasion Injury Class. Mot.

to Certify at 36–43.

First, according to Plaintiffs, the Municipal Water Property Damage Class consists of

"[a]ll individuals who are or were owners of real property that was supplied with drinking water

from the Village of Hoosick Falls municipal water supply, and who purchased that property on

or before December 16, 2015." Id. at 37. The Municipal Water Property Damage Class seeks

damages for DuPont's actions or inaction that "caused the municipal water supply to be

contaminated with PFOA and that water entered each class member's home and diminished each

class member's property value." Id. at 38.

Second, the Private Well Water Property Damage Class consists of

> [a]ll individuals who are or were owners of real property located in
> the Contamination Zone that was supplied with drinking water from
> a private well contaminated with PFOA and who owned that
> property at the time the contamination of the property's private well
> was discovered through a water test on or after December 16, 2015.

Id. at 38. The Private Well Water Property Damage Class seeks damages for DuPont's actions or

inaction that "caused their property value to decrease." Id. at 38.

3

Third, the Nuisance Damage Class consists of

> [a]ll individuals who are or were owners or lessors of real property located in the Contamination Zone that was supplied with drinking water from a privately owned well contaminated with PFOA, had a point-of-entry treatment (POET) system installed to filter water from that well, and who occupied that property at the time the contamination of the property's private well was discovered through a water test on or after December 16, 2015.

Id. at 39. Plaintiffs claim that the Nuisance Damage Class members' damages are the costs of "the installation of a POET," id. at 40, which "must be maintained for the foreseeable future." Id. at 39. Additionally, Nuisance Damage Class members "seek damages relating to the annoyance and inconvenience of having POETS installed in their homes, maintaining those POETS, and being dependent on bottled water while awaiting installation of the POETs." Id. at 57.

Fourth, the PFOA Invasion Injury Class consists of

> [a]ll individuals who, for a period of at least six months between 1996 and 2016, have (a) ingested PFOA-contaminated water from the Village of Hoosick Falls municipal water supply or from a PFOA-contaminated private well in the Contamination Zone and (b) suffered invasion and accumulation of PFOA in their bodies as demonstrated by blood serum tests disclosing a PFOA level in their blood above the average background level of 1.86 ug/L; or in any natural child born to a female who meets and/or met this criteria at the time of the child's birth and whose blood serum was tested after birth disclosing a PFOA level above the average background level of 1.86 ug/L.

Id. at 40. The PFOA Invasion Injury Class seeks coverage of medical monitoring. Id. at 42.

## III.    LEGAL STANDARD

"Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility . . . ." Marisol A. v Giuliani, 126 F.3d 372, 377 (2d Cir. 1997) (per curiam) (citation omitted) (quoting Sharif ex rel. Salahuddin v. New York State Educ. Dep't, 127 F.R.D. 84, 87 (S.D.N.Y. 1989)).

First, the party seeking to maintain a class action must demonstrate the elements of Rule 23(a). See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011). Rule 23(a) states:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4). Put simply, "[a] Court should grant conditional certification of a class for settlement purposes where the proposed class and class representative satisfy the four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy . . . ." Cohen v. J.P. Morgan Chase & Co., 262 F.R.D. 153, 157–58 (E.D.N.Y. 2009); see also Dukes, 564 U.S. at 349 (noting that Rule 23(a)'s "four requirements" are "numerosity, commonality, typicality, and adequate representation").[1] Additionally, while not explicitly mentioned in the text of Rule 23, the Second Circuit has also "'recognized an implied requirement of ascertainability in Rule 23,' which demands that a class be 'sufficiently definite so that it is administratively feasible for a court to determine whether a particular individual is a member.'" In re Petrobras Sec. Litig., 862 F.3d 250, 260 (2d Cir. 2017) (quoting Brecher v. Republic of Argentina, 806 F.3d 22, 24 (2d Cir. 2015)). "[C]ertification is proper only if 'the

---

[1] "[T]he Supreme Court has acknowledged that, in certain 'context[s] . . . the commonality and typicality requirements of Rule 23(a) tend to merge.'" Sykes v. Mel S. Harris & Assocs. LLC, 780 F.3d 70, 84 n.2 (2d Cir. 2015) (cleaned up) (quoting Dukes, 564 U.S. at 349 n.5); see also Falcon, 457 U.S. at 157 n.13 ("The commonality and typicality requirements of Rule 23(a) tend to merge."). "The crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" Marisol A., 126 F.3d at 376 (quoting Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 157 n.13 (1982)).

trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been

satisfied." Dukes, 564 at 350–51 (quoting Falcon, 457 U.S. at 161).

In addition, a "proposed class must satisfy at least one of the three requirements listed in

Rule 23(b)." Dukes, 564 U.S. at 345. The specific provisions of Rule 23(b) at issue in this case

are 23(b)(2) and 23(b)(3), which state:

> A class action may be maintained if Rule 23(a) is satisfied and if:
> . . . (2) the party opposing the class has acted or refused to act on
> grounds that apply generally to the class, so that final injunctive
> relief or corresponding declaratory relief is appropriate respecting
> the class as a whole; or (3) the court finds that the questions of law
> or fact common to class members predominate over any questions
> affecting only individual members, and that a class action is superior
> to other available methods for fairly and efficiently adjudicating the
> controversy. The matters pertinent to these findings include: (A) the
> class members' interests in individually controlling the prosecution
> or defense of separate actions; (B) the extent and nature of any
> litigation concerning the controversy already begun by or against
> class members; (C) the desirability or undesirability of
> concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(2)–(3).

Courts accept the allegations in the complaint as true when considering a motion for class

certification. See In re Kind LLC "Healthy & All Nat." Litig., 337 F.R.D. 581, 593 (S.D.N.Y.

2021) ("When considering a class certification motion, courts accept the allegations in the

complaint as true."); Shelter Realty Corp. v. Allied Maint. Corp., 574 F.2d 656, 661 n.15 (2d Cir.

1978) ("[I]t is proper to accept the complaint allegations as true in a class certification motion.").

However, the Supreme Court has "recognized . . . that 'sometimes it may be necessary for the

court to probe behind the pleadings before coming to rest on the certification question,' . . . ."

Dukes, 564 U.S. at 350 (quoting Falcon, 457 U.S. at 160); see also Comcast Corp. v. Behrend,

569 U.S. 27, 33 (2013).

## IV.     DISCUSSION

### A.  Certification of All Classes Pursuant to Rule 23(a)

#### 1.  Numerosity

As noted above, Rule 23(a)(1) states: "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable . . . ." Fed. R. Civ. P. 23(a)(1). The Second Circuit has found that even a small number of class members may make joinder impracticable, thereby meeting the numerosity requirement of Rule 23(a)(1). See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members"); see also Town of New Castle v. Yonkers Contracting Co., Inc., 131 F.R.D. 38, 41 (S.D.N.Y. 1990) (finding that a class with 36 members satisfied the numerosity requirement). The numerosity question becomes easier to resolve the larger the purported class size becomes: "Class actions under Rule 23 have involved classes numbering in the hundreds, thousands, and even millions. In such cases, the impracticability of bringing all class members before the court is obvious and the Rule 23(a)(1) requirement is easily met." 1 Newberg and Rubenstein on Class Actions § 3.12 (6th ed. 2022) (footnotes omitted). In addition, "[c]ourts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement." Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993).

According to Plaintiffs, "[t]he individuals who own residential properties served by the Village [of Hoosick Falls] public water system comprise the Municipal Water Property Damage Class[,]" Mot. to Certify at 48, and "[i]n 2015, the Village of Hoosick Falls public water system provided water through approximately 1,300 connections, the vast majority of which are residential[,]" id. The Court finds that the purported class size of the Municipal Water Property

Damage Class satisfies the numerosity requirement. See Consol. Rail Corp., 47 F.3d at 483 ("numerosity is presumed at a level of 40 members").

Plaintiffs assert that "[w]ith regard to the Private Well Water Property Damage Class, NYDEC [('New York State Department of Environmental Conservation')] tested and oversaw installation of POET systems to treat the wells contaminated with PFOA at over 400 residences in the Contamination Zone." Mot. to Certify at 48. According to Plaintiffs, "[t]he individuals who own these residences comprise the Private Well Water Property Damage Class . . . ." Id. The Court finds that the purported class size of over 400 for the Private Well Water Property Damage Class satisfies the numerosity requirement. Additionally, Plaintiffs state that "the individuals who resided at these properties or owned or leased them at the time POET systems were installed comprise the Nuisance Damage Class." Id. Therefore, the Court finds that the purported class size also satisfies the numerosity requirement for the Nuisance Damage Class.

Regarding the PFOA Invasion Injury Class, Plaintiffs assert that "in two rounds of testing conducted thus far by NYDOH [('New York State Department of Health')], over 2,000 current or former Hoosick Falls residents were found to have quantities of PFOA accumulation in excess of background levels," id., and Plaintiffs state that "[m]ost of these individuals will meet the criteria of the PFOA Invasion Injury Class[,]" id. The Court finds that a class size of 2,000 or more members meets the numerosity requirement.

### 2. Commonality

Rule 23(a)(2) states: "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: . . . (2) there are questions of law or fact common to the class . . . ." Fed. R. Civ. P. 23(a)(2). "Not '*all* questions of law or fact raised' need be 'common.'" Belfiore v. Proctor & Gamble Co., 311 F.R.D. 29, 61 (E.D.N.Y. 2015)

(emphasis in original) (quoting <u>Dukes</u>, 564 U.S. at 368–69 (Ginsburg, J., concurring in part and dissenting in part) (citing 1 H. Newberg & A. Conte, Newberg on Class Actions § 3.10, pp. 3–48 to 3–49 (3d ed. 1992))); <u>Kurtz v. Kimberly-Clark Corp.</u>, 321 F.R.D. 482, 529 (E.D.N.Y. 2017); 1 Newberg and Rubenstein on Class Actions § 3:20 (6th ed. 2022) (observing that "courts uniformly recognize that not *all* questions of law and fact need be common to the class" (emphasis in original)). The Court need only determine whether there is at least one question of law or fact in common: "[F]or the purposes of Rule 23(a)(2) 'even a single [common] question' will do." <u>Dukes</u>, 564 U.S. at 359 (citations omitted) (quoting Richard A. Nagareda, <u>The Preexistence Principle and the Structure of the Class Action</u>, 103 Colum. L. Rev. 149, 176 n.110 (2003)); <u>see also</u> 1 Newberg and Rubenstein on Class Actions § 3:20 (6th ed. 2022) ("The commonality test is more qualitative than quantitative, and thus, there need be only a single issue common to all members of the class.").

Under Rule 23(a)(2), once the Court has determined that even a single common question exists, the Court must decide how that common question can be answered: "The class claims 'must depend upon a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve on an issue that is central to the validity of each one of the claims in one stroke.'" <u>K.A. v. City of New York</u>, 413 F. Supp. 3d 282, 302 (S.D.N.Y. 2019) (quoting <u>Dukes</u>, 564 U.S. at 350). "In other words, the relevant inquiry is whether a classwide proceeding is capable of 'generat[ing] common *answers* apt to drive the resolution of the litigation.'" <u>Jacob v. Duane Reade, Inc.</u>, 602 Fed. App'x 3, 6 (2d Cir. 2015) (emphasis in original) (quoting <u>Dukes</u>, 564 U.S. at 350).

Plaintiffs provide an extensive discussion of commonality. With regard to manufacturer DuPont, the Plaintiffs point to numerous common questions:

> Class members raise common questions against the PFOA Manufacturer [D]efendant[] for failing to provide adequate warnings to users of PFOA, relevant government agencies, and the public. Question of law or fact common to the classes include (1) whether the Manufacturer Defendant[] knew or should have known that their PFOA and PFOA-containing products posed a risk to the environment and health of people living in communities where those products were used, like Hoosick Falls; (2) whether the warnings provided by the Manufacturer[] were adequate; (3) whether the Manufacturer Defendant[] failed to provide adequate instructions regarding technologies that could reduce or eliminate PFOA emissions for fabric coating operations; (4) whether the Manufacturer Defendant[] breached [its] continuing duty to warn of dangers associated with [its] PFOA-containing products that [it] discovered after manufacture and sale; and (5) whether the failure to provide adequate warnings was a proximate cause of class members' injuries.

