**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

MICHELE BAKER, *et al.*,

        Plaintiffs,

    v.                                    1:16-CV-917
                                               (LEK/DJS)

SAINT-GOBAIN PERFORMANCE
PLASTICS CORP., *et al.*,

        Defendants.
_____

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM-DECISION AND ORDER

This case involves a dispute concerning the contamination of the drinking water in Hoosick Falls, New York by perfluorooctanoic acid, a chemical commonly referred to as PFOA. Following multiple settlement agreements with certain Defendants, DuPont is the only remaining Defendant. Plaintiffs allege that DuPont is liable for producing the PFOA that ultimately contaminated the water supply in Hoosick Falls. Dkt. No. 335, Am. Compl. at ¶¶ 1, 220-221. To bolster those allegations, Plaintiffs offer the testimony of Dr. Michael Hickner. Presently before the Court is DuPont's Motion to exclude Dr. Hickner's testimony on the grounds that Dr. Hickner's opinions are unscientific and would not aid the jury. Dkt. No. 400-5, Def.'s Mem. of Law at pp. 9-

1

19. Plaintiffs oppose the Motion, and DuPont has filed a reply. Dkt. No. 415, Pl. Opp., 425, & 430-2. This Court heard oral argument on this Motion, together with other motions to exclude expert testimony on September 10, 2024. For the reasons set forth below, the Motion is granted in part and denied in part.

## I. LEGAL STANDARD

Under Federal Rule of Evidence 702:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"The Second Circuit has distilled Rule 702's requirements into three broad criteria: (1) qualifications, (2) reliability, and (3) relevance and assistance to the trier of fact." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 466 (S.D.N.Y. 2018) (citing *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005)). "The Supreme Court has tasked district courts with a 'gatekeeping' role with respect to expert opinion testimony." *Pac. Life Ins. Co. v. Bank of New York Mellon*, 571 F. Supp. 3d 106, 112 (S.D.N.Y. 2021) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S.

2

579, 597 (1993)). In doing so the Court recognized that under the Federal Rules of Evidence trial courts have "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. at 597. Faced with motions to exclude expert testimony, courts should apply *Daubert* in a "flexible" manner, *id.* at 594, and be reminded that "the admissibility of expert testimony should be viewed within the context of the entire rules of evidence and the presumption of admissibility of evidence." *TC Sys. Inc. v. Town of Colonie, New York*, 213 F. Supp. 2d 171, 173-74 (N.D.N.Y. 2002). Despite this flexible standard, "a trial court is obligated to act as a gatekeeper with respect to expert testimony." *Travelers Indem. Co. v. Northrop Grumman Corp.*, 2014 WL 464769, at *1 (S.D.N.Y. Jan. 28, 2014).

## II. DISCUSSION

Dr. Michael Hickner holds a Ph.D. in chemical engineering. Dkt. No. 400-2, Hickner Report, at p. 1. He has been retained by Plaintiff to offer his expert opinion on the harms surrounding PFOA and DuPont's knowledge thereof. Hickner Report at p. 7. DuPont seeks to preclude Dr. Hickner from offering the following opinions:

> (1) The Barr Processor Mass Balance Study released in 2005 definitively demonstrated that PFOA was not destroyed during AFD processing and that IR heated ovens released into the air . . . PFOA vapor during processing;
>
> (2) DuPont was aware since the 1980s that when AFD was heated to temperatures above 150 [degrees Celsius] APFO in the AFD would sublime to form PFOA vapors;

3

> (3) DuPont was aware at least since the mid-1990s that PFOA was stable at 250 [degrees Celsius] and had a half-life of 31.5 minutes when heated to 300 [degrees Celsius];
>
> (4) DuPont was aware since the 1970s that [released] PFOA . . . would not reach 300 [degrees Celsius] for more than a few minutes; and
>
> (5) DuPont recognized in the 1980s that PFOA released from heating AFD could contaminate drinking water and began a program to capture and recycle PFOA released from its fine powder dryers using scrubbers and other technologies.

Hickner Report at p. 7; Def.'s Mem of Law at pp. 5-6.  Because opinions two through five concern what DuPont was aware of and when, the Court will consider those opinions together.

### A. Opinion # 1

DuPont first seeks to exclude Dr. Hickner's opinion that the Barr Study definitively demonstrated that PFOA was not destroyed during AFD processing but instead was released into the air.  DuPont does so on the basis that Dr. Hickner "offer[ed] nothing more than an interpretive narration of documents" to arrive at his conclusion. Def.'s Mem. of Law at p. 16.  In formulating his opinion, Dr. Hickner summarizes the findings of the Barr Processor Mass Balance Study "performed in response to EPA's concerns about PFOA in the environment."  Hickner Report at p. 5.  In doing so, he states that the "study demonstrated that 39-54% of [chemicals were] released through the air to the environment as PFOA through the [infrared] oven process."  Hickner Report at p. 5.  He goes on to state a number of statistics detailed in the Barr Study.

4

Hickner Report at p. 5.  Dr. Hickner uses these statistics and other chemical data to support his ultimate finding that the Barr Study demonstrates that PFOA was released into the air rather than destroyed during processing.  Hickner Report at pp. 5-7.

