**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

MICHELE BAKER, *et al.*,

        Plaintiffs,

      v.                                                      1:16-CV-917
                                       (LEK/DJS)

SAINT-GOBAIN PERFORMANCE
PLASTICS CORP., *et al.*,

        Defendants.
_____

**DANIEL J. STEWART**
**United States Magistrate Judge**

<u>**MEMORANDUM-DECISION AND ORDER**</u>

      This case involves a long running dispute concerning contamination of the water supply in Hoosick Falls, New York.  It has been vigorously litigated by the parties and following settlement agreements with certain Defendants, DuPont is the sole remaining Defendant.  Plaintiffs allege that it is liable for its production of chemicals, specifically perfluorooctanoic acid ("PFOA") that ultimately made their way into the water residents of Hoosick Falls drank.  As this case entered the summary judgment phase, the parties have filed numerous Motions to exclude expert witnesses.

      As relevant to the Motions addressed here, Plaintiffs seek relief including "an order requiring Defendant DuPont to establish a medical monitoring protocol for

Plaintiffs and PFOA Invasion Injury Class Members to monitor their health and diagnose at an early stage any ailments associated with exposure, inhalation, or ingestion of PFOA." Dkt. No. 355, Third Am. Compl. at p. 49. This Decision addresses two of those Motions – competing Motions to exclude experts proffered by each side on the projected utilization and cost of such medical monitoring. Plaintiffs seek to preclude testimony from Jessica Herzstein, an expert offered by Defendant. Dkt. No. 396.[1] Defendant, in turn, seeks to exclude testimony from Edgar Gentle, an expert on behalf of Plaintiffs. Dkt. No. 397. The Motions have been fully briefed. *See* Dkt. Nos. 413, 414, 426, & 428. Defendant has also requested to supplement the record on these Motions. Dkt. Nos. 442 & 444. Plaintiffs oppose those requests, but in the interest of completeness the Court grants them. Oral argument was heard on the Motions on September 10, 2024.

For the reasons set forth below, each Motion to exclude is denied.

## I. THE OPINIONS AT ISSUE

Dr. Jessica Herzstein is a Yale and Harvard educated medical doctor who also holds a M.P.H in Environmental Health. Dkt. No. 414-4 at p. 1. She has been retained by Defendant to offer expert opinions regarding the cost of the medical monitoring program ("MMP") Plaintiffs seek in this action. Specifically, as related to the present Motion, Dr. Herzstein has submitted a supplemental report to rebut cost estimates and

---

[1] Defendant then filed an Amended Notice of Motion. Dkt. No. 399.

projections on proposed utilization rates for such a program offered by Plaintiffs' experts. *See* Dkt. No. 414-1, Herzstein Report.

Broadly stated, Dr. Herzstein's opinions include:

1) the MMP advocated by Plaintiffs' experts would be redundant of services already available, or worse, "is far more likely to adversely affect participants' health than it is to detect a treatable targeted condition";

2) due to historically low participation in such programs, one of the scale proposed by Plaintiffs is unwarranted; and

3) the cost of the program advanced by Plaintiffs is "far less than proposed by Mr. Gentle."

*Id.* at p. 2.

Edward Gentle is an expert on behalf of Plaintiffs. He holds degrees from Miami, Auburn, and Oxford Universities, as well, as the University of Alabama School of Law. Dkt. No. 397-2, Gentle Report at p. 1. His practical experience includes direct involvement in the administration of medical testing or monitoring programs in New York, Alabama, and West Virginia. *Id.* at pp. 1-2. He has also been involved as a claims administrator or special master in a wide variety of other class or mass tort litigation matters. Gentle Report, Ex. A at pp. 1-5. Gentle's expert opinion outlines proposed parameters for a MMP in Hoosick Falls and offers cost projections based on several different participation levels. Gentle Report at pp. 4-13 & Exs. B-1 & B-2.

3

## II. LEGAL STANDARD

Under FED. R. EVID. 702:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"The Second Circuit has distilled Rule 702's requirements into three broad criteria: (1) qualifications, (2) reliability, and (3) relevance and assistance to the trier of fact." In re *LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 466 (S.D.N.Y. 2018) (citing *Nimely v. City of New York*, 414 F.3d 381, 396–97 (2d Cir. 2005)). "The Supreme Court has tasked district courts with a 'gatekeeping' role with respect to expert opinion testimony." *Pac. Life Ins. Co. v. Bank of New York Mellon*, 571 F. Supp. 3d 106, 112 (S.D.N.Y. 2021) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). In doing so the Court recognized that under the Federal Rules of Evidence trial courts have "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. at 597. Faced with motions to exclude expert testimony, courts

4

should apply *Daubert* in a "flexible" manner, *id.* at 594, and be reminded that "the admissibility of expert testimony should be viewed within the context of the entire rules of evidence and the presumption of admissibility of evidence." *TC Sys. Inc. v. Town of Colonie, New York*, 213 F. Supp. 2d 171, 173-74 (N.D.N.Y. 2002). "Overall, 'exclusion remains the exception rather than the rule.'" *New York City Transit Auth. v. Express Scripts, Inc.*, 588 F. Supp. 3d 424, 443 (S.D.N.Y. 2022) (quoting *Vazquez v. City of New York*, 2014 WL 4388497, at *12 (S.D.N.Y. Sept. 5, 2014)).

### III. MOTION TO EXCLUDE JESSICA HERZSTEIN

Plaintiffs seek to preclude Dr. Herzstein from offering two opinions in particular: 1) that a medical monitoring program will not be utilized and 2) that the cost of such a program would be less than Plaintiffs' expert opines. Dkt. No. 396-7 at pp. 1-2. The Court considers each in turn.

#### A. Utilization of a Monitoring Program

Dr. Herzstein's report opines that "medical monitoring is not necessary or appropriate." Herzstein Report at pp. 5-6. She further opines that based on comparison to another such program, the West Virginia C-8 MMP she expects the proposed program here "is more likely than not to be non-utilized, making it ineffective and futile." *Id.* at p. 6. Plaintiffs seek to exclude this opinion as lacking a reliable basis because it represents "nothing but her subjective and unsupported opinion." Dkt. No. 396-7 at p. 5.

5

Plaintiffs first contend that Dr. Herzstein has a flawed understanding of the C-8 MMP program and thus draws improper comparisons between participation in that program and expected participation in a MMP in Hoosick Falls. Dkt. No. 396-7 at pp. 6-8. In support of this argument, Plaintiffs point to deposition testimony from Dr. Herzstein which demonstrated that she was not fully familiar with the C-8 MMP. *See*, *e.g.*, Dkt. No. 396-3 at pp. 138-139. In response, Defendant suggests that it is Plaintiffs and their experts who misapprehend the nature of the C-8 MMP. Dkt. No. 414-5 at pp. 2-5. It further contends that Dr. Herzstein's opinion regarding likely participation in a MMP is well-supported by her reliance on the C-8 program. *Id.* at p. 5.

Unsurprisingly, the experts retained on each side of this case have vastly different opinions on how many class members will participate in any MMP implemented in Hoosick Falls. As is discussed in more detail below, Plaintiffs have offered an opinion from Mr. Gentle basing financial projections on exceptionally high expected participation. *See* p. 13 *infra*; *see also* Gentle Report. Defendant's expert counters that the program will likely be vastly underutilized. Herzstein Report at p. 6.

Differences of opinion, however, do not mean that an opinion lacks a factual basis. *In re Zyprexa Prods. Liab. Litig.*, 489 F.Supp.2d 230, 285 (E.D.N.Y.2007) ("The mere fact that an expert's testimony conflicts with the testimony of another expert or scientific study does not control admissibility."). Plaintiffs do not appear to dispute the numbers cited by Dr. Herzstein regarding the C-8 MMP. Instead, they argue that she

has selectively relied on statistics from only the second phase of that program where participation numbers were greatly lower than in the first stage. Dkt. No. 396-7 at p. 7. The parties vigorously dispute what the two phases entailed and how they compare to the proposals offered in this action, *compare id.* at pp. 7-8 *with* Dkt. No. 414-5 at pp. 3-5, with Defendant contending that the first stage numbers Plaintiffs emphasize did not involve a medical monitoring program at all. Dkt. No. 414-5 at p. 3. The Court does not understand Plaintiffs to argue that Dr. Herzstein has misstated the participation figures she relies on. *See* Dkt. No. 396-7 at p. 7 (recognizing that participation in Phase II of the C-8 MMP was "much lower"). Those numbers, therefore, give Dr. Herzstein's opinion some factual basis. That factual basis may be incomplete, but that is an issue that clearly goes to the weight of her opinions, not whether they have some basis in fact. "Those issues go to weight, not admissibility, and are fodder for cross-examination." *Pac. Life Ins. Co. v. Bank of New York Mellon*, 2021 WL 673479, at *17 (S.D.N.Y. Feb. 22, 2021); *see also Latino Officers Ass'n City of New York, Inc. v. City of New York.*, 2003 WL 21638165, at *2 (S.D.N.Y. July 14, 2003) (denying motion to exclude expert who purportedly relied on incomplete data because doing so goes to weight of the testimony, not its admissibility).

The same is true of the argument that Dr. Herzstein should be precluded from offering an opinion about participation rates because she did not consider similar rates from other programs. Dkt. No. 414-5 at pp. 5-6. Certainly no requirement exists that

7

an expert must consider all available evidence in reaching a conclusion. *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, 2016 WL 5416498, at *10 (S.D.N.Y. Sept. 28, 2016) (objection that an expert "did not consider all relevant data" goes "to the weight of [the expert's] testimony, rather than to its admissibility"). That Dr. Herzstein may have failed to consider other relevant information is clearly a point counsel could pursue on cross-examination, but it does not disqualify her from offering that opinion. *BS BIG V, LLC v. Philadelphia Indem. Ins. Co.*, 2022 WL 4181823, at *4 (S.D.N.Y. Sept. 13, 2022) (finding that purported contradiction of expert's opinion in other available literature on the subject goes to weight, not admissibility of the opinion).

### B. Cost of a Monitoring Program

Dr. Herzstein's opinion also suggests that any medical monitoring program would cost significantly less than opined by Plaintiffs' experts. Herzstein Report at pp. 7-8. Plaintiffs seek to preclude this opinion on two grounds: 1) Herzstein's lack of qualification to offer such an opinion and 2) the lack of a factual predicate for offering this opinion. Dkt. No. 396-7 at pp. 9-14.

An individual may be qualified to offer expert testimony "by knowledge, skill, experience, training, or education." FED. R. EVID. 702. "The Second Circuit and courts within this circuit have liberally construed expert qualification requirements." *TC Sys. Inc. v. Town of Colonie, New York*, 213 F. Supp. 2d at 174. For example, "a lack of formal training does not necessarily disqualify an expert from testifying if he or she has

equivalent relevant practical experience." *In re Rezulin Prods. Liab. Litig.*, 309 F.Supp.2d 531, 559 (S.D.N.Y. 2004).

Contrary to Plaintiffs' suggestion, Dkt. No. 396-7 at p. 9, the mere fact that Dr. Herzstein is not an economist by trade does not automatically preclude her from offering testimony about the costs of a MMP. "Courts have long held that an expert testifying about damages need not be trained as an economist." *Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 1674796, at *16 (S.D.N.Y. May 2, 2011) (internal quotation omitted) (citing cases). The Court is similarly unpersuaded by the argument that Dr. Herzstein is unqualified because she has never opined on the cost of a MMP before. *See* Dkt. No. 396-7 at p. 10.

The record reflects that the witness has significant experience in the medical field and has worked in corporate medical settings which involved monitoring programs. *See* Dkt. No. 414-3 at pp. 17 & 24. This certainly represents "knowledge" and "experience" in such programs. *See* FED. R. EVID. 702. That knowledge and experience necessarily includes the operation and cost of such programs, even if she has not previously been involved in offering expert opinions about those factors. Dkt. No. 414-3 at pp. 185-186. Her prior lack of experience in predicting costs and the arguable inability to accurately refute the cost estimates of others is another question concerning the weight of the evidence, not her qualification to offer an opinion.

9

The Court also disagrees that Dr. Herzstein's opinions about the cost of a MMP lack sufficient factual support. On this point Plaintiffs again point to what they view as deficiencies in Dr. Herzstein's thoroughness in considering evidence available to her. She allegedly, for example, does not understand the breadth or scope of the MMP proposed by Plaintiffs, Dkt. No. 396-7 at p. 11, and purportedly did not fully and accurately study Mr. Gentle's report. *Id.* at pp. 12-13. In Plaintiffs' view, these render Herzstein's opinions lacking any factual basis. That argument is simply not borne out by the record. Again, the arguments advanced by Plaintiffs may well be the subject of vigorous cross-examination, but they do not make Dr. Herzstein's opinion so utterly without factual basis so as to be inadmissible. "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Hollman v. Taser Int'l Inc.*, 928 F. Supp. 2d 657, 670 (E.D.N.Y. 2013) (quoting *First Union Nat'l Bank v. Benham*, 423 F.3d 855, 862 (8th Cir. 2005)). Dr. Herzstein's opinion that the costs proposed by Plaintiffs' experts are too high rely in significant part on her opinion that Plaintiffs over-estimate the participation level to be expected. Herzstein Report at p. 8. In Herzstein's opinion, a MMP of this sort should expect to see participation of less than 100% of the eligible class members, *id.* at p. 6, and decreased participation over time "[d]ue to waning interest as well as population that is aging out." *Id.* at p. 8. As a result, she expects costs to lower over time. *Id.*

At least some of these conclusions find support from Plaintiffs' own expert, Mr. Gentle, who has previously opined that "a medical monitoring program is fortunate if half of the claimants participate, with a third sometimes being the case." Dkt. No. 397-4 at p. 7.  Gentle also agrees that participation in an MMP sometimes drops over time. Dkt. No. 397-3 at pp. 33-34.  These facts alone provide a factual basis for attacking Gentle's budget estimate which appears to account for an exceptionally high participation rate and one which does not diminish over time. *See* Gentle Report at Exs B-1& B-2.

For these reasons, the Court finds no basis at this time to preclude the testimony of Dr. Herzstein.

## IV. MOTION TO EXCLUDE EDGAR GENTLE

Gentle's opinion offers costs projections based on distinct potential class sizes. Gentle Report at Exs B-1& B-2.  Defendant argues that this opinion should be precluded because it is purely speculative in that it assumes a 100% participation rate in a medical monitoring program, despite Gentle's own testimony that he has never seen such a high participation rate.  Dkt. No. 397-6 at pp. 6-10.  It also argues that the Gentle report provides for costs not available to Plaintiffs under New York law. *Id.* at pp. 10-14.

The Second Circuit has held that the court "should exclude expert testimony if it is speculative or conjectural or based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith' or to be in essence 'an apples and oranges

comparison.'" *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009) (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir.1996)). "[E]xpert testimony must have a traceable, analytical basis in objective fact." *Bragdon v. Abbott*, 524 U.S. 624, 653 (1998). Here, the record demonstrates that there is a factual basis for the key predicate that forms the basis for Gentle's opinion. Gentle's report offers two cost projections  - one based on 2,000 class members and the other based on 2,500 class members. Gentle Report at p. 3. Dr. Alan Ducatman, another expert retained by Plaintiffs, reported that over 2,000 individuals participated in blood testing conducted by the New York State Department of Health. Dkt. No. 418-32 at p. 15. Mr. Gentle expressly relied on that report in reaching his conclusions. Gentle Report at p. 2. The DOH figures provide a factual basis for Gentle's cost projections that is hardly speculative. In fact, the supplemental materials offered by Defendants show that at one time there were even greater numbers of participants in the State blood testing than discussed in Gentle's Report. *See* Dkt. No. 444 at p. 6.

As Defendant points out, however, there is clear reason to question whether a MMP will have participation at that level and whether that number of participants would remain active in such a program for the proposed 30-year life span. Dkt. No. 397-6 at pp. 6-8. The suggestion is well-taken, but beside the point because it goes to the weight of Mr. Gentle's testimony, not its admissibility. An expert opinion is admissible if it relies on specific facts to reach a conclusion that could aid the jury. FED. R. EVID. 702.

12

Gentle's opinion satisfies those requirements.  Defendant understandably makes much of the fact that Gentle's opinion seems to presume a 100 % participation rate in the MMP and given the record that this historically does not happen, it argues the opinion is speculative.  Dkt. No. 397-6 at pp. 7-8.  Plaintiffs, however, specifically disclaim that Gentle is offering an opinion as to participation rates.  Dkt. No. 413 at p. 27.  Accepting Plaintiffs' representation about the scope of their own expert's opinion, Gentle's cost projections based on two specific participant projections are hardly speculative.

Even if the Court were to consider the impact of the historical evidence regarding participation rates that is in the current record, it would nonetheless find that Mr. Gentle should be allowed to offer his opinion.  While the Court understands Defendant's argument as to why it believes Mr. Gentle's opinion is speculative, it does seem that Defendant seeks to put Mr. Gentle in an unwinnable position.  While a 100% participation rate may be unrealistic, it is unclear that Defendant could not make the same speculation argument about any other percentage opined by Mr. Gentle.  He has written that 50% would be a good number of participants, Dkt. No. 397-4 at p. 7, but according to Defendant's own expert participation rates can sometimes hover in the single digits.  Herzstein Report at p. 6.  What number would not be speculative?  The Court agrees with Defendant that the number offered by Mr. Gentle appears unrealistic, but it is a number objectively obtained and thus not so speculative as to void the opinion.  "Under these circumstances, the flexibility inherent in *Daubert* permits the Court to

accept testimony that is more speculative than would ordinarily be desirable." *Adrea, LLC v. Barnes & Noble, Inc.*, 2014 WL 8850434, at *1 (S.D.N.Y. Oct. 14, 2014). The reality is that Gentle's projections regarding the number of participants affects the weight of Mr. Gentle's opinion and can be subjected to vigorous cross-examination.

Finally, two of the grounds raised in support of excluding expert testimony from Mr. Gentle relate to arguments involving what payments may be legally available to Plaintiffs in the event they recover. Specifically, Defendant argues that Gentle's projections cover services potential class members are already receiving and cannot receive again as a result of verdict in this action. Dkt. No. 397-6 at pp. 10-11. It also argues that the MMP calculations offered by Gentle include funding cash incentive payments that are not permitted under New York Law. *Id.* at pp. 12-14. Plaintiffs respond that on each point Defendant is wrong regarding what New York law permits or requires. Dkt. No. 413 at pp. 25-26 & 28-30.

Those legal questions – the propriety of incentive payments and the need or lack thereof of an offset – are not properly presented on these Motions. Those are questions for the trial court, best resolved upon full briefing of motions *in limine* or during trial. This Court cannot resolve those issues now and so those arguments present no basis for excluding expert testimony at this stage of the proceedings. *Cf. Fed. Trade Comm'n v. Vyera Pharms., LLC*, 2021 WL 5279465, at *5 (S.D.N.Y. Nov. 12, 2021) ("the proper role of a *Daubert* motion" is not to address arguments about applicable legal standards).

Should the trial court find that certain forms of relief are unavailable under New York law, that testimony would then presumably be excluded.

### V. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Defendant's Motions to supplement the record (Dkt. Nos. 442 & 444) are **GRANTED**; and it is further

**ORDERED**, that Plaintiffs' Motions (Dkt. Nos. 396 & 399) to exclude expert testimony from Jessica Herzstein is **DENIED**; and it is further

**ORDERED**, that DuPont's Motion (Dkt. No. 397) to exclude expert testimony from Edgar Gentle is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated: September 12, 2024
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

15