UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHELE BAKER, *et al.*,

        Plaintiffs,

   v.                                 1:16-CV-917
                                                  (LEK/DJS)

SAINT-GOBAIN PERFORMANCE
PLASTICS CORP., *et al.*,

        Defendants.
_____

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM-DECISION AND ORDER

This case involves a dispute concerning the contamination of the drinking water in Hoosick Falls, New York by perfluorooctanoic acid ("PFOA"). Plaintiffs allege that DuPont is liable for producing the PFOA that ultimately contaminated the water supply in Hoosick Falls. Dkt. No. 335, Am. Compl. at ¶¶ 1, 220-221. To bolster those allegations, Plaintiffs offer the testimony of Mr. Huncik and Drs. Zabel, Siegel, & Shin. Presently before the Court is DuPont's Motion to exclude these experts on the basis that their opinions are not relevant or reliable. Dkt. No. 398-14, Def.'s Mem. of Law at pp. 1-2. Plaintiffs oppose the Motion, and DuPont has filed a reply. Dkt. No. 413 & 434.

1

The Court heard oral argument on this Motion on September 10, 2024. For the reasons set forth below, the Motion is **denied**.

## I.  LEGAL STANDARD

Under Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"The Second Circuit has distilled Rule 702's requirements into three broad criteria: (1) qualifications, (2) reliability, and (3) relevance and assistance to the trier of fact." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 466 (S.D.N.Y. 2018) (citing *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005)). "The Supreme Court has tasked district courts with a 'gatekeeping' role with respect to expert opinion testimony." *Pac. Life Ins. Co. v. Bank of New York Mellon*, 571 F. Supp. 3d 106, 112 (S.D.N.Y. 2021) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). In doing so the Court recognized that under the Federal Rules of Evidence trial courts have "the task of ensuring that an expert's testimony both rests on

2

a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. at 597.  Faced with motions to exclude expert testimony, courts should apply *Daubert* in a "flexible" manner, *id.* at 594, and be reminded that "the admissibility of expert testimony should be viewed within the context of the entire rules of evidence and the presumption of admissibility of evidence." *TC Sys. Inc. v. Town of Colonie, New York*, 213 F. Supp. 2d 171, 173-74 (N.D.N.Y. 2002).

## II. DISCUSSION

The qualifications of each expert are as follows.  Dr. Zabel is a professor of economics at Tufts University and co-director of its Master's Program in Data Analytics. Dkt. No. 398-2 at p. 1.  He has published over 35 articles in peer-reviewed economics journals, as well as several book chapters, several of which analyze the impacts of environmental pollution on real estate markets.  *Id.*  Dr. Zabel offers an opinion regarding the diminution in property values in Hoosick Falls due to PFOA pollution. *See generally* Dkt. Nos. 398-2 & 398-3.  Dr. Siegel, a hydrogeologist and professor, has published over 160 peer-reviewed research papers and books on topics spanning the breadth of hydrogeologic sciences.  Dkt. No. 398-4 at p. 1, Siegel Report.  His opinion concerns PFOA emissions and PFOA levels in the soil in Hoosick Falls. *Id.* at p. 1-1. Dr. Shin is also a professor and has been the lead author or co-author of twenty-two papers published in peer-reviewed scientific literature related to the fate and transport of PFOA in the environment and exposure estimates of affected populations.  Dkt. No.

3

398-6 at p. 2, Shin Report.  Dr. Shin estimated the amount of PFOA released from the McCaffrey Street facility.  *Id.* at p. 3.  Last, Mr. Huncik is an air quality consultant who modeled PFOA air emissions based on Dr. Shin's estimates.  Dkt. No. 398-7 at pp. 1-4, Huncik Report.

### III.  ANALYSIS

DuPont argues that "[b]ecause a class trial must be tried through the claims of the class representatives, not through aggregated statistical evidence applied to the class as a whole, these opinions fail *Daubert's* fit and reliability requirements, and should be excluded from any class trial."  Def.'s Mem. of Law at pp. 1, 9-21.

As raised by DuPont, *Daubert* requires that expert testimony be both relevant (fit) and reliable.  To be deemed relevant, an expert's testimony must "assist the finder of fact in deciding the issues before it."  *In re Zyprexa Prod. Liab. Litig.*, 489 F. Supp. 2d 230, 282-83 (E.D.N.Y. 2007).  When assessing relevancy there must be a "valid scientific connection between the subject matter of the expert's testimony and the factual issues to be determined by the jury."  *Id.* (internal quotation marks and citation omitted). Likewise, reliability demands that expert opinions be formulated through reliable methods.  Namely, "(1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case."

4

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (internal quotation marks and citations omitted).

Here, DuPont maintains that each expert's opinion fails *Daubert's* fit requirement because "they offer no causal opinions as to any individuals or their properties, including the class representatives. As a result, none of this generalized testimony answers the question the jury must answer in a class trial – was DuPont's conduct the cause of PFOA to which each class member or their property was exposed – and therefore fails Daubert's fit requirement." Def.'s Mem. of Law at pp. 16-17.  DuPont goes on to argue that "[w]ithout any data capable of supporting a class representative-specific causal opinion, any such opinions, of course, would inevitably fail *Daubert's* reliability requirement for lack of supporting data and methodology." Def.'s Mem. of Law at p. 17.  In short, DuPont's argument is that in a class action, experts must tailor their opinions to the class representatives rather than offer generalized testimony.

In opposition, Plaintiffs assert that Senior District Judge Kahn previously found the expert opinions at issue relevant and reliable, and that decision controls the resolution of the present Motion. Dkt. No. 413 at p. 11, Pls.' Resp.  DuPont disagrees, arguing that nothing "precludes a party from raising *Daubert* challenges to use of expert testimony at the merits phase merely because the Court has denied separate *Daubert* challenges made to the use of [the same] testimony at the class certification stage." Dkt. No. 434 at p. 4, Def.'s Reply.  Although Judge Kahn's decision was limited to the class

5

certification stage, Judge Kahn's assessment of the relevance and reliability of each expert opinion remains persuasive today because, as each party conceded at oral argument, the expert reports have not substantively changed since they were first offered.

For instance, Dr. Zabel's original report assessed diminution in property value in Hoosick Falls based on a control group from 1998 to 2019. Dkt. No. 398-2 at p. 8. His most recent report altered the control group years to account for 1998 to 2022. Dkt. No. 398-3 at p. 1. Other than this alteration, which simply adds more useful and recent data, the opinion remains substantively unchanged. *See generally* 398-2 & 398-3. Certainly, Dr. Zabel's methodology – applying a hedonic regression model to measure the price impact of PFOA contamination in the area – remains the same. In applying that methodology, Dr. Zabel collected data on single family homes in the relevant areas, removed "outlier" properties found to have characteristics atypical of the average home in the area, and accounted for specific characteristics such as age of the home, lot size, square footage, and more. Dkt. No. 398-2 at pp. 5-6. The Court finds Dr. Zabel's opinion both relevant and reliable.

First, as Judge Kahn previously emphasized, the hedonic regression methodology is a widely accepted way "to demonstrate price impact on a class-wide basis." *Baker v. Saint-Gobain Performance Plastics Corp.*, 2021 WL 2548825, at *7 (N.D.N.Y. May 7, 2021) (citing *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 278 (E.D.N.Y. 2019)).

6

The reliability of this method does not change simply because the class action is now at the merits phase.[1]  Second, the opinion remains relevant to assess damages to the class generally and help show that those damages flowed from DuPont's actions.[2]  Contrary to DuPont's arguments, this Court has not identified any case law directly supporting the notion that expert testimony must be specifically tailored to class representatives and not the class as a whole.

At oral argument, DuPont's counsel asserted that Judge Kahn's decision at the class certification stage could not be relied on now in the merits phase where, apparently, expert testimony must be specific to the class representatives.  In support of that assertion, DuPont's counsel directed the Court's attention to *Jerue v. Drummond Co., Inc.* – a case that was also at the class certification stage but better supports DuPont's one-sided narrative.  2023 WL 6610603, at *1 (M.D. Fla. Aug. 25, 2023).

There, the defendant argued that the plaintiffs' damages expert did not satisfy *Daubert* because the report lacked "case-specific data collection."  *Id.* at *7.  The court found that such an argument would be relevant if the case had been at the merits stage and the report were being offered "to prove the class members' actual damages."  *Id.*  The court went on to exclude the expert report on the grounds that it did not provide any

---

[1] Any disagreements about the burden of proof in the class certification stage versus the merits stage are left for the trial court to decide.

[2] At oral argument, the parties discussed that evidence regarding the class representatives' individual damages would be introduced at trial.  Plaintiffs' counsel asserted, for example, that testimony would be introduced regarding a particular parcel's actual water contamination.  Any issue concerning a causal connection is one to be proven and ruled upon at trial, not at the current juncture.

7

"guidance concerning how to translate th[e] [percent] average diminution in property value into individual property damages." *Id.* at *9. Dr. Zabel's opinion here is distinguishable. Although he assessed damages on a class-wide basis, he expressly stated that the results and methodology used to reach those results could "be applied to all individual class properties to determine damages." Dkt. No. 398-2 at p. 1. Dr. Zabel's report also excluded any outlier properties that were deemed too different from the average Hoosick Falls home and accounted for specific characteristics, as discussed above. This method renders the Hoosick Falls community homogenous enough to provide generalized opinions about. *Compare Cotromano v. United Techs, Corp.*, 2018 WL 2047468, at *19 (S.D. Fla. May 2, 2018) (excluding expert testimony where expert could not "reliably use sales trend analysis to determine a single percentage diminution for the entire proposed class area" because the affected community was "not remarkably homogeneous . . . but rather include[d] a wide variety and scale of homes (equestrian farms, up-scale villas, simple ranch houses) of various ages, sizes and conditions—diverse properties which are not logically impacted in the same way by the alleged environmental stigma which Plaintiffs contend attaches by virtue of their general proximity to contaminated properties"); *but see Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 697 (S.D. Fla. 2015) (stating that class representatives are "basically irrelevant" because their case can be "established through expert testimony" on generalized data). Accordingly, Dr. Zabel's report remains admissible.

8

Like Dr. Zabel, Dr. Shin's supplemental report is substantively no different from the original report he submitted in 2020. Dkt. Nos. 398-5 & 398-6. To reach his conclusions on PFOA release and exposure, he assessed PFOA emissions from DuPont's McCaffrey facility located in Hoosick Falls. Dkt. No. 398-5 at pp. 7-9. Dr. Shin's supplemental report is different only in that it follows his review of the final report of an air deposition study and asserts that the study lends additional support for his conclusions. Dkt. No. 398-6 at p. 3. In his analysis, Dr. Shin conservatively and deliberately underestimated chemical purchases and PFOA emissions for years where there was not sufficient data. Dkt. No. 398-5 at p. 9. Dr. Shin then applied PFOA emission percentages to the estimated AFD usage to calculate the total amount of PFOA air emissions. *Id.* at pp. 11-12. Using this methodology, Dr. Shin calculated that almost three tons of PFOA was released into the air from the McCaffrey facility's towers between 1980 and 2003. *Id.* In doing so, Dr. Shin also analyzed alternative sources of PFOA pollution. Judge Kahn found that Dr. Shin's opinions satisfied *Daubert* because "Dr. Shin explains where he obtained all of the data and the specific steps he took to analyze the data to reach his conclusions." *Baker v. Saint-Gobain Performance Plastics Corp.*, 2021 WL 2548825, at *10. Surely, "[t]he principles that explain the mass transport of PFOA in the air are commonly accepted within the scientific community." *Id.* (citing Mary A. Kaiser, *et al.*, *Understanding Potential Exposure Sources of Perfluorinated Carboxylic Acids in the Workplace*, ANN. OCCUP. HYG., Oct. 2010).

9

Judge Kahn also found Dr. Shin's testimony relevant because his opinions are related to contamination of groundwater by PFOA—the subject of this case. Considering Dr. Shin's opinions remain the same, the Court agrees with Judge Kahn's prior reasoning and finds it applicable to the present Motion. DuPont's argument that Dr. Shin must offer "causal opinions relating to the claims of the class representatives" is unavailing. Def.'s Mem. of Law at p. 13. In fact, Supreme Court precedent suggests otherwise. In *Tyson Foods Inc. v. Bouaphakeo*, the Supreme Court held that representative proof from a sample, based on an expert witness's estimation of average time that employees spent donning and doffing protective gear was admissible where the class was homogenous because "each employee worked in the same facility, did similar work, and was paid under the same policy" so "the experiences of a subset of employees can be probative as to the experiences of all of them." 577 U.S. 442, 459-60 (2016).

Here, Dr. Shin opines that PFOA was released in certain amounts in the affected areas. The class consists of people who lived in the affected areas so the amount of PFOA released where they lived is certainly probative. "In a case where representative evidence is relevant in proving" a claim, "that evidence cannot be deemed improper merely because the claim is brought on behalf of a class." *In re Domestic Drywall Antitrust Litig.*, 322 F.R.D. 188, 204 (E.D. Pa. 2017) (internal quotation marks and citation omitted). As such, Dr. Shin's report is admissible.

The opinions of Mr. Huncik and Dr. Siegel remain completely unchanged since they were last offered. Dkt. Nos. 398-4 and 398-7. Again, DuPont argues that each opinion is too "broad" and fails to provide individual causation opinions specific to the class representatives. Def.'s Mem. of Law at pp. 12 & 16. Mr. Huncik created air models based on Dr. Shin's analysis. To do so, he used the AERMOD program to create two different models for the air in Hoosick Falls. Huncik Report at pp. 2-9. Although the model calculated data for the entire class area, it only displays PFOA concentrations in excess of the allotted threshold value in Hoosick Falls. *See generally* Huncik Report. Employing the AERMOD program was a reliable methodology. *See, e.g.*, *Hartle v. FirstEnergy Generation Corp.*, 7 F. Supp. 3d 510, 518 (W.D. Pa. Mar. 17, 2014) ("AERMOD is widely accepted for modeling the dispersion of dry particulate and gasses."). PFOA air concentrations is highly relevant in a case about PFOA contamination, and the data will allow "the other experts to analyze the chemical fate and transport of PFOA from the McCaffrey site and surrounding chemical sites." *Baker v. Saint-Gobain Performance Plastics Corp.*, 2021 WL 2548825, at *11.

Dr. Siegel's report is also reliable and relevant. To arrive at his opinions concerning PFOA concentration in Hoosick Falls' soil, Dr. Siegel reviewed site testing data, the air modeling outputs of Ms. Huncik, Dr. Shin's analysis, and a Barr study. Siegel Report at pp. 18-33. After this, he was able to plot PFOA groundwater levels near the McCaffrey facility and document which areas had the highest levels of PFOA.

*Id.* at pp. 23-24. Dr. Siegel then tracked how contaminated groundwater flowed to Hoosick Falls. *Id.* at pp. 29-30. Ultimately, Dr. Siegel concluded that the air and wastewater emissions from the McCaffrey site contaminated the wells in Hoosick Falls. *Id.* at p. 32. As stated by Judge Kahn, Dr. Siegel's methodology is reliable because he "meticulously explains how he acquired his data and subsequently analyzed it using standard hydrogeological analytical techniques to reach his conclusions." *Baker v. Saint-Gobain Performance Plastics Corp.*, 2021 WL 2548825, at *12. Tracing the transport of PFOA is relevant in a case about PFOA contaminating a water supply.

The Court reiterates that it has not identified case law requiring that expert testimony be specific to class representatives only. Accordingly, the testimony of Mr. Huncik and Drs. Zabel, Shin, and Siegel is admissible under *Daubert*.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that DuPont's Motion (Dkt. No. 398) to exclude expert testimony from Mr. Huncik and Doctors Zabel, Shin, and Siegel is **DENIED** and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Decision and Order on the parties.

Dated: September 13, 2024
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge