UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHELE BAKER, *et al.*,

        Plaintiffs,

   v.                                    1:16-CV-917
                                              (LEK/DJS)

SAINT-GOBAIN PERFORMANCE
PLASTICS CORP., *et al.*,

        Defendants.
_____

**DANIEL J. STEWART**
**United States Magistrate Judge**

## **MEMORANDUM-DECISION AND ORDER**

Presently pending before the Court is Defendant's Motion to exclude proposed expert testimony by Jamie DeWitt regarding DuPont's assessment of PFOA risks. Dkt. No. 402. Plaintiffs seek to have DeWitt testify to the following opinions:

  • The information DuPont and 3M possessed in the 1980s regarding potential adverse risk to human health from PFOA exposure required that they conduct a thorough and comprehensive human health risk assessment;

  • The risk assessment proposal and goals and plans of the C-8 Project in the late 1990s provided a belated, but appropriate, plan to assess the risk PFOA exposure posed to human health in accordance with generally accepted methodology in the field as published in EPA's guidelines for performing such a risk assessment;

  • Nothing provided to me for this review, including the articles, internal studies, memos, and emails discussed with Dr. Frame at his deposition

1

demonstrate that DuPont ever completed an appropriate human risk assessment for PFOA exposure consistent [with] generally recognized and accepted methodology as was contemplated under the C-8 Program.

• A properly conducted human health risk assessment would have provided DuPont with valuable additional information about the risks to human health posed by PFOA exposure which then could have been shared with customers and others likely to be exposed to PFOA from DuPont's products to warn them to avoid exposure;

• In fact, if DuPont had conducted the human health risk assessment as outlined in their C-8 Project, it may also have led to a decision to remove PFOA and related compounds from their products more than a decade before PFOA use was actually discontinued; and

• It is my opinion, based upon my experience and the documents I reviewed, that the risk assessment proposed for the C-8 Project should have been performed following appropriate guidelines and protocols, and that health agencies needed to be informed and involved as early as the late 1970s when human exposures and initial animal tests demonstrated results of concern to DuPont and 3M scientists and other employees aware of the results.

Dkt. No. 402-2, DeWitt Report at pp. 9-10. DuPont seeks to exclude testimony from Dr. DeWitt on three specific aspects of her opinion. As set forth in its Motion, DuPont objects to the following:

• First, DeWitt opines that, as early as the late 1970s, human exposures and initial animal tests known to DuPont obligated it to "inform and involve" health agencies regarding the human health risks of PFOA.

• Second, DeWitt asserts that, although DuPont possessed sufficient information to do so, it never completed and produced an "appropriate" final, written report of human health risk assessment for PFOA exposure in the late 1990s/early 2000s as part of its "C-8 PACE Team" effort.

•Third, DeWitt claims that if DuPont had conducted a "proper" human health risk assessment in the late 1990s or early 2000s and prepared a final "report" using EPA guidelines, it would have uncovered information that

2

may have led DuPont to (i) issue additional or different warnings regarding PFOA exposure and (ii) eliminate sooner the use of PFOA as a surfactant in certain products.[1]

Dkt. No. 402-15, Def.'s Mem. of Law at pp. 4-5 (citations omitted). Defendant seeks to exclude the opinions on multiple grounds, including DeWitt's lack of qualifications to offer her opinions, lack of proper basis for the opinions, the application of inappropriate standards in reaching the opinion, and the speculative nature of the opinions being offered. *See generally* Def.'s Mem. of Law. Plaintiffs oppose the Motion. Dkt. No. 416, Pl.'s Mem. of Law.[2] Defendant has filed a Reply. Dkt. No. 429. Following oral argument and for the reasons set out below, the Motion is granted in part and denied in part.

## I. LEGAL STANDARD

Under FED. R. EVID. 702:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

---

[1] These opinions will be referred to throughout this Decision as the first, second, and third opinions.

[2] Plaintiffs, however, have stated their intention to withdraw the portion of Dr. DeWitt's first opinion, regarding the need to notify health officials, Pls.' Mem. of Law at p. 8 n.4, and so the Court need not address DuPont's objections that opinion.

> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"The Second Circuit has distilled Rule 702's requirements into three broad criteria: (1) qualifications, (2) reliability, and (3) relevance and assistance to the trier of fact." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 466 (S.D.N.Y. 2018) (citing *Nimely v. City of New York*, 414 F.3d 381, 396–97 (2d Cir. 2005)).

## II. DISCUSSION

### *A. Dr. Dewitt's Qualification to Offer Expert Testimony*

Defendant first seeks to exclude testimony from Dr. DeWitt on the ground that she is not qualified to offer expert testimony. It bases this argument primarily on the fact that while Dr. DeWitt offers opinions about DuPont's failure to perform proper human risk assessments, she has never performed one herself. Def.'s Mem. of Law at pp. 8-12. This argument is unavailing.

An individual may be qualified to offer expert testimony "by knowledge, skill, experience, training, or education." FED. R. EVID. 702. In assessing whether an individual is qualified to offer an expert opinion:

> The totality of an expert's qualifications should be considered in evaluating whether or not his or her testimony is admissible. An expert need not be precluded from testifying merely because he or she does not possess experience tailored to the precise product or process that is the subject matter of the dispute.

*Hilaire v. DeWalt Indus. Tool Co.*, 54 F. Supp. 3d 223, 236 (E.D.N.Y. 2014) (internal quotations and citations omitted). Under these standards, Dr. DeWitt clearly qualifies

as an expert witness. Her educational and professional background involve significant study and work in the field of toxically or risk assessment. *See generally* DeWitt Opinion at Ex. A. Her doctorate work included a concentration in risk assessment. She has teaching and work experience in the conduct of risk assessments. The record amply demonstrates that her background involves "knowledge, skill, experience, training, or education" sufficient to render her qualified to offer an expert opinion in this case. FED. R. EVID. 702. "Although she has not performed any studies herself, this does not mean she is not qualified to give [an] opinion using her experience as well as a review of relevant scientific literature." *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 420 (S.D.N.Y. 2016).

### B. Admissibility of the Second Opinion

The second opinion is that, based on information then available to it, DuPont was required to conduct a human health risk assessment in the 1980s. DeWitt Opinion at p. 9. DuPont maintains that this opinion is based on nothing beyond Dr. DeWitt's own personal views and thus should be excluded because it lacks any scientific basis. Def.'s Mem. of Law at pp. 15-17. It also argues that Dr. DeWitt improperly opines on the form as to which such an assessment should have taken rendering her opinion unreliable. *Id.* at pp. 17-21.

Plaintiffs oppose the Motion. They note first that DeWitt's opinion is well founded based on her review of toxicological and blood studies that were known to

5

DuPont in the 1970s and 1980s showing risk associated with PFOA. Pls.' Mem. of Law at p. 10. They also note that evidence elsewhere in the record[3] suggests that the Environmental Protection Agency had outlined general protocols for risk assessments in the 1980s and at least one official with DuPont used that protocol as a guide for proposing an assessment program in the 1990s. *Id.* at pp. 11-12. In reviewing the parties' submissions on Defendant's Motion for Summary Judgment, for example, it is clear that the Environmental Protection Agency had, in the early 1980s, published material on the need for risk assessment. Dkt. No. 418-10 at p. 17.[4] The record certainly demonstrates that there is a factual basis for Dr. DeWitt to testify about the nature of risk assessments, what information was available about conducting such studies in the 1980s and 1990s, what information was available to DuPont that could or should have led them to conduct such an assessment, and what form such an assessment should, in her opinion have taken. As this Court has noted in the context of other recent *Daubert* decisions in this case, a record certainly has been made from which a vigorous cross-examination of the strength of these opinions can be tested. But that does not render the DeWitt opinion completely inadmissible.

---

[3] The Court notes that while Plaintiffs' opposition to this Motion relies extensively on the deposition testimony of Dr. Bogdanffy, Pls.' Mem. of Law at p. 11, they have not included that transcript among the over dozen exhibits offered in their responsive papers.

[4] This page citation is to the page numbers provided by the Court's CM/ECF system.

On one point, however, Defendant has carried its burden of warranting preclusion. DeWitt's Report opines that DuPont was "required" to conduct a risk assessment in the 1980s based on information then known by DuPont and 3M. That opinion does appear to lack a reliable basis in fact sufficient to permit its introduction to the jury. It appears to the Court that the record is devoid of evidence that Dr. DeWitt knew of any specific standard that mandated such a reporting requirement. She specifically disclaimed such knowledge during her deposition:

> Q. And so going back to my original question: In the 1980s, were there any standards requiring DuPont to conduct a human health risk assessment regarding potential adverse risks to human health from PFOA?
>
> A. I don't know the answer to that question. All I'm saying is that based on what I had available to me at the time I wrote my report, *I believe that they should have conducted a thorough and comprehensive risk assessment*.

Dkt. No. 402-3 at p. 67 (emphasis added). This answer goes even further when disclaiming knowledge of "any standards." *Id.* DeWitt's report also makes no connection between any then-existing protocol that would have required DuPont to take the actions set forth in her report. *See generally* DeWitt Report. This is especially true given DeWitt's separate testimony that she did not believe the EPA had standards requiring chemical companies to conduct human health risk assessments. Dkt. No. 402-3 at p. 66.

DuPont's Motion to exclude what has been labeled the second opinion here, therefore, is granted in part and denied in part as set forth above.

7

*C. Admissibility of the Third Opinion*

The Court reaches a different opinion regarding the third opinion, namely what actions DuPont may have taken had a proper risk assessment been conducted. DeWitt Opinion at p. 10. "[E]xpert testimony should be excluded if it is speculative or conjectural." *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996). Here, nothing in the present record establishes a solid basis for Dr. DeWitt to opine on what DuPont *could have done* decades ago *if* it had performed a particular type of study. She does not even offer an opinion about what DuPont should have done, only that it could have provided greater notice to customers or remove PFOA-related chemicals from products altogether – her opinion simply is that DuPont could have done one or both of these things. Defendant may have done exactly what DeWitt suggests, but it may not. Dr. DeWitt does not appear to offer an opinion that DuPont was obligated to do either by any legal authority nor by any industry standard. This opinion seems to be based solely on a speculative assumption that had DuPont done a study it would have become aware of information that could have led it to take the actions described. That is a multi-level speculative assumption, the type of which Rule 702 does not permit. *Car Freshner Corp. v. Am. Covers, LLC*, 2021 WL 4502281, at *9 (N.D.N.Y. Sept. 30, 2021) (citing cases). On the present record, Dr. DeWitt's opinion fails to pass the *Daubert* threshold and should be precluded.

## III. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Defendant's Motion (Dkt. No. 402) to exclude expert testimony from Dr. Jamie DeWitt is **GRANTED IN PART** and **DENIED IN PART** and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Decision and Order on the parties.

Dated: September 19, 2024
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge