**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**MICHELE BAKER**, *et al., individually and on*
*behalf of all others similarly situated*,

                              **Plaintiffs,**

    **vs.**                                                  **1:16-CV-917**
                                                                   **(MAD/DJS)**

**E.I. DUPONT DE NEMOURS AND COMPANY,**

                              **Defendant.**

---

**APPEARANCES:**                                **OF COUNSEL:**

**WEITZ & LUXENBERG, P.C.**               **JAMES J. BILSBORROW, ESQ.**
700 Broadway                                    **ROBIN L. GREENWALD, ESQ.**
New York, New York 10003                  **ELLEN RELKIN, ESQ.**
Attorneys for Plaintiffs                        **EMMA DIETZ, ESQ.**

**WILLIAMS CEDAR LLC**                    **GERALD JOSEPH WILLIAMS, ESQ.**
One South Broad Street Suite 1510
Philadelphia, Pennsylvania 19107
Attorney for Plaintiffs

**FARACI LANGE, LLP**                       **STEPHEN G. SCHWARZ, ESQ.**
1882 South Winton Road, Suite 1          **HADLEY E. LUNDBACK, ESQ.**
Rochester, New York 14618                  **JOSHUA M. MANKOFF, ESQ.**
Attorneys for Plaintiffs                        **TEAGAN C. DOLAN, ESQ.**

**SQUIRE PATTON BOGGS LLP**            **KRISTIN L. BRYAN, ESQ.**
1000 Key Tower
127 Public Square
Cleveland, Ohio 44114
Attorney for Defendant

**CAPEZZA HILL LLP**                        **ALEXANDRA VON STACKELBERG,**
30 South Pearl Street, Suite P-110       **ESQ.**
Albany, New York 12207                      **BENJAMIN W. HILL, ESQ.**
Attorneys for Defendant

**KING & SPALDING LLP**                   **ANDREW CALICA, ESQ.**
1290 Avenue of the Americas

1

New York, New York 10104
Attorney for Defendant

**SHOOK, HARDY & BACON LLP**        **ANDREW D. CARPENTER, ESQ.**
One Kansas City Place                **DAVID ROBERT ERICKSON, ESQ.**
2555 Grand Boulevard               **ROBERT G. ROONEY, ESQ.**
Kansas City, Missouri 64108          **STACEY E. DEERE, ESQ.**
Attorneys for Defendant              **TAMMY BETH WEBB, ESQ.**

**LIGHTFOOT FRANKLIN WHITE**     **CLINTON T. SPEEGLE, ESQ.**
400 20th Street North                **JEFFREY P. DOSS, ESQ.**
Birmingham, Alabama 35203         **JOHN M. JOHNSON, ESQ.**
Attorneys for Defendant              **LANA ALCORN OLSON, ESQ.**
                                   **MARY ELIZABETH HARRISON, ESQ.**
                                   **MEGHAN S. COLE, ESQ.**

**Mae A. D'Agostino, U.S. District Judge:**

### FINAL ORDER GRANTING FINAL APPROVAL TO THE PROPOSED SETTLEMENT AND GRANTING APPLICATION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS, AND ENTERING FINAL JUDGMENT

Plaintiffs Michele Baker, Charles Carr, Angela Corbett, Pamela Forrest, Michael Hickey, individually and as parent and natural guardian of O.H., infant, Kathleen Main-Lingener, Kristin Miller, as parent and natural guardian of K.M., infant, Jennifer Plouffe, Silvia Potter, individually and as parent and natural guardian of C.P., infant, and Daniel Schuttig, and Defendant E.I. DuPont de Nemours and Company (collectively, "the Parties"), by their respective counsel, have entered into a Settlement Agreement, including all Exhibits thereto (Dkt. 572-2), subject to preliminary and final approval by this Court.[1]  The Settlement Agreement sets forth the terms and conditions of a proposed Settlement that, *inter alia*, resolves certain claims on behalf of three proposed Settlement Classes and dismisses claims raised in the Action as against the Defendant E.I. DuPont de Nemours and Company ("DuPont") with prejudice.

---

[1] Capitalized terms used in this Order and otherwise not defined shall have the meaning assigned to such terms by the Settlement Agreement.

By Order dated November 13, 2025 (the "Preliminary Approval Order"), this Court: (1) preliminarily approved the Settlement; (2) determined that the Notice Plan satisfied due process and the requirements of Federal Rule of Civil Procedure 23, and directed that Notice be provided to the Settlement Classes; (3) appointed KCC as the Class Administrator; (4) ordered that parents and guardians of all named minor Plaintiffs and absent minor Settlement Class Members, as well as legal representatives of incompetent Settlement Class Members, could lawfully sign Claim Forms and releases on behalf of the Settlement Class Members they represent pursuant to Local Rule of Civil Procedure 17.1 and NY C.P.L.R. § 1201; (5) ordered that legal representatives of deceased absent Settlement Class Members could, subject to an attestation of authority, lawfully sign Claim Forms and releases on behalf of the absent Settlement Class Members they represent; (6) advised of the opportunity to object to the proposed Settlement; (7) provided Settlement Class Members with the opportunity to exclude themselves from the proposed Settlement Classes; (8) appointed Plaintiffs as Class Representatives and their counsel as Class Counsel; and (9) scheduled a hearing to determine whether to grant final approval to the Settlement.  (Dkt. 574.)

On April 9, 2026, Plaintiffs submitted their Motion for Final Approval of the Class Settlement and Approval of Attorneys' Fees, Expenses, and Service Awards.  No Settlement Class Members have objected to the Settlement, and no opt-out requests have been received.

On April 29, 2026, the Court conducted a hearing (the "Fairness Hearing") to consider, inter alia, whether: (1) the terms and conditions of the Settlement are fair, reasonable, and adequate, as required by Fed. R. Civ. P. 23(e), and therefore merit approval by the Court; (2) Plaintiffs' motion for approval of attorneys' fees, expenses, and Service Awards should be granted; and (3) final judgment should be entered dismissing the Action with prejudice.

3

The Court has reviewed and considered the Settlement Agreement, all papers filed and proceedings held herein in connection with the Settlement, all oral and written submissions regarding the Settlement, and the record in the Action, and good cause appearing therefore, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**:

1.      **Jurisdiction**: The Court has personal jurisdiction over all Plaintiffs, the Settlement Classes, and DuPont for purposes of the Settlement.  The Court has subject matter jurisdiction over the claims asserted in this Action. Venue in the Northern District of New York is proper.

2.      **Incorporation of Settlement Documents**: The Court expressly incorporates in this Final Approval Order and makes a part hereof the Settlement Agreement and Exhibits.  The Court does this for the purpose of satisfying the requirements of *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 380-82 (1994), concerning the obligation of a court entering a settlement agreement to speak clearly when it wishes to retain jurisdiction.

### FINAL APPROVAL OF THE CLASS SETTLEMENT

3.      The Court hereby grants final approval to the Settlement, finding it to be fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e).  The Settlement provides substantial benefits to the Settlement Classes and avoids continued, protracted litigation between the Parties.  The Court finds that the Settlement Agreement, with respect to Settlement Class Members who are minors, lack capacity, are incompetent, or are deceased, is fair, reasonable, and adequate.

4.      In determining that the Settlement is fair, reasonable, and adequate, and that it merits approval, the Court has assessed the considerations set forth in Federal Rule of Civil Procedure 23(e)(2), as well as the factors set forth by the Second Circuit Court of Appeals in *City*

*of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

5.    The Court finds that Plaintiffs and Class Counsel have adequately represented the Settlement Classes. FED. R. CIV. P. 23(e)(2)(A). First, there are no conflicting interests that exist between Plaintiffs and the Settlement Classes. The record also demonstrates that Plaintiffs participated in all aspects of the litigation and at all times acted in the best interests of the Settlement Classes. Second, Class Counsel have diligently litigated this Action on behalf of the Settlement Classes and achieved a significant resolution from DuPont.

6.    The Court finds that the Settlement was negotiated at arm's length and in good faith by experienced counsel who have zealously represented their respective clients throughout nearly a decade of litigation. This history supports the conclusion that the Settlement is the product of non-collusive, procedurally fair negotiations. FED. R. CIV. P. 23(e)(2)(B).

7.    The Court finds that the relief provided for the Settlement Classes is fair, adequate, and reasonable, taking into account the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the Settlement Classes; the terms of any proposed award of attorneys' fees, including the timing of payment; and the existence of any agreements required to be identified under Rule 23(e)(3). Members of the Property Settlement Classes will receive substantial monetary payments, as reflected in the terms of the Settlement Agreement and the materials submitted in support thereof, particularly when considered against the factual, legal, practical, and procedural risks presented by this Action. This Settlement, together with the 2021 Class Settlement, yields a total recovery for members of the Property Settlement Classes exceeding 90% of the maximum diminution-in-value damages likely to be proven at trial, according to the opinions of Plaintiffs' expert real estate economist, Dr. Jeffrey

Zabel. Similarly, the additional funding for the Medical Monitoring Program confers a meaningful benefit on members of the Medical Monitoring Settlement Class by ensuring that the Medical Monitoring Program is well capitalized and that individuals who did not enroll under the 2021 Class Settlement will have a full and fair opportunity to participate with adequate program funding. This additional funding also enhances the likelihood that any funds remaining at the conclusion of the Medical Monitoring Program will be distributed on a pro rata basis, thereby resulting in potential additional monetary payments to participating Class Members, which is an additional, substantial benefit.

8. Further, the method of distributing these benefits to the Settlement Classes is fair, reasonable, adequate, and efficient. More than 4,000 claims were submitted during the enrollment period. Class Counsel conservatively estimates that over 50% of eligible Settlement Class Members filed a claim. This claims rate, which is substantial, is a testament to the fairness of the Settlement and the relative ease with which claimants were able to file a claim. *See* FED. R. CIV. P. 23(e) advisory committee's note to 2018 amendments ("Measuring the proposed relief may require evaluation of any proposed claims process").

9. As set forth below, the Court finds that the terms of Plaintiffs' application for attorneys' fees, including the timing of payment, weigh in favor of the Settlement's fairness.

10. The Parties have complied with Rule 23(e)(3) by identifying the existence of one confidential agreement, in addition to the Settlement Agreement, made in connection with the proposed Settlement. (*See* Dkt. 572-3 at 28.) The agreement was never implicated because no Settlement Class Members requested to opt out of the Settlement.

11. The Court finds that the Settlement treats Settlement Class Members equitably relative to each other. FED. R. CIV. P. 23(e)(2)(D). Each Property Settlement Class Member will

6

receive a payment based on the value of their property as per the 2015 county tax assessment relative to all other eligible properties owned by the Property Settlement Class Members. This payment allocation is a rational method of distributing the Settlement's monetary benefits given Plaintiffs' allegations and claims. Medical Monitoring Settlement Class Members are also treated equitably relative to each other, as each Settlement Class Member will have equal access to the periodic monitoring procedures established by the Medical Monitoring Program.

12.     Finally, the reaction of the Settlement Classes has been overwhelmingly positive, which weighs strongly in favor of the Settlement's fairness. Indeed, the Settlement drew no objections from Settlement Class Members and no opt outs. When coupled with the strong claims rate, the Court finds that the Settlement Classes' reaction is evidence that the Settlement is viewed favorably and supported by the Settlement Class Members and this, in turn, demonstrates that the Settlement is fair, reasonable, and adequate. *See Baker v. Saint-Gobain Performance Plastics Corp.*, No. 1:16-CV-917, 2022 WL 1025185, *4 (N.D.N.Y. Feb. 4, 2022) (approving settlement that "drew no objections from Settlement Class Members and no valid opt outs" and noting this as evidence that the settlement is viewed favorably by class members and is therefore fair, reasonable, and adequate); *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (explaining that where "the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate").

13.     Notice Plan: The Court finds that the Notice Plan satisfied the applicable requirements of Rule 23(c)(2)(B) and 23(e), and fully complied with all laws and the Due Process Clause of the United States Constitution, constituting the best notice that was practicable under the circumstances of this case. Among other things, the Notice advised Settlement Class Members of the opportunity to object to the proposed Settlement or to opt out of

7

the Settlement Classes.

14.    Claims Administration: For the reasons set forth in Class Counsels' Joint Declaration, the Court orders the Class Administrator to review for eligibility any claims for Medical Monitoring Settlement Class benefits that were filed on or before February 11, 2016, but at the time of filing lacked proof of a PFOA blood test in compliance with the Settlement, provided that such blood testing evidence is submitted on or before October 26, 2026.

**ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS**

15.    Plaintiffs' counsel has requested an attorneys' fee award of 19.9 percent of the Settlement Payments, or $5,373,000, as well as reimbursement of expenses incurred in connection with this Action of $1,018,668.29.  No Settlement Class Member objected to Plaintiffs' application for attorneys' fees or reimbursement of expenses and therefore the request is unopposed.

16.    Reasonableness of the Attorneys' Fee Request: In common fund settlements, such as this one, courts in this Circuit typically apply the percentage-of-the-fund method to assess an attorneys' fee request.  The Court finds it is appropriate to apply the percentage-of-the-fund method here.  To determine whether the request for 19.9 percent of the Settlement Payments is reasonable, the Court considers the guidelines set forth by the Second Circuit in *Goldberger*: (1) the time and labor expended by counsel, (2) the magnitude of the litigation, (3) the risk of the litigation, (4) the quality of the representation, (5) the requested fee in relation to the settlement, and (6) public policy considerations.  *See Goldberger*, 209 F.3d at 50.  Pursuant to *Goldberger*, the Court has "very broad discretion . . . in determining a reasonable fee." *Id.* at 57.  Upon applying the *Goldberger* factors, the Court finds that a fee of 19.9 percent of the Total Settlement Payment, or $5,373,000 is reasonable.

8

a.    **<u>Magnitude and Complexity of the Litigation</u>**: The Court finds that the magnitude and complexity of the litigation weigh in favor of approval.  The Action was complex, presenting novel factual and legal issues whose outcome was uncertain at the outset.  The duration, scope, and procedural history of this case underscore its magnitude and complexity, which weigh in favor of approval.

b.    **<u>Risks of the Litigation</u>**: The Court finds that the risks of the litigation weigh in favor of approval.  Following settlements with three defendants, Plaintiffs continued to litigate against DuPont, obtaining a class certification order, engaging in merits discovery that included six further expert reports, sixteen expert depositions, and seven depositions of fact and Rule 30(b)(6) witnesses.  The Parties were also prepared to proceed to trial, which would entail significant risks, including the possibility of no recovery, as well as the likelihood of extended post-trial proceedings and appeals that could substantially delay any recovery.  These risks, together with the complexity, expense, and duration of continued litigation, which has spanned nearly ten years as of the time of Settlement, weigh in favor of approving the Settlement.

c.    **<u>Quality of Representation</u>**: The Court finds that the quality of representation weighs in favor of approval.  Class Counsel has consistently delivered high-quality representation to Plaintiffs, the putative classes, and the Settlement Classes. Further, Class Counsel faced worthy adversaries of high caliber, which the Court has appropriately considered in evaluating the quality of Class Counsel's work.  *See, e.g.*, *In re Nigeria Charter Flights Litig.*, No. 04-MD-1613, 2011 WL 7945548, *8 (E.D.N.Y. Aug. 25, 2011) ("The quality of opposing counsel is also important in evaluating the quality of class counsel's work").

d. **Requested Fee in Relation to the Settlement**: The Court finds that a 19.9 percent fee award compares favorably with fees awarded to class counsel in the Second Circuit, especially in light of the results delivered to the Settlement Classes. For example, courts in this district and throughout the Second Circuit have regularly found an award of 33 percent of a common fund to be fair and within the range of reasonableness. *See, e.g.*, *Akerman v. Ithaca Coll.*, No. 3:23-CV-1565, 2025 WL 3039861, *2 (N.D.N.Y. Oct. 31, 2025) (granting attorneys' fees at 33.3% and noting this fee percentage is fair, in part, because "[m]ost class actions are inherently complex, and settlement avoids the costs, delays and multitudes of other problems associated with them"); *Thompson v. Community Bank, N.A.*, No. 8:19-CV-919, 2021 WL 4084148, *10-12 (N.D.N.Y. Sept. 8, 2021) (awarding 33.33% of a common fund and citing cases); *Baudin v. Resource Mktg. Corp., LLC*, No. 1:19-CV-386, 2020 WL 4732083, *14 (N.D.N.Y. Aug. 13, 2020) (awarding 33% of common fund). Here, Class Counsel delivered significant relief to the Settlement Classes in a complex case against well-funded adversaries. The requested fee of 19.9 percent of the Total Settlement Payment falls within the range of reasonableness and compares favorably to fee awards in complex class action litigation within this Circuit.

e. **Public Policy Considerations**: The requested fee furthers the policy goal of "providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Goldberger*, 209 F.3d at 51.

f. **Time and Labor Expended by Counsel and Lodestar Cross-Check**: The Court finds that consideration of the time and labor expended by counsel, as well as a lodestar cross-check, demonstrate that the requested fee is reasonable. As of the date of their motion, Class Counsel and associated counsel had expended a total of 5,564.64

hours, for a lodestar of $3,955,256.  The time and labor expended by counsel is appropriate and was warranted in this complex Action.  Application of a lodestar cross-check confirms the Court's finding.[2]  To obtain their requested fee, Class Counsel seek a lodestar multiplier of 1.36, which falls at the low end of the range of multipliers typically awarded in this Circuit.  *See, e.g.*, *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, No. 1:08-CV-10783, 2016 WL 3369534, *1 (S.D.N.Y. May 2, 2016) (finding 3.9 multiplier reasonable); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (concluding multiplier of 5.3 was "not atypical" in similar cases).  Accordingly, application of a lodestar cross-check confirms that the fee requested by Class Counsel is reasonable.

17.    **Reasonableness of the Cost Reimbursement Request**: "Courts routinely note that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses."  *Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-CV-8405, 14-CV-8714, 2015 WL 10847814, *23 (S.D.N.Y. Sept. 9, 2015) (internal quotations omitted).  The cost reimbursement requested by Class Counsel—$1,018,668.29—reflects expenses typically billed by attorneys to paying clients in the marketplace and includes expert witness expenses, costs associated with document production and storage, deposition expenses, travel in connection with litigation, and expenses related to preparation for trial.  The Court finds that the expenses incurred in the Action are reasonable.

---

[2] Because the Court is using a lodestar cross check, "the hours documented by counsel need not be exhaustively scrutinized," but rather "he reasonableness of the claimed lodestar can be tested by the court's familiarity with the case (as well as encouraged by the strictures of Rule 11)." *Goldberger*, 209 F.3d at 50.  Accordingly, the Court does not need to, and elects not to, engage in a line-by-line analysis of the total hours reported by Class Counsel, which are consistent with what the Court would expect in a case of similar complexity.

18.     **Approval of Attorneys' Fees and Costs**: The Court awards Plaintiffs' counsel (i) $5,373,000 in attorneys' fees and (ii) $1,018,668.29 in reasonable litigation expenses.  Pursuant to the Settlement Agreement, the fees and expenses shall be paid from the One Time Payment.

19.     **Approval of Service Awards**: Plaintiff incentive awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015) (internal quotation marks omitted).  The Court finds that the Class Representative Plaintiffs have devoted considerable time and effort to this litigation, and have been active participants from the pre-suit investigation all the way through preparation for trial, as well as during the settlement process.  The result obtained for the Settlement Classes would not have been possible without the active participation of these Plaintiffs.  The Court awards $25,000 to the following Class Representative Plaintiffs for their commendable work on achieving this significant Settlement: Michele Baker, Charles Carr, Angela Corbett, Pamela Forrest, Michael Hickey, Kathleen Main-Lingener, Kristin Miller, Jennifer Plouffe, Silvia Potter, and Daniel Schuttig.  This award is reasonable considering the work performed by each Plaintiff and the result obtained thus far.  *See, e.g.*, *Story v. SEFCU*, No. 1:18-CV-764, 2021 WL 736962, *10-11 (N.D.N.Y. Feb. 25, 2021) (awarding $15,000 service awards to each class representative plaintiff); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126, 2018 WL 6250657, *4 (S.D.N.Y. Nov. 29, 2019) (approving award of $50,000 for six plaintiffs and $100,000 for two plaintiffs).

**RELEASE, DISMISSAL, AND ENTRY OF FINAL JUDGMENT AS TO THE**

**SETTLING DEFENDANTS**

20.     **Release, Covenant Not to Sue, and Permanent Injunction**: The Court finds that the Release set forth in Section 13 of the Settlement Agreement is valid and enforceable.  The Release is given pursuant to New York law and shall be construed under New York law, including N.Y. General Obligations Law § 15-108.  The Release is effective as of the Effective Date. Pursuant to Section 13 of the Settlement Agreement, the Court permanently bars and enjoins the Releasing Parties from instituting, maintaining, prosecuting, or continuing any suit, action, arbitration, or proceeding against any of the Released Parties with respect to the Released Claims.  The Court finds that each of the Releasing Parties has expressly, intentionally, fully, finally, and forever released, waived, compromised, settled, and discharged all Released Claims. Each of the Releasing Parties (whether or not the Releasing Party objected, submitted a Claim Form, or otherwise participated in the Action, the Settlement, or the approval process) shall be bound by the terms and provisions of the Settlement Agreement and this Order, including the Release and Covenant Not to Sue provisions set forth in the Settlement Agreement, which are hereby incorporated by reference and become part of this Order.

21.     **No Contribution Claims**: The Court enjoins any Person from asserting claims against the Released Parties for contribution or similar claims (however denominated) for all or a portion of any amounts paid or awarded in the Action by way of settlement, judgment, or otherwise.

22.     **Dismissals**: In consideration of the benefits provided under the Settlement Agreement, all Released Claims by or on behalf of the Settlement Classes, Plaintiffs, or any and all Settlement Class Members against any and all Released Parties, are hereby dismissed with prejudice, including all claims in the Third Amended Complaint asserted against the DuPont. These claims are dismissed without further cost, including claims for interest, penalties, costs, and

13

Attorneys' fees (except as otherwise provided for in the Settlement Agreement).

23. **Retention of Jurisdiction**: Without affecting the finality of this Order in any way, this Court retains continuing and exclusive jurisdiction (i) over the Medical Monitoring Program and the Settlement Fund, (ii) over the Parties, the Settlement Class Members, and the Settlement Agreement, to interpret, implement, administer and enforce the Settlement Agreement in accordance with its terms; (iii) for all matters relating to the Settlement Agreement and the Action pending before the Court, (iv) to administer and enforce the terms of this Order, and (v) for any other necessary purpose.

24. **Termination of the Settlement**: If the Settlement is terminated as provided in Section 16 of the Agreement, or the Effective Date otherwise fails to occur, this Order shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Settlement Agreement, and this Order shall be without prejudice to the rights of Plaintiffs, Settlement Class Members, and the Settling Defendants, and the Plaintiffs, DuPont, and Settlement Class Members shall revert to their respective pre-Settlement positions in the Action and in any actions previously pending in any federal or state court in which Settlement Class Members dismissed claims in order to participate in one or more Settlement Classes.  In such event, the Parties shall be free to raise all claims, defenses, and arguments that they could have raised had they never negotiated, agreed to, or sought approval of the Settlement.

25. **Entry of Final Judgment**: The Court finds that there is no just reason for delay in the entry of final judgment as to the Settling Defendant DuPont, and the Clerk of Court is

14

expressly directed to enter final judgment as to the Settling Defendants and the claims alleged against them in the Action pursuant to Federal Rule of Civil Procedure 54(b).

**IT IS SO ORDERED.**

Dated:  April 29, 2026
         Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

15