Mot. to Certify at 50. Plaintiffs further assert that "class members will raise common questions against" DuPont, such as:

> (1) whether Defendant[] caused PFOA to enter, invade upon, intrude upon or injure the property rights of Plaintiffs and the classes; (2) whether the Defendant['s] contamination of the groundwater and Plaintiffs' properties with PFOA has caused Plaintiffs' property values to diminish; (3) whether Defendant[] caused members of the PFOA Invasion Injury Class to be exposed in their homes to drinking water contaminated with PFOA; (4) whether Plaintiffs are at an increased risk of disease and harm as a result of the PFOA accumulation they have sustained in their bodies from drinking contaminated water; at (5) whether New York law entitles Plaintiffs to medical monitoring relief as a result of PFOA blood accumulation in excess of 1.86 ug/L.

Id. at 50–51.

Plaintiffs assert that "the evidence presented in this case will produce answers to these common questions that will drive the resolution of the litigation." Id. at 51. Plaintiffs then turn to whether there are common questions with common answers. Id. Plaintiffs contend: "There is ample evidence that the Manufacturer Defendant[] failed to warn users regarding the toxicities of fluorochemicals like PFOA . . . whether they failed to warn will either be answered in the

affirmative or negative; the answer will be the same for the class and will drive the resolution of the litigation." Id. at 55. In addition, Plaintiffs assert:

> The Hoosick Falls municipal water supply and all of the class members' private wells in the Contamination Zone were contaminated by PFOA emitted predominately from the McCaffrey Street facility. There are no members of the property damage or nuisance classes whose properties were not contaminated because evidence of contamination is a requirement of the class definition. In other words, the fact of actual exposure is common and shared by the property classes and the legal issue of causation for the classwide exposure is also common and linked to Defendants' tortious conduct.

Id. at 51 (citations omitted).

In this case, it is not difficult to find common questions of fact, such as the commonalities among the distinct set of properties within the contamination zone for the Municipal Water Property Damage Class, the Private Well Water Property Damage Class, and the Nuisance Damage Class. Other courts, such as the District Court of Vermont in Sullivan v. Saint-Gobain Performance Plastics Corp., have found commonality of law and fact in PFOA class action litigation with similar claims and factual allegations. See Sullivan v. Saint-Gobain Performance Plastics Corp., No. 16-CV-125, 2019 U.S. Dist. LEXIS 229509, at *14–15 (D. Vt. Aug. 23, 2019) ("The proof offered to reach these answers may involve complex issues of chemistry, air modeling, and hydrogeology, but *the answers are common* to all property owners and residents within the contamination zone. Within the range of environmental contamination cases, this one is simpler than most. A single industrial process operated for three decades by one corporation and its successor is claimed to be the source of an unusual chemical. The claim of contamination is limited to parts of two towns in the same state. It is concentrated in an area of a few square miles which both parties and the state regulators have mapped in detail. The defenses that PFOA is ubiquitous in trace amounts or that another company or the landfill is the true source apply

with equal force to all class members." (emphasis added)); Burdick v. Tonga, Inc., No. 253835, 2018 N.Y. Misc. LEXIS 2812, at *18–19 (N.Y. Sup. Ct. July 3, 2018), aff'd 112 N.Y.S.3d 342 (N.Y. App. Div. 2019) ("In this case, the central factual basis for all of Plaintiffs' claims is defendant's course of conduct and its knowledge of the potential hazards. All class members allegedly suffered a common injury—soil and water contamination emanating from Taconic's facility that interfered with their use and enjoyment of their property. The common contaminant is PFOA. The method of contamination is uniform. It is defendant's common course of conduct which caused injury to all of the proposed members of the property damage/nuisance classes.").

Likewise, there are many commonalities among the members of the PFOA Invasion Injury Class, particularly the required common proof of blood sera indicating the accumulation of PFOA in excess of background levels. Courts have likewise found commonality in PFOA class action lawsuits with similar facts. See Sullivan, 2019 U.S. Dist. LEXIS 229509, at *16–17 ("The common features of the proposed [PFOA exposure] class are elevated PFOA blood levels, residence within the zone of contamination, and no claim of injury or illness due to PFOA. In other words, the proposed class members show evidence of contamination of their blood without current symptoms of illness. In resolving this claim, common proof as to the strength of causal connection between PFOA exposure and future illness is likely to provide common answers."); Burdick, 2018 N.Y. Misc. LEXIS 2812, at *34 ("In this case, the Court finds that the following issues relevant to medical monitoring are common to all class members: whether defendant was negligent in releasing PFOA from its facility into the surrounding air, soil, and water; whether PFOA is hazardous to human health; and whether medical monitoring is available for the diseases linked to PFOA exposure. Plaintiffs have met their burden of demonstrating that there is at least one common issue of law or fact.").

These common questions of law and fact can be resolved through common answers—by determining whether or not DuPont failed to warn about the possible hazards of its product. Therefore, the Court finds that the Municipal Water Property Damage Class, the Private Well Water Property Damage Class, the Nuisance Damage Class, and the PFOA Invasion Injury Class all meet the commonality requirement under Rule 23(a)(2).

The Court notes that the Sullivan court, in its Rule 23(a)(2) analysis, found that "[t]he common answers concerning damages are not as easy to see" with regard to "property-based damages claims from the class action." 2019 U.S. Dist. LEXIS 229509, at *15. The Court disagrees with the reasoning set forth in Sullivan regarding damages, and believes this matter is more properly suited to Rule 23(b)(3) analysis. As the Supreme Court in Dukes emphasized, "for the purposes of Rule 23(a)(2) [e]ven a single [common] question will do." 564 U.S. at 359 (cleaned up) (citations omitted). Dukes explained further: "We consider dissimilarities not in order to determine (as Rule 23(b)(3) requires) whether common questions *predominate*, but in order to determine (as Rule 23(a)(2) requires) whether there *is* '[e]ven a single [common] question.'" Id. (emphasis in original). As noted above, the Court finds this matter meets that requirement in Dukes—answering the question of whether DuPont is liable for failure to warn constitutes a common answer to a common question that is sufficient to find commonality under Rule 23(a)(2). The Court will address whether common questions *predominate* with respect to damages in its Rule 23(b)(3) analysis.

Indeed, DuPont's arguments against class certification focus mainly on predominance under Rule 23(b)(3) rather than commonality under Rule 23(a)(2). DuPont and 3M's Opp'n to Mot. to Certify 3. Moreover, as Newberg and Rubenstein on Class Actions observes in the context of commonality under Rule 23(a)(2): "Given that in Rule 23(b)(3) monetary damage

class actions, a court must not only find common questions but find that they predominate, most courts continue to undertake those analyses in tandem and Wal-Mart [v. Dukes] has had a limited effect." 1 Newberg and Rubenstein on Class Actions § 3:19 (6th ed. 2022) (footnote omitted).

Finally, the Court notes that commonality is satisfied under Rule 23(a)(2) even if the Court subsequently finds that the class members have different amounts of individual damages. See Lopez v. Setauket Car Wash & Detail Ctr., 314 F.R.D. 26, 29 (E.D.N.Y. 2016) ("[T]he Court finds that these differences, relevant to the amount of damages owed, if any, do not destroy the commonality created by the question of whether Defendants' policy of taking the tip credit was violative of the law. This commonality warrants certification as a class action under Rule 23."); Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. 193, 199 (S.D.N.Y. 2011) ("[B]ecause commonality does not mean that all issues must be identical as to each member, the need for an individualized determination of damages suffered by each class member generally does not defeat the requirement." (quoting Padilla v. Maersk Line, Ltd., 271 F.R.D. 444, 448 (S.D.N.Y. 2010)). For these reasons, the Court finds that the Municipal Water Property Damage Class, the Private Well Water Property Damage Class, the Nuisance Damage Class, and the PFOA Invasion Injury Class all meet the commonality requirement under Rule 23(a)(2).

### 3.  Typicality

When assessing whether the typicality requirement has been met under Rule 23(a)(3), the Court must determine whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." Fed. R. Civ. P. 23(a)(3). "Typicality requires that 'the disputed issue[s] of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." Mazzei v. Money Store, 829 F.3d 260, 272 (2d Cir. 2016) (quoting Caridad v. Metro-North Commuter R.R., 191 F.3d 283,

293 (2d Cir. 1999), <u>overruled on other grounds by</u> <u>In re Initial Pub. Offering Sec. Litig.</u>, 471 F.3d

24 (2d Cir. 2006)). "One purpose of the typicality requirement is 'to ensure that . . . the named

plaintiff's claim and the class claims are so interrelated that the interests of the class members

will be fairly and adequately protected in their absence.'" <u>Mazzei</u>, 829 F.3d at 270 (cleaned up)

(quoting <u>Marisol A.</u>, 126 F.3d at 376). "Rule 23(a)(3)'s typicality requirement is satisfied when

each class member's claim arises from the same course of events and each class member makes

similar legal arguments to prove the defendant's liability." <u>Robidoux v. Celani</u>, 987 F.2d 931,

936 (2d Cir. 1993); <u>see also</u> <u>Robinson v. Metro-North Commuter R.R.</u>, 267 F.3d 147, 155 (2d

Cir. 2001). "The typicality requirement is 'not demanding.'" <u>Villella v. Chem. & Mining Co. of</u>

<u>Chile</u>, 333 F.R.D. 39, 55 (S.D.N.Y. 2019) (quoting <u>In re MF Glob. Holdings Ltd. Inv. Litig.</u>, 310

F.R.D. 230, 236 (S.D.N.Y. 2015)).

DuPont argues that "Plaintiffs say little about either typicality or adequacy, simply

insisting that each member of each proposed class presses the same claims based on the same

injuries and seeks the same relief." Defs.' Opp'n to Mot. to Certify at 51. According to DuPont,

"[i]n doing so, Plaintiffs ignore or downplay obvious conflicts and disparities among the putative

class members that make the named Plaintiffs inadequate class representatives and their claims

atypical of the class." <u>Id.</u>

However, "'minor variations in the fact patterns underlying individual claims' does not

defeat typicality." <u>Rivera</u>, 312 F.R.D. at 272 (quoting <u>Robidoux</u>, 987 F.2d at 937). Even

variations in damages will not defeat a finding of typicality under Rule 23(a)(3): "As with

commonality, differences among class members with regard to the amount of their individual

damages do not constitute 'unique defenses' that defeat typicality." <u>Rivera v. Harvest Bakery,</u>

<u>Inc.</u>, 312 F.R.D. 254, 273 (E.D.N.Y. 2016). A court will find that "Rule 23(a)(3)'s typicality

requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux, 987 F.2d at 936.

In this case, Plaintiffs assert that "[t]he claims of Plaintiffs and all class members derive from . . . the Manufacturer Defendant['s] failure to warn of the environmental dangers and health hazards associated with PFOA." Mot. to Certify at 57. Plaintiffs further argue that "Plaintiffs and the property damage classes seek diminution in value for the contamination of their properties and drinking water source. Plaintiffs and the nuisance class members seek damages relating to the annoyance and inconvenience of having POETS installed in their homes, maintaining those POETs, and being dependent on bottled water while awaiting the installation of POETs." Id. Additionally, Plaintiffs assert with respect to the proposed PFOA Invasion Injury Class that "Plaintiffs and the class members allege that they have suffered injury to person and property resulting in the accumulation of PFOA in their blood above background levels. All consumed PFOA-contaminated water in a residence in either the Village of Hoosick Falls or the Contamination Zone. All are seeking medical monitoring relief." Id. at 58.

The Court finds that Plaintiffs have demonstrated that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux, 987 F.2d at 936. All Plaintiffs rely on the same legal argument—failure to warn—with respect to the same Defendant—DuPont—over the same course of events and timeframe within Hoosick Falls and the Contamination Zone. Therefore, the Court finds that Plaintiffs have satisfied the typicality requirement under Rule 23(a)(3) with regard to the Municipal Water Property Damage Class, the Private Well Water Property Damage Class, the Nuisance Damage Class, and the PFOA Invasion Injury Class.

### 4. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[C]ourts have long used Rule 23(a)(4) as an invitation to scrutinize the adequacy of class *counsel* as well as the adequacy of class *representatives*." 1 Newberg and Rubenstein on Class Actions, § 3:52 (6th ed. 2022) (emphasis in original). The Rule 23(a)(4)

> test originally encompassed two determinations, both that (i) the lead proposed class representatives have no conflict of interest with other members of the class; and (ii) that the representatives' class counsel be well qualified, experienced and capable of handling the litigation in question. However, the Advisory Committee Notes to the 2003 Amendments to Federal Rule 23(g) . . . state that "Rule 23(a)(4) will continue to call for scrutiny of the proposed class representatives, while [Rule 23(g)] will guide the court in assessing proposed class counsel as part of the certification decision."

Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79, 238 F.R.D. 82, 100 (S.D.N.Y. 2006) (citation omitted) (quoting Fed. R. Civ. P. 23(g) advisory committee's note to 2003 amendments); see also Jin v. Shanghai Oriental, Inc., 990 F.3d 251, 254–55 (2d Cir. 2021) ("When a district court certifies a class, it must also appoint class counsel." (citing Fed. R. Civ. P. 23(g))).

The relevant provisions of Rule 23(g) are:

> Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court: (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class; (B) may consider any other matter pertinent to class counsel's ability to fairly and adequately represent the interests of the class; . . . (E) make further orders in connection with the appointment. . . . (4) . . . Class counsel must fairly and adequately represent the interests of the class.

Fed. R. Civ. P. 23(g)(1)(A)–(B), (E), (4).

With regard to the adequacy of class representatives, "the Due Process Clause of course requires that the named plaintiff[s] at all times adequately represent the interests of the absent class members." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985). "The requirement that the named plaintiffs adequately represent the class is motivated by concerns similar to those driving the commonality and typicality requirements, namely, the efficiency and fairness of class certification." Marisol A., 126 F.3d at 378. "Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, adequacy is satisfied unless 'plaintiff's interests are antagonistic to the interest of other members of the class.'" Skyes, 780 F.3d at 90 (quoting Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000)); see also Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006) ("Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members.").

"[N]ot every potential distinction between the proposed representative and other class members will render the representative inadequate." 1 Newberg and Rubenstein on Class Actions, § 3:58 (6th ed. 2022). "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a proposed class representative from meeting the Rule 23(a)(4) adequacy requirement." Id. Moreover, "[a] conflict must be manifest at the time of certification rather than dependent on some future event or turn in the litigation that might never occur." Id. The Court finds that the adequacy of class representatives is satisfied because there is no indication that there are apparent conflicts fundamental to the heart of this lawsuit, which would indicate that "plaintiff[s'] interests are antagonistic to the interest of other members of the class . . . ." Baffa, 222 F.3d at 60. With regard to the Municipal Water Property Damage Class, the

Private Well Water Property Damage Class, and the Nuisance Damage Class, the Court finds

that there is no indication that any class representative will receive special benefits for their role

compared with other members of the class. See Sullivan, 2019 U.S. Dist. LEXIS 229509, at *29

("[N]o member of the property class will get a special benefit from serving as a class

representative."). Likewise, members of the PFOA Invasion Injury Class all have the same

interest in this case: "Their interest in obtaining monitoring for themselves and their fellow

members is substantially the same and creates no risk that they will inadequately represent the

class as a result of individual characteristics." Id. Furthermore, the class representatives have

litigated this case for years, and the Court has no reason to doubt that they will continue to

vigorously pursue their claims. See Denney, 443 F.3d at 268. For these reasons, the Court

concludes that the class representatives of the Municipal Water Property Damage Class, the

Private Well Water Property Damage Class, the Nuisance Damage Class, and the PFOA

Invasion Injury Class will fairly and adequately protect the interest of these classes.

Plaintiffs move to appoint as lead co-counsel attorneys Robin L. Greenwald and James J.

Bilsborrow of Weitz & Luxenberg, P.C., and Stephen G. Schwarz and Hadley L. Matarazzo of

Faraci Lange, LLP, and to appoint as Plaintiffs' liaison counsel John K. Powers of Powers &

Santola, LLP. Dkt. No. 145 at 5; Mot. to Certify at 60. Earlier in this case, the Honorable Daniel

J. Stewart, United States Magistrate Judge, appointed Weitz & Luxenberg and Faraci Lange as

co-lead interim counsel and Powers & Santola as interim liaison counsel. Dkt. No. 1 at 13, Baker

v. Saint-Gobain Performance Plastics Corp., No. 16-CV-0220, 2016 U.S. Dist. LEXIS 97741, at

*16–17 (N.D.N.Y. July 27, 2016). Thus, these firms have been involved in identifying and

investigating the potential claims in this class action since its inception. Plaintiffs' counsel

includes trial attorneys with substantial experience in complex litigation, including the law that is

applicable in this case: environmental law, toxic tort law, and products liability. Due to the lengthy involvement of all of these firms in this litigation, the Court is satisfied that they will continue to effectively commit their resources to this case. For these reasons, the Court finds that Plaintiffs' proposed lead co-counsel and liaison counsel in this case will fairly and adequately protect the class as a whole, as required by Rule 23(g).

Accordingly, the Court finds that the Municipal Water Property Damage Class, the Private Well Water Property Damage Class, the Nuisance Damage Class, and the PFOA Invasion Injury Class meet the Rule 23(a)(4) adequacy requirement. Pursuant to Rule 23(g), the Court appoints attorneys Robin L. Greenwald and James J. Bilsborrow of Weitz & Luxenberg, P.C., and Stephen G. Schwarz and Hadley L. Matarazzo of Faraci Lange, LLP, as lead co-counsel; and appoints John K. Powers of Powers & Santola, LLP, as Plaintiffs' liaison counsel.

### 5. *Ascertainability*

The Second Circuit has "recognized an 'implied requirement of ascertainability' in Rule 23 of the Federal Rules of Civil Procedure." Brecher, 806 F.3d at 24 (quoting In re Initial Pub. Offering, 471 F.3d at 30). As the Second Circuit has explained:

> The ascertainability requirement, as defined in this Circuit, asks district courts to consider whether a proposed class is defined using objective criteria that establish a membership with definite boundaries. This modest threshold requirement will only preclude certification if a proposed class definition is indeterminate in some fundamental way. If there is no focused target for litigation, the class itself cannot coalesce, rendering the class action an inappropriate mechanism for adjudicating any potential underlying claims. In other words, a class should not be maintained without a clear sense of who is suing about what. Ascertainability does not directly concern itself with the plaintiffs' ability to offer *proof of membership* under a given class definition, an issue that is already accounted for in Rule 23.

In re Petrobras, 862 F.3d at 269 (emphasis in original).[2] Indeed, "ascertainability does not require a complete list of class members at the certification stage." Id. at 266 n.16 (quoting Brecher, 806 F.3d at 25 n.2). In this case, Plaintiffs assert: "[C]lass membership is based on property ownership or a leasehold with well-defined geographic areas, water tests demonstrating PFOA contamination, or blood tests demonstrating blood serum levels." Mot. to Certify at 60. The Plaintiffs state they can gather the information necessary to determine the membership of these proposed classes within a defined boundary:

> The Municipal Water Property Damage Class can be ascertained by cross referencing the addresses that were served by the municipal water supply in 2015 with [the] final tax assessment roll, which are either publicly available or accessible with an appropriate court order. The Private Well Water Property Damage Class may be ascertained by cross referencing a spreadsheet produced by NYDEC containing all private well sampling results in the Town of Hoosick with the final tax assessment roll for 2015. To ascertain the Nuisance Damage Class, the same NYDEC spreadsheet provides the addresses where POET systems were installed in the Contamination Zone. Finally, members of the PFOA Invasion Injury Class may be ascertained by requiring each class member to (i) demonstrate residence at a property that falls within the property damage class definitions, and (ii) produce proof of a blood serum test showing PFOA blood accumulation above background levels.

Id. at 60–61 (footnote omitted) (citations omitted).

In contrast, DuPont claims that "[e]stablishing whether any given individual is a member of the proposed classes will . . . require a mini-trial to determine whether that individual's water qualifies as 'contaminated' and/or whether they have met the water consumption requirement."

---

[2] Because ascertainability is not explicitly required by the text of Rule 23, the Circuit has observed: "[W]e are mindful that '[c]ourts are not free to amend [the Federal Rules of Civil Procedure] outside the process Congress ordered.'" In re Petrobras, 862 F.3d at 267 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997)). "'The text' of Rule 23 thus 'limits judicial inventiveness.'" In re Petrobras, 862 F.3d at 267 (quoting Amchem, 521 U.S. at 620).

Defs.' Opp'n to Mot. to Certify at 67. DuPont argues further that "[b]ecause Plaintiffs' proposed class definitions make it infeasible to determine whether a particular individual is a class member, Plaintiffs . . . fail the implied requirement of ascertainability." Id. at 67 n.35.

DuPont's argument misapprehends the purpose of the ascertainability requirement, as defined by the Second Circuit. As noted above, the Circuit specifically stated: "Ascertainability does not directly concern itself with the plaintiffs' ability to offer *proof of membership* under a given class definition, an issue that is already accounted for in Rule 23." In re Petrobras, 862 F.3d at 269 (emphasis in original). Instead, ascertainability is a "modest threshold requirement" that "will only preclude certification if a proposed class definition is indeterminate in some fundamental way." Id. "In other words, a class should not be maintained without a clear sense of who is suing about what." Id. Plaintiffs' proposed classes provide a clear sense of who is suing, by defining the classes based on geographic boundaries and water sampling tests—the Municipal Water Property Damage Class, Private Well Water Property Damage Class, and Nuisance Damage Class—and based on blood tests—the PFOA Invasion Injury Class. Plaintiffs have also demonstrated what they are suing about—they are suing DuPont for property damages and personal injuries they claim DuPont is responsible for as a manufacturer of PFOA.

The District of Vermont in Sullivan found that members in a class suing for increased water costs and property damages due to PFOA contamination, and members in a class suing for medical monitoring because of exposure to PFOA, met the ascertainability requirements. See 2019 U.S. Dist. LEXIS 229509, at *11–12 (observing that "determining who is in each of the two classes is not complicated" for the purposes of ascertainability—these classes included (1) "membership in the proposed exposure class" based on "residence in the zone of contamination, consumption of water containing PFOA, and elevated blood serum levels of PFOA[,]" and (2)

"[m]embership in the proposed property class[es]" which were based on "two types of claims: increased water costs and loss of property value through stigma"). Likewise, in this case, the Court finds that "[i]t will not be difficult conceptually," id. at *13, to determine membership in the Municipal Water Property Damage Class, the Private Well Water Property Damage Class, the Nuisance Damage Class, and the PFOA Invasion Injury Class, and, therefore, these classes meet the requirements of ascertainability.

For these reasons, the Municipal Water Property Damage Class, the Private Well Water Property Damage Class, the Nuisance Damage Class, and the PFOA Invasion Injury Class meet the requirements of Rule 23(a).

**B.  PFOA Invasion Injury Class Certification Pursuant to Rule 23(b)(2)**

In addition to meeting the requirements of Rule 23(a), a "proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." Dukes, 564 U.S. at 345. Rule 23(b)(2) states:

> A class action may be maintained if Rule 23(a) is satisfied and if: . . . (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . .

Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." Dukes, 564 U.S. at 360. "It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of money damages." Id. at 360–61 (emphasis in original). While each individual class member must be entitled to the same injunctive or declaratory relief against a defendant, "Rule 23(b)(2) does not

require that 'the relief to each member of the class be identical, only that it be beneficial.'" Barrows v. Becerra, 24 F.4th 116, 132 (2d. Cir. 2022) (quoting Sykes, 780 F.3d at 97). "That means that different class members can benefit differently from an injunction." Barrows, 24 F.4th at 132 (quoting Bernie v. Barilla S.p.A., 964 F.3d 141, 147 n.28 (2d Cir. 2020)).

Rule 23(b)(2) has two constituent parts. In order to certify a class under Rule 23(b)(2) the Plaintiffs "must . . . meet the two criteria specified in Rule 23(b)(2) itself: 1. the party opposing the class must have 'acted or refused to act on grounds generally applicable to the class,' and 2. the plaintiffs must be seeking 'final injunctive relief or corresponding declaratory relief' that is appropriate 'with respect to the class as a whole.'" 2 Newberg and Rubenstein on Class Actions § 4:27 (6th ed.) (footnotes omitted) (quoting Fed. R. Civ. P. 23(b)(2)).

In addition, some courts have required the plaintiffs in a class action suit to meet a third requirement of "cohesiveness." 2 Newberg and Rubenstein on Class Actions § 4:34 (6th ed.) ("[M]any courts demand that proponents of a [23](b)(2) class action demonstrate that the class's claims are 'cohesive.'"). This requirement was created to demonstrate "that the class members' claims are so inherently intertwined that injunctive relief as to any would be injunctive relief as to all." Id. "The Second Circuit has not addressed whether there is a cohesiveness requirement under Rule 23(b)(2)." Ddmb, Inc. v. Visa, Inc., No. 05-MD-1720, 2021 U.S. Dist. LEXIS 249783, at *263 (E.D.N.Y. Sept. 27, 2021). Rule 23(b)(2) lacks any textual reference to a "cohesiveness" requirement. See generally Fed. R. Civ. P. 23(b)(2). Moreover, "existing jurisprudence on this issue is mixed, with some courts imposing cohesiveness as an additional requirement and others declining to do so." Ddmb, 2021 U.S. Dist. LEXIS 249783, at *261 (collecting cases). Furthermore, courts in this Circuit have applied different standards when assessing cohesiveness—some analogize cohesiveness to commonality under Rule 23(a) and

others analogize cohesiveness to predominance under Rule 23(b)(3). Compare Brooks v.
Roberts, 251 F. Supp. 3d 401, 420 (N.D.N.Y. 2017) ("The cohesiveness requirement is similar to
the commonality requirement under Rule 23(a) and easily satisfied."); and Laumann v. Nat'l
Hockey League, 105 F. Supp. 3d 384, 395 (S.D.N.Y. 2015) (finding that "plaintiffs must
demonstrate that the class is 'cohesive[,]'" and stating that "this requirement is similar,
conceptually, to the commonality requirement under Rule 23(a)"); with Sullivan, 2019 U.S. Dist.
LEXIS 229509, at *40 ("Cohesiveness is another way of addressing the requirement of
predominance of questions of law or fact common to class members."); and In re Rezulin Prods.
Liability Litigation, 210 F.R.D. 61, 75 (S.D.N.Y. 2002) ("[A]lthough there is no predominance
or superiority requirement under Rule 23(b)(2), classes certified pursuant to it must be
cohesive."). In Ddmb, the district court decided not to apply a cohesiveness requirement under
Rule 23(b)(2), 2021 U.S. Dist. LEXIS 249783, at *261, by explaining: "[T]o the extent
'cohesion' is required in Rule 23(b)(2) class actions, the Court understands it to refer to the
requirements of Rule 23(b)(2) itself, rather than an additional requirement beyond the rule's
text[,]" id. at *266.

    In light of the Second Circuit's statement regarding the Rule 23(a) ascertainability
requirement (which also lacks an anchor in the text of Rule 23) that "'[t]he text' of Rule 23 thus
'limits judicial inventiveness[,]'" this Court believes that adding a cohesiveness requirement
under Rule 23(b)(2) is an unnecessary addition to 23(b)(2) analysis. In re Petrobras, 862 F.3d at
267 (quoting Amchem, 521 U.S. at 620). Moreover, a cohesiveness requirement may also be
redundant, because "courts imposing a cohesion requirement appear to undertake the same
analysis as courts that only look to the text of Rule 23(b)(2)." Ddmb, 2021 U.S. Dist. LEXIS
249783, at *265 (collecting cases). Nevertheless, because the Second Circuit has not yet ruled on

this matter, in the interest of thoroughness the Court will address cohesiveness under Rule 23(b)(2).

In this case, "Plaintiffs move to certify the PFOA Invasion Injury Class pursuant to Rule 23(b)(2) so that they may seek implementation of a court-ordered medical monitoring program." Mot. to Certify at 61. This Court previously determined in its February 2017 Order that accumulation of PFOA in the blood was a present injury sufficient to allow Plaintiffs' claim seeking medical monitoring to go forward under New York law. See Baker, 232 F. Supp. 3d at 249–55; see also Benoit v. Saint-Gobain Performance Plastics Corp., No. 116-CV-1057, 2017 U.S. Dist. LEXIS 121734 (N.D.N.Y. Aug. 2, 2017) (Kahn, J.), aff'd in part, appeal dismissed in part, by 959 F.3d 491 (2d Cir. 2020); Burdick, 2018 N.Y. Misc. LEXIS 2812, at *27 ("This Court, agreeing with the rationale as stated in Baker v. St.-Gobain Performance Plastics Corp., 232 F. Supp. 3d 233 (Kahn, J.), has previously determined that the instant plaintiffs have stated a cognizable claim for medical monitoring based on a present injury, specifically, blood accumulation of PFOA."). The Court now assesses whether the PFOA Invasion Injury Class may be certified under Rule 23(b)(2).

### 1.  Act or Refusal to Act Requirement

To certify a class under Rule 23(b)(2) the Court must find that "the party opposing the class has acted or refused to act on grounds that apply generally to the class . . . ." Fed. R. Civ. P. 23(b)(2). In this case, Plaintiffs assert that "the Manufacturer Defendants' failure to warn of the toxicities associated with PFOA and PFOA-containing products uniformly harmed the proposed class . . . ." Mot. to Certify at 64. In Sullivan, the district court found: "The court has no difficulty identifying actions by the defendant that apply generally to the class. These actions are the alleged release of PFOA by the defendant over many years." 2019 U.S. Dist. LEXIS 229509,

at *40–41. Similarly, the Court finds that Plaintiffs have met the act or refusal to act requirement by asserting that DuPont failing to warn of the toxicities linked with PFOA and products containing PFOA. Furthermore, Plaintiffs have explained how this failure to warn applies to all members of the PFOA Invasion Injury Class because Plaintiffs have indicated that all members of the class have been injured through the accumulation of PFOA in their blood "above the average background level of 1.86 ug/L[.]" Mot. to Certify at 40. Therefore, the Court finds that the PFOA Invasion Injury Class has met the Rule 23(b)(2) act or refusal to act requirement.

## 2. *Injunction Requirement*

The Court must also determine "that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole" in order to certify a class under Rule 23(b)(2). Fed. R. Civ. P. 23(b)(2). The Court begins by determining whether a court-ordered medical monitoring program—as requested by Plaintiffs—is considered injunctive relief. Mot. to Certify at 61. "A court-administered fund which goes beyond payment of the costs of monitoring an individual plaintiff[']s health to establish pooled resources for the early detection and advances in treatment of the disease is injunctive in nature rather than 'predominately money damages' and therefore is properly certified under Rule 23(b)(2)." Gibbs v. E.I. DuPont De Nemours & Co., 876 F. Supp. 475, 481 (W.D.N.Y. 1995); Katz v. Warner-Lambert Co., 9 F. Supp. 2d 363, 364 (S.D.N.Y. 1998) ("A claim for a medical monitoring and research fund is injunctive in nature."). The district court in Sullivan arrived at a similar conclusion by relying on the Manual for Complex Litigation in its analysis of Rule 23(b)(2) class certification. See Sullivan, 2019 U.S. Dist. LEXIS 229509, at *38–39 (citing Manual for Complex Litigation, § 22.74 (4th ed. 2004)). As the Sullivan court noted: "The Manual distinguishes between medical monitoring relief built around a system of court-ordered testing and those which consist of

individual payments to class members." Id. While "Rule 23(b)(3) applies to the direct payment model[,]" id. at *39, "Rule 23(b)(2) generally applies when the relief sought is a court-supervised program for periodic medical examination and research to detect diseases attributable to the product in question[,]" id. at *38–39 (quoting Manual for Complex Litigation, § 22.74 (4th ed. 2004)). Because Plaintiffs in this case are requesting "a court-ordered medical monitoring program," Mot. to Certify at 61, the Court can assess the medical monitoring as a claim for injunctive relief under Rule 23(b)(2).

"Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." Dukes, 564 U.S. at 360. Discussing the proposed injunctive relief of a medical monitoring program for the PFOA Invasion Injury Class, the Plaintiffs state: "The remedy sought here is also a group one. It applies equally to all class members, regardless of individual differences in medical histories or quantity of exposure." Mot. to Certify at 64. The Court finds that the Plaintiffs are requesting a single injunction—a court-ordered medical monitoring program—that would provide relief to all members of the proposed PFOA Invasion Injury Class.

While DuPont asserts that "[m]edical monitoring . . . necessarily requires individualized plans for each participant[,]" Defs.' Opp'n to Mot. to Certify at 72, the Court notes that "Rule 23(b)(2) does not require that 'the relief to each member of the class be identical, only that it be beneficial.'" Barrows, 24 F.4th at 132 (quoting Sykes, 780 F.3d at 97). "That means that different class members can benefit differently from an injunction." Barrows, 24 F.4th at 132 (quoting Bernie, 964 F.3d at 147 n.28). Therefore, even if various class members will benefit from different medical tests or screening procedures, this does not prevent class certification under Rule 23(b)(2). As stated directly above, what matters is that a single injunctive remedy—a

court-ordered medical monitoring program—is the sole form of relief in this case that is equally applicable to all members of the PFOA Invasion Injury Class. For this reason, the Court finds that court-ordered medical monitoring is appropriate injunctive relief with respect to the entirety of the PFOA Invasion Injury Class under Rule 23(b)(2).

### 3. Cohesiveness

The cohesiveness standard requires "that the class members' claims [be] so inherently intertwined that injunctive relief as to any would be injunctive relief as to all." 2 Newberg and Rubenstein on Class Actions § 4:34 (6th ed. 2022). "What cohesiveness means . . . is that the class's claims are common and that adjudication of the case will not devolve into consideration of myriad individual issues." Id. Because it is unclear, based on the divergent opinions of courts in this Circuit, whether cohesiveness applies a commonality or predominance standard, the Court will apply both.

In this case, the Court finds that Plaintiffs have sufficiently tailored the boundaries of the PFOA Invasion Injury Class to meet the cohesiveness requirement. First, the PFOA Invasion Injury Class requires that "each member must show that he or she consumed water during a certain time frame at a residence whose water source was contaminated." Mot. to Certify at 42. As Plaintiffs explain this time frame: "Class members must have consumed contaminated water [for at least] a six-month period from 1996 to 2016." Id. In addition to this temporal limitation placed on the class, the Plaintiffs also place limits on the geographic boundaries of the class: "[B]ecause of the widespread testing performed by NYDEC, the universe of contaminated properties is known and easily determinable." Id. at 42. Additionally, "a class member must establish proof of exposure through a blood test showing an accumulation of PFOA in excess of the background average." Id. at 42. More specifically, a class member must have "suffered

invasion and accumulation of PFOA in their bodies as demonstrated by blood serum tests

disclosing a PFOA level in their blood above the average background level of 1.86 ug/L[,]" or

must be a "natural child born to a female . . . whose blood serum was tested after birth disclosing

a PFOA level above the average background level of 1.86 ug/L." Id. at 40.

Based on these narrowly tailored requirements, the Court finds that under the

commonality standard for cohesiveness, the PFOA Invasion Injury Class meets the cohesiveness

requirement—which the Court already found in its Rule 23(a) analysis. See Westchester Indep.

Living Ctr., Inc. v. State Univ. of N.Y., Purchase Coll., 331 F.R.D. 279, 301 (S.D.N.Y. 2019)

("Some courts require that plaintiffs seeking to certify a rule 23(b)(2) class 'must demonstrate

that the class is cohesive,' but it is not entirely clear how this differs from the commonality

requirement found under Rule 23(a), and as explained above, Plaintiffs have established

commonality." (internal citations and parentheticals omitted) (quoting Laumann, 105 F. Supp. 3d

at 395)); Brooks v. Roberts, 251 F. Supp. 3d 401, 420 (N.D.N.Y. 2017) ("The cohesiveness

requirement is similar to the commonality requirement under Rule 23(a) and easily satisfied.").

"Moreover, 'a rule 23(b)(2) class seeking declaratory and injunctive relief is cohesive by

nature.'" Westchester Indep. Living, 331 F.R.D. at 301 (quoting Handschu v. Special Servs.

Div., 787 F.2d 828, 833 (2d Cir. 1986)).

The Court now turns to whether the PFOA Invasion Injury Class meets the predominance

standard for cohesiveness. As noted above, the District of Vermont in Sullivan applied the

predominance standard for cohesiveness. See 2019 U.S. Dist. LEXIS 229509, at *40

("Cohesiveness is another way of addressing the requirement of predominance of questions of

law or fact common to class members."). The court in Sullivan observed: "[I]n this case the

exposure class includes only people who have PFOA tests above background levels. In a very

concrete sense, the members of the proposed class are similarly situated by virtue of their lab results." 2019 U.S. Dist. LEXIS 229509, at *43. Likewise, here Plaintiffs have shown that their proposed class will be defined by specific temporal and geographic limits, and that class members must show proof of exposure to PFOA above the average background level through a blood test. Moreover, as Plaintiffs indicate: "No member of the class alleges any personal injury other than the toxic invasion and accumulation of PFOA." Mot. to Certify at 41.

The Court echoes the statements made by the district court in <u>Sullivan</u>:

> The court is not persuaded by Defendant's assertion that people vary greatly and that as a consequence, no plan for medical monitoring is feasible. The members of the proposed class are obviously all different, but they are similar in the respects that matter for purposes of the claim. None are known to have the diseases associated with PFOA. (There would be no purpose in monitoring a person actually suffering from the illness at issue.) All have elevated PFOA levels. All can identify a time when they ingested well water within the zone of contamination. The court is satisfied that their claim for injunctive relief in the form of a medical monitoring order is sufficiently cohesive as to meet the criteria of Rule 23(b)(2).

<u>Sullivan</u>, 2019 U.S. Dist. LEXIS 229509, at *44. In this case, the Court finds that the class's claims are common based on the fact that members of the class must have ingested water from a contaminated source in a fixed time frame and a specific geographic location, and must also have PFOA levels in blood serum tests higher than average background levels. This means that "adjudication of the case will not devolve into consideration of myriad individual issues" and can be decided through a single form of injunctive relief—court-ordered medical monitoring. 2 Newberg and Rubenstein on Class Actions § 4:34 (6th ed. 2022). Therefore, the Court finds that the PFOA Invasion Injury Class also meets the predominance standard for cohesiveness.

Thus, the Court concludes that the PFOA Invasion Injury Class is cohesive for the purposes of Rule 23(b)(2) certification. Because the PFOA Invasion Injury Class meets all of the Requirements of Rule 23(a) and Rule 23(b)(2), that class is certified.[3]

### 4. DuPont's Additional Objections to Medical Monitoring

DuPont argues that the settlement agreement between Plaintiffs and the settling Defendants adequately compensated the PFOA Invasion Injury Class's medical monitoring claims, and DuPont asserts that, therefore, it should be released from liability with regard to these medical monitoring claims. DuPont's Opp'n to Mot. to Certify at 3. According to DuPont, "[b]ecause the settlement's Medical Monitoring Program fully compensates class members for their medical monitoring claims, class members' claims against DuPont are moot and Plaintiffs are precluded from seeking further recovery against DuPont under the 'one satisfaction' rule." Id. at 7. DuPont cites to Gerber v. MTC Elec. Techs. Co., 329 F.3d 297 (2d Cir. 2003), to support this argument. DuPont's Opp'n to Mot. to Certify at 7. Gerber stated that the "'one satisfaction' rule . . . prohibits a plaintiff from recovering more than one 'satisfaction for each injury.'" 329 F.3d at 303 (quoting Singer v. Olympia Brewing Co., 878 F.2d 596, 600 (2d Cir. 1989)).

However, Gerber is not fully applicable in this case. Gerber was a securities class action, governed by federal statute, the Private Securities Litigation Reform Act of 1995 ("PSLRA"). See 329 F.3d at 300. As the Second Circuit has explained: "The PSLRA provides that nonsettling defendants are entitled to a judgment credit for a settlement by another defendant.

---

[3] Because the Court has certified the PFOA Invasion Injury Class under Rules 23(a) and 23(b)(2), the Court declines to address whether the PFOA Invasion Injury Class could also be certified under Rule 23(b)(3), as requested by Plaintiffs. Mot. to Certify at 69.

This in effect codifies the common-law 'one satisfaction rule, which provides that a plaintiff is entitled to only one satisfaction for each injury.'" In re Facebook, Inc., 674 Fed. App'x 37, 39 (2d Cir. 2016) (quoting Singer, 878 F.2d at 600).[4] "Under this rule, 'a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendants as long as both the settlement and judgment represent common damages.'" In re Facebook, 674 Fed. App'x at 39–40 (quoting Singer, 878 at 600).

The matter currently before the Court does not deal with a federal statute, such as the PSLRA, that codifies the one satisfaction rule, but instead with state law causes of action for strict liability and negligence. Therefore, the Court turns to New York State law to determine whether the one satisfaction rule applies in this case. Cf. Simuro v. Shedd, No. 13-CV-00030, 2017 U.S. Dist. LEXIS 192102, at *32 (D. Vt. June 19, 2017) (stating with regard to the holding in Singer, 878 at 599–600, "[c]learly, that holding does not require the application of the one-satisfaction rule to this case, which concerns a federal and state claim for malicious prosecution against Shedd, and numerous federal and state claims against the Vermont state defendants").

The New York State Court of Appeals observed that "New York's comparative fault rules are codified in CPLR [('Civil Practice Law and Rules')] 1411, which provides for the discounting of a plaintiff's damages in proportion to his or her equitable share of blame in causing injury." Whalen v. Kawasaki Motors Corp., U.S.A., 92 N.Y.2d 288, 291–92 (N.Y. 1998).[5] "In tort actions involving multiple defendants where a plaintiff settles with one or more

---

[4] The relevant provision in the PSLRA is 15 U.S.C. § 78u-4(f)(7)(B).

[5] CPLR § 1411 states: "In any action to recover damages for personal injury, injury to property, or wrongful death, the culpable conduct attributable to the claimant or to the decedent, including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct

defendants before trial, and proceeds to trial against the remaining defendants, General

Obligations Law § 15-108(a) permits nonsettling defendants a monetary offset against the

amount of a verdict." Id. at 292. General Obligations Law § 15-108(a) states:

> Effect of release of or covenant not to sue tortfeasors. When a
> release or a covenant not to sue or not to enforce a judgment is given
> to one of two or more persons liable or claimed to be liable in tort
> for the same injury, or the same wrongful death, it does not
> discharge any of the other tortfeasors from liability for the injury or
> wrongful death unless its terms expressly so provide, but it reduces
> the claim of the releasor against the other tortfeasors to the extent of
> any amount stipulated by the release or the covenant, or in the
> amount of consideration paid for it, or in the amount of the released
> tortfeasor's equitable share of the damages under article fourteen of
> the civil practice law and rules, whichever is the greatest.

N.Y. Gen. Oblig. Law § 15-108(a) (Consol. 2022). Put simply, "[t]he permitted reduction is the

greatest of three items: (a) the amount stipulated as to consideration for the release; (b) the

amount actually paid for the release; or (c) the settling tortfeasor's equitable share of the

plaintiff's damages." Whalen, 92 N.Y.2d at 292. According to the Court of Appeals: "The

purpose of the statute is to encourage settlement, although the statute is also concerned with

ensuring equity. Plaintiffs should be fairly compensated, but nonsettling defendants should not

bear more than their fair share of a plaintiff's loss. Moreover, the possibility of double recovery

should be avoided." Id. (citations omitted).

"[A]s an affirmative defense, General Obligations Law § 15-108(a) must be pled by a

tortfeasor seeking its protection." Id. at 293 (citations omitted). The Second Circuit has

explained: "The New York Court of Appeals has held that while the first two reductions [under

General Obligations Law § 15-108(a)] are available at any point before its final judgment is

---

attributable to the claimant or decedent bears to the culpable conduct which caused the
damages." N.Y. CPLR Law § 1411 (Consol. 2022).

entered, the third is lost where a defendant fails to seek apportionment of liability until after a jury's liability verdict." Schipani v. McLeod, 541 F.3d 158, 159 (2d Cir. 2008) (citing Whalen, 92 N.Y.2d at 292). The Second Circuit has found that "a defendant similarly forfeits its right to a setoff in the amount of the settling defendant's equitable share if it does not seek apportionment until after summary judgment is entered against it on the issue of liability." Schipani, 541 F.3d at 159–60 (footnote omitted).

"In a responsive pleading, a party must set forth affirmatively any of the defenses enumerated in Rule 8(c)(1) and 'any avoidance or affirmative defense.'" 2 Moore's Fed. Prac. Civ. § 8.08 (3d ed. 2022) (quoting Fed. R. Civ. P. 8(c)).[6] DuPont's Answer did not plead General Obligations Law § 15-108(a) as a defense, see generally Dkt. No. 190 ("DuPont's Answer"), nor is there any indication that DuPont has sought to amend its answer pursuant to Federal Rule of Civil Procedure 15, see generally Docket. Because DuPont has not raised the affirmative defense under N.Y. General Obligations Law § 15-108(a) to reduce "the settling tortfeasor's equitable share of the plaintiff's damages," Whalen, 92 N.Y.2d at 292, at this time the Court need not address whether the settlement between Plaintiffs and Defendants other than DuPont would reduce DuPont's alleged damages with regard to the PFOA Invasion Injury Class's medical monitoring claims.[7]

---

[6] "The list of eighteen affirmative defenses in Federal Rule of Civil Procedure 8(c) . . . is not intended to be exhaustive. The drafters of the original federal rules recognized that certain defenses other than those enumerated in Rule 8(c) should be set forth affirmatively by the defendant in order to provide the plaintiff and the district court with sufficient notice that the matter has been put in issue. Therefore, the federal rule provides that any 'avoidance or affirmative defense' must be affirmatively asserted in the responsive pleading." 5 Wright & Miller, Fed. Prac. & Proc. Civ. § 1271 (4th ed. 2022) (quoting Fed. R. Civ. P. 8(c)).

[7] If DuPont seeks to amend its Answer pursuant to Rule 15, it must do so in accordance with the required pleading standards, see GEOMC Co v. Calamare Theraputics Inc., 918 F.3d 92, 98 (2d Cir. 2019) (concluding that "the plausibility standard of Twombly applies to determining the

**C. Municipal Water Property Damage Class, Private Well Water Property Damage Class, and Nuisance Damage Class Certification Pursuant to Rule 23(b)(3) or Rule 23(c)(4)**

The Court now assesses whether the remaining proposed classes can be certified under

Rule 23(b)(3) or Rule 23(c)(4). Rule 23(b)(3) states:

> A class action may be maintained if Rule 23(a) is satisfied and if: . . . (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Put simply: "To certify a class pursuant to Rule 23(b)(3), a plaintiff

must establish: (1) predominance—'that the question of law or fact common to class members

predominate over any questions affecting only individual members'; and (2) superiority—'that a

class action is superior to other available methods for fairly and efficiently adjudicating the

controversy.'" Catholic Health Care West v. U.S. Foodserv. Inc., 729 F.3d 108, 117 (2d Cir.

2013) (quoting Fed. R. Civ. P. 23(b)(3)). The factors set forth in Rule 23(b)(3)(A)–(D) constitute

"a nonexhaustive list of factors pertinent to a court's 'close look' at the predominance and

superiority criteria[.]" Amchem, 521 U.S. at 615–616 (quoting Benjamin Kaplan, Continuing

Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81

Harv. L. Rev. 356, 390 (1967)). "[W]hile these factors, structurally, apply to both predominance

---

sufficiency of all pleadings, including the pleading of an affirmative defense" and noting that "as the Supreme Court explained in Iqbal, applying the plausibility standard to any pleading is a 'context-specific' task" (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009))).

and superiority, they more clearly implicate the superiority inquiry." <u>Skyes v. Mel Harris &</u>
<u>Assocs. LLC</u>, 780 F.3d 70, 82 (2d Cir. 2015).[8] "To certify a class, a district court must 'make a
definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues,
. . . must resolve material factual disputes relevant to each Rule 23 requirement,' and must find
that each requirement is 'established by at least a preponderance of the evidence.'" <u>Catholic</u>
<u>Health Care</u>, 729 F.3d at 117 (cleaned up) (quoting <u>Brown v. Kelly</u>, 609 F.3d 467, 476 (2d Cir.
2010)).

Common issues, such as liability, may be certified even if damages cannot be certified
under Rule 23(b)(3). <u>See</u> <u>Johnson v. Nextel Communs. Inc.</u>, 780 F.3d 128, 138 (2d Cir. 2015)
(finding in the context of Rule 23(b)(3) that "[c]ommon issues—such as liability—may be
certified, consistent with Rule 23, even where other issues—such as damages—do not lend
themselves to classwide proof"). Under Rule 23(c)(4): "When appropriate, an action may be
maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). "This rule
may be employed 'to certify a class on a particular issue even if the action as a whole does not
satisfy Rule 23(b)(3)'s predominance requirement.'" <u>In re Foreign Exch. Benchmark Rates</u>
<u>Antitrust Litig.</u>, 407 F. Supp. 3d 422, 437 (S.D.N.Y. 2019) (quoting <u>In re Nassau Cnty. Strip</u>
<u>Search Cases</u>, 461 F.3d 219, 225 (2d Cir. 2006)). "Under Rule 23(c), a court may divide a class
into subclasses when all members of the class challenge the same conduct by a defendant but
asserting varying specific interests and legal theories." <u>Hamelin v. St. Luke's Healthcare</u>, 274
F.R.D. 385, 393 (N.D.N.Y. 2011). "If common resolution of even a single issue would further

---

[8] It should be noted, however, that these factors apply to the predominance inquiry as well. <u>See</u>
<u>In re. Am. Int'l Group Secs. Litig.</u>, 689 F.3d 229, 242 (2d Cir. 2012) (stating that "the plain text
of Rule 23(b)(3) states that one of the 'matters pertinent' to a finding of predominance is 'the
likely difficulties in managing a class action.' (quoting Fed. R. Civ. P. 23(b)(3)(D))).

the efficient administration of justice, then the class should be certified." In re Amla Litig., 282 F. Supp. 3d 751, 765 (S.D.N.Y. 2017). "While Rule 23(c)(4) cannot work an end-run around the requirement that there be a linkage between a class's theory of liability and its theory of damages, or lessen the rigor of a traditional 23(b)(3) analysis, it can act as a tool that is appropriate and useful when classwide proof and predominance exist as to some, but not all issues." Jacob v. Duane Reade, Inc., 293 F.R.D. 578, 593 (S.D.N.Y. 2013).

The Court will address in turn (1) whether common issues predominate with regard to law and fact, and (2) whether common issues predominate with regard to damages. The Court will then address (3) whether the class action is superior to other available methods for litigating this controversy.

### 1. Predominance

"Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." Comcast, 569 U.S. at 34 (quoting Amchem, 521 U.S. at 623–24). Under 12(b)(3), the Court has a "duty to take a 'close look' at whether common questions predominate over individual ones." Comcast, 569 U.S. at 34 (cleaned up) (quoting Amchem, 521 U.S. at 615). "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 459 (2013) (emphasis in original).

"The predominance requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" Catholic Health Care, 729 F.3d at 118 (quoting UFCW Local 1776 v. Eli Lilly & Co., 620 F.3d 121, 131 (2d Cir. 2010)). "An individual question is one

38

where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–97 (5th ed. 2012)). "The predominance inquiry 'asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" Tyson Foods, 577 U.S. at 453 (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:49, pp. 195–96 (5th ed. 2012)). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" Tyson Foods, 577 U.S. at 453–54 (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–24 (3d ed. 2005)). "[P]redominance is a comparative standard: 'Rule 23(b)(3) [] does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof. What the rule does require is that common questions '*predominate* over any questions affecting only individual [class] members.'" In re Petrobras, 862 F.3d at 268 (emphasis in original) (quoting Amgen, 568 U.S. at 460). Thus, "Rule 23(b)(3) requires that common questions predominate, not that the action include only common questions." Brown v. Kelly, 609 F. 3d 467, 484 (2d Cir. 2010).

### a.   Legal and Factual Predominance

While the decision in Sullivan was based on Rule 23(c)(4), it noted that "[t]he court must still determine whether the requirements of F.R.Civ.P. 23(b)(3) are met." 2019 U.S. Dist. LEXIS

229509, at *32. Thus, <u>Sullivan</u> assessed whether questions of law or fact predominate, as

required by Rule 23(b)(3). <u>See</u> <u>id.</u> The court found:

> Airborne pollution is inherently general or "class-wide." It settles on
> everyone. No one can identify the year or the stack from which his
> [or her] particular contamination originated. This may give rise to
> difficult causation problems in cases involving multiple defendants.
> It is easier when there is only one alleged source of contamination
> and the contaminant is an unusual compound not found in nature.

<u>Id.</u> at *35. As the court continued:

> This case is one in which generalized evidence will resolve the
> liability of the issues. The facts put forward by the defendant do not
> suggest that these issues vary from one property to the next. Put as
> clearly as possible, either Chem-Fab is the primary source of
> contamination or it is not. This question is fairly answered on the
> basis of the same evidence for all members of the property class.

<u>Id.</u> at *37. In this case, Plaintiffs contend that common issues of law and fact predominate by

arguing:

> This case involves a single contaminant (PFOA) that was
> predominately emitted from a single source (McCaffrey Street) that
> contaminated the drinking water and a set of clearly demarcated
> properties within a defined geographic area (the Village and
> Contamination Zone). Every home on municipal water received
> contaminated water in their home; because of the NYDEC's
> widespread testing, every contaminated private well in the
> Contamination Zone is also known (as are the private well properties
> where POETs were installed). This is not a class where exposure is
> uncertain or must be proven by resorting to probabilities or
> conjecture; every contaminated property is known, clearly defined,
> and shares a common, predominate source of contamination—the
> McCaffrey Street facility. The property damage and nuisance
> classes are remarkably cohesive, tightly defined, and will commonly
> prove the central, predominate issues that will be dispositive in this
> case.

Mot. to Certify at 66. The Court finds that there are common issues of fact in this case, and these

common issue predominate, similar to the circumstances in <u>Sullivan</u>. Here, Plaintiffs allege one

source of contamination—the McCaffrey Street facility—for a single contaminant not found in

nature—PFOA. See id. As the Sullivan court noted, "[a]irborne pollution is inherently general or 'class-wide.' It settles on everyone." 2019 U.S. Dist. LEXIS 229509, at *35. Likewise, in this case the airborne pollution from the McCaffrey Street facility settled on the entire class, which is limited to a definite geographic area. See Mot. to Certify at 66.

DuPont argues against predominance with regard to liability by asserting that "[a]ny effort to prove that DuPont . . . had [a] dut[y] to warn the Processor Defendants about the use and disposal of their APFO-related products would necessarily turn on class-member-specific evidence." DuPont and 3M's Opp'n to Mot. to Certify at 5. In particular, DuPont emphasizes that "[b]y Plaintiffs' own account, the information available to DuPont . . . about PFOA's alleged risks changed considerably over time as more environmental, animal, and human studies were done and regulators began issuing guidance and regulations." Id. at 5.

However, DuPont's change-over-time argument weighs in favor of finding predominance with respect to liability. Under New York State law, "[t]o succeed on their failure-to-warn claim, plaintiffs [will be] required to prove that the product did not contain adequate warnings and that the inadequacy of those warnings was the proximate cause of the injuries." Mulhall v. Hannafin, 841 N.Y.S.2d 282, 285 (N.Y. App. Div. 2007) (citation omitted). Plaintiffs will also have to prove foreseeability:

> Whether the cause of action for failure to warn is based on negligence or strict liability, the courts of this state have consistently held that a manufacturer's duty is to warn only of those dangers it knows of or are reasonably foreseeable. Knowledge, actual or constructive, of a danger inherent in a product is an essential factor in determining whether a manufacturer is liable.

Id. (citations omitted). Thus, liability in this case hinges on determining at what specific point in time DuPont knew or should have known of the dangers created by PFOA, thereby creating a duty to warn. While there may have been earlier moments when DuPont did not have a duty to

warn, at issue is whether there was a particular tipping point, at which time the dangers of PFOA became apparent, thereby creating a duty for DuPont to warn of these dangers. *What* DuPont knew about PFOA and *when* DuPont knew it are both factors that point to the need to determine a common issue—DuPont's knowledge. Much like in <u>Sullivan</u>, "[t]his case is one in which generalized evidence will resolve the liability of the issues." 2019 U.S. Dist. LEXIS 229509, at *37. Because liability in this case centers on this common issue of DuPont's knowledge, this weighs in favor of finding predominance of questions of law.

DuPont also argues that its duty to warn as a manufacturer could be limited if the processors of PFOA had actual knowledge of the hazards created by the chemical: "[U]nder Plaintiffs' theory that . . . DuPont [is] liable for . . . sales of APFO-related products to the Processor Defendants—the Processor Defendants would be the users whose knowledge is key to the duty-to-warn analysis." DuPont and 3M's Opp'n to Mot. to Certify at 7 (citation omitted). Again, this argument favors finding predominance. For example, at issue is determining *what* Allied-Signal knew about PFOA and *when* Allied-Signal knew it, and determining *what* Saint-Gobain knew and *when* Saint-Gobain knew it. The logic is the same as above—the common issue is the knowledge of the PFOA processors. This knowledge is relevant in all failure-to-warn claims against DuPont, because it would affect DuPont's liability in all instances. Thus, this also indicates the predominance of common issues governing liability.

For these reasons, the Court finds that the resolution of both legal and factual questions that qualify as a genuine controversy can be achieved through generalized proof, and these are more substantial than issues subject only to individualized proof. <u>See</u> <u>Catholic Health Care</u>, 729 F.3d at 118. Thus, the Court finds that common issues predominate with regard to law and fact

under 23(b)(3) for the Municipal Water Property Damage Class, the Private Well Water Property Damage Class, and the Nuisance Damage Class.

### b. Damages

As a preliminary matter, the Court notes that "[i]n <u>Comcast</u>, the Supreme Court held that courts should examine the proposed damages methodology at the certification stage to ensure that it is consistent with the classwide theory of liability and capable of measurement on a classwide basis." <u>In re U.S. Foodservice Inc. Price Litig.</u>, 729 F.3d 108, 123 n.8 (2d Cir. 2013). "Calculations need not be exact, but at the class-certification stage (as at trial), any model supporting a 'plaintiff's damages case must be consistent with its liability case . . . .'" <u>Comcast</u>, 569 U.S. at 35 (citations omitted) (quoting ABA Section of Antitrust Law, Proving Antitrust Damages: Legal and Economic Issues 57, 62 (2d ed. 2010)). "[F]or the purposes of Rule 23, courts must conduct a 'rigorous analysis' to determine whether that is so." <u>Comcast</u>, 569 U.S. at 35 (cleaned up) (quoting <u>Dukes</u>, 564 U.S. at 351).

> *i. Damages as to Municipal Water and Private Well Water Property Damage Classes*

DuPont objects to certifying the classes by arguing: "[T]he critical litigation issues of injury and damages to members of the Municipal Water Property Class and the Private Well Water Class cannot be determined on a classwide basis using common evidence as required by <u>Comcast Corporation v. Behrand</u> [sic], 569 U.S. 27 (2013) and its progeny." DuPont's Opp'n to Mot. to Certify at 2–3. In particular, DuPont argues: "[A]s the Supreme Court explained in <u>Comcast</u>, 569 U.S. at 35, Rule 23(b)(3)'s predominance requirement is not satisfied and class certification is inappropriate if plaintiffs' expert model cannot measure damages across the entire class." <u>Id.</u> at 8.

However, the Second Circuit has clearly stated: "We hold that <u>Comcast</u> does not mandate that certification pursuant to Rule 23(b)(3) requires a finding that damages are capable of measurement on a classwide basis." <u>Roach v. T.L. Cannon Corp.</u>, 778 F.3d 401, 402 (2d Cir. 2015). "<u>Comcast</u> held that a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that resulted from the class's asserted theory of injury; but the Court did not hold that proponents of class certification must rely upon a classwide damages model to demonstrate predominance." <u>Id.</u> at 407.[9] Thus, "[p]redominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." <u>Id.</u> at 405 (quoting <u>Catholic Health Care</u>, 729 F.3d at 118). Accordingly, under Rule 23(b)(3), "Plaintiffs' model survives the minimal scrutiny required under <u>Comcast</u> and Rule 23(b)(3)" if "their theory of liability matches their theory of damages and individualized damages will not predominate." <u>Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC</u>, 310 F.R.D. 69, 99 (S.D.N.Y. 2015).[10]

The Court begins by assessing whether the Plaintiffs' theory of liability matches their theory of damages. In this case, Plaintiffs' expert Dr. Jeffrey Zabel used a "hedonic method

---

[9] Indeed, the Second Circuit noted that, before the decision in <u>Comcast</u>, "'[t]he fact that damages may have to be ascertained on an individual basis' was simply one 'factor that we [had to consider] in deciding whether issues susceptible to generalized proof outweigh individual issues' when certifying the class as a whole" and the Circuit asserted that "we do not read <u>Comcast</u> as overruling these decisions." <u>Roach</u>, 778 F.3d at 405 (cleaned up) (quoting <u>McLaughlin v. Am. Tobacco Co.</u>, 522 F.3d 215, 231 (2d Cir. 2008), <u>abrogated on other grounds by</u> <u>Bridge v. Phx. Bond & Indem. Co.</u>, 553 U.S. 639 (2008), <u>as recognized by</u> <u>In re U.S. Foodservice</u>, 729 F.3d at 119).

[10] The Court also notes that "nothing in <u>Comcast</u> requires an expert to <u>perform</u> his analyses at the class certification stage." <u>In re Scotts EZ Seed Litig.</u>, 304 F.R.D. 397, 414 (S.D.N.Y. 2015) (emphasis in original).

. . . ." Mot. to Certify at 52. Previously, this Court found Dr. Zabel's testimony admissible under

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), in its May 7, 2021,

Memorandum-Decision and Order. Dkt. No. 265, Baker v. Saint-Gobain Performance Plastics

Corp., No. 16-CV-0917, 2021 U.S. Dist. LEXIS 117558, at *21–26 (N.D.N.Y. May 7, 2021)

(Kahn, J.) ("May 2021 Order"). There, the Court defined hedonic regression: "A hedonic

regression model is a statistical tool used to measure the price impact associated with a particular

attribute by isolating that attribute from other variables that may affect value." Id. at *22 (citing

In re Scotts EZ Seed Litig., 304 F.R.D. at 413). The Court also noted: "Courts in this Circuit

have approved of the use of hedonic regression models to demonstrate price impact on a class-

wide basis." Baker, 2021 U.S. Dist. LEXIS 117558, at *22 (citing Hasemann v. Gerber Prods.

Co., 331 F.R.D. 239, 278 (E.D.N.Y. 2019)). In Plaintiffs' Motion to Certify, Plaintiffs explain

how Dr. Zabel applied his hedonic method to the property pricing in Hoosick Falls:

> In 2016, following disclosure of community-wide PFOA contamination, the average home sale price in Hoosick Falls fell 24.15%. When comparing sales from the 2016–2019 period, the statistically significant differences between a control group and Hoosick Falls sales was 21.02%. Even using a more conservative approach, and analyzing the eight years from 2012–2019, the statistically significant difference [in] home sales in Hoosick Falls and a control group is 8.75%. And this only makes common sense; one would expect that given the choice between purchasing a home in a small community with soil and water that is contaminated by a toxic chemical and is home to a state and federal Superfund site and purchasing in a community without these characteristics, a rational home buyer would choose the latter.

Mot. to Certify at 52–53. The Court finds this indicates that Plaintiffs' theory of liability—

DuPont's alleged failure to warn caused pollution that led to diminution in property values in

Hoosick Falls—matches Plaintiff's theory of damages—the hedonic regression model seeks to

demonstrate diminution in property values attributable to the market's perception of PFOA contamination in Hoosick Falls.

Therefore, the Court must next determine whether individualized damages will predominate. The Court notes that "[c]ommon questions may still predominate even though some damages will be individualized." Betances v. Fischer, 304 F.R.D. 416, 431 (S.D.N.Y. 2015).

"[A] district court must 'ensure that the damages awards roughly reflect the aggregate amount owed to class members." Hickory Secs. LTD v. Republic of Argentina, 493 Fed. App'x 156, 159 (2d Cir. 2012); see also In re Pharmaceutical Industry Average Wholesale Price Litigation, 582 F.3d 156, 197 (1st Cir. 2009) ("The use of aggregate damages calculations is well established in federal court and implied by the very existence of the class action mechanism itself."). "[A] district court must 'ensure that the damages awards roughly reflect the aggregate amount owed to class members.'" Hickory, 493 Fed. App'x at 159 (quoting Seijas v. Republic of Argentina, 606 F.3d 53, 58–59 (2d Cir. 2010)). "Although 'damages need not usually be demonstrated with precision,' aggregate calculations that result in inflated damage figures that do 'not accurately reflect the number of plaintiffs actually injured' and 'bear[] little or no relationship to the amount of economic harm actually caused by defendants' violate the Rules Enabling Act." Hickory, 493 Fed. App'x at 159 (quoting McLaughlin, 522 F.3d at 229, 231). Newberg and Rubenstein on Class Actions is instructive in its discussion of aggregate compensatory damages:

> In an individual lawsuit, all of the damages belong to a single plaintiff. A jury's determination of damages therefore provides two datapoints simultaneously: the full amount of damages the defendant must pay and the amount the plaintiff receives. In a class action, these two pieces of data diverge: the amount the defendant must pay the entire class constitutes its "aggregate" or "classwide"

> liability, while what any single class member receives is her
> "individual" damages. In some class suits, damages will be
> determined at the aggregate level, with individual awards worked
> out in subsequent proceedings; in other types of cases, aggregate
> damages may be impossible—and unnecessary—to calculate, with
> individual damages being the critical determination. What persists
> across the different types of class suits is the need for a method for
> determining damages that can be applied to the claims of all or most
> class members; if there is not such a common method, damages
> assessments may predominate over questions common to the class
> and hence make class certification problematic.

4 Newberg and Rubenstein on Class Actions § 12:1 (6th ed. 2022). Thus, "[i]n class action law,

the terms 'aggregate damages' or 'classwide damages' describe a defendant's total liability to the

plaintiff class." Id. § 12:2. "Unfortunately, . . . some courts use the term 'classwide damages' to

mean something different, namely, whether there is a single method, applied across the whole

class, for calculating each individual class members' particular damages. That is a classwide

*method* for determining *individual* damages, but it is not classwide damages. The law would be

clearer if courts reserved the term 'aggregate damages' and 'classwide damages' for precisely

what these terms describe: the measure of the full class's damages." Id. (emphasis in original)

(footnote omitted).

   As noted in this Court's previous admissibility decision based on Daubert: "Dr. Zabel as

an expert in real estate economics . . . can help demonstrate that class members' properties

experienced diminution in value due to the market-wide stigma attributable to PFOA

contamination in Hoosick Falls." Baker, 2021 U.S. Dist. LEXIS 117558, at *21. Dr. Zabel

described his application of the hedonic method: "The standard economic approach to measuring

the impact of environmental contamination on property values is the hedonic property value

method. The hedonic method involves developing an econometric model of house prices, their

structural features (e.g., number of bathrooms, size of the unit) and relevant neighborhood

characteristics, including any disamenities such as environmental contamination, to estimate the specific value (positive or negative) of those attributes." Dkt. No. 168 at 2. Dr. Zabel asserted that the hedonic method is superior to other valuation methods, such as "approaches used by real estate appraisers, for example, to estimate the market value of a home" because "[i]n addition to the impracticality of assessing the impact of widespread contamination on a home-by-home basis, typical appraisal methods are incapable of providing such estimates with conventional statistical measures of accuracy and reliability." Id. Indeed, the Court previously noted in its decision dealing with admissibility under Daubert that Dr. Zabel's hedonic method is effectively tailored in its valuation assessments, for example: "Dr. Zabel collected data on all single-family home sales in Rensselaer and Washington counties (the counties containing and surrounding Hoosick Falls) from 1998 through September 2019" he then "removed 'outlier' properties from this data set—those for which certain data was missing, homes outside the first and ninety-ninth percentile in square footage, parcels in excess of ten acres, and foreclosure sales." Baker, 2021 U.S. Dist. LEXIS 117558, at *22–23.

Here, the Court finds that Dr. Zabel's model uses a single method—the hedonic method—applied across the whole class—the Municipal Water Property Damage Class and the Private Well Water Property Damage Class—that can reflect the Defendant's total liability to these Plaintiff classes for property damages caused by DuPont's alleged failure-to-warn.[11] In so doing, the Court finds that "individualized damages will not predominate." Carpenters Pension

---

[11] "Once a district court finds evidence to be admissible, its persuasiveness is, in general, a matter for the jury. Reasonable minds may differ as to whether the average time [the expert] calculated is probative as to the time actually worked by each employee. Resolving that question, however, is the near-exclusive province of the jury. The District Court could have denied class certification on this ground only if it concluded that no reasonable juror could have believed that the employees spent roughly equal time donning and doffing." Tyson Foods, 577 U.S. at 459.

<u>Tr. Fund of St. Louis</u>, 310 F.R.D. at 99. The Court also finds that Plaintiffs have "us[ed] appropriate procedures to ensure that the damages awards roughly reflect the aggregate amount owed to class members . . . ." <u>Seijas</u>, 606 F.3d 58–59.

Thus, the Court finds that the Municipal Water Property Class and the Private Well Water Class meet the requirements of Rule 23(b)(3) predominance.

*ii.   Damages as to the Nuisance Damage Class*

The Court arrives at a different conclusion with respect to the Nuisance Damage Class. It is unclear what a "the proposed damages methodology" would be for the Nuisance Damage Class that "is consistent with the classwide theory of liability and capable of measurement on a classwide basis." <u>In re U.S. Foodservice</u>, 729 F.3d at 123 n.8. While the costs of "the installation of a POET," Mot. to Certify at 40, may perhaps be ascertainable across the Nuisance Damage Class, Plaintiffs do not appear to proffer a proposed damages methodology capable of measurement on a classwide basis with respect to these installation costs. Nor do Plaintiffs provide the Court with a methodology for other damages alleged—such as for "length of time each class member was reliant on bottled water" or damages based on the "date of each class member's POET installation"— that would be capable of measurement on a classwide basis. <u>Id.</u> at 68 n.40. Thus, although Plaintiffs have effectively demonstrated predominance as to questions of law and fact under Rule 23(b)(3), they have not shown a methodology capable of measurement on a classwide basis. For this reason, the Nuisance Damage Class cannot be certified under Rule 23(b)(3). <u>Cf.</u> <u>Comcast</u>, 569 U.S. at 35 ("[A] model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3).").

However, Plaintiffs have requested: "In the event the Court concludes that it cannot certify one or more of the proposed classes under Rule 23(b)(3), Plaintiffs move for certification of particular common issues under Rule 23(c)(4)." Mot. to Certify at 76.

Under Rule 23(c)(4), in cases where "the action may retain its 'class' character only through the adjudication of liability to the class" then "the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims." Fed. R. Civ. P. 23(c)(4) advisory committee's note to 1966 amendments; see also In re Nassau Cnty. Strip Search, 461 F.3d at 225 (concluding that "a court may employ Rule 23(c)(4)(A) to certify a class on a particular issue even if the action as a whole does not satisfy Rule 23(b)(3)'s predominance requirement").[12] Courts may certify a class with regard to liability under Rule 23(c)(4) when "certification of the class for liability purposes will clearly advance the litigation in a meaningful way." Jacob, 293 F.R.D. at 593. Pursuant to Rule 23(c)(4):

> Even if individualized issues (rather than common issues) were to predominate the damage inquiry, the more appropriate course of action would be to bifurcate a damages phase and/or decertify the class as to individualized damages determinations. In other words, even if individualized issues predominate the issue of damages, the court believes that common questions nonetheless predominate in this case because common questions will govern the more difficult, threshold liability issues . . . .

Jacob, 293 F.R.D. at 593–94 (quoting In re Motor Fuel Temperature Sales Practices Litig., 292 F.R.D. 652, 675 (D. Kan. 2013)). "Of course, '[c]ourts should use Rule 23(c)(4) . . . only where

---

[12] "Prior to the 2007 amendments to the Federal Rules of Civil Procedure, Rule 23(c)(4) encompassed the current version of Rule 23(c)(4) as Rule 23(c)(4)(A) and the current version of Rule 23(c)(5) as Rule 23(c)(4)(B)." In re LIBOR-Based Fin. Instruments Antitrust Litig., 299 F. Supp. 3d 430, 464 n.3 (S.D.N.Y. 2018); see also Simon v. Philip Morris, 200 F.R.D. 21, 29 (E.D.N.Y. 2001) (quoting Rule 23(c)(4)(A): "When appropriate an action may be brought or maintained as a class action with respect to particular issues."); Fed. R. Civ. P. 23(a)(4) ("When appropriate, an action may be maintained as a class action with respect to particular issues.").

resolution of the particular common issues would materially advance the disposition of the litigation as a whole.'" Houser v. Pritzker, 28 F. Supp. 3d 222, 254 (S.D.N.Y. 2014) (quoting In re Motor Fuel, 292 F.R.D. at 665). "Courts thus should not use the bifurcation approach where 'despite the presence of a common [liability] issue, certification would not make the case more manageable.'" Houser, 28 F. Supp. at 254 (quoting Benner v. Becton Dickinson & Co., 214 F.R.D. 157, 169 (S.D.N.Y. 2003)).

In this case, the Court finds that resolution of common liability issues regarding the Nuisance Damage Class would materially advance the disposition of the litigation as a whole by preventing the Court and the parties from expending the significant time and resources that would be required to litigate each class member's case separately. See Houser, 28 F. Supp. 3d at 254 ("By litigating these issues on a classwide basis, both the parties and the Court can avoid the extreme time and expense necessary to try each class member's claims individually."). The Court also finds that resolving common issues of liability as to the Nuisance Damage Class would ensure greater consistency and uniformity in legal decisions governing persons similarly situated. See Simon, 200 F.R.D. at 29 (finding, in the context of Rule 23(c)(4)(A), that "[t]he language and spirit of the Federal Rules of Civil Procedure not only permit trial judges to sever issues for trial, they encourage them to employ the procedure where it would facilitate Rule 23's purpose of 'achieving economies of time, effort, and expense, and promoting uniformity of decisions as to persons similarly situated' as well as Rule 1's overarching goal of ensuring a fair and efficient remedy for every wrong." (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendments)).

For these reasons, although the Nuisance Damage Class cannot be certified under Rule 23(b)(3), the Court finds that the Nuisance Damage Class can be certified under Rule 23(c)(4), in

which liability issues as to the Nuisance Damage Class will be litigated through a class action, but damages will be determined through individual proceedings. Johnson, 780 F.3d at 138 ("Common issues—such as liability—may be certified, consistent with Rule 23, even where other issues—such as damages—do not lend themselves to classwide proof." (citing In re Nassau Cnty. Strip Search, 461 F.3d at 227)).[13]

### 2. Superiority

When assessing superiority, the Court turns to the four factors set forth in Rule 23(b)(3) when evaluating whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These four factors are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D). The Second Circuit has stated: "While Rule 23(b)(3) sets out four individual factors for courts to consider, manageability 'is, by far, the most critical concern in determining whether a class action is a superior means of adjudication.'" Sykes, 780 F.3d at 82 (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:72 (5th ed. 2014)). "The superiority requirement reflects the goal of class actions to achieve economies of time, effort and expense, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness." Adkins v. Morgan Stanley, 307 F.R.D. 119, 141 (S.D.N.Y. 2015) (quoting

---

[13] As discussed directly below, the Court must still determine the superiority of a class action with respect to the Nuisance Damage Class before it may certify the class.

N.J. Carpenters Health Fund v. DLJ Mortg. Cap., Inc., No. 08-CV-5653, 2014 U.S. Dist. LEXIS 35326, at *31 (S.D.N.Y. Mar. 17, 2014)).

Superiority is also necessary under Rule 23(c)(4). See Sullivan, 2019 U.S. Dist LEXIS 229509, at *32 ("Rule 23(c)(4) permits the court to identify specific issues for class certification. The court must still determine whether the requirements of F.R.Civ.P. 23(b)(3) are met."); see also Simon, 200 F.R.D. at 30 ("Rule 23(c)(4)(A) also grants trial judges the flexibility to structure mass tort actions so that the superiority requirement of Rule 23(b)(3) is satisfied. Superiority depends in turn upon the manageability requirement of Rule 23(b)(3)(D)." (citations omitted)).

First, under Rule 23(b)(3)(A), the Court finds that a class action is likely the only means through which these Plaintiffs can reasonably expect to litigate and resolve their claims—especially in light of the complexity and expense of litigating complicated environmental cases. See Lizondro-Garcia v. Kefi LLC, 300 F.R.D. 169, 177 (S.D.N.Y. 2014) ("A class action is likely the only vehicle by which all plaintiffs can, as a practical matter, adjudicate their state law claims."). Second, pursuant to Rule 23(b)(3)(B) the Court is unaware of any other pending litigation by individual class members concerning these specific claims.

In assessing this case under Rule 23(b)(3)(C) and Rule 23(b)(3)(D), the Court finds the decision in Sullivan instructive. As the Sullivan court noted, determining "liab[ility] for property claims is superior to a series of individual claims both because of the efficiency of resolving the issue on the basis of the law of a single state (Vermont) and a single factual record. This case is not one in which variations in state law or other differences between individual claims militate against class treatment." 2019 U.S. Dist LEXIS 229509, at *37–38. Likewise, in this case, with respect to the Municipal Water Property Damage Class and the Private Well Water Property

Damage Class, the determination of DuPont's liability and the determination of damages will be based on New York State law and a single factual record, which clearly weigh in favor of concentrating litigation in this forum, in which these determinations can be most effectively managed. Similarly, with regard to the Nuisance Damage Class, liability will be based on New York State law and will be based on the same factual record, which likewise weighs in favor of litigating this matter in this forum.

As the Sullivan court explained further: "The cost and complexity of proving the liability case for a single property are prohibitive. Instead, this case presents an opportunity to 'achieve economies of time, effort, and expense and promote uniformity of decisions as to persons similarly situated." Id. at *38 (quoting Fed. R. Civ. P. 23 advisory committee's note to 1966 amendments). The Court finds similarly in this case—litigation through class action will allow greater manageability for this Court and the parties, because it will effectively ensure greater uniformity of legal decisions as to similarly situated persons. The class action will also allow this Court to manage what would otherwise be an unwieldly number of cases, thereby preventing this Court and others from overburdening their limited resources. Finally, a class action will be most manageable in this Court because this "particular forum is more geographically convenient for the parties[,]" Sykes, 780 F.3d at 82 (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:71 (5th ed. 2014)), since Hoosick Falls is located in the Northern District of New York. Therefore, the Court finds that the class action is the superior method for fairly and efficiently adjudicating the controversy between DuPont and the Municipal Water Property Damage Class, the Private Well Water Property Damage Class, the Nuisance Damage Class.

Accordingly, the Municipal Water Property Damage Class and the Private Well Water Property Damage Class are certified under Rule 23(b)(3). The Nuisance Damage Class is

certified under Rule 23(c)(4), and damages will be determined through subsequent individual proceedings.[14]

### D.  Unsealing this Memorandum-Decision and Order

Previously, the Court ordered much of the docket in this case to be sealed, as requested by the parties to this litigation. See, e.g., Dkt. Nos. 169, 175, 236, 249. As the litigation progressed, the Court subsequently granted requests to unseal a substantial portion of the formerly sealed docket. See, e.g., Dkt. Nos. 264, 271, 275. Because the parties' requests for unsealing have been desultory, the docket is currently fragmented between sealed and unsealed documents. In light of the fact that some parts of the docket remain sealed and other parts are unsealed, the Court has filed this Memorandum-Decision and Order under seal. However, the Court will unseal this Memorandum-Decision and Order in its entirety if neither party objects. The parties will be given seven (7) days from the date that this Memorandum-Decision and Order is issued to submit supplemental briefing from each party or a joint proposal from both parties that states specifically which portions, if any, of this Memorandum-Decision and Order should remain sealed and explaining why those portions should remain sealed. Failure to respond will result in the unsealing of the entirety of this Memorandum-Decision and Order at the end of the seven (7) day deadline. See L.R. 5.3(c) ("Once the Court seals a document, a portion of a

---

[14] With respect to the Nuisance Damage Class, the Court is permitted to "appoint[] a magistrate judge or special master to preside over individual damages proceedings . . . ." Norflet v. John Hancock Life Ins. Co., No. 2007 U.S. Dist. LEXIS 65793, at *30 (D. Conn. 2007) (quoting In re Visa Check/Mastermoney Antitrust Litig., 280 F.3d 124, 141 (2d Cir. 2001), abrogated on other grounds by In re Initial Pub. Offerings, 471 F.3d at 36–37); In re Nassau Cnty. Strip Search, 461 F.3d at 231 ("The District Court should bear in mind that . . . '[t]here are a number of management tools available to a district court to address any individualized damages issues,' such as bifurcation, [and] the use of a magistrate or special master . . . .'" (quoting In re Visa Check, 280 F.3d at 141)). Accordingly, the Court will appoint a Magistrate or Special Master, to preside over the individualized damages proceedings for the Nuisance Damage Class.

document, a party or an entire case, the material shall remain under seal for the duration of the sealing order or until a subsequent order is entered directing that the sealed material be unsealed."); Fed. R. Civ. P. 5.2(d) ("[t]he court may later unseal the filing . . . ."); <u>see also</u> <u>Lugosch v. Pyramid Co.</u>, 435 F.3d 110 (2d Cir. 2006).

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' Motion to Certify Class is **GRANTED** pursuant to Rules 23(a) and 23(b)(2) with respect to the PFOA Invasion Injury Class, pursuant to Rules 23(a) and 23(b)(3) with respect to the Municipal Water Property Damage Class and the Private Well Water Property Damage Class, and pursuant to Rules 23(a) and 23(c)(4) with respect to the Nuisance Damage Class; and it is further

**ORDERED**, that the Court appoints, pursuant to Rule 23(g), as lead co-counsel Robin L. Greenwald and James J. Bilsborrow of Weitz & Luxenberg, P.C., and Stephen G. Schwarz and Hadley L. Matarazzo of Faraci Lange, LLP; and as Plaintiffs' liaison counsel John K. Powers of Powers & Santola, LLP; and it is further

**ORDERED**, that the Court will appoint, at a future date, a Magistrate Judge or Special Master to oversee individual damages proceedings with respect to the Nuisance Damage Class; and it is further

**ORDERED**, that the parties shall have **seven (7) days** from the date of issuance of this Memorandum-Decision and Order to file supplemental briefing from each party or a joint proposal from both parties stating <u>with specificity</u> which portions of this Memorandum-Decision and Order should remain sealed, if any, and explaining why those portions should remain sealed. If neither party responds by filing supplemental briefing or a joint proposal, the Court shall

unseal the entirety of this Memorandum-Decision and Order at the end of the seven (7) day

deadline; and it is further

      **ORDERED**, that the Clerk shall serve a copy of this Memorandum-Decision and Order

on the parties in accordance with the Local Rules.

      **IT IS SO ORDERED.**

DATED:      September 30, 2022
              Albany, New York

              LAWRENCE E. KAHN
              United States District Judge