DuPont takes issue with this method, arguing that the ultimate opinion is a "factual narrative based on nothing more than a review of documents and testimony." Def.'s Mem. of Law at p. 14.  Plaintiffs counter that the Barr Study is a "highly technical document that requires interpretation . . . for a lay jury to comprehend." Pl. Opp. at p. 20.  The Court agrees with Plaintiffs.  Generally speaking, DuPont is correct that experts cannot provide a narrative of facts in the record that a layperson can comprehend on their own.  *See, e.g.*, *Scentsational Techs., LLC v. Pepsi, Inc.*, 2018 WL 1889763, at *4 (S.D.N.Y. Apr. 18, 2018)  (internal quotation marks omitted) ("[E]xperts are not percipient witnesses. They are witnesses who, by virtue of specialized expertise, are able to provide opinions or information beyond the ken of the layperson. It is therefore inappropriate for experts to act as a vehicle to present a factual narrative of interesting or useful documents for a case, in effect simply accumulating and putting together one party's story."). However, an expert's testimony is admissible when it is required to aid the jury in its understanding of highly technical documents. *See, e.g.*, *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 45 (S.D.N.Y. 2016) (stating that experts may offer testimony "defining any complex or specialized terminology, or drawing inferences that would not be apparent without the benefit of experience or specialized knowledge"). At

5

oral argument, DuPont's counsel recognized that Dr. Hickner could testify about various scientific terms and processes that underlie the documents to be reviewed.

Here, the Barr Study summarized by Dr. Hickner is sixty-seven pages of highly technical and scientific data regarding AFD processing, infrared ovens, PFOA vapor release, and other scientific data. *See generally* Dkt. No. 400-4. In *Scott v. Chipotle Mexican Grill, Inc.*, the plaintiff retained an expert to testify regarding "how Chipotle organizes its operations, whether such structure is typical in the industry, and how choices Chipotle makes affect costs and revenue." 315 F.R.D. at 46. The expert also made conclusions about Chipotle's historical success. *Id.* The court allowed this testimony over objections that it was mere factual narrative because the testimony would "assist the trier of fact in understanding" and "help explain common business practices." *Id.* If expert testimony is permitted to aid a jury in understanding business practices, the Court is comfortable finding that expert testimony would aid the jury here where the scientific data at issue is dense, complex, and difficult to understand without specialized knowledge. If anything, Dr. Hickner's testimony would "streamline the presentation of that data to the jury, saving the jury time and avoiding unnecessary confusion." *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 504 (S.D.N.Y.2015).

Thus, Dr. Hickner's first opinion is admissible.

### B. Opinions ## 2-5

However, Dr. Hickner's testimony for opinions two through five will be excluded in part. DuPont seeks to exclude Dr. Hickner's testimony concerning what DuPont was aware of regarding PFOA on the grounds that experts cannot testify about an entity's state of mind or knowledge. Def.'s Mem. of Law at pp. 9-10; Hickner Report at p. 7. Plaintiffs counter that Dr. Hickner's testimony is appropriate because his opinions are "based on interpreting DuPont's technical documents, not reading minds." Pl. Opp. at p. 15.

It is well-settled that experts may not offer opinions concerning a party's knowledge of information at any given time. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig. v. Exxon Mobil Corp.*, 643 F. Supp. 2d 482, 505 (S.D.N.Y. 2009) (experts "may opine that a defendant had access to information, but [they] may not opine that the defendant knew that information"); *Travelers Indem. Co. v. Northrop Grumman Corp.*, 2014 WL 464769, at *5 (deeming "easily inadmissible" expert testimony regarding what the party "must have known" and whether they "could reasonably have anticipated the environmental impact of certain practices"). To allow an expert to testify to a party's knowledge would be to impermissibly supplant the role of the jury. *See, e.g.*, *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 2020 WL 4251229, at *5 (S.D.N.Y. Feb. 19, 2020) (internal quotation marks and citation omitted) ("The question of a party's knowledge or intent is a classic jury question.").

7

Here, opinions two through five all concern what DuPont was "aware" of and "recognized" and when. Hickner Report at p. 7. Black's Law Dictionary defines to "become aware of" as to have "specific knowledge of something." *Become Aware Of*, BLACK'S LAW DICTIONARY. In *Travelers Indemnity Company v. Northrop Grumman Corporation*, the proposed expert gave opinions concerning what environmental practices a party "would have been generally familiar" with and whether the environmental impacts stemming from certain practices could have been anticipated. 2014 WL 464769, at *4-5. The court deemed both opinions inadmissible. *Id.* at *5. In doing so, the court first emphasized that the opinion regarding familiarity with environmental practices was an impermissible prediction of what the party "must have known." *Id.* Likewise, the court highlighted that the opinion concerning what environmental impacts could have been anticipated was an opinion based on mere conjecture. *Id.* Much like the two "easily inadmissible" opinions in *Travelers Indemnity Company v. Northrop Grumman Corporation*, Dr. Hickner's opinions all concern what DuPont knew and when. To allow such testimony would be to wrongly supplant the role of the jury. *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 2020 WL 4251229, at *5. This is especially true because Dr. Hickner has no expertise in the field of corporate governance from which he could offer opinions about how knowledge held by some individuals in a corporation could be imputed to the corporation itself.

8

However, at oral argument on this Motion, counsel for DuPont stated that they did not object to Dr. Hickner offering testimony on the scientific data or other information supporting his ultimate opinions concerning DuPont's knowledge. Dr. Hickner's expert report goes into some detail about chemicals, chemical processing, and PFOA formation and release. Hickner Report at pp. 1-5. Accordingly, Dr. Hickner may offer testimony on the scientific data supporting his ultimate conclusions provided he does not opine on DuPont's knowledge. Thus, Dr. Hickner's testimony will be limited to his opinion on the Barr Study discussed above, the general science behind chemical processing and PFOA, and what information was available about that science to individuals associated with DuPont.

9

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Defendant's Motion (Dkt. No. 400) to exclude expert testimony from Dr. Michael Hickner is **GRANTED IN PART AND DENIED IN PART** and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Decision and Order on the parties.

Dated: September 12, 2024
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge